**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER MANCHIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-08636-LJL |
| Plaintiff, | |
| v. | |
| PACS GROUP, INC., JASON MURRAY, DERICK APT, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO. LLC, STEPHENS INC., KEYBANC CAPITAL MARKETS INC., OPPENHEIMER & CO. INC., and REGIONS SECURITIES LLC, | |
| Defendants. | |
| NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-08882-LJL |
| Plaintiff, | |
| v. | |
| PACS GROUP, INC., JASON MURRAY, DERICK APT, MICHELLE LEWIS, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, EVELYN DISLAVER, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES, LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO., LLC, STEPHENS, INC., OPPENHEIMER & CO., INC., UBS SECURITIES, LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF CHRISTOPHER MANCHIN'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

Plaintiff Christopher Manchin ("Manchin") respectfully submits this memorandum of law in support of his motion pursuant to the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*, and 15 U.S.C. § 77z-1, *et seq* (the "PSLRA") for an Order: (1) consolidating the above-captioned related actions; (2) appointing Manchin as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B); (3) approving Manchin's selection of Glancy Prongay & Murray LLP as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I.    PRELIMINARY STATEMENT

This is a class action on behalf of a class consisting of all PACS Group, Inc. ("PACS" or the "Company") investors who: (a) purchased or otherwise acquired PACS securities between April 11, 2024 and November 5, 2024, inclusive (the "Class Period"); and/or (b) purchased or otherwise acquired PACS common stock pursuant and/or traceable to the registration statement and prospectus issued in connection with the Company's April 11, 2024 initial public offering ("IPO"); and/or (c) purchased or otherwise acquired PACS common stock pursuant and/or traceable to the registration statement and prospectus issued in connection with the Company's September, 2024 secondary public offering ("SPO").

The PSLRA provides that the Court shall appoint the most adequate plaintiff—*i.e.* the plaintiff most capable of adequately representing the interests of class members—as lead plaintiff. The PSLRA also provides a presumption that the movant with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff."

Manchin believes that he is the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on his financial losses suffered as a result of

Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Manchin satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other class members' claims and he is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Manchin respectfully submits that he is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Manchin's selection of Glancy Prongay & Murray LLP ("GPM") as lead counsel for the class should be approved because GPM has substantial expertise in securities class actions, and the experience and resources to efficiently prosecute this action.

## II.    FACTUAL BACKGROUND[1]

PACS, through its subsidiaries, operates senior care facilities, skilled nursing facilities, and assisted living facilities in the United States.

On November 4, 2024, Hindenburg Research published a report based on a 5-month investigation that included interviews with 18 former PACS employees, competitors, and an analysis of more than 900 PACS facility cost reports. The report alleged the Company had "abused a COVID-era waiver" in a "scheme" that involved submitting false Medicare claims which "drove more than 100% of PACS' operating and net income from 2020 – 2023, enabling PACS to IPO in early 2024 with the illusion of legitimate growth and profitability." The report further alleged the Company engaged in a scheme to maintain revenue by "bill[ing] thousands of unnecessary respiratory and sensory integration therapies to Medicare Part B regardless of clinical need or outcomes." The report also alleged a widespread practice of falsifying documentation, including by engaging in a "scheme whereby PACS attempts to fool regulators by 'renting' licenses from

---

[1] This section is adapted from the complaints in the above-captioned actions.

third parties to 'hang' on buildings" and then "either employs unlicensed administrators or has administrators manage multiple buildings in excess of state mandated limits." Similarly, the report alleges the Company engaged in a scheme related to licensure and staffing of nurses, whereby "PACS secretly lists uncertified nurse aides (NAs) as certified in the system, in an apparent scheme to cheat staffing ratios" and "retroactively add fake RN hours" in order "to meet minimum staffing requirements, boost star ratings, and avoid costly penalties."

On this news, the Company's share price fell $11.93 or 27.78%, to close at $31.01 per share on November 4, 2024, on unusually heavy trading volume.

Then, on November 6, 2024, before the market opened, the Company announced that it would postpone its fiscal third quarter 2024 earnings release. The Company further disclosed it had "received civil investigative demands from the federal government regarding the Company's reimbursement and referral practices that may or may not be related to this week's third-party report."

On this news, the Company's share price fell $11.45 or 38.76%, to close at $18.09 per share on November 6, 2024, on unusually heavy trading volume. By the commencement of this action, PACS stock has traded as low as $18.09 per share, a more than 13.9% decline from the $21 per share IPO price.

The complaints filed in the above-captioned actions allege that in the IPO and SPO registration statement and throughout the Class Period the Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies by failing to disclose to investors: (1) that the Company engaged in a "scheme" to submit false Medicare claims which "drove more than 100% of PACS' operating and net income from 2020 – 2023"; (2) that the Company engaged in a "scheme" to "bill thousands of unnecessary respiratory

3

and sensory integration therapies to Medicare"; (3) that the Company engaged in a scheme to falsify documentation related to licensure and staffing; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the class members have suffered significant losses and damages.

