**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER MANCHIN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>vs.<br><br>PACS GROUP, INC., JASON MURRAY, DERICK APT, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO. LLC, STEPHENS INC., KEYBANC CAPITAL MARKETS INC., OPPENHEIMER & CO. INC., and REGIONS SECURITIES LLC,<br><br>     Defendants. | No. 24-cv-08636-LJL<br><br>Judge Lewis J. Liman<br><br><u>CLASS ACTION</u><br><br><u>ORAL ARGUMENT REQUESTED</u> |

**1199SEIU HEALTH CARE EMPLOYEES PENSION FUND'S MEMORANDUM OF**
**LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT**
**<u>AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT.......................................................................................................................... 3

I.  THE PENSION FUND SHOULD BE APPOINTED AS LEAD PLAINTIFF.................. 3

    A.  The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class.................................................................................................... 3

    B.  The Pension Fund Satisfies the Requirements of Rule 23 ..................................... 5

        1.  The Pension Fund Is Typical .................................................................... 6

        2.  The Pension Fund Is Adequate ................................................................. 7

    C.  The Pension Fund, the Only Institutional Investor Movant, Best Satisfies the PSLRA's Preference for Sophisticated Lead Plaintiffs ................................... 8

    D.  The Presumption That the Pension Fund Should Be Appointed Lead Plaintiff Cannot Be Rebutted................................................................................. 9

II.  ALL OTHER MOTIONS SHOULD BE DENIED............................................................ 9

CONCLUSION...................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Cavanaugh,*
   306 F.3d 726 (9th Cir. 2002) ........................................................................................2

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.,*
   2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) ..............................................................5, 9

*Cohen v. Luckin Coffee Inc.,*
   2020 WL 3127808 (S.D.N.Y. June 12, 2020) ............................................................2, 9

*In re Donnkenny Inc. Sec. Litig.,*
   171 F.R.D. 156 (S.D.N.Y. 1997) ..................................................................................8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
   288 F.R.D. 26 (S.D.N.Y. 2012) ....................................................................................9

*Hevesi v. Citigroup, Inc.,*
   366 F.3d 70 (2d Cir. 2004)............................................................................................5

*Hom v. Vale, S.A.,*
   2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) ..................................................................2

*In re Initial Pub. Offering Sec. Litig.,*
   214 F.R.D. 117 (S.D.N.Y. 2002) ..................................................................................5

*Khunt v. Alibaba Grp. Holding Ltd.,*
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)..................................................................3, 9, 10

*May v. Barclays PLC,*
   2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023)..............................................................8

*Moshell v. Sasol Ltd.,*
   2020 WL 2115410 (S.D.N.Y. May 4, 2020) ................................................................7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
   693 F.3d 145 (2d Cir. 2012)..........................................................................................5

*Plaut v. Goldman Sachs Grp., Inc.,*
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)..............................................................6

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014)........................................................................7, 8

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) .................................................................................4

*Rosi v. Alcaris Therapeutics, Inc.*,
    2019 WL 5778445 (S.D.N.Y. Nov. 6, 2019).................................................................3

*Salinger v. Sarepta Therapeutics, Inc.*,
    2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019) ..............................................................7

*Tan v. NIO Inc.*,
    2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020)............................................................6, 7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................5, 6

*Woburn Ret. Sys. v. Salix Pharms. Ltd.*,
    2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) ..............................................................3

## Rules & Statutes

Fed. R. Civ. P. 23.................................................................................... *passim*

15 U.S.C. § 78u-4 *et seq.* ........................................................................ *passim*

15 U.S.C. § 77k (e) .....................................................................................4

## Docketed Case

*Louisiana Sheriffs' v. Cardinal Health, Inc.*,
    No. 19-cv-03347 (S.D. Ohio 2019) .............................................................................9

## Other Authorities

H.R. Conf. Rep. No. 103-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ..............................1, 7

S.R. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679......................................................8

Proposed Lead Plaintiff 1199SEIU Health Care Employees Pension Fund (the "Pension Fund")[1] respectfully submits this Memorandum of Law in further support of its Motion for appointment as Lead Plaintiff, and approval of selection of Labaton as Lead Counsel, and in opposition to all other movants.

## PRELIMINARY STATEMENT

Congress enacted the PSLRA to vest control of securities class actions with sophisticated institutional investors.  To that end, Congress directed courts to appoint as Lead Plaintiff the movant with the largest financial interest in the litigation, with the expectation that the movant would be a sophisticated institutional investor with the financial incentive and resources to maximize the recovery for the class.  The appointment of the Pension Fund, the presumptive Lead Plaintiff, will fulfill Congress' goal of encouraging sophisticated institutions to serve as Lead Plaintiff.  Indeed, the Pension Fund is the paradigmatic Lead Plaintiff envisioned by Congress: an experienced institution with a dedicated staff, competent and qualified to select and supervise Lead Counsel, control the litigation, and reduce agency costs.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that increasing the role of institutional investors in securities class actions will benefit shareholders and assist courts by improving the quality of representation).  In this case, the Pension Fund incurred approximately *$469,620* in losses on its investments in PACS securities, an amount significantly greater than the losses claimed by any other movant.  *See* ECF Nos. 21, 24, 27.  Further, the Pension Fund purchased more PACS securities, purchased more PACS securities on a net basis, and expended

---

[1]     All definitions and abbreviations used herein remain unchanged from the Pension Fund's initial moving papers, unless otherwise indicated.  *See* ECF No. 26, 27.  All citations and internal quotations are omitted, and all emphasis is added, unless noted.

greater net funds than any other Lead Plaintiff movant. *See* ECF Nos. 22-2, 25-2, and 28-2. Thus, the Pension Fund possesses the largest financial interest in the litigation.

The Pension Fund also satisfies the typicality and adequacy requirements of Rule 23. The Pension Fund is typical of the Class because it transacted in PACS securities and was harmed once the artificial inflation was removed from the price of the securities. The Pension Fund is likewise adequate because it participated directly in the Secondary Public Offering at issue—unlike any other movant—thus has standing to bring both Securities Act and Exchange Act claims and lacks any antagonism towards absent Class members. Further, the Pension fund is adequate because it has selected Labaton, a nationally recognized securities class action firm, as proposed Lead Counsel for the Class. *Hom v. Vale, S.A.*, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) (finding adequacy requirement satisfied where movant selected counsel "qualified to serve as lead counsel and conduct the litigation"). In addition, the Pension Fund submitted a sworn Certification affirming its willingness to be Lead Plaintiff, as well as its desire and commitment to oversee the prosecution and zealously represent the interests of the entire Class. *See* ECF No. 28-1.

Therefore, in accordance with the PSLRA, the Pension Fund is entitled to a strong presumption that it is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Further, no movant has, or will be able to, submit the requisite "proof" to rebut this presumption. *Id.* § 78u-4(a)(3)(B)(iii)(II); *see also Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020) (requiring "proof that the presumptive lead plaintiff is subject to unique defenses"); *In re Cavanaugh*, 306 F.3d 726, 729 n.2 (9th Cir. 2002) (noting that the fact that the presumption is "rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption may be rebutted only upon proof"). As a result, the PSLRA's "sequential" review process dictates that the Court's inquiry begins and

ends with the Pension Fund. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) ("Once the court 'identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.'").

## ARGUMENT

## I.      THE PENSION FUND SHOULD BE APPOINTED AS LEAD PLAINTIFF

The Pension Fund respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy requirements. *See Rosi v. Alcaris Therapeutics, Inc.*, 2019 WL 5778445, at *2-4 (S.D.N.Y. Nov. 6, 2019) (appointing movant with largest financial interest who also made *prima facie* showing of typicality and adequacy).

### A.      The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

The Pension Fund has, without a doubt, the largest financial interest in the relief sought by the Class. Courts in this Circuit have held that a movant's loss is the most important factor in determining whether the movant has the largest financial interest in the litigation. *See Woburn Ret. Sys. v. Salix Pharms. Ltd.*, 2015 WL 1311073, at *4 (S.D.N.Y. Mar. 23, 2015) ("The most important factor is financial loss."). As demonstrated by the following chart, the Pension Fund suffered the largest loss among the movants:

| MOVANT[2] | LIFO LOSS[3] |
|---|---|
| The Pension Fund | ($469,620) |
|  |  |
| ~~Yongfen Min~~ | ~~($30,538)~~ |
|  |  |
| Christopher Manchin | ($2,100) |

The Pension Fund also has the largest financial interest based on additional factors courts consider in assessing financial interest.  Specifically, the Pension Fund purchased more PACS securities in total, purchased more PACS securities on a net basis, and expended greater net funds than any of the competing movants.  *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011) (using these factors to determine which potential lead plaintiff has the largest financial interest).  As such, the Pension Fund has the largest financial interest of any movant.

Moreover, the Pension Fund has the largest financial interest even if the Court were to look separately at the two causes of action asserted here.  As demonstrated by the following chart, the Pension Funds suffered the largest losses under both the Securities Act and the Exchange Act:

| MOVANT | LOSS | |
|---|---|---|
|  | Securities Act[4] | Exchange Act |
| The Pension Fund | ($400,422) | ($469,620) |
| Christopher Manchin | ($143) | ($2,100) |

[2]    Movant Yongfen Min filed a notice that he does not oppose the competing motions for appointment.  *See* ECF No. 33.

[3]    Loss figures are taken from each respective movant's initial motion and reflect their claimed losses.  *See* ECF Nos. 22-2, 25-2, and 28-2.

[4]    Pursuant to 15 U.S.C. § 77k(e), damages per share under the Securities Act are limited to the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (i) the value thereof as of the time such suit was brought, or (ii) the price at which such security shall have been disposed of in the market before suit, or (iii) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.  Here, the Pension Fund purchased 20,326 shares on the September 6, 2024 SPO at $36.25 for a total cost of $736,817.50. These shares were valued at $336,395.30 on November 21, 2024, the day the SPO claims were first asserted in *New Orleans*

*(Footnote continued on next page)*

4

Indeed, the Pension Fund purchased far more PACS securities pursuant to an offering at issue than any other movant.  *See* ECF No. 28-1 (indicating the Pension Fund purchased 20,326 shares on the September 6, 2024 SPO at $36.25).  As such, there can be no credible dispute that the Pension Fund has "the largest financial interest in the relief sought by the class" and is entitled to be appointed Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).[5]

B.    **The Pension Fund Satisfies the Requirements of Rule 23**

In addition to suffering the largest loss, the Pension Fund also satisfies the PSLRA's preliminary showing of typicality and adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at *4 (S.D.N.Y. Jan. 30, 2019) ("A potential lead plaintiff must also make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.").  Indeed, "a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of litigation] and should be left for consideration of a motion for class certification." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*,

---

*Employees' Retirement System v. PACS Group Inc.,* no. 24-cv-08882, (S.D.N.Y. Nov. 21, 2024). *See* ECF No. 28-1.

[5]    Manchin's apparent refusal to concede that he is not the most adequate plaintiff is bewildering.  To the extent he seeks co-lead plaintiff appointment to represent the IPO claim, such designation is strongly disfavored by courts, directly at odds with the PSLRA's lead plaintiff appointment framework, and wholly unneeded at this stage in the litigation. *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("The only other possibility—that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action—has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA.").  It is well-settled that "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).  In any event, the Pension Fund has direct standing to bring both Securities Act and Exchange Act claims, and it has "class standing" to assert additional claims in connection with the IPO. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 (2d Cir. 2012).

216 F.R.D. 248, 252 (S.D.N.Y. 2003) (alteration in original). Here, the Pension Fund unquestionably satisfies both requirements.

### 1.    The Pension Fund Is Typical

The Pension Fund is typical to the Class as a whole and not subject to any potentially disqualifying unique defenses. *See* ECF No. 27, at 8-9. "With respect to typicality, courts consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'" *Plaut* v. *Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *3 (S.D.N.Y. Sept. 19, 2019) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)). Additionally, Rule 23 does not require the lead plaintiff to be identically situated with all class members to satisfy the typicality requirement. *See id.* at *3 (noting that "claims need not be identical").

As applied, the Pension Fund's claims are typical to the Class as a whole. The Pension Fund: (i) suffered losses on its investments in PACS securities; (ii) as a result of its reliance on Defendants' alleged misstatements and/or omissions, and/or pursuant or traceable to the offering documents issued by Defendants in connection with the Company's Class Period public offerings; (iii) therefore, the claims of the Pension Fund are based on the same course of events as the claims of the Class; and (iv) as a result thereof, the Pension Fund's claims will rely upon the same legal theories as the Class as a whole. Therefore, the Pension Fund satisfies the typicality requirement. *See Tan v. NIO Inc.*, 2020 WL 1031489, at *5 (E.D.N.Y. Mar. 3, 2020) (noting that movant's "claims appear to be typical because, like all members of the class, he alleges that he purchased [company] stock during the class period and suffered losses after it was discovered that [company's] misleading statements artificially inflated the stock price during that period.").

## 2.     The Pension Fund Is Adequate

The Pension Fund also satisfies Rule 23's adequacy requirement.  *See* ECF No. 27, at 9-10.  In analyzing a movant's adequacy, "a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question."  *Salinger v. Sarepta Therapeutics, Inc.*, 2019 WL 6873807, at *3 (S.D.N.Y. Dec. 17, 2019).

Here, "given [its] significant losses," the Pension Fund is strongly motivated to vigorously act as an advocate and fiduciary on behalf of the Class and is well equipped to oversee counsel in this regard.  *NIO*, 2020 WL 1031489, at *5.  Indeed, the Pension Fund has further demonstrated its adequacy through the selection of Labaton, a firm with decades of experience successfully litigating securities class actions, as its proposed Lead Counsel for the Class.  *See* ECF No. 25-5; *see also Moshell v. Sasol Ltd.*, 2020 WL 2115410, at *2 (S.D.N.Y. May 4, 2020) (finding adequacy requirement satisfied where movant selected "firm experienced in securities class action litigation").

Further, the Pension Fund is a sophisticated institutional investor committed to achieving the best possible result for the Class and possesses the experience, resources, and capability necessary to oversee this complex litigation and its counsel.  *See* ECF No. 27, at 11-12.  The Pension Fund is the paradigmatic Lead Plaintiff envisioned by Congress.  *See* H.R. Conf. Rep. No. 103-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. at 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving quality of representation in securities class actions"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that

7

"many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs").

Based on the foregoing, the Pension Fund, as the movant with the largest financial interest that also satisfies the typicality and adequacy requirements of Rule 23, is entitled to appointment as Lead Plaintiff.

### C.   The Pension Fund, the Only Institutional Investor Movant, Best Satisfies the PSLRA's Preference for Sophisticated Lead Plaintiffs

As this Court has observed, "Congress imposed the PSLRA's largest financial interest requirement to 'encourage institutional investors to take a more active role in securities class action lawsuits' because 'increasing the role of institutional investors in class actions w[ould] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.'" *May v. Barclays PLC*, 2023 WL 5950689, at *13 (S.D.N.Y. Sept. 13, 2023) (quoting H.R. Rep. No. 104–369, *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995)) (alteration the Court's). "Appointing lead plaintiffs on the basis of financial interest, rather than on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y. 1997); *see also* S.R. Rep. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (noting that increased representation by institutional investors, who often have the "most to gain" from litigation, would "benefit the class").

The Pension Fund is the only institutional investor seeking appointment as lead plaintiff. As a sophisticated Taft-Hartley pension fund with billions of dollars in assets under management, the Pension Fund has daily familiarity with the rigorous demands of fiduciary duties. Moreover, the Pension Fund has extensive experience and a track record of successfully serving as lead

8

plaintiff under the PSLRA; most recently, it recovered over a hundred million dollars on behalf of investors in a securities class action. *See Louisiana Sheriffs' v. Cardinal Health, Inc.,* No. 19-cv-03347 (S.D. Ohio 2019) (recovering a $109 million settlement for the class). The Pension Fund is the paradigmatic lead plaintiff. *See Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *5 (recognizing that, in appointing a group of two institutional investors as lead plaintiff, they were "institutional plaintiffs who have acted as fiduciaries and who have combined assets under management of $64 billion along with track records of successfully serving in lead plaintiff groups under the PSLRA").

> ### D.     The Presumption That the Pension Fund Should Be Appointed Lead Plaintiff Cannot Be Rebutted

To overcome the presumption entitling the Pension Fund to appointment as Lead Plaintiff, the PSLRA requires the remaining Lead Plaintiff movants to present "proof" that it is inadequate to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012) (requiring "exacting proof . . . to rebut the PSLRA's presumption"). As no other movant has, or will be able to, submit the required "proof" that the Pension Fund fails on typicality or adequacy grounds, the Pension Fund is entitled to appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (evidentiary burden required to rebut presumption of most adequate plaintiff is "proof"); *see also Macquarie Infrastructure Corp.*, 2019 WL 364570, at *7 (rejecting speculative arguments against presumptive lead plaintiff).

## II.    ALL OTHER MOTIONS SHOULD BE DENIED

As the unrebutted presumptive PSLRA Lead Plaintiff in this case, the plain language of the statute mandates the Pension Fund's appointment and the denial of all the other motions. *See* 15 U.S.C. § 78u-4(a)(3)(B); *see also Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d at 536 ("So long

as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . .") (quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). Further, movant Yongfen Min has filed a notice that he does not oppose the competing motions for appointment. ECF No. 33. Therefore, the Pension Fund is the presumptive Lead Plaintiff and should be appointed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Pension Fund respectfully requests the Court grant its Motion and enter an Order: (1) appointing the Pension Fund as Lead Plaintiff; (2) approving the Pension Fund's selection of Labaton as Lead Counsel for the Class; and (3) granting such other relief as the Court may deem just and proper.

DATED: January 27, 2025

Respectfully submitted,

*/s/ Francis P. McConville*
**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
Jeffrey A. Dubbin
Connor C. Boehme
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
jdubbin@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff
1199SEIU and Proposed Lead Counsel for
the Class*

10