UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MANCHIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PACS GROUP, INC., JASON MURRAY, DERICK APT, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO. LLC, STEPHENS INC., KEYBANC CAPITAL MARKETS INC., OPPENHEIMER & CO. INC., and REGIONS SECURITIES LLC,<br><br>Defendants. | No. 24-cv-08636-LJL<br><br>Judge Lewis J. Liman<br><br><u>CLASS ACTION</u><br><br><u>ORAL ARGUMENT REQUESTED</u> |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF
1199SEIU HEALTH CARE EMPLOYEES PENSION FUND FOR APPOINTMENT
<u>AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT..................................................................................................................... 1

     A.    The Pension Fund's Motion for Lead Plaintiff Appointment Is Unopposed.......... 1

     B.    Manchin's Request Violates the PSLRA and Clear Second Circuit Authority ........................................................................................................ 1

     C.    Manchin's Proposed "Co-Lead Plaintiff" Arrangement Is Unnecessary ............... 5

CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2012 WL 1308993 (S.D.N.Y. Apr. 16, 2012)..........................................................................3, 4

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
2009 WL 2168767 (S.D.N.Y. July 16, 2009) ...............................................................................3

*In re Boeing Co. Aircraft Sec. Litig.*,
2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...............................................................................3

*In re Block, Inc. Sec. Litig.*,
2024 WL 639470 (S.D.N.Y. Feb. 15, 2024) ..............................................................................4, 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................................................1

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) .....................................................................................................7

*Church v. Glencore PLC*,
2018 WL 6567704 (D.N.J. Dec. 12, 2018)..................................................................................6

*Cohen v. Luckin Coffee Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...........................................................................10

*Eshe Fund v. Fifth Third Bancorp*,
2008 WL 11322108 (S.D. Ohio Dec. 16, 2008) ...................................................................6, 8, 9

*Fishbury, Ltd. v. Connectics Corp.*,
2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ..............................................................................8

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d. 189 (S.D.N.Y. 2003)..........................................................................................3

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) ..............................................................................4

*Guo v. Tyson Foods, Inc.*,
2022 WL 5041798 (E.D.N.Y. Sept. 30, 2022) ...........................................................................10

*Hevesi v. Citigroup, Inc.*,
366 F.3d 70 (2d Cir. 2004)........................................................................................................2, 3

ii

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) ...................................................................................3

*Irving Firemen's Relief and Ret. Fund v. Tesco PLC*,
2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ..............................................................5

*Marquez v. Bright Health Grp., Inc.*,
2022 WL 1314812 (E.D.N.Y. Apr. 26, 2022) ...............................................................4

*May v. Barclays PLC*,
2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023)............................................................2, 3

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)...................................................................................6, 7, 8

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
432 F. Supp. 3d 131 (D. Conn. 2019)............................................................................7

*In re OSI Pharms., Inc. Sec. Litig.*,
2005 WL 6171305 (E.D.N.Y. Sept. 21, 2005) ..........................................................3, 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................9

*Parot v. Clarivate Plc*,
2022 WL 1568735 (E.D.N.Y. May 18, 2022) ...............................................................4

*Schneider v. Natera, Inc.*,
2022 WL 22442715 (W.D. Tex. July 26, 2022) ............................................................3

*In re SunEdison, Inc. Sec. Litig.*,
300 F. Supp. 3d 444 (S.D.N.Y. 2018)............................................................................8

*Wang v. Athira Pharma, Inc.*,
2021 WL 4726458 (W.D. Wash. Oct. 5, 2021) .............................................................4

*Weinberg v. Atlas Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ..................................................................................3

**Rules & Statutes**

Fed. R. Civ. P. 23............................................................................................................1

15 U.S.C. § 77k(e) .........................................................................................................10

15 U.S.C. § 78u-4 *et seq.* ...................................................................................... *passim*

## PRELIMINARY STATEMENT

The Pension Fund's appointment as Lead Plaintiff is unopposed.[1] No movant challenged the Pension Fund's superior financial interest or fitness to serve. The PSLRA's sequential lead plaintiff process therefore mandates the Pension Fund's appointment as Lead Plaintiff.

Against this statutory clarity, Manchin argues to be appointed as "Co-Lead Plaintiff" *alongside* the Pension Fund for the limited purpose of representing "the Securities Act claims for shares purchased pursuant and/or traceable to the IPO." ECF No. 34 at 2. Manchin's ploy to force a marriage is directly at odds with the PSLRA's lead plaintiff framework, strongly disfavored by courts in this Circuit, and unnecessary at this stage. Manchin's request should be denied.

## ARGUMENT

### A.      The Pension Fund's Motion for Lead Plaintiff Appointment Is Unopposed

Manchin concedes that the Pension Fund qualifies for lead plaintiff after "[h]aving reviewed [its] motion." ECF No. 34 at 1-2. He does not dispute that the Pension Fund holds the largest financial interest of any qualified movant or otherwise satisfies Rule 23's typicality and adequacy requirements, concluding the PSLRA's sequential review process in the Pension Fund's favor. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)(cc); *see also In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (holding the PSLRA "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case"). Manchin's concession that the Pension Fund meets the statute's requirements should end the inquiry.

### B.      Manchin's Request Violates the PSLRA and Clear Second Circuit Authority

Recognizing that the PSLRA requires the Pension Fund's appointment, Manchin shifts strategies in his opposition. Now he requests appointment *alongside* the Pension Fund as Co-Lead

---

[1]     The Pension Fund incorporates all defined terms from its previous filings. ECF Nos. 26, 27, 35. All citations and internal quotations are omitted, and all emphasis is added, unless noted.

1

Plaintiff solely for IPO claims, notwithstanding his nominal *$143* loss.  Manchin's proposal deserves skepticism.  Evidently, after noticing that the case involves Securities Act claims arising out of both an IPO and SPO, and after realizing he could not refute the Pension Fund's appointment under the PSLRA, Manchin suddenly believes that a Lead Plaintiff must have individual standing for all potential Securities Act claims.  *See* ECF No. 34.  Yet Manchin's initial motion did not argue that his own lack of *SPO* purchases required co-leadership—nor should it have, as the distinction finds no support in the PSLRA or case law.  The Court should reject this strategic pivot.

The PSLRA's lead plaintiff sequential process and Second Circuit authority do not allow Manchin's forced co-leadership.  "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."  *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).  Rather, "because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that . . . the lead plaintiff will not have standing to sue on every claim."  *Id.* at 82.  Here, the Pension Fund has the largest financial stake in each cause of action, suffering the greatest Exchange Act loss ($469,620 to Manchin's $2,100) as well as the greatest Securities Act loss ($400,422 to Manchin's $143).  ECF No. 35 at 4-5.  Manchin's request to break out standing on the IPO and SPO claims in this case would create a completely novel distinction within the PSLRA lead plaintiff framework and finds no support in the law.

Consistent with *Hevesi*, courts in this Circuit regularly reject similar co-lead arrangements where the presumptive lead plaintiff may lack *individual* standing on certain claims.  *See, e.g.*, *May v. Barclays PLC*, 2023 WL 5950689, at *18 n.9 (S.D.N.Y. Sept. 13, 2023) (Liman, J.) (finding that "there is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim"); *In re Bear Stearns*

*Cos., Inc. Sec., Derivative, & ERISA Litig.*, 2009 WL 2168767, at \*2 (S.D.N.Y. July 16, 2009) (holding that "there is no requirement under either the [PSLRA] or the case law in this Circuit for a lead plaintiff to possess 'standing to sue on every available cause of action'").[2]

If necessary at a later stage, lead plaintiffs may "identify and include named plaintiffs who have standing to represent . . . purchasers of different categories of securities" that may be impacted. *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d. 189, 204-05 (S.D.N.Y. 2003). Should the Pension Fund's standing for IPO claims become relevant during class certification, it may remedy any standing issues by relying on named plaintiffs to mitigate any actual (nonspeculative) conflicts. *See Hevesi*, 366 F.3d at 83 ("the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class"). In fact, a lead plaintiff should be entitled to exercise "control over the litigation as a whole, including authority to name additional class plaintiffs to resolve standing concerns." *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2012 WL 1308993, at \*2 (S.D.N.Y. Apr. 16, 2012). Here, as presumptive Lead Plaintiff, the Pension Fund has already arranged for an

---

[2]    *See also In re OSI Pharms., Inc. Sec. Litig.*, 2005 WL 6171305, at \*5 (E.D.N.Y. Sept. 21, 2005) (concluding that "differences between the Exchange Act and Securities Act claims . . . do not prevent the appointment of a lead plaintiff . . . who only has standing to assert Exchange Act claims"); *Weinberg v. Atlas Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) ("The idea that there should be multiple Lead Plaintiffs with standing to sue on all possible causes of action has been rejected by the Southern District"); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (finding that any suggestion "that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action . . . has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA"). Courts around the country are in accord. *See, e.g.*, *Schneider v. Natera, Inc.*, 2022 WL 22442715, at \*4 (W.D. Tex. July 26, 2022) ("Appointing a separate lead plaintiff 'to bring every available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.'"); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*10 (N.D. Ill. Nov. 15, 2019) ("[C]ourts routinely reject petitions for appointment as co-lead plaintiffs to represent the interests of various varieties of claimants and claims, however, as inconsistent with the PSLRA's focus on appointing as lead plaintiff an entity or person capable of exercising overall control of the litigation").

institutional investor with direct IPO standing to be prepared to serve as an additional named plaintiff if necessary.  *See Parot v. Clarivate Plc*, 2022 WL 1568735, at *7 (E.D.N.Y. May 18, 2022) (crediting presumptive lead plaintiff's representation that it arranged for an institutional investor to serve as additional named plaintiff).

Manchin relies on a series of inapt cases, each of which includes more extreme circumstances warranting co-leadership.  In *Wang v. Athira Pharma, Inc.*—a non-binding, out-of-circuit decision—the court appointed co-lead plaintiffs because the movant with the indisputably greatest Exchange Act loss also "undisputedly ha[d] no Securities Act claims."  2021 WL 4726458, at *3-4 (W.D. Wash. Oct. 5, 2021).  In contrast, here, the Pension Fund indisputably has the largest loss under ***both*** the Exchange Act ***and*** Securities Act claims.  ECF No. 35 at 4.[3]

In *Gross v. AT&T Inc.*, Judge Caproni elected to appoint an institutional investor with "standing to bring both Securities Act and Exchange Act claims" as co-lead plaintiff alongside a group of unsophisticated individual investors with larger losses to "better serve[] the overall interests of the purported class."  2019 WL 7759222, at *2 n.1 (S.D.N.Y. June 24, 2019) (finding institution "more appropriate lead plaintiff given its . . . status as an institutional investor").  Those exigent circumstances are not present here given the Pension Fund's standing on all asserted claims and status as a sophisticated institutional investor.  If anything, *Gross* supports the Pension Fund's sole appointment as the sole institutional investor.

Finally, Judge Abrams's order in *In re Block, Inc. Securities Litigation* also supports the Pension Fund's position, recognizing that the "PLSRA does not require that a lead plaintiff in a consolidated securities action have standing to bring every available cause of action alleged by a

---

[3]    *See also Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at *8 (E.D.N.Y. Apr. 26, 2022) (holding *Wang* inapt and rejecting purported need for "co-lead plaintiff" for Exchange Act and Securities Act claims).

class" while holding that a standing "deficiency can be corrected by the designation" of another class member as named plaintiff. 2024 WL 639470, at *5 (S.D.N.Y. Feb. 15, 2024). There, the court appointed a co-lead plaintiff for a Securities Act claim where, unlike here, the other lead plaintiff failed to "diligently pursue[] the class' Securities claims" and such appointment was necessary to preserve the claim within the statute of limitations. *Id.* at *6.

None of those unique circumstances are present here, and Manchin's concern regarding the Securities Act IPO claims falls well short of necessitating a Co-Lead Plaintiff.

### C.    Manchin's Proposed "Co-Lead Plaintiff" Arrangement Is Unnecessary

Putting aside the PSLRA statutory framework and Second Circuit authority counseling against co-lead plaintiff appointment, Manchin's concern is, at best, an unnecessary strawman. Manchin fixates on the Pension Fund's purported lack of "standing" to pursue the IPO claims, arguing that "[o]nly Manchin" can. *See* ECF No. 34 at 3-4. This confounds individual standing with class standing. As Lead Plaintiff, the Pension Fund unequivocally has ***class standing*** to pursue all Securities Act claims on behalf of absent class members at this stage of the litigation. "[P]laintiffs who . . . purchased certain securities ha[ve] ***class standing*** to assert claims on behalf of purchasers of other related securities where the allegedly fraudulent conduct was a 'nearly identical misrepresentation . . . common to every . . . registration statement.'" *Irving Firemen's Relief and Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *5 (S.D.N.Y. Mar. 19, 2015) (quoting *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 162 (2d Cir. 2012)).

In this case, the IPO, SPO, and Exchange Act claims are all predicated on the same theory of misconduct—namely that the Company engaged in a scheme to submit false Medicare claims for reimbursement from the Centers for Medicare and Medicaid Services ("CMS")—hence all its statements concealing this scheme were actionably false and misleading. The misrepresentations in the IPO offering documents directly mirror those in the SPO documents. *See New Orleans*

Complaint ¶¶ 55-61, 72-74, 100-102.  Meanwhile, the Exchange Act allegations contain nearly identical misrepresentations common to both sets of offering documents.  *See New Orleans* Complaint ¶¶ 55-75, 100-103; *Manchin* Complaint ¶¶ 35-60.  Manchin has not even argued— much less offered required "proof," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)—that any conflicts exist between the various claims alleged sufficient to necessitate separate representation.  Nor could he prove it.  And because the Pension Fund purchased shares directly on the SPO (unlike Manchin), there can be no doubt that it will vigorously prosecute the Securities Act claims through the same theory of misconduct underlying the pending Exchange Act claims.[4]

The Second Circuit's decision in *NECA* is instructive.  There, the Second Circuit held that plaintiffs who purchased certain securities had standing to assert claims on behalf of purchasers of other related securities where the misconduct underlying the claims alleged "nearly identical misrepresentation[s]." *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 162 (2d Cir. 2012).  The fact that the misrepresentations may have appeared in **different** offering documents for **different** offerings of **different** securities made no difference where those distinctions "ha[d] no effect on a given purchaser's assertion that the representation was misleading." *Id.* at 162-63.  Accordingly, the Second Circuit held that "claims brought by a purchaser . . . from one offering would raise a 'set of concerns' nearly identical to that of a purchaser from another offering." *Id.* at 163.  Here, given that all claims turn on virtually identical

---

[4]     *See Eshe Fund v. Fifth Third Bancorp*, 2008 WL 11322108, at *7 (S.D. Ohio Dec. 16, 2008) (holding that "it will not necessarily harm the plaintiffs who have Securities Act claims to have a lead plaintiff with only Exchange Act claims. In that situation, the lead plaintiffs will attempt to present evidence well beyond the lower level of proof required of the Securities Act claims.").  This is particularly true where, as here, there are no conflicts between the Securities Act and Exchange Act claims requiring separate representation. *See Church v. Glencore PLC*, 2018 WL 6567704, at *3 (D.N.J. Dec. 12, 2018) (rejecting co-lead plaintiff proposal where movant "did not raise this [conflict] issue initially").

materially false and misleading statements regarding concealed CMS reimbursement practices, the Pension Fund indisputably has standing, and proper incentive, to bring claims at this stage of the litigation regardless of whether it purchased on the IPO or not.  *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 181 (D. Conn. 2019) (holding that where "claims brought under the Exchange Act, for which [lead plaintiff] indisputably has standing, are based on the same set of misrepresentations and omissions as the Securities Act . . . [lead plaintiff] had the class standing to assert the Securities Act" claims).

As such, Manchin's submission is defectively incomplete in an important respect: it treats all standing equally, failing to distinguish between Article III standing, statutory standing and class standing.  Exactly as the claimant in *NECA*, the Pension Fund "has Article III standing to sue defendants in its own right because it plausibly alleged . . . '(1) an injury in fact (2) fairly traceable to defendants' actions that is (3) redressable by the requested relief.'" *NECA*, 693 F.3d at 158; *accord In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1109 (9th Cir. 2013) (holding aftermarket purchaser "allege[d] Article III standing" to sue under Section 11 of the Securities Act, "since false or misleading statements in the prospectus supplement would likely affect the price of" all shares, so its "failure to plead the traceability of their shares means they lack *statutory* standing under § 11 . . . not the absence of subject matter jurisdiction").  (emphasis in original).  And, just as the claimant in *NECA*, the Pension Fund "also has statutory standing in its own right" under the Securities Act, having purchased directly on the SPO at issue.  *NECA*, 693 F.3d at 158.  The only question is whether the Pension Fund, again exactly as the claimant in *NECA*, "has 'class standing'—that is, standing to assert claims *on behalf of* purchasers of Certificates from other Offerings, or from different tranches of the same Offering." *Id.*  (emphasis in original).  That key issue turns solely on whether the two sets of claims "raise such a 'fundamentally different set of concerns.'" *Id.* at 164 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 264 (2003)).  Manchin has not

proven his IPO claim raises a single "fundamentally different" concern than the Pension Fund's SPO and Exchange Act claims, in effect conceding the fundamental similarity between all asserted claims here and proving his appointment (or anyone else's) is unnecessary.

Manchin's secondary concern regarding the adequacy of representation on the IPO claims (*see* ECF No. 34 at 4) is equally misplaced. Because the allegations for the IPO *and* SPO claims rest on fundamentally similar misrepresentations (as discussed above), it strains credulity to suggest that the SPO (or Exchange Act for that matter) claims would be dismissed while the IPO claims survive. If anything, the SPO and Exchange Act claims have the greater likelihood of success given the temporal proximity to the news of PACS' misconduct.[5] Moreover, as discussed *supra*, Section B, it is well settled law in this Circuit that "[i]f certain class claims cannot be advanced because of standing or class-certification issues, this deficiency can be corrected by the designation of other members of the purposed class as named plaintiffs or class representatives." *Fishbury, Ltd. v. Connectics Corp.*, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006).[6] Should the need arise, the Pension Fund has already arranged to have an institutional investor that purchased directly on the IPO, for the $21/share IPO price, and suffered losses therewith be included as an additional named plaintiff if necessary. Notably, Manchin did not purchase directly

---

[5]    *See In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 480 (S.D.N.Y. 2018) ("Particularly in light of the close temporal proximity between [defendant's] public statements and the alleged board presentation of contradictory information, the Complaint has raised a cogent and compelling inference that the alleged misstatement was reckless, as opposed to the product of newly learned information or a mere misunderstanding.").

[6]    *See also Fifth Third*, 2008 WL 11322108, at *7 (appointing movant without standing to pursue Securities Act claims, as "a lead plaintiff does not require standing to sue on each individual claim" and that "if a sincere problem of representation is present at the class certification stage, a representative may be appointed at that time"); *In re OSI Pharms., Inc. Sec. Litig.*, 2005 WL 6171305, at *6 (E.D.N.Y. Sept. 21, 2005) ("Any concerns with respect to [the movant's] capability to represent the Securities Act plaintiffs are mitigated by [its] obligation, as Lead Plaintiff, to designate appropriate named Plaintiffs to assist in advancing the Securities Act claims.").

on the IPO itself, and did not pay the $21 IPO price,[7] making him a comparatively poor representative for this claim.  The putative Class would be hamstrung by Manchin's appointment as co-lead plaintiff, particularly where, if the need arose, it could get a much better one.

Manchin's remaining contention that IPO class members will be "shortchanged" at settlement because the Fund has "no financial interest in the IPO claims" (ECF No. 34 at 4-5) makes no sense.  *First*, the Pension Fund would vigorously prosecute all available claims against all culpable parties as Lead Plaintiff to maximize recovery on behalf of the entire Class, and Manchin has offered zero evidence to the contrary.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (finding the lead plaintiff "once designated by the Court" as a fiduciary for all absent class members).

*Second*, individual incentives to maximize recovery at the settlement table for one claim at the expense of another have never been the basis for lead plaintiff appointment under the PSLRA, and in fact run counter to the lead plaintiff's obligation to "adequately protect the interests" of the *entire class*.  *See Fifth Third*, 2008 WL 11322108, at *7 ("[E]ven though the calculation of damages is different under the Securities Act and the Exchange Act, the determination of lead plaintiff under the PSLRA is not the correct time to consider these differences.").  And given Manchin's *de minimis* loss, serious questions remain as to whether he would even be properly incentivized to vigorously prosecute and settle the IPO claims in the best interests of the Class.[8]  Keeping in mind that the Pension Fund has $400,422 in Securities Act

---

[7]    Manchin paid $23.03/share for his 280 shares, 10% above the IPO price.  ECF No. 1 at 49.

[8]    *See Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *8 n.10 (S.D.N.Y. June 12, 2020) (rejecting "co-lead plaintiff" request, noting *inter alia* the movant's "small financial interest of $5,044 weighs heavily against giving [movant] a co-leading role in this case"); *Guo v. Tyson Foods, Inc.*, 2022 WL 5041798, at *6 (E.D.N.Y. Sept. 30, 2022) (lead plaintiff applicant's $323.20 "nominal losses . . . failed to persuade this Court that they have sufficient interest in the litigation to 'vigorously' pursue the class claims and adequately represent the interests of class members").

losses based on mostly identical misstatements as Manchin's $143 in Securities Act loss, there is no question who has the greater incentive to most vigorously pursue the Securities Act claims. An order appointing Manchin co-lead plaintiff in these circumstances would be the first of its kind.

*Finally*, by the Class definition in both complaints filed in this Action (including Manchin's), all IPO class members ***are also*** Exchange Act class members. *See New Orleans* Complaint ¶ 2; *Manchin* Complaint ¶ 1. Insofar as the IPO Offering Documents artificially inflated PACS stock by containing false and misleading statements and omissions, this creates simultaneous liability under the Exchange Act as well as the Securities Act; therefore, the Pension Fund is fully incentivized to prosecute and prove this theory of liability, even if simply to prove its own Exchange Act claims. In any event, the statutory formula for damages under the Securities Act is capped, and it may well come to pass that damages under the Exchange Act far exceed damages under the Securities Act. *Compare* 15 U.S.C. § 77k(e) (capping damages per share under the Securities Act at the price at which the security was offered to the public) *with* 15 U.S.C. § 78u-4(e)(1) (utilizing "the purchase or sale price paid or received" for calculation of damages under the Exchange Act). Manchin has indeed conceded that IPO misstatements created far more Exchange Act than Securities Act damages, given his $143 Securities Act loss compared to $2,100 Exchange Act loss. *See* ECF No. 22-2.

Manchin's speculative concerns are unfounded and his request for Co-Lead unnecessary.

## CONCLUSION

For the reasons discussed above and in prior briefs, the Pension Fund respectfully requests the Court grant its Motion and deny the competing motion.

10

DATED: February 3, 2025

Respectfully submitted,

*/s/ Francis P. McConville*
**LABATON KELLER SUCHAROW LLP**
Francis P. McConville
Jeffrey A. Dubbin
Connor C. Boehme
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
jdubbin@labaton.com
cboehme@labaton.com

*Counsel for Proposed Lead Plaintiff*
*1199SEIU and Proposed Lead Counsel for*
*the Class*

11