```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/11/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHRISTOPHER MANCHIN, *individually and on behalf of all others similarly situated*,

                              Plaintiff,

                              -v-

PACS GROUP, INC., JASON MURRAY, DERICK APT, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO. LLC, STEPHENS INC., KEYBANC CAPITAL MARKETS INC., OPPENHEIMER & CO. INC., and REGIONS SECURITIES LLC,

                              Defendants.
-----------------------------------------------------------------X

24-cv-8636 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

      Before the Court are competing motions from Christopher Manchin ("Manchin") and 199SEIU Health Care Employees Pension Fund (the "Pension Fund"), each seeking appointment as lead plaintiff in a class action securities case against PACS Group, Inc. ("PACS Group") and certain other defendants. *Manchin v. PACS Group, Inc.*, No. 24-cv-8636 (S.D.N.Y) ("*Manchin*"), Dkt. Nos. 20, 26.[1] Each movant also requests that its respective retained counsel be appointed lead counsel for the class. Dkt. Nos. 20, 26. The case alleges violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Dkt. No. 1 ("*Manchin* Compl."). As explained below, the Pension Fund is the party with the largest financial interest that also satisfies all other requirements for appointment as lead plaintiff under

---

[1] Unless otherwise specified, references to filed documents refer to materials filed on the *Manchin* docket.

the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Court therefore appoints the Pension Fund as lead plaintiff and appoints its counsel, Labaton Keller Sucharow LLP, as class counsel.

## BACKGROUND

Defendant PACS Group is a Delaware corporation that, through its subsidiaries, operates senior care facilities, skilled nursing facilities, and assisted living facilities in the United States. *Manchin* Compl. ¶¶ 2, 16. PACS Group's common stock trades on the New York Stock Exchange. *Id.* ¶ 16.

In April 2024, PACS Group filed with the Securities and Exchange Commission (the "SEC") a registration statement in connection with PACS Group's April 11, 2024 initial public offering (the "IPO"). *Id.* ¶¶ 1–3, 35–37. In September 2024, PACS Group filed a registration statement with the SEC in connection with PACS Group's September 6, 2024 secondary public offering (the "SPO"). *New Orleans Emps.' Ret. Sys. v. PACS Group, Inc.*, No. 24-cv-8882 (S.D.N.Y.) ("*New Orleans*"), Dkt. No. 1 ("*New Orleans* Compl.") ¶¶ 10, 72.

On November 4, 2024, Hindenburg Research published a report stating that PACS Group had abused a COVID-era waiver in a scheme that involved submitting false Medicare claims, billing unnecessary materials and therapies to Medicare, and falsifying documentation including licensing documents and timesheets. *Manchin* Compl. ¶¶ 4, 61. PACS Group's share price fell substantially following publication of the report. *Id.* ¶¶ 5, 62.

On November 6, 2024, before the market opened, PACS Group announced that it would delay the release of its third-quarter financial results and disclosed that it had received civil investigative demands from the federal government regarding its reimbursement and referral

2

practices. *Id.* ¶¶ 6, 63. PACS Group's share price fell even further following that announcement. *Id.* ¶¶ 7, 64.

## PROCEDURAL HISTORY

On November 13, 2024, Manchin filed suit against PACS Group, certain of its officers and directors, and certain of its underwriters. *See generally id.* On November 21, 2024, the New Orleans Employees' Retirement System filed suit against PACS Group, certain of its officers and directors, and certain of its underwriters. *See generally New Orleans* Compl.[2] Both complaints alleged that the defendants made materially false and/or misleading statements in the IPO and SPO registration statements as well as in other statements, and failed to disclose material adverse facts about PACS Group's business, operations, and prospects. *Manchin* Compl. ¶¶ 9, 35–60; *New Orleans* Compl. ¶¶ 54–75. Both complaints identify the putative class period as April 11, 2024 through November 5, 2024, inclusive. *Manchin* Compl. ¶ 1; *New Orleans* Compl. ¶ 2.

On November 13, 2024, pursuant to the PLSRA's requirements for prosecuting a securities class action, notice was published on Business Wire advising prospective class members of the pendency of the *Manchin* action, the alleged claims, the class definition, the class period, and the sixty-day deadline by which any applicant should seek appointment as lead plaintiff. Dkt. No. 22-1; Dkt. No. 28-3; *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii). On November 21, 2024, notice was published on Business Wire advising prospective class members of the pendency of the *New Orleans* action, the alleged claims, the class definition, the class period, and the sixty-day deadline by which any applicant should seek appointment as lead plaintiff. Dkt. No. 28-4.

---

[2] The complaints name generally the same defendants, but each complaint names some individual defendants or underwriters that are not named in the other. *Compare Manchin* Compl. *with New Orleans* Compl.

On January 7, 2025, the Court consolidated the *Manchin* and *New Orleans* actions and ordered that all subsequent filings were to occur on the *Manchin* docket. *Id.* Dkt. No. 16.[3]

On January 13, 2025, Manchin, the Pension Fund, and Yongfen Min each moved for appointment as lead plaintiff. Dkt. Nos. 20, 23, 26. On January 16, 2025, Yongfen Min filed a notice of non-opposition stating that he "does not oppose the competing motions for appointment as lead plaintiff [or] approval of selection of counsel." Dkt. No. 33 at 2. The Court accordingly evaluates only the competing lead plaintiff applications submitted by Manchin and the Pension Fund.

## LEGAL STANDARDS

The PSLRA establishes the framework courts use to select a lead plaintiff in class actions brought under the federal securities laws. First, it requires any prospective lead plaintiff to file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa); *id.* § 78u–4(a)(3)(A)(i). Next, the PSLRA lays out standards for choosing one lead plaintiff from among the candidates who file motions. The PSLRA provides that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice [of the complaint within sixty days of the publication of this notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [("FRCP")].

---

[3] The Court now additionally orders that the *New Orleans* docket be closed to avoid confusion.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  Once the Court identifies a presumptive lead plaintiff, this presumption:

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u–4(a)(3)(B)(iii)(II).  "If the Court finds that the plaintiff with the largest financial interest in the class action is otherwise ineligible for appointment as lead plaintiff, the Court applies the criteria of the PSLRA to the plaintiff with the second-highest financial interest." *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *2 (S.D.N.Y. June 12, 2020).  The investigation continues in that fashion until the Court identifies a suitable lead plaintiff.  *See, e.g., Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 n.7 (S.D.N.Y. 2008).

For purposes of choosing a lead plaintiff under the PSLRA, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23 [of the FRCP], and courts need only consider the typicality and adequacy requirements." *Aude v. Kobe Steel, Ltd.*, 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018).  Movants can demonstrate typicality by showing that their claims "arise from the same conduct from which the other class members' claims and injuries arise." *In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002).  Movants can demonstrate adequacy if they "(1) [have] no conflict of interest with the other members of the class, (2) [have] sufficient interest in the outcome of the case, and (3) [have] selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Aude*, 2018 WL 1634872, at *4.  "The Court's determination of adequacy and typicality for purposes of appointing a lead plaintiff is not preclusive of a later challenge at the class

5

certification stage with respect to those factors." *Cohen*, 2020 WL 3127808, at *2 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015)).

Finally, the PSLRA provides that, "[e]xcept as the court may otherwise permit, . . . a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u–4(a)(3)(B)(vi).

## DISCUSSION

### I.    Lead Plaintiff

Both movants filed motions for appointment as lead plaintiff on January 13, 2025—within the sixty-day window for filing that followed the November 13, 2024 notice. Their applications are thus timely. *See Chauhan v. Intercept Pharms.*, 2021 WL 235890, at *4 (S.D.N.Y. Jan. 25, 2021).

The PSLRA establishes a presumption in favor of the lead plaintiff applicant with "the largest financial interest in the relief sought by the class." 5 U.S.C. § 78u–4(a)(3)(B)(iii)(I); *see Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (noting that when calculating the largest financial interests, courts place the most emphasis on the approximate loss suffered by the movant); *accord Woburn Ret. Sys. v. Salix Pharms. Ltd.*, 2015 WL 1311073, at *4 (S.D.N.Y. Mar. 23, 2015) ("The most important factor is financial loss.").

Calculating both movants' losses on a last-in, first-out ("LIFO") basis, the Pension Fund suffered a loss of $469,620, while Manchin suffered a loss of $2,100. Dkt. Nos. 22-2, 28-2.[4] The

---

[4] "While there is no prescribed method for calculating approximate loss, courts in the Southern District have a strong preference for the 'last-in, first-out' methodology." *May v. Barclays PLC*, 2023 WL 5950689, at *7 (S.D.N.Y. Sept. 13, 2023). No movant argues that the Court should use a formula other than LIFO or that use of any other formula would lead to a different conclusion as to which movant has the largest financial interest.

6

Pension Fund is thus presumed to be a more adequate lead plaintiff so long as it satisfies the requirements of typicality and adequacy.

The Pension Fund makes a prima facie showing of typicality and adequacy under Federal Rule of Civil Procedure 23. The Pension Fund claims that it "purchased or otherwise acquired PACS securities in reliance on Defendants' false and misleading statements, and/or pursuant or traceable to the offering documents issued by Defendants in connection with [PACS Group's] Class Period public offerings." Dkt. No. 27 at 8–9; Dkt. No. 35 at 6. Thus, the Pension Fund's "injury is of the same kind, and arises out of the same facts, as that of other class members." *Cohen*, 2020 WL 3127808, at *6. At this stage, the Pension Fund's large loss also supports a prima facie case of adequacy pursuant to Federal Rule of Civil Procedure 23. *See id.*; *see Lipetz v. Wachovia Corp.*, 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (Sullivan, J.) (observing that a party having "a substantial financial stake in the litigation . . . leads the Court to believe that as lead plaintiff, [the party] would prosecute the claim vigorously"). The Pension Fund has retained counsel highly experienced in securities class actions, and there is no indication that the Pension Fund has interests that are antagonistic to other class members. *See Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 210 (E.D.N.Y. 2019); *Aude*, 2018 WL 1634872, at *4.

Manchin argues that the Pension Fund should not be appointed as the sole lead plaintiff because the Pension Fund lacks standing to bring claims related to the April 2024 IPO. Dkt. No. 34 at 3–4; Dkt. No. 37 at 1–2. He argues that the Court should instead appoint Manchin and the Pension Fund as co-lead plaintiffs. Dkt. No. 34 at 4–5; Dkt. No. 37 at 1–4. Manchin notes that "the class asserts three fundamental claims: (1) Exchange Act claims on behalf of persons that purchased shares between April 11, 2024 and November 5, 2024; (2) Securities Act claims on behalf of persons that purchased shares pursuant and/or traceable to the April 2024 IPO; and

7

(3) Securities Act claims on behalf of persons that purchased shares pursuant and/or traceable to the September 2024 [SPO]." Dkt. No. 34 at 2–3. According to Manchin, the Pension Fund "lacks standing to allege the IPO claims because it purchased all its shares in or after the September 6, 2024 SPO." *Id.* at 3; *see also id.* ("The modern practice of electronic delivery and clearing of securities trades, in which all deposited shares of the same issue are held together in fungible bulk, makes it virtually impossible to trace shares to a registration statement once additional unregistered shares have entered the market." (quoting *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004), *rev'd on other grounds*, 471 F.3d 24 (2d Cir. 2006)). Because "a plaintiff seeking to represent a class must be a member of the class he purports to represent . . . it is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class—that is, a named plaintiff must have purchased shares traceable to the challenged offering." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) (Lynch, J.).

Manchin's argument is without merit. "[T]here is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 438 (S.D.N.Y. 2008) (Sullivan, J.); *accord May*, 2023 WL 5950689, at *18 n.9. As Judge Lynch has recognized:

> [N]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case. Indeed, the imposition of any such requirement would be at odds with the purposes of the statute, since in the case of large alleged frauds involving issuers of many classes of securities, the consequence would be either the appointment of a large number of lead plaintiffs (undermining the goal of a cohesive leadership and management group) or the premature breakdown of the action into an unmanageable number of separate cases brought by different lead plaintiffs on behalf of each potential subclass of securities holders.

*Glob. Crossing*, 313 F. Supp. 2d at 204–05; *see also Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action[;] [r]ather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("The only other possibility—that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action—has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA.").

The Second Circuit has further acknowledged that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi*, 366 F.3d at 83 (citing *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 380–81 (S.D.N.Y. 2000)). "Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." *Glob. Crossing*, 313 F. Supp. 2d at 205. The Pension Fund may thus construct a complaint that names a plaintiff who purchased IPO shares, even if that named plaintiff is not also appointed co-lead plaintiff. *See id.* (noting that a lead plaintiff could discharge its responsibility "[b]y naming additional plaintiffs who, as purchasers of different categories of securities, have standing to bring claims on behalf of the various potential subclasses of securities purchasers").

On reply, Manchin appears to largely abandon his argument that the Pension Fund cannot be appointed lead plaintiff due to lack of standing, and instead argues that he should be appointed

9

co-lead plaintiff to represent the IPO claims because "the Fund should not be granted the authority to select the plaintiff representative of the IPO claims by adding an additional plaintiff at a later date." Dkt. No. 37 at 2–4. However, the Second Circuit has recognized that "the main purpose of having a lead plaintiff" is "to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi*, 366 F.3d at 82 n.13; *accord In re Bank of Am. Corp. Sec., Deriv., & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2012 WL 1308993, at *2 (S.D.N.Y. Apr. 16, 2012) ("[T]he PSLRA vests lead plaintiffs with control over the litigation as a whole, including authority to name additional class plaintiffs to resolve standing concerns."). The appointment of a group of unrelated persons to act as lead plaintiffs is inconsistent with that purpose, would result in a diffusion of responsibility, and would invariably increase costs for the class. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." (citation omitted)); *Hevesi*, 366 F.3d at 82 n.13 (similar). "[R]ather than better serving the interests of individual class members, the appointment of a co-Lead Plaintiff would only serve to fracture the leadership and drive up attorney[']s fees." *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 189–90 (S.D.N.Y. 2006). "Under the PSLRA, '[t]here is no presumption . . . that co-lead plaintiffs are better than one lead plaintiff.'" *Jones v. Pfizer, Inc*, 2010 WL 11890394, at *3 (S.D.N.Y. Dec. 9, 2010) (quoting *Fuwei Films*, 247 F.R.D. at 439).

      Manchin advances four additional arguments in support of his application to be appointed co-lead plaintiff. Dkt. No. 37 at 2–3. None is persuasive.

      First, he argues that the Pension Fund does not identify any plaintiff (other than Manchin) with standing to allege the IPO claims. *Id.* at 2. However, even if Manchin were the only IPO purchaser of whom the Pension Fund was aware, that argument would not support his approval as

co-lead plaintiff so much as suggest that the Pension Fund should make efforts to find a person with standing who could act as a named plaintiff or else include Manchin as a named plaintiff. Regardless, the Pension Fund states that it has "already arranged for an institutional investor with direct IPO standing to be prepared to serve as an additional named plaintiff if necessary." Dkt. No. 38 at 3–4; *see Parot v. Clarivate Plc*, 2022 WL 1568735, at *7 (E.D.N.Y. May 18, 2022).

Second, Manchin states that "there can be no assurance that an additional plaintiff hand-picked by the Fund or the Fund's counsel will adequately advance the interests of IPO claimants when in conflict with the Fund's SPO claims—for example, with respect to the distribution of damages or a plan of allocation in any settlement." Dkt. No. 37 at 2–3. But Manchin identifies no actual conflict or antagonism between the Pension Fund's Exchange Act claims stemming from the SPO and other class-members' Exchange Act claims stemming from the IPO. *See In re J. Ezra Merkin & BDO Sideman Sec. Litig.*, 2010 WL 11597482, at *2 (S.D.N.Y. Jan. 28, 2010) ("Vague notions of potential conflicts . . . are not adequate for requiring separate lead plaintiffs or counsel."). Furthermore, if at the end of the day this case is settled, and if the settlement funds are unfairly distributed, then Manchin or other IPO claimants may object and, if the objection is well-founded, the Court can exercise its powers pursuant to Federal Rule of Civil Procedure 23(e) to reject such proposed settlement. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023) ("Prior to approving a settlement, the court must take into account whether the 'proposal treats class members equitably relative to each other.'" (quoting Fed. R. Civ. P. 23(e)(2)(D)); *see, e.g.*, *Glauser*, 236 F.R.D. at 189 (holding that "[i]n this case, there is no factual basis to conclude that the interests of the individual and institutional shareholders will be antagonistic" but "[i]f it later turns out that their interests are antagonistic, the Court will revisit the issue"). Manchin offers the

Court no reason to anticipate that such an event will occur or to believe that the Pension Fund will act as an unfair fiduciary.

Third, Manchin argues that "if the non-IPO claims are dismissed, this action will be left without a lead plaintiff." Dkt. No. 37 at 3 (citing *Wang v. Athira Pharma, Inc.*, 2021 WL 4726458, at *3 (W.D. Wash. Oct. 5, 2021)). But that is a potentiality that may be addressed if and after such dismissal actually occurs. Nothing in this Court's present order will preclude it from appointing a new lead plaintiff should the Pension Fund cease to have standing. *See Fuwei Films*, 247 F.R.D. at 439 ("If at some point in this litigation, the lead plaintiff ceases to have any valid claims against the defendants . . . [unsuccessful lead plaintiff movants] may renew their motions." (citing *Levitt v. Rogers*, 257 Fed.Appx. 450 (2d Cir. 2007) (summary order)); *see also Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at *8 (E.D.N.Y. Apr. 26, 2022) (rejecting movant's argument that separate lead plaintiffs should be appointed for Securities Act and Exchange Act claims); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 486 (S.D.N.Y. 2013) (holding that a movant "does not have a right to become co-lead plaintiff simply by asserting claims not asserted by the lead plaintiff").

Fourth, Manchin states that "the very fact that the Fund is resisting the co-appointment of the original plaintiff in this action with standing to allege IPO claims indicates the Fund wants to exclude a representative with the capacity to equally advance the IPO claims." Dkt. No. 37 at 3. Manchin offers no basis for this proposed inference, and the inference is undermined by the fact that a far less nefarious motive may be ascribed to the Pension Fund. Adding co-lead plaintiffs may cause real disadvantages to the class. Additional lead plaintiffs—particularly additional lead counsel, as Manchin proposes adding here, Dkt. No. 34 at 6—increases attorney's fees and other litigation expenses borne by the class. *See Jones*, 2010 WL 11890394, at *3; *Glauser*, 236 F.R.D.

at 189.  Furthermore, co-lead plaintiffs will suffer from more diffuse decision-making authority and face more difficulty directing a team of law firms.  *See Razorfish*, 143 F. Supp. 2d at 309 (rejecting proposed co-lead plaintiff appointment because "there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity"); *Hom v. Vale, S.A.*, 2016 WL 880201, at *7 (S.D.N.Y. Mar. 7, 2016) (rejecting proposed co-lead plaintiff appointment because such appointment would "fracture the leadership" (citation omitted)).

Manchin does not demonstrate either that the Pension Fund is an inadequate lead plaintiff or that appointing Manchin co-lead plaintiff would serve the interests of the class.  The Court therefore appoints solely the Pension Fund as the lead plaintiff.

**II.    Class Counsel**

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see, e.g.*, *In re Ply Gem Holdings, Inc., Sec. Litig.*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (same).

The Pension Fund has selected Labaton Keller Sucharow LLP, a firm highly experienced in securities class action litigation.  Dkt. No. 28-5.  The record provides a basis to believe that firm will adequately represent the class.  The Court appoints Labaton Keller Sucharow LLP as class counsel.

## CONCLUSION

The Court GRANTS the motion of 1199SEIU Health Care Employees Pension Fund. The Court appoints 1199SEIU Health Care Employees Pension Fund as lead plaintiff and appoints its counsel, Labaton Keller Sucharow LLP, as class counsel.

The Court DENIES the motions of Christopher Manchin and Yongfen Min.

The Clerk of Court is respectfully directed to close Dkt. Nos. 20, 23, and 26.

In light of the Court's prior motion consolidating the cases, Dkt. No. 16, the Clerk of Court is also respectfully directed to close *New Orleans Emps.' Ret. Sys. v. PACS Group, Inc.*, 24-cv-08882 (S.D.N.Y.) for further filings.

SO ORDERED.

Dated: February 11, 2025
      New York, New York

LEWIS J. LIMAN
United States District Judge