**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER MANCHIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PACS GROUP, INC., JASON MURRAY, DERICK APT, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO. LLC, STEPHENS INC., KEYBANC CAPITAL MARKETS INC., OPPENHEIMER & CO. INC., and REGIONS SECURITIES LLC, <br><br> Defendants. | Civil Action No. 1:24-cv-08636 (LJL) <br><br> **ORAL ARGUMENT REQUESTED** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PACS DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF UTAH**</u>

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................1

LEGAL STANDARD.............................................................................................................3

ARGUMENT........................................................................................................................4

A.    This Action Could Have Been Brought in the District of Utah...............................4

B.    The Balancing Factors Weigh in Favor of Transfer ...............................................5

1.    The Second, Third, Fourth, and Fifth Factors Tilt Strongly
      Towards Transfer to the District Where PACS is Headquartered ...............6

2.    Plaintiff's Choice of Forum Is Afforded Minimal Weight in
      Securities Fraud Class Actions ...................................................................9

3.    The Remaining Factors Are Neutral at Worst ...........................................11

CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Actmedia, Inc. v. Ferrante*,
623 F. Supp. 42 (S.D.N.Y. 1985) ...................................................................................... 10

*Ahrens v. Cti Biopharma Corp.*,
No. 16-CV-1044 (PAE), 2016 WL 2932170 (S.D.N.Y. May 19, 2016) .............................. 5, 9

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp*,
457 F. Supp. 2d 474 (S.D.N.Y. 2006).................................................................................. 4

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
No. 14-CV-3644 (VSB), 2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) .......................... 8, 11

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
No. CV 17-4412 (SJF) (AKT), 2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) ...................... 8

*Colida v. Panasonic Corp. of N. Am.*,
No. 05-CV-5791 (JSR), 2005 WL 3046298 (S.D.N.Y. Nov. 10, 2005)................................ 12

*Cont'l Cas. Co. v. Hopeman Bros., Inc.*,
No. 17-CV-00688 (ALC), 2018 WL 1581987 (S.D.N.Y. Mar. 27, 2018) ............................ 12

*Doshi v. Gen. Cable Corp.*,
No. 13-CV-7409 (RA), 2014 WL 12774226 (S.D.N.Y. Feb. 5, 2014) ........................ 6, 9, 11

*Encarnacion v. Goord*,
No. 12-CV-6180 (CJS), 2018 WL 3491287 (W.D.N.Y. July 18, 2018) ............................... 10

*Erickson v. Corinthian Colleges, Inc.*,
No. 13-CV-4308 (PKC), 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ........................ 6, 9, 10

*Garity v. Tetraphase Pharms. Inc.*,
No. 18-CV-06797 (ALC), 2019 WL 2314691 (S.D.N.Y. May 30, 2019)....................... passim

*In re Anadarko Petroleum Corp.*,
No. 10-CV-05894 (PGG), 2012 WL 12894796 (S.D.N.Y. Mar. 19, 2012) .......................... 10

*In re Collins & Aikman Corp. Sec. Litig.*,
438 F. Supp. 2d 392 (S.D.N.Y. 2006)................................................................................... 5

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,
No. 08-CV-3516 (SWK), 2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008)...................... 7, 9, 11

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
   418 F. Supp. 2d 164 (E.D.N.Y. 2006) ........................................................................ 1, 7

*In re Nematron Corp. Sec. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998)........................................................................ 6, 11, 13

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010)........................................................................................ 4, 6

*Purcell Graham, Inc. v. Nat'l Bank of Detroit*,
   No. 93-CV-8786 (MBM), 1994 WL 584550 (S.D.N.Y. Oct. 24, 1994) .................................. 8

*Ravenwoods Inv. Co., L.P. v. Bishop Cap. Corp.*,
   No. 04-CV-9266 (KMK), 2005 WL 236440 (S.D.N.Y. Feb. 1, 2005).................................... 5

*Royal & Sunalliance v. British Airways*,
   167 F. Supp. 2d 573 (S.D.N.Y. 2001)................................................................................ 12

*SBAV LP v. Porter Bancorp, Inc.*,
   No. 13-CIV-372 (PAE), 2013 WL 3467030 (S.D.N.Y. July 10, 2013) .................................... 1

*Steck v. Santander Consumer USA Holdings Inc.*,
   No. 14-CV-6942 (JPO), 2015 WL 3767445 (S.D.N.Y. June 17, 2015) ................................ 7, 9

*Tracinda Corp. v. Daimlerchrysler AG*,
   197 F. Supp. 2d 86 (D. Del. 2002)........................................................................................ 4

*Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*,
   No. 22-CV-2538 (LJL), 2022 WL 17067984 (S.D.N.Y. Nov. 17, 2022)........................ 3, 4, 5

## STATUTES

15 U.S.C. § 78aa ......................................................................................................................... 4

28 U.S.C. § 1404(a) ............................................................................................................. 3, 10, 13

Defendants PACS Group, Inc., Jason Murray, Derick Apt, Mark Hancock, Michelle Lewis, Jacqueline Millard, Taylor Leavitt, and Evelyn Dilsaver (collectively, "PACS Defendants"; Murray, Apt, Hancock, Lewis, Millard, Leavitt, and Dilsaver, collectively the "Individual Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Transfer to the District of Utah.

## INTRODUCTION

This securities class action case involves claims against a company headquartered in Utah and its officers and directors, the majority of whom reside in Utah, about statements made in Utah. But rather than file this case in Utah—the presumptive venue for securities claims—the original shareholder plaintiffs filed it in this Court seeking to avoid what is apparently perceived as a less favorable venue. While it is true that this Court is highly experienced with securities class action cases given the location of the principal U.S. stock exchanges and, as relevant here, several of the underwriter banks, when the exchange-traded company seeks to transfer venue "to the district where the issuer is headquartered," it is "routine" for courts in this district to grant such motions. *SBAV LP v. Porter Bancorp, Inc.*, No. 13-CIV-372 (PAE), 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006) (collecting cases)). The same should occur here. In the interests of justice and for the convenience of the parties, the PACS Defendants request that the Court transfer this case to the U.S. District Court for the District of Utah.

## BACKGROUND

PACS Group is a holding company with operating subsidiaries (collectively, "PACS") that operate hundreds of skilled nursing and senior living facilities in seventeen different states, mostly in the western United States. Declaration of Derick Apt ("Apt Decl.") ¶¶ 2-3. PACS is headquartered in Farmington, Utah. *Id.* ¶ 3. It does not maintain corporate offices in any other

state, including New York. *Id.* ¶ 5. Further, the majority of the Individual Defendants—all of whom are named solely in their capacity as corporate officers and directors of PACS—live in Utah. *Id.* ¶¶ 6, 10-12. All of PACS's officers and high-level employees work out of its headquarters in Utah. *Id.* ¶¶ 5, 9, 12. PACS does not maintain any facilities, operations, or employees in New York. *Id.* ¶¶ 3-5.

PACS conducted an initial public offering ("IPO") of securities, via a prospectus and registration statement, on April 11, 2024. Since the IPO, its Class A common stock has traded continuously on the New York Stock Exchange. On September 6, 2024, PACS conducted a secondary public offering ("SPO"). The offerings were underwritten by separate but overlapping consortia of banks that included Citigroup Global Markets Inc. ("Citigroup"), J.P. Morgan Securities LLC ("J.P. Morgan"), Truist Securities, Inc. ("Truist"), RBC Capital Markets, LLC ("RBC"), Goldman Sachs & Co., LLC ("Goldman"), Stephens Inc. ("Stephens"), Keybanc Capital Markets Inc. ("Keybanc"), Oppenheimer & Co. Inc. ("Oppenheimer"), Regions Securities LLC ("Regions"), and UBS Securities, LLC ("UBS") (collectively, the "Underwriter Defendants"). Six of the Underwriter Defendants are headquartered in New York: Citigroup, Goldman, J.P. Morgan, Oppenheimer, RBC, and UBS. As to the others, Truist and Regions are headquartered in Atlanta, Georgia; Keybanc in Cleveland, Ohio; and Stephens in Little Rock, Arkansas.[1] The Underwriter Defendants join in the instant motion.

In November 2024, two ostensible PACS shareholders filed putative class actions in the Southern District of New York. The first complaint was filed on November 13, 2024. *See* Dkt. 1 (the "Manchin Complaint"). A second putative class action complaint raising substantially similar

---

[1] Main office locations for the Underwriter Defendants were retrieved from either advisorinfo.sec.gov or brokercheck.finra.org.

2

allegations was filed on November 21, 2024.  Case No. 1:24-cv-08882 (Dkt. 1, the "NOERS Complaint").  Both complaints purported to bring claims against PACS, the Individual Defendants, and the Underwriter Defendants pursuant to the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  The allegations in both complaints are based on allegedly false or misleading statements and omissions that PACS and its officers made about the operation of its skilled nursing facilities in Securities and Exchange Commission ("SEC") filings, including registration statements filed in connection with the IPO and SPO; in company press releases; and in earnings calls.  *See* Manchin Complaint ¶¶ 46–60; NOERS Complaint ¶¶ 54–75.

The cases were consolidated (Dkt. 16), and on February 11, 2025, this Court appointed 1199SEIU Health Care Employees Pension Fund as Lead Plaintiff ("Plaintiff") and Labaton Keller Sucharow LLP as class counsel for Plaintiff (Dkt. 39).[2]

## LEGAL STANDARD

Section 1404(a) of Title 28 allows district courts, in their discretion, to transfer a civil action to any other district court where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).

The decision to transfer consists of a two-step analysis.  "First, [the Court] determines whether the action could have been brought in the proposed transferee court"—here, the District of Utah. *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, No. 22-CV-2538 (LJL), 2022 WL 17067984, at *5 (S.D.N.Y. Nov. 17, 2022) (quotation marks and citations omitted). Second, "the Court balances the private and public interests to determine whether transfer is

---

[2] Plaintiff appears to be domiciled in New York. *See* "Health Care Employees Pension Fund," https://www.1199seiubenefits.org/hce-pension/ (last accessed March 28, 2025) (listing address as New York, NY).

3

warranted for the convenience of parties and witnesses, and in the interest of justice." *Id.* (quotation marks and citations omitted). In making that determination, the Court considers the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quotation marks and citation omitted). The Court must also consider "(8) the forum's familiarity with the governing law and (9) trial efficiency and the interests of justice based on the totality of the circumstances." *Wistron Neweb*, 2022 WL 17067984, at *5 (alterations omitted) (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)).

These factors weigh in favor of transferring venue to the District of Utah.

## ARGUMENT

### A.      This Action Could Have Been Brought in the District of Utah

There is no question that this case could have been brought in the District of Utah. Section 27 of the Exchange Act provides that federal securities law claims "may be brought in the district wherein any act or transaction constituting the violation occurred" *or* "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.[3] PACS is headquartered in Utah, its leadership works from there, and most of the Individual Defendants reside there. In addition, each of the underlying "acts"—that is, the allegedly false or misleading statements—originated in PACS's headquarters in Utah, including those contained in the

---

[3] "Where, as here, claims are brought under both [the Securities Act and the Exchange Act], courts have applied the jurisdiction provisions of the Exchange Act, because they are less restrictive." *Tracinda Corp. v. Daimlerchrysler AG*, 197 F. Supp. 2d 86, 92–93 (D. Del. 2002).

registration statements for the offerings underwritten by the Underwriter Defendants. Apt Decl. ¶¶ 5, 7-9; *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) ("[I]t is well-settled that misrepresentations are deemed to 'occur' in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received.") (cleaned up). Cases are routinely transferred in similar situations. *See, e.g.*, *Ravenwoods Inv. Co., L.P. v. Bishop Cap. Corp.*, No. 04-CV-9266 (KMK), 2005 WL 236440, at *3 (S.D.N.Y. Feb. 1, 2005) (district that was "home to two of the individual Defendants and the lone corporate Defendant, and where the allegedly false and misleading proxy statements originated" was proper venue); *Ahrens v. Cti Biopharma Corp.*, No. 16-CV-1044 (PAE), 2016 WL 2932170, at *3 (S.D.N.Y. May 19, 2016) ("Because the Complaint's core claim is that these statements and filings were actionably false or misleading, [defendant's] issuances of them from Seattle were acts that support venue in that District."). Thus, venue is proper in Utah.

### B.       The Balancing Factors Weigh in Favor of Transfer

At the second step, the balancing factors also point squarely towards the conclusion that "transfer is warranted for the convenience of parties and witnesses, and in the interest of justice." *Wistron Neweb*, 2022 WL 17067984, at *4 (quotation marks and citation omitted). Here, each factor either weighs in favor of transfer or is, at worst, neutral. Critically, Utah would be the far more convenient forum for the most essential party and non-party witnesses, nearly all of whom are located there, while the case's connections to New York have little bearing on the central issues in the case. Indeed, no single factor weighs firmly in favor of keeping this action in this district. For the reasons that follow, convenience and justice warrant moving this action to the "center of gravity" in this case: Utah. *Collins & Aikman*, 438 F. Supp. 2d at 397.

**1.    The Second, Third, Fourth, and Fifth Factors Tilt Strongly Towards Transfer to the District Where PACS is Headquartered**

The second, third, fourth, and fifth factors—the convenience of witnesses, the location of relevant documents and relative ease of access to sources of proof, the convenience of parties, and the locus of operative facts—weigh strongly in favor of transferring this matter to the District of Utah. *N.Y. Marine*, 599 F.3d at 112.

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Doshi v. Gen. Cable Corp.*, No. 13-CV-7409 (RA), 2014 WL 12774226, at *3 (S.D.N.Y. Feb. 5, 2014) (citation omitted). Because "trials in securities class actions focus almost entirely on the defendants' conduct[,] . . . transfer of a securities-fraud action to the district where the issuer is headquartered is routine as a practical matter." *Id.* at *3 (cleaned up); *Erickson v. Corinthian Colleges, Inc.*, No. 13-CV-4308 (PKC), 2013 WL 5493162, at *3 (S.D.N.Y. Oct. 1, 2013) ("It is well known that trials in securities class actions focus almost entirely on the defendants' conduct." (quoting *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998)). Thus, in cases like this one, courts presume the "key witnesses" are "'officers and employees of [the corporate issuer] who participated in drafting or distributing [the challenged] statements.'" *Garity v. Tetraphase Pharms. Inc.*, No. 18-CV-06797 (ALC), 2019 WL 2314691, at *3 (S.D.N.Y. May 30, 2019).

Defendant PACS is headquartered in Farmington, Utah. Apt Decl. ¶ 4. The Individual Defendants are officers or directors of PACS, and they are likely to be among the most critical witnesses. Most of those Individual Defendants are domiciled in Utah; not one is domiciled in New York. *Id.* ¶¶ 6, 10-12. Further, 230 PACS employees, including all of the employees who had a role in drafting and distributing the statements challenged in the complaint, all resided in

6

Utah at the time the statements were made, and all worked at PACS's corporate headquarters in Utah. *Id.* ¶¶ 5, 9. In other words, many if not most of the key witnesses reside and work in Utah.[4]

The convenience of the Underwriter Defendants should not control this Court's analysis. Plaintiffs do not allege that Underwriter Defendants made any challenged statements, and underwriter involvement here relates only to registration statements. Courts give little weight to the domiciles of underwriter defendants in cases like this, where the basis for claims against underwriters is limited to statements made in the *issuer's* registration statement. *See Garity*, 2019 WL 2314691, at *3 ("[I]n cases involving alleged misrepresentations in a registration statement, the Underwriter Defendants' potential due diligence defense will arise only if liability is established, diminishing the weight that could be accorded to the convenience of Underwriter Defendants' employees." (cleaned up). Moreover, while certain Underwriter Defendants are headquartered in New York, others are headquartered around the country—in Atlanta, Cleveland, and Little Rock. And where, as here, Underwriter Defendants join the motion seeking transfer of venue, courts find that this factor should not control. *See Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 (JPO), 2015 WL 3767445, at *4 (S.D.N.Y. June 17, 2015) ("Courts in this district have held that parties can waive the issue of their own convenience in which case it is given no consideration in the analysis."). Thus, Underwriter Defendants' convenience should not inform this Court's analysis.

Next, "[s]ecurities fraud litigation almost invariably involves production and review of a vast number of documents, almost all of which will be in the defendants' possession." *Hanger Orthopedic Grp.*, 418 F. Supp. 2d at 170 (citation omitted). While it is true that electronic storage

---

[4] The convenience of witnesses who "reside in neither the transferor nor the transferee district . . . does not factor into the Court's analysis." *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, No. 08-CV-3516 (SWK), 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008).

and communication has rendered this factor less important, nevertheless, "courts have found this factor to weigh in favor of transfer to the corporate issuer's home forum in securities class actions." *Garity*, 2019 WL 2314691, at *3.

As for the locus of operative facts, as above, "Plaintiff's claims are based on Defendants' alleged misrepresentations and omissions, all of which . . . originated in [Utah]." *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, No. CV 17-4412 (SJF) (AKT), 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019). Again, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *Purcell Graham, Inc. v. Nat'l Bank of Detroit*, No. 93-CV-8786 (MBM), 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994). Both complaints challenge as allegedly false or misleading statements made in PACS press releases and earnings calls, in SEC 10-Q forms, and in forms filed with the SEC in connection with PACS's IPO and SPO. Manchin Complaint ¶¶ 46–60; NOERS Complaint ¶¶ 54–75. All of these statements were issued from company headquarters in Farmington, Utah. *See* Apt Decl. ¶¶ 5, 7-9; Exs. 1-8 (selected documents challenged in complaints reflecting Utah issuance); *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, No. 14-CV-3644 (VSB), 2015 WL 12659925, at *6 (S.D.N.Y. Apr. 30, 2015) (transferring putative securities class action to the district where the challenged "press releases and public filings" were "drafted and approved at and disseminated from").

While the PACS Defendants are alleged to have made false or misleading statements about the operations of skilled nursing and senior living facilities dispersed across seventeen states, *none* of those facilities is in New York. Apt Decl. ¶¶ 2-3. Indeed, the connections between the underlying allegations and New York are *de minimis*. Plaintiff may point to the fact that PACS

8

trades on the New York Stock Exchange or that New York-based securities analysts could be witnesses, but courts in this district do not consider either of these facts persuasive:

> Although Plaintiffs correctly point out that [defendant's] stock is traded on the New York Stock Exchange ("NYSE"), which is located in the SDNY, and many of the analysts who follow [defendant's] stock are located in New York City, these contacts don't do it. If they did, the SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street.

*Erickson*, 2013 WL 5493162, at *7 (citation omitted); *see also Steck*, 2015 WL 3767445, at *5 ("But even assuming that New York-based securities analysts may be called to testify (though any relevant evidence could, as above, likely be taken through depositions), this has not been given much weight in other decisions in this district."). The locus of operative facts thus weighs heavily in favor of transfer. *See Erickson*, 2013 WL 5493162, at *2 ("There are minimal connections with the Southern District of New York in this case, as the alleged false statements and misrepresentations disseminated from [the defendant company's] California headquarters.").

Finally, given that the Individual Defendants include the executive officers of the corporation, "[a] New York trial may disrupt [PACS's] business operations," and so the "potential inconvenience" to the PACS Defendants from litigating thousands of miles and two time zones away "is more than 'minimal." *Garity*, 2019 WL 2314691, at *4.

### 2.    Plaintiff's Choice of Forum Is Afforded Minimal Weight in Securities Fraud Class Actions

Courts afford little deference to the plaintiff's choice of forum "in a stockholder class action, where members of the class are dispersed throughout the nation." *Doshi*, 2014 WL 12774226, at *4; *Glob. Cash Access*, 2008 WL 4344531, at *7 ("[Plaintiff's] choice of forum is entitled to substantially less deference in the class-action context."); *Ahrens*, 2016 WL 2932170, at *4 (same). Even where, as here, Plaintiff is a resident of New York, "the residence of a class representative is often a mere happenstance, which may be discounted by a court when weighing

transfer factors." *Garity*, 2019 WL 2314691, at *3 (quotation marks and citation omitted).[5] Notably, this Plaintiff did not even choose to bring the suit in this forum—it entered a pre-existing action in the lead plaintiff process. *See Actmedia, Inc. v. Ferrante*, 623 F. Supp. 42, 44 (S.D.N.Y. 1985) ("[S]ince plaintiff did not choose this forum but had its case removed to this court, the rationale behind those cases placing emphasis on plaintiff's choice becomes inapposite."); *Encarnacion v. Goord*, No. 12-CV-6180 (CJS), 2018 WL 3491287, at *5 (W.D.N.Y. July 18, 2018) (subsequent history omitted) (where "plaintiff did not choose the Western District venue, but rather filed his original complaint in the Southern District" and the case was *sua sponte* moved to a different venue, the factor relating to plaintiff's choice of forum "d[id] not influence the Court's analysis"); *accord In re Anadarko Petroleum Corp.*, No. 10-CV-05894 (PGG), 2012 WL 12894796, at *4 (S.D.N.Y. Mar. 19, 2012) (lead plaintiff in a securities class action could bring a motion to transfer under § 1404(a), notwithstanding rule that party who chose the forum is usually precluded from seeking transfer, because lead plaintiff "did not file a complaint in this district, and thus did not choose this forum").

"[T]he weight accorded to a plaintiff's choice of forum diminishes where the operative facts lack a meaningful connection to the chosen forum." *Erickson*, 2013 WL 5493162 at *2. As explained above, the most pivotal "operative facts" here are the statements made by PACS that plaintiffs allege were false and misleading, all of which originated from PACS's corporate headquarters in Utah. Accordingly, the original plaintiffs' choice to bring this action in New York should be afforded little weight.

---

[5] Likewise, "[t]he convenience of counsel is not an appropriate factor to consider on a motion to transfer." *Garity*, 2019 WL 2314691, at *5.

### 3.   The Remaining Factors Are Neutral at Worst

The remaining factors tip towards transfer on balance or are, at worst, neutral.

***Availability of Process.***   The availability of process "factor does not weigh in favor of transfer in the absence of any indication that nonparty witnesses will be called to testify but will be unwilling to do so." *City of Pontiac Gen. Emps. Ret. Sys.*, 2015 WL 12659925, at *6; *Doshi*, 2014 WL 12774226, at *4 ("Because neither side has identified witnesses who are unwilling to testify, the availability of process to compel witness attendance does not weigh in favor of either side."). Here, the key witnesses reside in Utah, there are no witnesses of whom the PACS Defendants are aware "who would be unwilling to attend the trial of this action absent the compulsion of a subpoena," and regardless, any ancillary "witness unwilling to appear can be adequately represented through deposition testimony." *Nematron*, 30 F. Supp. 2d at 405. This factor is neutral.

***Relative Means of the Parties.***   Plaintiff publicly describes itself as a "large, sophisticated institutional investor." Dkt. 27 (Mot. for App't as Lead Plaintiff) at 3, 10. Indeed, its website indicates it has "more than $16.8 billion in assets." "Who We Are," https://www.1199seiubenefits.org/about-1199seiu-funds/who-we-are/ (last accessed March 28, 2025). There is therefore no significant difference between the relative means of Plaintiff and the PACS Defendants. This factor, too, is neutral.

***Forum's Familiarity with Governing Law.***   It goes without saying that the courts in this district handle more securities cases than the District of Utah, and this Court in particular is highly qualified to resolve this matter. However, as courts in this district have recognized, "federal courts throughout the nation are equally capable of applying federal securities laws." *Glob. Cash Access*, 2008 WL 4344531, at *7. Therefore, this factor is also neutral.

***Trial Efficiency and the Interests of Justice.*** The factor pertaining to trial efficiency and the interests of justice "relates primarily to issues of judicial economy." *Colida v. Panasonic Corp. of N. Am.*, No. 05-CV-5791 (JSR), 2005 WL 3046298, at *4 (S.D.N.Y. Nov. 10, 2005) (quotations marks and citation omitted); *see id.* ("[D]ocket conditions or calendar congestion of both the transferee and transferor districts is a proper factor for the Court to consider and is afforded some weight." (quotation marks and citation omitted)). This factor favors transfer to the District of Utah, where the docket contains approximately 500 pending cases per judgeship, 440 weighted filings per judgeship, and the median time to trial is approximately 30 months—compared to 593 pending cases and 449 weighted filings per judgeship, and 39.3 months in this District. "U.S. District Courts – Federal Management Statistics – Comparison Within Circuit," U.S. Courts, available at https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distcomparison1231.2024.pdf (last accessed March 28, 2025). Indeed, "it has been noted that the Southern District of New York is one of the busiest courts in the nation." *Cont'l Cas. Co. v. Hopeman Bros., Inc.*, No. 17-CV-00688 (ALC), 2018 WL 1581987, at *13 (S.D.N.Y. Mar. 27, 2018) (quoting *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 579 (S.D.N.Y. 2001)). While both districts are more than capable of handling their dockets efficiently and proceed to trial relatively expeditiously, considerations of efficiency weigh slightly in favor of transfer, or are at least neutral. *See Colida*, 2005 WL 3046298, at *4 ("Accordingly, retention of a case such as this, with only minimal connections to New York, would not serve the interest of justice, and would only 'delay adjudication of other cases brought by parties who are compelled to sue here.'" (citation omitted)).

## CONCLUSION

In sum, with no factor weighing against transfer, and many factors weighing in favor of transfer, Utah "bears a much more intimate connection to the events underpinning this case than does New York, which has no greater connection than any other district in which any potential

class member resides." *Nematron*, 30 F. Supp. 2d at 404. Transfer to the District of Utah is therefore appropriate pursuant to 28 U.S.C. § 1404(a). The PACS Defendants respectfully request that this Court transfer this case to the District of Utah.

Dated: March 28, 2025                    Respectfully submitted,


                                         **LATHAM & WATKINS LLP**

                                          */s/ Colleen C. Smith*
                                         Colleen C. Smith (*pro hac vice*)
                                         12670 High Bluff Drive
                                         San Diego, California 92130
                                         Telephone: (858) 523-5400
                                         colleen.smith@lw.com

                                         Thomas J. Giblin
                                         1271 Avenue of the Americas
                                         New York, NY 10020
                                         Telephone: (212) 906-1200
                                         Facsimile: (212) 751-4864
                                         thomas.giblin@lw.com

                                         Michele D. Johnson (*pro hac vice*)
                                         650 Town Center Drive, 20th Floor
                                         Costa Mesa, CA 92626
                                         Telephone: (714) 540-1235
                                         michele.johnson@lw.com

                                         Morgan E. Whitworth (*pro hac vice*)
                                         505 Montgomery Street, Suite 2000
                                         San Francisco, CA 94111
                                         Telephone: (415) 391-0600
                                         morgan.whitworth@lw.com

                                         *Attorneys for Defendants PACS Group,*
                                         *Inc., Jason Murray, Derick Apt, Mark*
                                         *Hancock, Michelle Lewis, Jacqueline*
                                         *Millard, Taylor Leavitt, and Evelyn*
                                         *Dilsaver*

13

**CERTIFICATE OF COMPLIANCE**

I, Colleen C. Smith, an attorney duly admitted *pro hac vice* to practice before this Court,

hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern

and Eastern Districts of New York and Rule 2(I) of the Honorable Lewis J. Liman's Individual

Practices in Civil Cases, that the foregoing Memorandum of Law was prepared using Microsoft

Word, contains 3,868 words, and does not exceed 25 pages. In making this calculation, I have

relied on the word and page counts of the word-processing program used to prepare the document.

Dated: March 28, 2025
San Diego, California

/s/ *Colleen C. Smith*
Colleen C. Smith

14