# EXHIBIT C



# 3-Day Stay and Benefit-Period Waivers for Medicare Part A SNF PPS

*Highlighted text represents updates between January 27, 2023, and April 4, 2023*

## Contents

Fast Facts ....................................................................................................................1

Background...................................................................................................................2

Medicare Part A SNF Skilled Coverage Requirements ...............................................3

CMS 3-Day Stay and Spell of Illness Waivers Guidance in COVID-19 Billing FAQs...................4

CMS 3-Day Stay Waiver Claims Processing Guidance.................................................5

AHCA COVID-19 3-Day Stay and Benefit Period Waiver FAQs...................................9

## Fast Facts

- These waivers will continue to apply until May 11, 2023.
- For residents admitted under the 3-day stay or obtaining a benefit period waiver on or before May 11 2023, CMS has instructed providers to continue using the DR condition code for any claims during that 100-day benefit period for services furnished May 12 and beyond, until discharged from Part A, or their 100-day benefits have been exhausted.
- CMS provides additional NF/SNF-specific guidance regarding the end of the PHE here.
- AHCA offers a 45-minute webinar describing these waivers (recorded 11/18/2020).
- During the COVID-19 public health emergency (PHE), a SNF has the option to apply the 3-Day Prior Hospitalization waiver in order to furnish Medicare Part A services without a qualifying hospital stay (QHS), or to obtain an additional 100-day benefit period without a 60-day break in spell of illness (Benefit-Period waiver) if certain conditions are met.
- A COVID-19 diagnosis is not required for a beneficiary to qualify for either the QHS waiver or the Benefit-Period waiver.
- The benefit period waiver authorizes a one-time renewal of benefits for an additional 100 days of Part A SNF coverage without first having to start a new benefit period (i.e. no 60-day break in spell-of-illness applies). The one-time benefit period waiver can be applied:
  - Without interrupting a current stay (i.e. PHE prevents completion of care at day 100 and care continues day 101 and beyond).
  - After an interruption of skilled level of care following expiration of initial 100-day benefit period but not completion of 60-day break in spell-of-illness (same or different SNF).
  - This waiver only applies for beneficiaries who have been delayed or prevented by the emergency itself from commencing or completing the process of ending their current benefit period and renewing their SNF benefits that would have occurred under normal circumstances.
    - The original 100-day benefit period must be exhausted before a benefit period waiver can be applied.
  - The entire 100-day extra benefit period is available.



- This can include breaks of <60 days (i.e. discharge and readmission or drop below a skilled level of care then resumption at a later date).
- The waiver can only be used once per beneficiary.
  - If the PHE ends, the remaining extra benefit period days remain available to complete the current spell-of-illness.
- If a beneficiary's plan of care was disrupted by the COVID-19 PHE in a manner that prevented or delayed the completion of the plan by the end of the beneficiary's 100-day SNF benefit period, a SNF <u>has the option</u> to apply a Benefit-Period waiver which will qualify the beneficiary for up to one additional 100-day benefit period without interruption in order to complete the plan of care.
- The presence of a confirmed diagnosis of COVID-19 in a beneficiary, confirmed or suspected beneficiary exposure to someone with COVID-19, the presence of symptoms that are suspected to be COVID-19, or any symptoms associated with receiving a COVID-19 vaccine <u>does not</u> automatically qualify a beneficiary for SNF Part A coverage.
  - That's because SNF coverage isn't based on particular diagnoses or medical conditions, but rather on whether the beneficiary meets the statutorily-prescribed SNF level of care definition of needing and receiving skilled services on a daily basis which, as a practical matter, can only be provided in a SNF on an inpatient basis.
- Claim coding and documentation requirements <u>are different</u> for the 3-Day Prior Hospitalization waiver and the Benefit-Period waiver.
- SNF Providers <u>must fully document</u> in medical records that care meets the waiver requirements as these claims may be subject to post payment review.
- MACs must temporarily suspend and <u>manually process</u> benefit period waiver claims but are instructed to make every effort to ensure timely payment before the end of the 14-day payment floor. Providers should allow sufficient time before inquiring about these claims.

## Background

In certain circumstances, the Secretary of the Department of Health and Human Services (HHS) using section 1135 of the Social Security Act (SSA) can temporarily modify or waive certain Medicare, Medicaid, CHIP, or HIPAA requirements, called 1135 waivers. There are different kinds of 1135 waivers, including Medicare blanket waivers. When there's an emergency, sections 1135 or 1812(f) of the SSA allow the Secretary to issue blanket waivers to help beneficiaries access care. When a blanket waiver is issued, providers don't have to apply for an individual 1135 waiver for the duration of the PHE.

In response to the declaration of the COVID-19 national public health emergency (PHE), effective March 1, 2020, the Centers for Medicare and Medicaid Services (CMS) has issued a blanket waiver of the 3-Day Prior Hospitalization requirement to qualify for SNF care under Medicare Part A as follows:

> ***3- Day Prior Hospitalization:*** *Using the waiver authority under Section 1812(f) of the Social Security Act, CMS is temporarily waiving the requirement for a 3-day prior hospitalization for coverage of a skilled nursing facility (SNF) stay. This waiver provides temporary emergency coverage of SNF services without a qualifying hospital stay. In addition, for certain beneficiaries who exhausted their SNF benefits, it authorizes*

*renewed SNF coverage without first having to start and complete a 60-day "wellness period" (that is, the 60-day period of non-inpatient status that is normally required in order to end the current benefit period and renew SNF benefits). This waiver will apply only for those beneficiaries who have been delayed or prevented by the emergency itself from commencing or completing the 60-day "wellness period" that would have occurred under normal circumstances.*

By contrast, as explained in MLN Matters article SE20011, if the patient has a continued skilled care need (such as a feeding tube) that is unrelated to the COVID-19 emergency, then the beneficiary cannot renew his or her SNF benefits under the Section 1812(f) waiver, as it is this continued skilled care in the SNF rather than the emergency that is preventing the beneficiary from beginning the 60-day "wellness period."

This means that a Medicare beneficiary can receive Medicare Part A SNF coverage without a qualifying 3-day hospital inpatient stay if they develop a need for a SNF level of care and could be admitted directly from the community, a doctor's office, an emergency room, from a hospital observation stay, or from a hospital inpatient stay that is less than 3-days. It also means that a SNF long-term resident could qualify for SNF benefits, or "skill-in-place" without leaving the SNF. Additionally, under the benefit period waiver, this means that a beneficiary could qualify for an additional 100-day benefit period without starting or completing a 60-day break in spell-of-illness, but only if all other Medicare SNF coverage requirements are met.

**These waivers have been renewed by the Secretary of Health and Human Services multiple times, most recently on February 9, 2023. Therefore, these waivers will continue to apply until May 11, 2023, unless the Secretary signs another extension of the PHE, which is not expected.**

This fact sheet will highlight those requirements in the context of the COVID-19 3-Day prior hospitalization and benefit period waivers.

## Medicare Part A SNF Skilled Coverage Requirements

With the exception of the waived 3-day qualifying hospital stay requirement, all other SNF coverage requirements continue to apply. These requirements are described in the Medicare Benefit Policy Manual, Chapter 8, Section 30. Below is a summary in the context of the COVID-19 PHE waivers:

During the PHE, SNF Medicare Part A care is covered if all of the following four factors (with exception of hospital stay) are met:

- The patient requires skilled nursing services or skilled rehabilitation services, i.e., services that must be performed by or under the supervision of professional or technical personnel; are ordered by a physician and the services are rendered for a condition for which the patient received inpatient hospital services or for a condition that arose while receiving care in a SNF for a condition for which he received inpatient hospital services; *[AHCA Interpretation Note: Or – if during the PHE - for a condition that arose elsewhere].*
- The patient requires these skilled services on a daily basis; and

- As a practical matter, considering economy and efficiency, the daily skilled services can be provided only on an inpatient basis in a SNF.
- The services delivered are reasonable and necessary for the treatment of a patient's illness or injury, i.e., are consistent with the nature and severity of the individual's illness or injury, the individual's particular medical needs, and accepted standards of medical practice. The services must also be reasonable in terms of duration and quantity.

If any one of these four factors is not met (excluding 3-Day stay requirement), a stay in a SNF, even though it might include the delivery of some skilled services, is not covered. For example, payment for a SNF level of care could not be made if a patient needs an intermittent rather than daily skilled service.

## CMS 3-Day Stay and Spell of Illness Waivers Guidance in COVID-19 Billing FAQs

Section Y of the extensive CMS *COVID-19 Frequently Asked Questions (FAQs) on Medicare Fee-for-Service (FFS) Billing* resource contains the following specific guidance related to applying the SNF QHS or Benefit-Period waivers. The below Q&As are excerpted from the Q&A document as of January 26, 2023 (most recent CMS FAQ update August 16, 2022).

**1. Question:** Does the section 1812(f) waiver for the 3-day qualifying hospital stay apply only to those beneficiaries who are actually diagnosed with COVID-19, or does the waiver apply to all SNF-level beneficiaries under Medicare Part A?

**Answer:** The qualifying hospital stay waiver applies to all SNF-level beneficiaries under Medicare Part A, regardless of whether the care the beneficiary requires has a direct relationship to COVID-19. See [this page].
New: 4/10/20

**2. Question:** Can a Medicare Part A beneficiary who has exhausted his or her SNF benefits, but continues to need and receive skilled care in the SNF (e.g., for a qualifying feeding tube), renew SNF benefits under the section 1812(f) waiver regardless of whether or not the SNF or hospital was affected by the COVID-19 emergency?

**Answer:** If the patient has a continued skilled care need (such as a feeding tube) that is unrelated to the COVID-19 emergency, then the beneficiary cannot renew his or her SNF benefits under the section 1812(f) waiver as it is this continued skilled care in the SNF rather than the emergency that is preventing the beneficiary from beginning the 60 day "wellness period." [See this page].
New: 4/10/20

**4. Question:** Does waiving (pursuant to section 1812(f) of the Act) the requirement for a 3-day prior hospitalization for coverage of a SNF stay apply to swing-bed services furnished by CAHs and rural (non-CAH) swing-bed hospitals?

**Answer:** Yes, under the section 1812(f) waiver, CAHs and rural (non-CAH) swing-bed hospitals may furnish extended care services to a SNF-level patient even if the patient has not had a 3-day prior hospitalization in that or any other facility. The Social Security Act permits certain CAHs and rural (non-CAH) swing-bed hospitals to enter into a swing-bed agreement, under which the hospital can use its beds, as needed, to provide either acute or SNF care. Rural (non-CAH) hospitals are paid under the SNF PPS for their SNF-level swing-bed services. By contrast, CAH swing-bed services are not subject to the SNF PPS. Instead, Medicare pays CAHs based on 101 percent of reasonable cost for their swing-bed services. For additional information on swing-beds, see [this page].
New: 4/10/20

**6. Question:** Can a positive COVID-19 test qualify a beneficiary (including a beneficiary who is currently receiving non-skilled services in a nursing home?) for a covered Medicare Part A skilled nursing facility (SNF) stay?

**Answer:** A COVID-19 diagnosis would not in and of itself automatically serve to qualify a beneficiary for coverage under the Medicare Part A SNF benefit. That's because SNF coverage isn't based on particular diagnoses or medical conditions, but rather on whether the beneficiary meets the statutorily-prescribed SNF level of care definition of needing and receiving skilled services on a daily basis which, as a practical matter, can only be provided in a SNF on an inpatient basis.
New: 6/19/20

**7. Question:** If a new benefit period was granted pursuant to the section 1812(f) waiver, and the PHE ends in the middle of that new benefit period, would the beneficiary be entitled to the full 100 days of renewed SNF benefits, or would that entitlement end on the day the PHE ends?

**Answer:** If a beneficiary has qualified for the special one-time renewal of SNF benefits under the benefit period aspect of the section 1812(f) waiver while the section 1812(f) waiver is in effect, that reserve of 100 additional SNF benefit days would remain available for the beneficiary to draw upon even after the waiver itself has expired.
New: 10/20/20

## CMS 3-Day Stay Waiver Claims Processing Guidance

CMS developed and has been updating an extensive MLN Matters Article Number SE20011 titled Medicare Fee-For-Service (FFS) Response to the Public Health Emergency on the Coronavirus (COVID-19) that contains the following detailed claims processing guidance related to the SNF QHS and Benefit-Period waivers. The below details are excerpted from the September 8, 2021 update.

**SNF Qualifying Hospital Stay (QHS) and Benefit Period Waivers - Provider Information**

CMS recognizes that disruptions arising from a PHE can affect coverage under the SNF benefit:
- Prevent a beneficiary from having the 3-day inpatient QHS

- Disrupt the process of ending the beneficiary's current benefit period and renewing their benefits.

The emergency SNF QHS and benefit period requirements under Section 1812(f) of the Social Security Act help restore SNF coverage that beneficiaries affected by the emergency would be entitled to under normal circumstances.  By contrast, these emergency measures don't waive or change any other existing requirements for SNF coverage under Part A such as the SNF level of care criteria, which remain in effect under the emergency.

Using the authority under Section 1812(f) of the Social Security Act, CMS doesn't require a 3-day prior hospitalization for coverage of a SNF stay, which provides temporary emergency coverage of SNF services (including SNF-level swing-bed services in rural hospitals and Critical Access Hospitals (CAHs)) without a QHS, for those people who experience dislocations, or are otherwise affected by COVID-19.  At the same time, we're monitoring for any SNF admissions under Section 1812(f) that don't meet the SNF level of care criteria (which, as noted above, remain in effect during the emergency), and we'll take appropriate administrative action in any instances that we find. See SNF Billing Reference for more information on SNF eligibility and coverage requirements.

Also, for certain beneficiaries who recently exhausted their SNF benefits, the waiver authorizes a one-time renewal of benefits for an additional 100 days of Part A SNF coverage without first having to start a new benefit period (this waiver will apply only for those patients who have been delayed or prevented by the emergency itself from commencing or completing the process of ending their current benefit period and renewing their SNF benefits that would have occurred under normal circumstances).

For the QHS waiver:
- All beneficiaries qualify, regardless of whether they have SNF benefit days remaining
- The patient's status of being "affected by the emergency" exists nationwide under the current PHE. (You don't need to verify individual cases.)

In contrast, for the Benefit Period Waiver:

- Patients who exhaust their SNF benefits can get a renewal of SNF benefits under the waiver *except* in one particular scenario: that is, those patients who are receiving ongoing skilled care in a SNF that is unrelated to the emergency, as discussed below. To qualify for the benefit period waiver, a patient's continued receipt of skilled care in the SNF must in some way be related to the PHE. One example would be when a patient who had been receiving daily skilled therapy, then develops COVID-19 and requires a respirator and a feeding tube. We would also note that patients who don't themselves have a COVID-19 diagnosis may nevertheless be affected by the PHE (for example, when disruptions from the PHE cause delays in obtaining treatment for another condition).
- Wouldn't apply to those patients who are receiving ongoing skilled care in the SNF that is *unrelated to the emergency* - a scenario that would have the effect of prolonging the current benefit period and precluding a benefit period renewal even under normal circumstances. For example, if the patient has a continued skilled care need (such as a feeding tube) that is unrelated to the COVID-19 emergency, then the patient can't renew his or her SNF benefits under the section 1812(f) waiver as it is this continued skilled

care in the SNF rather than the emergency that is preventing the beneficiary from beginning the 60 day "wellness period."

- In making determinations, a SNF resident's ongoing skilled care is considered to be emergency-related *unless* it is altogether unaffected by the COVID-19 emergency itself (that is, the patient is receiving the very same course of treatment as if the emergency had never occurred). This determination basically involves comparing the course of treatment that the beneficiary has actually gotten to what would have been provided *absent* the emergency. Unless the two are exactly the same, the provider would determine that the treatment has been affected by and related to the emergency.
- **Providers should use the above criteria in determining when to document on the claim that the patient meets the requirement for the waiver.**

In this situation, we would also ask those providers to work with their respective MACs to provide any documentation needed to prove that the COVID-19 emergency applies for the benefit period waiver under §1812(f) for each benefit period waiver claim. We also recognize that during the COVID-19 PHE, some SNF providers may haven't yet submitted the PPS assessments for the benefit period waiver. In these limited circumstances, providers may use the Health Insurance Prospective Payment System (HIPPS) code that was being billed when the patient reached the end of their SNF benefit period.

## Billing Instructions
The following guidance provides specific instructions for using the QHS and benefit period waivers, as well as how this affects claims processing and SNF patient assessments.

To bill for the QHS waiver, include the DR condition code.

To bill for the benefit period waiver:

- Submit a final discharge claim on day 101 with patient status 01, discharge to home
- Readmit the beneficiary to start the benefit period waiver

For ALL admissions under the benefit period waiver (within the same spell of illness):

- Complete a 5-day PPS Assessment. (The interrupted stay policy does not apply.)
- Follow all SNF Patient Driven Payment Model (PDPM) assessment rules
- Include the HIPPS code derived from the new 5-day assessment on the claim.
- The variable per diem schedule begins from Day 1

For ALL SNF benefit period waiver claims, include the following (within the same spell of illness):

- Condition code DR - identifies the claims as related to the PHE
- Condition code 57 (readmission) - this will bypass edits related to the 3-day stay being within 30 days
- COVID100 in the remarks - this identifies the claim as a benefit period waiver request

Note: Providers may utilize the additional 100 SNF benefit days at any time within the same spell of illness. Claims must contain the above coding for ALL benefit period waiver claims.

**Example:** If a benefit waiver claim was paid utilizing 70 of the additional SNF benefit days and the patient either was discharged or fell below a skilled level of care for 20 days, the patient may subsequently utilize the remaining 30 additional SNF benefit days as long as the resumption of SNF care occurs within 60 days (that is, within the same spell of illness).

If you submitted a claim for a one-time benefit period waiver that rejected for exhausted benefits, take either of the following actions:

1. If you billed the discharge and readmission correctly:

- Cancel the rejected claim to remove it from claims history. DON'T send an adjustment to the rejected claim
- Once the cancel has completed, resubmit the first claim
- If you send a claim without COVID100 in the remarks, we can't process it for an additional 100 benefit days

2. If you didn't send a bill for a discharge on the last covered day to start a new admission with the benefit period waiver days:

- Cancel the paid claim that includes the last covered coinsurance benefit day
- Once the cancel is processed, resubmit as a final bill with patient status equal to 01
- Cancel the first benefit period waiver claim that rejected for exhausted benefits. You can send this concurrently with the cancel of the paid claim
- Once the rejected claim is cancelled, send the first bill for the benefit period waiver following the same instructions as #1 above.

CAH Swing-bed providers don't have to follow 1 and 2 since they aren't paid according to the SNF PPS. They must submit separate claims for the one-time benefit period waiver claims with the DR condition code. These claims shouldn't contain both benefit period waiver days and non-benefit period waiver days.

Please note, as previously stated, ongoing skilled care in the SNF that is **unrelated** to the PHE doesn't qualify for the benefit period waiver. You must decide if the waiver applies following the criteria set forth above. If so:

- Fully document in medical records that care meets the waiver requirements; this may be subject to post payment review.
- Track benefit days used in the benefit period waiver spell and only send claims with covered days 101 - 200.
- Once the added 100 days have been exhausted, follow existing processes to continue to bill Medicare no-pay claims until you discharge the patient.
- Identify no-pay claims as relating to the benefit period waiver by using condition code DR and including "BENEFITS EXHAUST" in the remarks field. This remark is only necessary when the full extra 100 days have been exhausted.

MACs must manually process claims to pay the benefit period waiver but will make every effort to make sure of timely payment. Please allow enough time before inquiring about claims in process.

Updated 04/04/2023

**AHCA** ®
AMERICAN HEALTH CARE ASSOCIATION

**NCAL** ®
NATIONAL CENTER FOR ASSISTED LIVING

**Note:** You must abide by all other SNF billing guidelines. CAH Swing bed providers aren't subject to PPS and so aren't required to submit assessments.

## AHCA COVID-19 3-Day Stay and Benefit Period Waiver FAQs

Q.1.    Are we allowed to bill Medicare Part A for a patient who is already in a nursing home but moved to COVID floor for positive lab test and put into isolation? Billing for the total isolation.

A.1.    It depends. The COVID-19 waivers permit Medicare beneficiaries to essentially "skill-in-place" without spending 3-midnights in a hospital inpatient stay. The one caveat is that there must be a change in status that raises from a non-skilled level of care need to a skilled level of care need as defined Chapter 8, Section 30 of the Medicare Benefit Policy Manual. A COVID positive diagnosis alone does to automatically guarantee coverage, there also needs to be a skilled level of care need documented. The MDS isolation code can only be used if the patient is in a single-occupancy room.

Q.2.    **Scenario**: Resident was admitted to the SNF from the acute hospital for 100 days of Medicare Part A skilled coverage using the 3-day QHS waiver. Beneficiary becomes COVID positive with symptoms on Day 90 (October 21, 2020) of Medicare Part A stay and needs uninterrupted skilled care beyond day 100 to address new COVID-related condition. Benefit period waiver was used to continue skilled care services. In this scenario, day 101 (November 1, 2020) becomes Day 1 of a new Medicare Part A stay and so a new 5-day PPS MDS assessment ARD on 11/08/2020 was completed.

- In this case, do we need to have a new Certification/Recertification for Medicare Part A skilled coverage form completed and signed by the primary physician, using 11/01/2020 as the start of Medicare Part A stay?
- Is the use of the benefit period waiver for additional one-time 100 days of Medicare Part A correctly interpreted in this scenario?

A.2.    Regarding the first part of the question, the CMS guidance is silent. However the Agency is treating the additional 100 day benefit period waiver as a new spell-of-illness under all claim processing policies so at a minimum, the best practice would be to obtain either a new certification or a recertification effective day 101 as the prior certification would only have been effective during the first 100 covered days. See the certification/recertification guidance in the Medicare Benefit Policy Manual, Chapter 8, Sections 40 and 40.1. We highly recommend that you contact your Medicare Administrative Contractor (MAC) provide help desk to seek specific guidance regarding which type of certification documentation would be acceptable. Please document your conversation and the guidance they provide, including date, time, call tracking number, the name of the call center support staff spoken to, and a summary of the guidance in case there is a dispute later.

Regarding the second part of the question, yes, we believe it is interpreted appropriately as the need for skilled care beyond 100 days without a break in the spell-of-illness is directly related to the COVID-19 public health emergency (specifically in this case, the patient contracted COVID-19 and is receiving skilled care related to that diagnosis).  The one exception would be if the patient was not expected to discontinue the need for skilled care after the 100-day benefit period (e.g. on tube feeding).  In such cases, the preexisting condition and not the COVID-19 pandemic is the reason the person could not start a break in spell-of-illness.  In these cases, the beneficiary would not be eligible for the one-time benefit period waiver.

Q.3.    Can you provide guidance on the removal of the qualifying hospital stay? Is this exemption due to Coronavirus in general, or does the patient have to be affected (test positive) for Coronavirus for the exemption to take affect?

A.3.    A COVID-19 diagnosis is not required for a beneficiary to qualify for the QHS waiver. The one caveat is that there must be a change in status that raises from a non-skilled level of care need to a skilled level of care need as defined Chapter 8, Section 30 of the Medicare Benefit Policy Manual.

Q.4.    Does the 3-Day stay waiver apply if a SNF resident tests positive for COVID-19, is asymptomatic at this time, but they may not be exhibiting symptoms YET. We are providing a care plan and are monitoring for symptoms, especially as this resident is someone with co-morbid conditions.

A.4.    We recommend caution. Per the following Q&A #6 from Section Y of the *CMS COVID-19 Frequently Asked Questions (FAQs) on Medicare Fee-for-Service (FFS) Billing,* a CIVID-19 positive diagnosis alone does not guarantee Pat A coverage:

> **6. Question:** Can a positive COVID-19 test qualify a beneficiary (including a beneficiary who is currently receiving non-skilled services in a nursing home?) for a covered Medicare Part A skilled nursing facility (SNF) stay?
>
> **Answer:** A COVID-19 diagnosis would not in and of itself automatically serve to qualify a beneficiary for coverage under the Medicare Part A SNF benefit. That's because SNF coverage isn't based on particular diagnoses or medical conditions, but rather on whether the beneficiary meets the statutorily-prescribed SNF level of care definition of needing and receiving skilled services on a daily basis which, as a practical matter, can only be provided in a SNF on an inpatient basis.
> New: 6/19/20

AHCA additional response discussion: Because the decision on coverage is dependent on the *"SNF level of care definition of needing skilled services on a daily basis"* as CMS mentions in their FAQ response, we recommend that you review the skilled nursing coverage guidance in Chapter 8, Section 30 of the Medicare Benefit Policy Manual to determine if you feel comfortable that the resident's status has changed sufficiently enough to support that a change in plan of care is necessary to include observation and

assessment activities associated with a specific condition that can only be performed by a professional nurse is justified in the medical record.

Q.5.    Should an Interim Payment Assessment (IPA) be done for someone already in the facility for a Medicare Part A stay and then gets a positive COVID test?

A.5.    Per question 10.2 of the CMS PDPM FAQs, the response is *"The IPA is optional and will be completed when providers determine that the patient has undergone a clinical change that would require a new PPS assessment."* The AHCA interpretation is that the SNF PPS assessment policy has not been impacted by the COVID-19 public health emergency, and the decision to use an IPA assessment remains optional.

Q.6.    Is there any guidance that CMS points to relative to the copay charges for the 'Second 100 day stay" (Benefit Period waiver applied) under Medicare?

A.6.    There is no specific written guidance about this in any of the current CMS COVID-19 waiver billing guidance documents. AHCA asked this specific question and received a response from CMS that confirms that the first 20 days of the benefit period waiver (equivalent of days 101-120 if the stay was uninterrupted) would have no coinsurance and CMS would pay in full as just as they do with the first 20 days of any traditional benefit period – the remaining 80 days, if skilled, would be subject to the coinsurance amount.

Q.7.    I have a resident with 22 days left in their original Medicare benefit period, has had a 40-day break in their stay and has contracted COVID. I understand that they are eligible for the blanket waiver without three midnights (3-day stay waiver), but do I have the OPTION of starting 100-day new benefit period (Benefit Period waiver) and not exhausting their last 22 days available?

A.7.    No. The COVID-19 Benefit Period waiver would only apply after the beneficiary has exhausted their entire initial 100-day benefit period.
- In the scenario you describe, the SNF would be applying the qualifying hospital stay (QHS) waiver (to bypass the requirement of a 3-day inpatient hospital stay between days 31-60 of a break in spell-of-illness). This would be achieved by appending the DR Condition Code to the skilled days upon readmission. (see MLN Matters article SE20011, page 14).
- If the resident continues to require a skilled level of care upon the completion of the remaining 22 days of the initial benefit period, then the SNF may consider applying a benefit period waiver for up to 100 additional days if the residents care needs are related to the COVID-19 public health emergency. The detailed claim coding and MDS guidance for applying the benefit period waiver is described in SE20011, pages 14-16.

Q.8.    I would like to know if, during COVID, a facility can provide therapy services in a non-certified area of the nursing facility & still bill for the services under Part A.

A.8.    No. However, under the COVID-19 public health emergency waivers, a SNF may submit a request to their state agency requesting that beds be certified under Medicare in order to meet the care needs of residents (i.e. to reduce the risks of moving residents within a SNF for the purpose of qualifying for Medicare benefits). Once the state certifies the bed(s), then the SNF can provide and bill for Medicare Part A benefits if the resident meets the coverage criteria.

Q.9.    We submitted a claim to Medicare applying the 3-Day Stay waiver with the DR condition code (as described in SE20011), as the beneficiary was only in hospital for 2 days. Medicare is denying the claims saying that coverage/guidelines were not met. Is there something else that we are missing since the qualifying hospital stay was not met?

A.9.    If this was the only reason for the denial, there may have been a claims processing error by the MAC. AHCA notes that some providers occasionally appear to have some claims improperly denied for applying for Benefit Period waivers as well. Have you called your MAC provider help desk to ask for an explanation of the denial? If so, and if they cannot resolve the issue, please contact the AHCA help desk at covid19@ahca.org describing the situation and we will see if we can help. Please to not share any private health information (PHI) or personally identifiable information (PII) of the beneficiary.

Q.10.    CMS recently added new COVID-19 ICD-10 codes that became effective January 1, 2021. However, some of the codes for acute manifestations of COVID-19 do not map to PDPM clinical categories and instead map to "Return to Provider" which will not generate a PDPM HIPPS classification code for billing purposes. How do I code for diagnosis if the patient admitted for care related to a primary diagnosis of COVID-19 (ICD-10 code = U07.1) subsequently tests negative for COVID but still requires care for the manifestation condition?

A.10.    CMS states that when they updated the ICD-10 code mappings for the SNF PDPM clinical categories effective 1/1/2021, they added four new codes related to a diagnosis of COVID-19 to the Return to Provider (RTP) category. Specifically, code J1282, *Pneumonia due to coronavirus disease 2019 ; code Z1152, Encounter for screening for COVID-19 ; code Z20822, Contact with and (suspected) exposure to COVID-19 ; and code Z8616, Personal history of COVID-19*, were added to the code mappings. The FY 2022 and FY 2023 SNF PDPM ICD-10 Mappings file can be found here.

These RTP codes cannot be used as a primary diagnosis code for a Part A SNF patient. However, in some cases, a patient may receive a secondary diagnosis such as of pneumonia due to COVID-19 (J1282), which becomes the primary reason for their SNF stay, even after the patient subsequently tests negative for COVID-19. In these cases, in accordance with the "code first" guidance in the ICD-10-CM Official Guidelines for Coding and Reporting (FY 2021 available here, FY 2022 available here, and FY 2023 available here), as long as the patient still has COVID-associated pneumonia, code U07.1 should continue to be assigned, and U07.1 would be sequenced first. Manifestation codes such as code J1282 cannot be sequenced first.

In summary, regardless of whether the patient's most recent COVID test is positive or negative, code U07.1 should continue to be assigned as long as the patient has a current, acute manifestation of COVID, such as pneumonia.

Q.11. I submitted Benefit Waiver claims per the guidance in MLN Matters article SE20011 but received denials. Is there anything I might be entering wrong?

A.11. Possibly. The Centers for Medicare and Medicaid Services (CMS) last year provided updated clarifications to SNF Medicare Part A billing guidance when applying COVID-19 coverage waivers in MLN Matters Article SE20011. Since then, some providers have received denials that have been identified as provider data entry errors.

Specifically, when a SNF is requesting a benefit period waiver for beneficiaries that qualify for the one-time additional benefit period without a 60-day break in spell of illness, CMS instructs providers to do the following:

*For ALL SNF benefit period waiver claims, include the following (within the same spell of illness):*
- *Condition code DR - Identifies the claims as related to the PHE.*
- *Condition code 57 (readmission) - This will bypass edits related to the 3-day stay being within 30 days.*
- *COVID100 in the remarks - This identifies the claim as a benefit period waiver request.*

CMS has identified that data entry errors in the remarks field not following the above guidance may create processing problems.

AHCA Coding TIP: When entering "COVID100" in the remarks, provider billers must not insert any spaces between "COVID" and "100" and must not add any additional information in the remarks field.

Q 12. Are the benefits of the QHS Waiver renewable throughout the PHE, or is this a one-time use (up to 100 days)

A 12. AHCA has confirmed with CMS during the PHE that the QHS waiver can be used multiple times for the same beneficiary in the following situation:  The beneficiary has had a 60-day break since the last day requiring a SNF level of care.  Therefore, other than the one-time spell of illness waiver option, the QHS waiver in itself is not renewable.  However, once the beneficiary has had a 60 day or more "wellness period", then he/she would be eligible for a subsequent QHS waiver under a new benefit period.

Q 13. Resident A is received a skilled level of care at a SNF and has used 1 skilled day under the DR Waiver, waving the QHS, but on day 2, is admitted to the hospital. The resident returns from the hospital after having been out for 5 days. Can the resident resume skilled care under the previously used DR waiver for the remainder of the 100 days?

A 13. Yes – AHCA has confirmed this with CMS during the PHE.  Once the beneficiary is eligible for a SNF benefit period, they are entitled to up to 100 days of coverage.  Short

interruptions of the stay for rehospitalizations or other reasons would follow longstanding coverage policy for the initially earned eligibility.  In the example provided, it appears that the beneficiary had one day of coverage, then 5 days of hospitalization, then was readmitted for skilled care.  In this example, the PDPM interrupted stay policy would not apply for Resident B because the SNF stay was interrupted greater than 3 days and the beneficiary could be readmitted with the PDPM variable per diem rate schedule starting at day 1.  However, since the beneficiary already used one day of the benefit period qualified for via the QHS waiver, the subsequent SNF admission would have only 99 remaining benefit period days remaining.  Since both stays are under the same benefit period qualified for under the QHS waiver, the DR condition code would be used to indicate the QHS waiver use for the fist and the second admission during this single benefit period.

Q 14.   Resident B is receiving a skilled level of care at a SNF for 50 days under the DR waiver (waiving the QHS). The resident is then discharged from a skilled level of care and becomes intermediate care at the campus. >60 days later, is the resident able to resume care on the DR waiver again, if the other criteria for skilled care are met?

A. 14.   Not exactly, but the beneficiary would be eligible for a new 100-day benefit period using a separate QHS waiver.  AHCA has confirmed the following with CMS during the PHE.  First, under longstanding policy, a benefit period ends once a beneficiary has had 60 consecutive days of care that does not meet the requirements of "skilled care" – CMS sometimes refers to this as a 60-day "wellness period".  Once that 60-day period has expired, a beneficiary is again eligible for a new 100-day benefit period if he/she has a change of condition that now meets CMS coverage requirements.  Ordinarily that would require a 3-day hospital stay as well as other skilled care requirements outlined in the Medicare Benefit Policy Manual, Chapter 8, Section 30.  However, under the COVID-19 PHE blanket waivers, CMS is waiving the 3-day QHS requirement regardless of the QHS waiver was used previously.  In this example, the Resident B's initial benefit period ended after 60 covered days once there was a break in the spell of illness.  If after the 60-day break in spell of illness the beneficiary has a change in health and now requires a SNF level of skilled care as defined in the Benefit Policy Manual, the beneficiary would be eligible for a new 100-day benefit period using the 3-day QHS waiver.

Q. 15.   Resident began their Medicare coverage under a 3-Day QHS waiver on or prior to May 11, 2023 (the least day of the COVID-19 PHE) and continued care on or after May 12, 2023 until discharged for 3 or more days when the physician wanted to readmit the patient to the SNF to resume Medicare coverage without a 3-day qualifying hospital stay. Is this permitted?

A. 15.   No.  Per email clarification guidance obtained via email from CMS (see below), the beneficiary's COVID-19 3-day QHS or benefit period waiver eligibility ended once they were formally discharged from the SNF Part A coverage for 3 or more days.  Normal benefit eligibility requirements of a 3-day QHS would apply for a readmission, even though the 100 day benefit period was not exhausted prior to the previous discharge.  If readmitted following a 3 day break in SNF coverage and if a 3-day QHS was present, the beneficiary could use the remaining unused days form the 100-day benefit period.

CMS email guidance:

*As of May 12th, all SNF PPS policies, with the exception of the enforcement discretion that would continue until June 30th, are, once again, effective. As a result, all SNF stays (described in the regulations as post-hospital extended care services) must meet all of the standard criteria to qualify for Medicare coverage.*

*…under §1861(i) of the Social Security Act (the Act), the "30-day rule"—whereby a brief interruption (of no more than 30 days) in the SNF stay would allow coverage to resume upon readmission without the need for a new 3-day qualifying hospital stay (QHS)—is one that applies specifically to an individual who has been receiving "post-hospital extended care services." By contrast, under §1812(f)(1) of the Act, the services covered under the waiver are "extended care services which are not post-hospital extended care services" (emphasis added). Thus, once the waiver has expired, if such a resident temporarily leaves the SNF and does not return to the same facility within the interruption window, their subsequent return to the SNF would represent a new admission that, as discussed above, would be subject to the requirement for a QHS.*

*This is analogous to how the SNF readmission would be treated under the "30-day rule" in a non-disaster scenario where a SNF resident reverts to original, fee-for-service Medicare upon disenrolling from a Medicare Advantage (MA) plan that had been providing SNF coverage without a QHS. Under the applicable Medicare guidelines in §90.1 of the Medicare Claims Processing Manual, Chapter 6 (available online at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/clm104c06.pdf), ". . . in cases where the beneficiary disenrolls from a risk MA plan after discharge from the SNF, and then is readmitted to the SNF under the 30 day rule, all requirements for original Medicare (i.e., fee for service), including the 3-day hospital stay must be met."*