**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

CHRISTOPHER MANCHIN, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiff,

       v.

PACS GROUP, INC., JASON MURRAY, DERICK APT, MARK HANCOCK, JACQUELINE MILLARD, TAYLOR LEAVITT, CITIGROUP GLOBAL MARKETS INC., J.P. MORGAN SECURITIES LLC, TRUIST SECURITIES, INC., RBC CAPITAL MARKETS, LLC, GOLDMAN SACHS & CO. LLC, STEPHENS INC., KEYBANC CAPITAL MARKETS INC., OPPENHEIMER & CO. INC., and REGIONS SECURITIES LLC,

                    Defendants.

---

Civil Action No. 1:24-cv-08636 (LJL)

**ORAL ARGUMENT REQUESTED**

---

**REPLY IN SUPPORT OF PACS DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF UTAH**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT...........................................................................................................................1

      A.      This Action Could Have Been Brought in the District of Utah..............................1

      B.      Utah Would Be a Far More Convenient Forum for the Key Witnesses ..................2

      C.      The Locus of Operative Facts Lies in Utah .............................................................4

      D.      Plaintiff's Choice of Forum Is Due Little Weight ...................................................6

      E.      The District of Utah Is Equally Capable of Resolving this Matter..........................7

      F.      Trial Efficiency and the Interests of Justice Tilt in Favor of Transfer....................8

      G.      The Remaining Factors Favor Transfer or Are Neutral...........................................9

      H.      The *Plaintiff's* Contacts with the Transferee Court Are Irrelevant.........................9

CONCLUSION....................................................................................................................10

i

# TABLE OF AUTHORITIES

## CASES

*Aerotel, Ltd. v. Sprint Corp.*,
   100 F. Supp. 2d 189 (S.D.N.Y. 2000)...................................................................................... 10

*Ahrens v. CTI Biopharma Corp.*,
   No. 16-CV-1044 (PAE), 2016 WL 2932170 (S.D.N.Y. May 19, 2016) .......................... 1, 5, 6

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
   474 F. Supp. 2d 474 (S.D.N.Y. 2007)...................................................................................... 2

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*,
   No. 19-CV-1725 (AT), 2019 WL 13217378 (S.D.N.Y. Aug. 9, 2019).................................... 4

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
   No. 14-CV-3644 (VSB), 2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015) ............................ 2, 5

*Doshi v. Gen. Cable Corp.*,
   No. 13-CV-7409 (RA), 2014 WL 12774226 (S.D.N.Y. Feb. 5, 2014) ................................. 4, 7

*Eckstein v. Balcor Film Invs.*,
   8 F.3d 1121 (7th Cir. 1993) ..................................................................................................... 7

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
   No. 12-CV-05105 (NRB), 2013 WL 5355010 (S.D.N.Y. Sept. 25, 2013)............................. 10

*Erickson v. Corinthian Colleges, Inc.*,
   No. 13-CV-4308 (PKC), 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ................................ 5, 6

*Exist, Inc. v. Vermont Country Store, Inc.*,
   No. 2:19-CV-00058, 2019 WL 5310476 (D. Vt. Oct. 21, 2019)........................................... 10

*Garity v. Tetraphase Pharms. Inc.*,
   No. 18-CV-06797 (ALC), 2019 WL 2314691 (S.D.N.Y. May 30, 2019)............................ 6, 9

*Guardian Life Ins. Co. of Am. v. Coe*,
   724 F. Supp. 3d 206 (S.D.N.Y. 2024)...................................................................................... 8

*Hoffman v. Blaski*,
   363 U.S. 335 (1960)................................................................................................................. 2

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992)..................................................................................................... 5

*In re Energy Transfer Sec. Litig.*,
   No. 22-CV-4614 (AKH), 2022 WL 17477854.............................................................. 3, 4, 10

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)......................................................................... 10

*In re McDermott Int'l, Inc. Sec. Litig.*,
  No. 08-CV-10615 (DC), 2009 WL 1010039 (S.D.N.Y. Apr. 13, 2009) ................................ 2

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350 (1991)............................................................................................. 8

*Menowitz v. Brown*,
  991 F.2d 36 (2d Cir. 1993)................................................................................ 7, 8

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)............................................................................................. 4

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*,
  No. 16-CV-1361 (GHW), 2017 WL 1498058 (S.D.N.Y. Apr. 26, 2017) ............................ 6, 9

*Murray v. Scott*,
  176 F. Supp. 2d 1249 (M.D. Ala. 2001) .............................................................. 10

*Olcott v. Del. Flood Co.*,
  76 F.3d 1538 (10th Cir. 1996) ........................................................................... 7, 8

*Ret. Sys. v. Stryker Corp.*,
  No. 10-CV-376, 2010 WL 2035130 (S.D.N.Y. May 21, 2010) ................................... 9

*Sec. & Exch. Comm'n v. Brda*,
  No. 24-CV-4806 (KPF), 2024 WL 4817475 (S.D.N.Y. Nov. 18, 2024)................................ 4

*Steck v. Santander Consumer USA Holdings Inc.*,
  No. 14-CV-6942 (JPO), 2015 WL 3767445 (S.D.N.Y. June 17, 2015).......................... 2, 3, 4

*Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*,
  No. 2:07-CV-400 (TC), 2008 WL 4642975 (D. Utah Oct. 17, 2008) .................................. 7

**STATUTES**

15 U.S.C. § 78aa .................................................................................................. 1

15 U.S.C. § 78aa-1 .............................................................................................. 8

28 U.S.C. § 1404(a) ................................................................................... passim

28 U.S.C. § 1658(b) ............................................................................................ 8

**RULES**

Fed. R. Civ. P. 32(a)(4)(B) ................................................................................ 9

## OTHER AUTHORITIES

Wright & Miller, *Federal Practice and Procedure* § 3846 (4th ed. 2025) .................................... 7

The PACS Defendants[1] respectfully submit this Reply in Support of their Motion to Transfer to the District of Utah (Dkt. 47, Dkt. 48 (Mem.), the "Motion" or "Mot.").

## INTRODUCTION

This class action is about statements made in Utah by Utah-based employees of a Utah-headquartered company.  Utah, not New York, is the appropriate forum for this case.  In a putative securities class action like this one, transfer to the district where the company is headquartered is "routine." *Ahrens v. CTI Biopharma Corp.*, No. 16-CV-1044 (PAE), 2016 WL 2932170, at *4 (S.D.N.Y. May 19, 2016).  Plaintiff presents no persuasive reason to go against that grain here.

## ARGUMENT

This Court has the discretion to transfer this action to any other federal district court where the case might have been brought, "[f]or the convenience of parties and witnesses, [and] in the interests of justice[.]" 28 U.S.C. § 1404(a).  In their opening Motion, Defendants made a clear and convincing showing that each of the factors courts in this District consider in assessing whether to transfer a case either weigh in favor of transfer or are neutral; on the other hand, Plaintiff supplies *no* evidence that this District is the more appropriate venue in comparison to the District of Utah, where most witnesses reside, the operative events took place, and PACS is headquartered. Dkt. 52 ("Opposition" or "Opp.").  Rather, Plaintiff's arguments against transfer misapply the law, lack any evidentiary support, or are irrelevant.  Transfer to the District of Utah is appropriate here.

### A.    This Action Could Have Been Brought in the District of Utah

Plaintiff does not contest that this securities class action could have been filed in the District of Utah in the first instance.  *See* Mot. at 4-5 (*citing* 15 U.S.C. § 78aa).  Instead, Plaintiff protests that because this suit was first brought here by a *different* shareholder plaintiff who was not

---

[1] Unless defined herein, all defined terms shall have the meaning ascribed to them in the Motion.

appointed to lead this case, the District of Utah is no longer a proper venue.  Its only citation for this argument, a Supreme Court case from 1960, merely held that the language "might have been brought" within the context of Section 1404(a) means that there must have been a "right to sue" in the transferee district in the first instance.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  This is true of the District of Utah in this case, and it would be true regardless of whether a complaint had already been filed in this Court.[2]  Thus, this prong of Section 1404(a) has been easily met here.

        **B.       Utah Would Be a Far More Convenient Forum for the Key Witnesses**

"Convenience of both the party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted," and convenience points to Utah.  *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 (JPO), 2015 WL 3767445, at *3 (S.D.N.Y. June 17, 2015) (alterations and citation omitted).  Plaintiff argues that "Defendants . . . do not provide any evidence that Utah is, in fact, more convenient for anyone," Opp. at 10, but ignores, apparently, the witnesses who are arguably most important of all: the Individual Defendants, PACS's officers and directors, who allegedly made, or were responsible for, the statements at the heart of this case.  Courts in this district have repeatedly recognized that the "key witnesses" in "a securities fraud action relating to alleged false statements" are the "officers and employees who made the allegedly false and misleading statements."  *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08-CV-10615 (DC), 2009 WL 1010039, at *4 (S.D.N.Y. Apr. 13, 2009) (collecting cases); *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, No. 14-CV-3644 (VSB), 2015 WL 12659925, at *4 (S.D.N.Y. Apr. 30, 2015) ("In a securities fraud case, the

---

[2] If Plaintiff had filed in the District of Utah *after* this case was initiated, the "first-filed rule" would be only "one among several factors in the overall calculus of efficiency and the interests of justice" in deciding whether to transfer.  *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007).

key witnesses are the officers and employees of the corporate defendant who participated in drafting and disseminating the allegedly false statements at issue."); *Steck*, 2015 WL 3767445, at *3 ("The principal witnesses [in this securities fraud action], therefore, will be the Santander officers and employees who prepared for the IPO and drafted and signed the registration statement."). In the currently operative complaints, that is a subset of the Individual Defendants.[3]

In any event, the § 1404(a) transfer analysis is a comparative one, and it cannot reasonably be disputed that Utah would be far more convenient than New York for the key witnesses. The Individual Defendants are almost all based in Utah and bring this Motion because of the *in*convenience of litigating thousands of miles from their homes and the headquarters of the company they run. Apt Decl. (Dkt. 50) ¶¶ 6, 11. Plaintiff's threat to bring additional claims against Defendants Murray and Hancock, Opp. at 14, is completely beside the point, as it is not disputed that both are domiciled in Utah, and the mundane fact that PACS stock trades on the New York Stock Exchange does not somehow make litigation in New York more convenient for these Utah residents. Plaintiff also points to the fact that Murray and Hancock have been to New York on PACS business. *Id.* at 11. That company leaders traveled to New York for a securities offering is not surprising, but it does not render a cross-country plane trip convenient—or, for that matter, undisruptive to PACS's business. *See In re Energy Transfer Sec. Litig.*, No. 22-CV-4614 (AKH), 2022 WL 17477854, at *3 (S.D.N.Y. Nov. 7, 2022) ("[B]ecause the individual Defendants are current officer and executives . . ., trial proceedings in New York might lead to disruption of [the company's] operations."). Still too, all PACS employees who helped prepare and distribute the challenged statements lived and worked in Utah. It is therefore "obvious that a substantial portion of the witnesses are located in the transferee district." *Id.*; Apt Decl. ¶ 9.

---

[3] *See* NOERS Complaint ¶¶ 29-33, 45-74; Manchin Complaint ¶¶ 46-59; *see generally* Exs. 1-10.

By contrast, *none* of the Individual Defendants, nor any other PACS employee, is located in New York. Tellingly, Plaintiff only identified *one* potential New York witness—its own investment manager. Opp. at 15. While this witness certainly has relevant testimony, Defendants will notice investment manager depositions for New York. One witness located in New York does not outweigh the inconvenience to the numerous *essential* witnesses in Utah.

Finally, while Plaintiff tries to assert convenience on behalf of the Underwriter Defendants, those Defendants have joined the Motion. Their convenience does not factor into the analysis. *Steck*, 2015 WL 3767445, at *4 ("Courts in this district have held that parties can waive the issue of their own convenience, in which case it is given no consideration . . . ." (collecting cases)).

C.    **The Locus of Operative Facts Lies in Utah**

In a securities lawsuit, the "locus of operative events is where the alleged misrepresentations were made," which here is Utah. *SEC v. Brda*, No. 24-CV-4806 (KPF), 2024 WL 4817475, at *6 (S.D.N.Y. Nov. 18, 2024) (citations and alterations omitted). Plaintiff attempts to obscure where the locus of this case lies by pointing to *Morrison v. National Australian Bank Ltd.*, 561 U.S. 247, 266 (2010), for the principle that the "focus of the Exchange Act is not upon the place where the deception originated," but where the purchases and sales of securities took place. Opp. at 13. But *Morrison* was about the extraterritorial reach of the Exchange Act to foreign shores; it has nothing at all to do with which U.S. venue is the most appropriate for a federal securities case. And determining the appropriate district court venue instead turns on "where the alleged misrepresentations were made," as courts in this district have stated repeatedly. *Brda*, 2024 WL 4817475, at *6 (cleaned up).[4]

---

[4] *See also, e.g.*, *Doshi v. Gen. Cable Corp.*, No. 13-CV-7409 (RA), 2014 WL 12774226, at *2 (S.D.N.Y. Feb. 5, 2014); *Energy Transfer*, 2022 WL 17477854, at *4; *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, No. 19-CV-1725 (AT), 2019 WL 13217378, at

There can be no serious question that the statements at issue were made in Utah. Incredibly, Plaintiff claims it does not have enough "detail" to believe that the statements at issue came from Utah, Opp. at 14, despite the existence of a declaration from the Company's CFO, Derick Apt, averring that each was issued from PACS's Farmington, Utah headquarters. Apt. Decl. ¶¶ 7-9. Indeed, many of the documents containing the challenged statements say *on their face* that they were issued in Utah. *See* Exs. 1-8. The Registration Statements were issued by PACS from Utah. Exs. 1-2, 7-8. Further, many of the challenged statements were made outside of the context of the public offerings. *See, e.g.*, Exs. 3-6, 9-10. The corresponding claims, brought under the Exchange Act, do not involve the Underwriter Defendants at all, and the Underwriter Defendants' activities have little bearing on where the locus of this dispute lies.

On the other hand, Plaintiff offers nothing to connect the locus of events to New York. Plaintiff also urges the Court to consider terms in the underwriting agreements that, among other things, selected New York as the appropriate forum for disputes between PACS and the underwriters. Opp. at 14. But neither Plaintiff nor any other public shareholder is a party to those agreements, and whether PACS agreed to conduct some business, or even litigate, in New York under different circumstances is both unremarkable and irrelevant—especially where several of the contractual counterparties were based in New York. Transfer motions "are determined upon notions of convenience and fairness on a case-by-case basis." *Dell*, 2015 WL 12659925, at *5 (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)) (refusing to consider defendant corporation's Southern District of New York litigation history). The proper question is whether "it is convenient . . . to litigate *this* case in this District." *Id.* It is not.

---

*2 (S.D.N.Y. Aug. 9, 2019); *Ahrens*, 2016 WL 2932170, at *4; *Erickson v. Corinthian Colleges, Inc.*, No. 13-CV-4308 (PKC), 2013 WL 5493162, at *6 (S.D.N.Y. Oct. 1, 2013).

### D.   Plaintiff's Choice of Forum Is Due Little Weight

The Southern District of New York may be Plaintiff's preferred jurisdiction, but courts in this district put minimal weight on plaintiff's choice of forum in cases like this one. Plaintiff largely ignores this, instead arguing at length about why it should be construed as indeed having chosen this forum. Opp. at 6-7. But the original choice of forum carries "limited weight . . . in the context of a stockholder class action, where members of the class are dispersed throughout the nation." *Ahrens*, 2016 WL 2932170, at *4 (cleaned up); *see also Dell*, 2015 WL 12659925, at *3. Plaintiff's own residence "is often a mere happenstance" and "may be discounted" in the class action context. *Garity v. Tetraphase Pharms. Inc.*, No. 18-CV-06797 (ALC), 2019 WL 2314691, at *3 (S.D.N.Y. May 30, 2019), at *3.

Still too, the case's operative facts have little connection with the chosen forum. *Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 16-CV-1361 (GHW), 2017 WL 1498058, at *8 (S.D.N.Y. Apr. 26, 2017) ("[T]he operative facts of this case have few meaningful connections to the plaintiff's chosen forum, and thus the importance of the plaintiff's choice measurably diminishes." (cleaned up)). As explained above, this case is about statements that were made in Utah, by a Utah company and its Utah leadership; this matter's connections to New York are attenuated at best. Under these circumstances, "the weight accorded to a plaintiff's choice of forum diminishes." *Erickson*, 2013 WL 5493162, at *2.

Finally, Plaintiff points to the location of class counsel, but "the convenience of counsel is not an appropriate factor to consider on a motion to transfer." *Multiwave*, 2017 WL 1498058, at *8 (cleaned up); Mot. at 10 n.5. In light of these considerations and the many factors supporting transfer, the minimal weight afforded to Plaintiff's forum preference should not be dispositive.

**E.    The District of Utah Is Equally Capable of Resolving this Matter**

It is axiomatic, and Plaintiff concedes (Opp. at 17), that "[f]ederal courts throughout the nation are equally capable of applying federal securities laws." *Doshi*, 2014 WL 12774226, at *4 (quotation marks and citation omitted). Plaintiff argues that this case presents a "quirk" and that transfer will require the District of Utah to apply Second Circuit precedent, pointing to *Olcott v. Delaware Flood Co.*, 76 F.3d 1538 (10th Cir. 1996). Opp. at 17-18. But *Olcott* does not mean what Plaintiff contends, and it certainly does not override the general rule that "where jurisdiction is based on a federal question, a federal district court is obligated to apply the law of the circuit in which it sits." *Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, No. 2:07-CV-400 (TC), 2008 WL 4642975, at *4 (D. Utah Oct. 17, 2008) (citing *Olcott*, 76 F.3d at 1546). Instead, it addressed a narrow exception to that rule "where Congress *specifically intended* that the application of the law depend on the 'geographic location of the events giving rise to the litigation.'" *Id.* (emphasis added) (quoting *Olcott*, 76 F.3d at 1546); *see also* Wright & Miller, *Federal Practice and Procedure* § 3846 (4th ed. 2025). *Olcott* concluded that "a transferee court normally should use its own best judgment about the meaning of federal law when evaluating a federal claim," *unless* a federal statute expressly "instructs us to act differently," in which case, the transferor law applies. *Olcott*, 76 F.3d at 1546 (quoting *Eckstein v. Balcor Film Invs.*, 8 F.3d 1121, 1126 (7th Cir. 1993)). *Menowitz v. Brown*, 991 F.2d 36 (2d Cir. 1993), also cited by Plaintiff (Opp. at 17), differs from *Olcott* only in that the Second Circuit would apply its own law in that scenario. *Id.* at 40-41.

No such statute exists here.[5]  Thus, as with any other case in which subject matter jurisdiction is based on a federal question, the District of Utah will simply apply Tenth Circuit precedent, as it must.  *See Olcott*, 76 F.3d at 1546-47 ("Nothing in our decision should be read to imply . . . any broad applicability to federal question jurisdiction cases generally.").  "[F]ederal courts comprise a single system applying a single body of law, and *no litigant has a right to have the interpretation of one federal court rather than that of another determine his case*."  *Menowitz*, 991 F.2d at 40 (cleaned up) (emphasis added).  In short, both the District of Utah and this Court are well-qualified to resolve this case, and this factor is neutral.

> **F.     Trial Efficiency and the Interests of Justice Tilt in Favor of Transfer**

While both this Court and the District of Utah are no doubt capable of managing their dockets and facilitating a speedy resolution, the relative busyness of each forum tilts somewhat in favor of Utah.  Plaintiff disagrees, claiming that the time it would take for "a new judge to get up to speed on this matter" outweighs any docket congestion considerations.  Opp. at 18.  But the only substantive event that has occurred thus far is the appointment of Lead Plaintiff.  The amended complaint has not been filed, Defendants are under no obligation to respond to the original complaints, *see* Dkts. 16, 46, and no merits motion has been filed.  As such, this Court likely is little more familiar with the substantive allegations than the District of Utah.  *See Guardian Life*

---

[5] *Olcott* and *Menowitz* arose in the context of a unique and long-obsolete federal statute.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 345 & n.1 (1991), created a uniform statute of limitations for the implied right action of action under Section 10(b).  Congress responded by passing 15 U.S.C. § 78aa-1, which provided that Section 10(b) cases filed on or before June 19, 1991 would apply "the limitation period provided by the laws applicable in the jurisdiction."  15 U.S.C. § 78aa-1(a).  *Olcott* and *Menowitz* both considered Section 10(b) cases that were filed before *Lampf* and triggered 15 U.S.C. § 78aa-1, such that the question of which pre-*Lampf* circuit law to apply would yield different results.  *Olcott*, 76 F.3d at 1542-44; *Menowitz*, 991 F.2d at 39-40.  Now, however, not only has 15 U.S.C. § 78aa-1 been irrelevant for decades, so has *Lampf*—Congress enacted a uniform limitations period for Section 10(b) claims in the Sarbanes-Oxley Act of 2002.  *See* 28 U.S.C. § 1658(b).

*Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 217 (S.D.N.Y. 2024) (where district court had not "adjudicated any substantive motions or even any discovery disputes," transfer did not present "a situation where this Court has gained familiarity with this action that would be lost upon transfer to another district" although case was filed nearly a year and a half prior to transfer and discovery would soon conclude). Transfer will therefore not create any delay. *See City of Pontiac Gen. Empls.' Ret. Sys. v. Stryker Corp.*, No. 10-CV-376, 2010 WL 2035130, at *5 (S.D.N.Y. May 21, 2010) ("[T]his action is in its infancy, and thus a transfer . . . would not cause any undue delay.").

## G. The Remaining Factors Favor Transfer or Are Neutral

The remaining factors either favor transfer or are neutral at worst. *First*, even in the era of electronic documents, the location of relevant documents still "weigh[s] in favor of transfer to the corporate issuer's home forum in securities class actions." *Garity*, 2019 WL 2314691, at *3. *Second*, Plaintiff's unsupported aspersions about some of the Defendants aside, it has not meaningfully contested that there are no "profound disparities between [the parties'] relative means" where both Plaintiff and Defendants are organizations. *Multiwave*, 2017 WL 1498058, at *8. This factor is neutral. And *third*, neither party has identified a New York witness who would be unwilling to testify absent a subpoena. Although Plaintiff points to its investment manager, it does not offer evidence that this manager would not testify at trial in Utah—and, at any rate, if it does, the parties can proffer its deposition testimony in the place of live testimony pursuant to Rule 32(a)(4)(B). Thus, the availability of process factor is also neutral.

## H. The *Plaintiff's* Contacts with the Transferee Court Are Irrelevant

Finally, Plaintiff points to personal jurisdiction as a reason to deny transfer. Opp. at 19. But the District of Utah's ability to exercise personal jurisdiction over the *plaintiff* is irrelevant to § 1404(a). "There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a

9

requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also Exist, Inc. v. Vermont Country Store, Inc.*, No. 2:19-CV-00058, 2019 WL 5310476, at *3 (D. Vt. Oct. 21, 2019). That is because "minimum-contacts concerns [only] inhere when a party is haled into court without its consent upon pain of a default judgment. These concerns are not present when a plaintiff is forced to litigate his case in another forum." *Murray v. Scott*, 176 F. Supp. 2d 1249, 1255 (M.D. Ala. 2001). This reasoning holds especially true here, where Plaintiff purports to represent a nationwide, geographically dispersed class.

Plaintiff cites two cases in which the transferee state's contacts with the plaintiff played a role in the analysis, but both featured a parallel action in the transferee court where the parties' positions were reversed—the plaintiff in the transferor court was the defendant in the transferee court, and vice versa. *See Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12-CV-05105 (NRB), 2013 WL 5355010, at *2 (S.D.N.Y. Sept. 25, 2013); *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 191 (S.D.N.Y. 2000). The court only analyzed personal jurisdiction when evaluating whether transfer was appropriate because the plaintiff had *already* been haled into the transferee venue as a defendant—without consent, under threat of judgment, by the same opposing party and over the same facts. *See Erickson Beamon*, 2013 WL 5355010, at *6; *Aerotel*, 100 F. Supp. 2d at 191. These cases are inapposite to this singular class action, and securities class actions are routinely transferred without regard to the transferee district's jurisdiction over the lead plaintiff. *E.g.*, *Energy Transfer*, 2022 WL 17477854, at *1.

## CONCLUSION

"For the convenience of parties and witnesses," and "in the interest of justice," 28 U.S.C. § 1404(a), Defendants request that this case be transferred to the District of Utah.

Dated: April 25, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

_/s/ Colleen C. Smith_
Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, California 92130
Telephone: (858) 523-5400
colleen.smith@lw.com

Thomas J. Giblin
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
thomas.giblin@lw.com

Michele D. Johnson (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
michele.johnson@lw.com

Morgan E. Whitworth (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants PACS Group, Inc., Jason Murray, Derick Apt, Mark Hancock, Michelle Lewis, Jacqueline Millard, Taylor Leavitt, and Evelyn Dilsaver*

11

## CERTIFICATE OF COMPLIANCE

I, Colleen C. Smith, an attorney duly admitted *pro hac vice* to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York and Rule 2(I) of the Honorable Lewis J. Liman's Individual Practices in Civil Cases, that the foregoing Reply in Support of PACS Defendants' Motion to Transfer to the District of Utah that the foregoing Memorandum of Law was prepared using Microsoft Word, contains 3,476 words, and does not exceed 10 pages. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: April 25, 2025
San Diego, California

/s/ *Colleen C. Smith*
Colleen C. Smith

12