## III.    PROCEDURAL BACKGROUND

On November 13, 2024, Plaintiff Christopher Manchin commenced a securities class action against PACS captioned *Manchin v. PACS Group, Inc.*, Case No. 1:24-cv-08636-LJL (the "*Manchin* Action"). It was brought pursuant to the Securities Act and Exchange Act on behalf of persons and entities that purchased or otherwise acquired PACS: (a) common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's April 11, 2024 initial public offering ("IPO" or the "Offering"); and/or (b) securities between April 11, 2024 and November 5, 2024 inclusive (the "Class Period").

On November 21, 2024, Plaintiff New Orleans Employees' Retirement System filed a related lawsuit, captioned *New Orleans Employees' Retirement System v. PACS Group, Inc.*, Case No. 1:24-cv-08882-LJL (the "*New Orleans* Action," and with the *Manchin* Action, the "Related Actions"). It is brought pursuant to the Securities Act and Exchange Act on behalf of persons and entities that: (a) purchased or otherwise acquired PACS securities between April 11, 2024 and November 5, 2024, inclusive (the "Class Period"); and/or (b) purchased or otherwise acquired PACS common stock pursuant or traceable to the SPO Materials issued in connection with PACS' September 2024 secondary public offering (the "SPO").

## IV.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Each of the Related Actions presents similar factual and legal issues, as they involve the same subject matter and present similar same legal issues. Each action alleges violations of the Securities Act and Exchange Act, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

### B.   Manchin Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"— *i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

As set forth below, Manchin satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements for appointment as lead plaintiff. Manchin has, to the best of his knowledge, the largest financial interest in this litigation and meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure. In addition, Manchin is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the class. Accordingly, Manchin respectfully submits that he should be appointed lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1.    Manchin Filed the First Complaint and a Timely Motion

Manchin is the Plaintiff in this action, filed the first complaint, and has made a timely motion in response to a PSLRA notice. On November 13, 2024, notice was published in connection with this action. *See* Declaration of Gregory B. Linkh in Support of Christopher Manchin's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Linkh Decl."), Ex. A. Therefore, Garcia had sixty days (until January 13, 2025) to file a motion to be appointed as lead plaintiff. As the Plaintiff and a purchaser of PACS securities,

6

Manchin is a member of the proposed class and has hereby timely filed a motion for appointment as lead plaintiff in compliance with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certification, Manchin attests that he has reviewed the complaint, and is willing to serve as representatives of the class. *See* Dkt. No. 1 at 48-49. Accordingly, Manchin satisfies the first requirement to serve as lead plaintiff for the class.

### 2.    Manchin Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii). At the time of this filing, Manchin believes that he has the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and are presumed to be the "most adequate plaintiff."

Manchin purchased PACS securities during the Class Period, and as a result, suffered financial harm of approximately $2,099.81 on his Exchange Act claims. *See* Linkh Decl., Ex. B. To the best of his knowledge, Manchin is not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, Manchin believes he has the "largest financial interest in the relief sought by the class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the class. *See Varghese*, 589 F. Supp. 2d at 396.

### 3.    Manchin Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23

of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc*. 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08-cv-7281, 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

### a)    Manchin's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Kuriakose*, 2008 WL 4974839, at *4. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Manchin's claims are typical of the claims asserted by the proposed members of the class. Like all members of the class, Manchin alleges that Defendants' material misstatements and omissions concerning PACS's business, operations, and financial prospects violated the federal securities laws. Manchin, like all members of the class, purchased PACS securities in reliance on

8

Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Manchin's interests and claims are "typical" of the interests and claims of the class.

<b>b)    Manchin Is An Adequate Representative</b>

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297.

Manchin has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and his financial losses ensure that he has sufficient incentive to provide vigorous advocacy. *See* Linkh Decl., Ex. B. Manchin is not aware of any conflict between his claims and those asserted on behalf of the class. Manchin is a corporate attorney, licensed and residing in Pennsylvania. He is also an adjunct professor at the Drexel University Thomas R. Kline School of Law. He has approximately 10 years of investing experience. As such, Manchin is adequate to represent the class, and should be appointed as lead plaintiff.

**C.    The Court Should Approve Lead Plaintiff's Choice of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *Cendant*, 264 F.3d at 274. Here, Manchin has retained GPM as lead counsel to pursue this litigation on his behalf and will retain the firm as the class's lead counsel in the event he is appointed lead plaintiff. GPM possess extensive experience in securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firm's résumé attached to the Linkh Declaration as Exhibit C. Thus, the Court may be assured that, by granting the Motion, the class will receive the highest caliber of legal representation.

9

## V.    CONCLUSION

For the foregoing reasons, Christopher Manchin respectfully requests that the Court grant his Motion and enter an Order (1) consolidating the Related Actions; (2) appointing Manchin as Lead Plaintiff; (3) approving his selection of Glancy Prongay & Murray LLP Lead Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: January 13, 2025                          **GLANCY PRONGAY & MURRAY LLP**

By:  _/s/ Gregory B. Linkh_____
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Christopher Manchin, and Proposed*
*Co-Lead Counsel for the Class*

10

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 13, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 13, 2025, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh