UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/2/2025___
```

-----------------------------------------------------------------------X

CHRISTOPHER MANCHIN, *individually and on*
*behalf of all others similarly situated*,

                   Plaintiff,

    -v-

PACS GROUP, INC., JASON MURRAY, DERICK
APT, MARK HANCOCK, JACQUELINE MILLARD,
TAYLOR LEAVITT, CITIGROUP GLOBAL
MARKETS INC., J.P. MORGAN SECURITIES LLC,
TRUIST SECURITIES, INC., RBC CAPITAL
MARKETS, LLC, GOLDMAN SACHS & CO. LLC,
STEPHENS INC., KEYBANC CAPITAL MARKETS
INC., OPPENHEIMER & CO. INC., and REGIONS
SECURITIES LLC,

                   Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

24-cv-8636 (LJL)

OPINION AND ORDER

-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants PACS Group, Inc. ("PACS") and Jason Murray, Derick Apt, Mark Hancock,

Michelle Lewis, Jacqueline Millard, Taylor Leavitt, and Evelyn Dilsaver (the "Individual

Defendants" and with PACS, "Moving Defendants") move, pursuant to 28 U.S.C. § 1404(a), for

an order transferring this consolidated action to the United States District Court for the District of

Utah.  Dkt. No. 47.  The motion is joined by Defendants Citigroup Global Markets Inc., J.P Morgan

Securities LLC, Truist Securities, Inc., RBC Capital Markets, LLC, Goldman Sachs & Co. LLC,

Stephens Inc., KeyBank Capital Markets Inc., Oppenheimer & Co. Inc., Regions Securities LLC,

and UBS Securities, LLC (the "Underwriter Defendants").  Dkt. No. 51.

      For the reasons that follow, the motion to transfer is DENIED.

## BACKGROUND

For the purposes of this motion, the Court accepts as true the allegations in the complaints filed in *Manchin v. PACS Group, Inc.*, No. 24-cv-8636 (S.D.N.Y) ("*Manchin*"), Dkt. No. 1 ("*Manchin* Compl.") and *New Orleans Emps.' Ret. Sys. v. PACS Group, Inc.*, No. 24-cv-8882 (S.D.N.Y.) ("*New Orleans*"), Dkt. No. 1 ("*New Orleans* Compl."). *See Tulepan v. Roberts*, 2014 WL 6808313, at *1 (S.D.N.Y. Dec. 3, 2014) ("For the purposes of resolving this motion to transfer venue, the Court accepts the allegations in the complaint as true."). However, the Court may also "consider material outside of the pleadings." *Mohsen v. Morgan Stanley & Co. Inc.*, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013).

PACS is a Delaware corporation headquartered in Farmington, Utah. *Manchin* Compl. ¶ 16; *New Orleans* Compl. ¶ 29. PACS was founded in 2013. *New Orleans* Compl. ¶¶ 4, 22. It is one of the largest operators of skilled nursing facilities in the United States. *Id.* ¶¶ 4, 23.

On March 13, 2024, PACS filed with the United States Securities and Exchange Commission ("SEC") a registration statement on Form S-1 for an initial public offering ("IPO") of its common stock. *Id.* ¶ 25. The registration statement was declared effective on April 10, 2024, and PACS filed the IPO prospectus with the SEC on April 12, 2024. *Id.*; *Manchin* Compl. ¶ 3. Pursuant to the registration statement, PACS sold 21,428,572 shares of its common stock to the public at a price of $21 per share for proceeds of $450 million. *New Orleans* Compl. ¶ 25; *Manchin* Compl. ¶ 3.

PACS held a secondary public offering ("SPO") of its stock in September 2024. *New Orleans* Compl. ¶ 26. On September 3, 2024, PACS filed with the SEC a registration statement for the SPO on Form S-1. *Id.* On September 6, 2024, it filed the prospectus for the SPO with the SEC. *Id.* Pursuant to the registration statement for the SPO, PACS sold 2,777,778 shares of common stock to the public at a price of $36.25 per share for proceeds of $589.3 million. *Id.*

The Individual Defendants are officers and directors of PACS. *Id.* ¶¶ 30–31, 37–41; *Manchin* Compl. ¶¶ 17–18, 20–22. The Underwriter Defendants are financial services companies that served as the underwriters of the IPO and SPO. *New Orleans* Compl. ¶¶ 43–50; *Manchin* Compl. ¶¶ 24–32.

PACS's IPO registration statement touted its business model to attract higher-acuity patients and its ability to acquire underperforming skilled nursing facilities and convert them to higher-acuity, high-value add short-term transitional care SNFs. *New Orleans* Compl. ¶¶ 55–56; *Manchin* Compl. ¶ 42. It also highlighted the steps PACS was taking to meet its compliance obligations. *New Orleans* Compl. ¶¶ 59–60; *Manchin* Compl. ¶ 43. The SPO registration statement made substantially the same claims, discussing the company's culture of compliance and its multi-faceted growth strategy. *New Orleans* Compl. ¶¶ 72–74.

In May 2024 and August 2024, PACS issued earnings releases and quarterly reports on Form 10-Q and conducted earnings calls in connection with the close of its first and second quarters of 2024. *New Orleans* Compl. ¶¶ 62–71. PACS reported that its results for each quarter were "very strong" or "strong." *Id.*

On November 4, 2024, an investment research firm named Hindenburg Research released a report (the "Hindenburg Report") alleging that PACS had engaged in improper practices, including manipulating Medicare billing through the misuse of a COVID-era waiver, which drove a significant portion of the company's revenues, and inflating its Medicare revenue by inappropriately classifying lower-acuity patients as high-acuity skilled care patients, thereby securing higher reimbursement rates to bolster its financial performance. *Manchin* Compl. ¶¶ 4, 61; *New Orleans* Compl. ¶¶ 13, 76. The Hindenburg Report also accused PACS of billing for unnecessary treatments and for treatments that were never actually performed and of

misrepresenting staffing levels and qualifications to regulators to meet minimum staffing requirements and increase facility ratings and state bonuses. *Manchin* Compl. ¶¶ 4, 61; *New Orleans* Compl. ¶ 76. On November 4, 2024, PACS's share price dropped $11.93 per share, or 27 percent, to $31.01 per share (below its IPO and SPO price) in reaction to the release of the Hindenburg Report. *Manchin* Compl. ¶¶ 5, 62; *New Orleans* Compl. ¶ 77. On November 6, 2024, PACS announced that it would delay the release of its third-quarter 2024 financial results while its Audit Committee was conducting an investigation and that it had received civil investigative demands from the federal government regarding its practices. *Manchin* Compl. ¶¶ 6, 63; *New Orleans* Compl. ¶ 78. On that news, PACS's share price dropped $11.45 per share, or 38.8 percent, to close at $18.09 on November 6, 2024. *Manchin* Compl. ¶¶ 7, 64; *New Orleans* Compl. ¶ 79.

## PROCEDURAL HISTORY

On November 13, 2024, an individual investor named Christopher Manchin filed a complaint in this Court against PACS, the Individual Defendants, and the Underwriter Defendants, alleging claims under Sections 11 and 15 of the Securities Act of 1933 and Section 10(b) and 20(a) of the Securities Exchange Act of 1934 related to the IPO and PACS's statements following the IPO. *See generally Manchin* Compl. Eight days later, the New Orleans Employees' Retirement System filed a complaint in this Court against the same Defendants as well as UBS Securities alleging that false statements were made in the registration statement for the SPO and in PACS's statements in connection with its quarterly reports. *See generally New Orleans* Compl.

On January 7, 2025, the Court entered a stipulation and order consolidating the *New Orleans* and *Manchin* actions and setting a schedule for the filing of a consolidated complaint

following the appointment of lead plaintiff and lead counsel.  Dkt. No. 16.[1]  On January 13, 2025, competing motions to be appointed Lead Plaintiff and for appointment of Lead Counsel were filed. Dkt. Nos. 20, 23, 26.  On February 11, 2025, the Court issued a memorandum and order appointing the 1199SEIU Health Care Employees Pension Fund ("Pension Fund" or "Lead Plaintiff") as lead plaintiff and its counsel Labaton Keller Sucharow LLP as counsel.  Dkt. No. 39; *Manchin v. PACS Grp., Inc.*, 2025 WL 460775 (S.D.N.Y. Feb. 11, 2025).

The Pension Fund is located in New York, and at least one of its investment managers is located in New York.  Dkt. No. 53-4 ¶¶ 3, 8.  The Pension Fund purchased a total of 20,326 shares of PACS stock at a price of $36.25 on September 6, 2024, and a total of 1,935 shares of PACS stock at a price of $40.58 on September 20, 2024.  Dkt. No. 28-1.  As of the end of the alleged class period on November 5, 2024, the Pension Fund had suffered a loss on a last-in first out basis of $469,620.  Dkt. No. 28-2.  Labaton Keller Sucharow has offices in the United States in New York, Delaware, and Washington, D.C.  Dkt. No. 28-5.

On March 28, 2025, the Moving Defendants moved to transfer venue to the District of Utah.  Dkt. No. 47.  Moving Defendants also filed a memorandum of law and two declarations in support of the motion.  Dkt. Nos. 48–50.  That same day, the Underwriter Defendants filed a letter joining in the motion to transfer.  Dkt. No. 51.  On April 18, 2025, Plaintiff filed a declaration of counsel and a memorandum of law in opposition to the motion.  Dkt. Nos. 52–53.  On April 25, 2024, Moving Defendants filed a reply memorandum of law in further support of the motion and a declaration of counsel.  Dkt. Nos. 54–55.

Two shareholder derivative actions brought by shareholders of PACS on behalf of the company against its officers and directors are also pending before this Court and have been

---

[1] Unless otherwise specified, citations to "Dkt. No. __" refer to filings on the *Manchin* docket.

consolidated. *In re PACS Group, Inc. Derivative Litigation*, No. 25-cv-1343 (S.D.N.Y.); *Beckman v. Murray*; No. 25-cv-2359 (S.D.N.Y.). Those actions allege causes of action for contribution under Sections 10(b) and 21D of the Exchange Act and Section 11 of the Securities Act, as well as breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, and waste of corporate assets, arising out of PACS's IPO and SPO and the securities fraud actions based on those offerings.

## DISCUSSION

Section 1404(a) of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute codifies the doctrine of *forum non conveniens* for the federal system and provides for "transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

To determine whether transfer is appropriate, the Court applies a two-step inquiry. First, it determines whether the action could have been brought in the proposed transferee court, because "the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski,* 363 U.S. 335, 343–44 (1960); *see Penn-Cent. Merger & N & W Inclusion Cases*, 389 U.S. 486, 545 n.10 (1968). Second, the Court "'balances the private and public interests,' to determine whether transfer is warranted '[f]or the convenience of parties and witnesses, [and] in the interest of justice.'" *Inventel Prods. LLC v. Penn LLC*, 2017 WL 818471, at *2 (S.D.N.Y. Feb. 28, 2017)

(quoting *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) and then quoting 28 U.S.C. § 1404(a)).

## I.    Propriety of the Transferee Forum

The Moving Defendants satisfy the first requirement for transfer of venue. This action could have been brought in the United States District Court for the District of Utah.

The *Manchin* and *New Orleans* Complaints bring claims for violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Congress created broad venue provisions for each of those statutes, permitting Plaintiffs to bring the claims in a broad array of districts. *See S.E.C. v. 800america.com, Inc.*, 2006 WL 3422670, at *5 (S.D.N.Y. Nov. 28, 2006) ("Given the nature of securities fraud actions, it is well-established that the special venue provisions should be liberally construed."); *Truk Int'l Fund, LP v. Wehlmann*, 2009 WL 1456650, at *3 (S.D.N.Y. May 20, 2009) (same).

Section 27 of the Exchange Act provides that a civil suit brought under the Exchange Act "may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business," or "wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa(a); *see SST Glob. Tech., LLC v. Chapman,* 270 F. Supp. 2d 444, 453 (S.D.N.Y. 2003) ("The language referring to where 'any act or transaction constituting the violation occurred,' has been held to apply to civil cases." (citing *Grossman v. Young*, 70 F. Supp. 970 (S.D.N.Y. 1947)). Under this liberal standard, "commission of any non-trivial act in the district establishes venue for an Exchange Act claim, even if this act does not go to the core of the alleged violation." *Ato Ram, II, Ltd. v. SMC Multimedia Corp.*, 2004 WL 744792, at *3 (S.D.N.Y. Apr. 7, 2004); *see Ahrens v. Cti Biopharma Corp.*, 2016 WL 2932170, at *3 (S.D.N.Y. May 19, 2016). "[A]cts such as a transfer agent merely mailing dividends from New York City, press releases being sent into a district, and making a phone call or mailing into a district have all been

held sufficient to confer venue." *Greenwood Partners v. New Frontier Media Inc.*, 2000 WL 278086, at *6 (S.D.N.Y. Mar. 14, 2000). Under Section 20 of the Securities Act, venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale [of a security] took place, if the defendant participated therein." 15 U.S.C. § 77v(a). "It has been held repeatedly that venue properly laid for claims arising under either of the securities acts satisfactorily establishes venue for those arising under the other." *Ato Ram, II, Ltd. v. SMC Multimedia Corp.*, 2004 WL 744792, at *2 (S.D.N.Y. Apr. 7, 2004) (quotation omitted); *accord Ahrens*, 2016 WL 2932170, at *3.

PACS's headquarters are located in Farmington, Utah; PACS maintains its executive offices there; and most of PACS's high-level employees and the substantial majority of its accounting, legal, communications, and investor relations personnel, work out of Utah. *Manchin Compl.* ¶ 16; *New Orleans* Compl. ¶¶ 4, 29; *Manchin*, Dkt. No. 50 ¶¶ 4–5. The statements alleged to be false or misleading were prepared, drafted, and/or issued in Utah. *Manchin Compl.* ¶¶ 16, 63; Dkt. No. 50 ¶¶ 5, 8. With only a single exception, each of the Individual Defendants currently reside in Utah. Dkt. No. 50 ¶¶ 9–11.[2] The Exchange Act and Securities Act claims thus could have been brought in the District of Utah.

---

[2] Evelyn Dilsaver resides in Arizona. Dkt. No. 50 ¶ 11. An out-of-state director does not destroy venue in Utah. Where the complaint alleges a conspiracy among multiple defendants, such as a manipulative scheme, venue is appropriate as to all defendants when it is established even as to one. *See Krasner v. Rahfco Funds LP*, 2012 WL 4069300, at *4 (S.D.N.Y. Aug. 9, 2012) (citing *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 620 (2d Cir. 1968)); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 176 (S.D.N.Y. 2006) ("[U]nder the co-conspirator venue theory, where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. The rule is such even if some of the defendants have had not contact with the forum district." (quotation omitted)).

The Pension Fund argues that the case could not have been brought in Utah for two reasons. First, if the Pension Fund had tried to file elsewhere prior to its appointment as Lead Plaintiff, "such suit presumably would have been transferred to [the Southern District of New York] to be consolidated with the 'first filed action' here as part of the lead plaintiff process set forth in the Private Securities Litigation Reform Act[] [('PSLRA')]." Dkt. No. 52 at 6–7.  Second, according to the Pension Fund, Utah lacks personal jurisdiction over the Pension Fund. *Id.* at 19.  Neither argument is availing.  The requirement that a transferee district be one in which the suit "might have been brought initially" looks to whether the *defendant* is subject to personal jurisdiction in the transferee district and if venue would be proper.  *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 833 (S.D.N.Y. 2012); *Est. of Stanley Kauffmann v. Rochester Inst. of Tech.*, 2017 WL 449911, at *2 (S.D.N.Y. Jan. 19, 2017).

First, the Pension Fund points out that because Manchin had originally filed the case in the Southern District of New York, if the Pension Fund had thereafter attempted to file suit in the District of Utah, the Utah suit would have been transferred to the Southern District of New York to facilitate consolidation with the New York suit. Dkt. No. 52 at 6–7 (citing 15 U.S.C. § 78u–4(a)(3)(A)(ii)).[3]  But while a Utah court could have entertained a motion to transfer a later-filed Utah suit, it would not have been under any imperative to grant such a motion.  The Pension Fund does not point to any evidence that venue would have been improper in Utah or that the Utah court would lack personal jurisdiction over the Defendants.  And neither the Federal Rules of Civil Procedure nor the PSLRA make consolidation mandatory such that a Utah court would have been

---

[3] The cited provision of the PSLRA states that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)."  15 U.S.C. § 78u–4(a)(3)(A)(ii).

obligated to automatically transfer the later-filed case to New York for consolidation. Federal Rule of Civil Procedure 42 provides that a court *may*—not must—consolidate actions involving a common question of law or fact. Fed. R. Civ. P. 42(a). And the PSLRA itself does not make consolidation a foregone conclusion. *See In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013) (holding that "consolidation is not mandatory under the PSLRA"). The PSLRA states that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial," the court shall wait to appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u–4(a)(3)(B)(ii). Thus, even though courts posses the authority to transfer a later-filed securities suit to permit consolidation with a previously-filed suit, the PSLRA contemplates that such transfer is by no means mandatory. *See Barnet v. Elan Corp.*, 236 F.R.D. 158, 163 (S.D.N.Y. 2005) (noting that transfer for purposes of consolidation seemed appropriate given the facts of the case but should not be granted absent further briefing from the parties).

The Pension Fund thus could have brought a later-in-time case in Utah that could have remained in that district and ultimately could have even proceeded to trial there. Furthermore, Lead Plaintiff's hypothetical blinks reality. The motion to transfer presently at issue is a motion to transfer the consolidated action, including the first-filed case, which would have had no barrier at all to initial filing in Utah.

Second, "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *Exist, Inc. v. Vermont Country Store, Inc.*, 2019 WL 5310476, at *3 (D. Vt. Oct, 21,

2019) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)); *accord Finally Sunday LLC v. Friday Beers LLC*, 2025 WL 405796, at *5 (W.D.N.Y. Feb. 5, 2025). "Where, as in the present case, plaintiff is bringing the suit, it need not also be subject to personal jurisdiction, which is required in order *to be sued*." *Max Planck Gesellschaft Zur Foederung Der Wissenschaften, E.V. v. Gen. Elec. Co.*, 858 F. Supp. 380, 385 (S.D.N.Y. 1994). "In other words, 'there is no due-process concern, at least to the level of requiring minimum contacts with the new forum, for plaintiff when a case is transferred under § 1404(a),'" because the plaintiff chose to initiate the litigation and "[i]n no sense is plaintiff unilaterally being haled into court to defend." *Exist*, 2019 WL 5310476, at *3 (quoting *Murray v. Scott*, 176 F. Supp. 2d 1249, 1255–56 (M.D. Ala. 2001)).[4]  "To the extent [plaintiff] is seeking minimum procedural due-process protection, § 1404(a) provides such." *Id.* (quotation and emphasis omitted).

## II.    Factors Governing Transfer

The second step in the Section 1404(a) analysis requires the Court to engage in "an 'individualized, case-by-case consideration of convenience and fairness'" and "to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents

---

[4] Plaintiff cites two cases supposedly to the contrary. *See* Dkt. No. 52 at 19 (citing *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 198 (S.D.N.Y. 2000) and *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 2013 WL 5355010, at *8 (S.D.N.Y. Sept. 25, 2013)). Both of those cases are distinguishable. In both *Aerotel* and *Erickson*, there was an already-filed case in the potential transferee district in which the parties were transposed (i.e. the plaintiff in the transferor court was the defendant in the transferee court and vice versa) such that the plaintiff would effectively be haled into the transferee court to defend without consent or minimum contacts. Outside of that narrow context, courts generally disregard any issue of the transferee court's jurisdiction over the plaintiff. *See, e.g.*, *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *2 (S.D.N.Y. Nov. 7, 2022).

and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)). "The Court also considers '[8] the forum's familiarity with the governing law . . . and (9) trial efficiency and the interests of justice based on the totality of the circumstances.'" *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *5 (S.D.N.Y. Nov. 17, 2022) (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)). "The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017). The District Court has wide latitude to decide whether to transfer a case. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011) (summary order).

"[T]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine*, 599 F.3d at 114 (quoting *United Artists Corp.*, 865 F.2d at 521). Accordingly, "district courts in [the Second] Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *Id.* (collecting cases).

"There is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered." *In re Hanger Orthopedic Grop, Inc.*

*Sec. Litig.*, 418 F.Supp.2d 164, 168 (E.D.N.Y. 2006).  The Moving Defendants cite a number of cases in which courts in this Circuit have transferred securities fraud cases to the venue in which the issuer is headquartered.  Dkt. Nos. 48, 54.  In each case, however, the court balanced the many factors governing the transfer inquiry, transferring venue only when the relevant facts combined to make a strong showing that transfer was in the interests of justice and would further the convenience of the witnesses and parties.[5]  Courts in this Circuit have not been reluctant to deny motion to transfer class actions involving securities fraud when that strong showing has not been made.  *See, e.g.*, *In re Anadarko Petroleum Corp.*, 2012 WL 12894796, at *1 (S.D.N.Y. Mar. 19, 2012); *Funke v. Life Fin. Corp.*, 2003 WL 194204, at *2–4 (S.D.N.Y. Jan. 28, 2003); *Parchmann v. MetLife, Inc.*, 2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018), *report and recommendation adopted*, 2018 WL 5113138 (E.D.N.Y. Oct. 19, 2018).  Ultimately, the transfer inquiry demands an individualized inquiry rather than application of any categorical rule granting transfer for certain types of cases.  *See Stewart*, 487 U.S. at 29.

---

[5] For example, many of the cited cases involved Exchange Act but not Securities Act claims, and thus no New York-based underwriters were named as defendants, nor was their conduct at issue. *See, e.g.*, *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925 (S.D.N.Y. Apr. 30, 2015); *Energy Transfer*, 2022 WL 17477854; *Doshi v. Gen. Cable Corp.*, 2014 WL 12774226 (S.D.N.Y. Feb. 5, 2014); *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 2019 WL 13217378 (S.D.N.Y. Aug. 9, 2019); *Erickson v. Corinthian Colleges, Inc.*, 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013);  *In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 1010039 (S.D.N.Y. Apr. 13, 2009) (Chin, J.); *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164 (E.D.N.Y. 2006).  And some of the cited cases concerned representative plaintiffs with no ties to New York whatsoever. *See, e.g.*, *Hanger Orthopedic*, 418 F. Supp. 2d at 167 (lead plaintiffs resided in Florida); *Steck v. Santander Consumer USA Holdings Inc*, 2015 WL 3767445, at *3 (S.D.N.Y. June 17, 2015) (only party opposing transfer was a company located in Germany); *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *5 (S.D.N.Y. Sept. 18, 2008) (plaintiff was Virginia resident);  *City of Pontiac*, 2015 WL 12659925, at *4 (plaintiff was a unit of local government in Michigan); *Energy Transfer*, 2022 WL 17477854, at *3 (lead plaintiffs not New York residents); *Doshi*, 2014 WL 12774226, at *2 (plaintiff did not reside in New York).

Upon reviewing the relevant factors, the Court concludes that Moving Defendants have not established their burden to show by clear and convincing evidence that transfer is warranted.

### A.    Plaintiff's Choice of Forum

The first factor weighs in favor of Lead Plaintiff.

"[P]laintiffs are ordinarily allowed to select whatever forum they consider most advantageous, . . . the 'plaintiff's venue privilege.'" *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Van Dusen*, 376 U.S. at 635).  "[A] plaintiff's choice of forum is presumptively entitled to substantial deference," for "our legal system has traditionally deferred to the plaintiff's choice of forum."  *Gross*, 386 F.3d at 230 (citing *Iragorri v. United Techs Corp.*, 274 F.3d 65, 70–71 (2d Cir. 2001) (en banc)).  Moreover, the plaintiff's choice of forum also "is generally accorded more deference" where "there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim."  *Goggins v. Alliance Cap. Mgmt., L.P.*, 279 F. Supp.2d 228, 232 (S.D.N.Y. 2003).  Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *see In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (plaintiff's choice of forum is "entitled to substantial consideration" (citation omitted)).

Moving Defendants argue that the Pension Fund's choice of forum should be given little weight because the Pension Fund purports to represent a class and the Pension Fund did not initiate this case in the Southern District of New York but rather joined a pre-existing action pursuant to the PSLRA's lead plaintiff selection process.  Dkt. No. 48 at 9–10.  The Second Circuit has stated that where a plaintiff has brought a class action, the plaintiff's choice of forum is accorded less weight.  *See Warrick*, 70 F.3d at 741 n.7 ("[T]he plaintiff's choice of forum is a less significant

consideration in a (here, putative) class action than in an individual action."); *see also Totilo v. Herbert*, 538 F. Supp. 2d 638, 640 (S.D.N.Y. 2008) ("Where . . . the plaintiff sues on behalf of a putative class, the degree of deference accorded its choice is diminished."); *Zainfeld v. Vivid Seats, LLC*, 2024 WL 2274920, at *2 (S.D.N.Y. May 20, 2024) (same). [6] "The reason is that in a class action there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim." *Goggins*, 279 F.Supp.2d at 232 (quotation omitted); *see also Eichenholtz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y. 1988); *Shulof v. Westinghouse Elec. Corp.*, 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975) ("Where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." (quoting *Koster v. Lumberman's Mut. Co.*, 330 U.S. 518, 524 (1947))).

However, an important corollary states that although a diffuse class is afforded less deference in its forum selection, when a "disproportionate share of the class" does have ties to a particular forum, that is a highly relevant consideration. *Warrick*, 70 F.3d at 741 n.7; *see In re Bystolic Antitrust Litig.*, 2021 WL 148747, at *3 (S.D.N.Y. Jan. 15, 2021) ("In addition, although the choice of forum made by a plaintiff that is a putative representative may be of less weight than

---

[6] In the analogous context of motions to dismiss for forum non conveniens, the Second Circuit has expressly "left open the question whether the class action nature of a suit lessens the level of deference." *Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 146 n.17 (2d Cir. 2002); *see Gilstrap v. Radianz Ltd.*, 233 F. App'x 83, 85 (2d Cir. 2007) ("This Court has not definitively answered what effect a plaintiff's representative capacity has on his or her choice of forum."); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 27–29 (2d Cir. 2002) (determining the amount of weight to give the plaintiff's selection based on the legitimacy of the plaintiff's motivations); *see also Celestin v. Martelly*, 698 F. Supp. 3d 443, 456–57 (E.D.N.Y. 2023) ("The Court discerns no reason to afford Plaintiffs' chosen forum less deference simply because they purport to represent a class of similarly situated individuals across the country.").

if it were suing solely in an individual capacity, it is relevant that many of the class members reside in New York."); *Marotto v. Kellogg Co.*, 2018 WL 10667923, at *5 (S.D.N.Y. Nov. 29, 2018) ("Following the reasoning of *Warrick*, the Court may presume that a disproportionate share of the putative New York consumer class members reside in and near the chosen forum, so that a denial of the motion to transfer would serve the convenience of a disproportionate share of the class."); *Sutherland v. Ernst & Young, LLP*, 2011 WL 13558340, at *6 (S.D.N.Y. Apr. 25, 2011) (holding that "the plaintiff's choice of forum weighs in favor of denying the motion to transfer" where "the putative New York law class members are current or former employees of E&Y in New York ); *Pauli v. Ollie's Bargain Outlet, Inc.*, 2022 WL 14760084, at *3 (N.D.N.Y. Oct. 25, 2022) (noting that the class consisted of current and former employees who worked for the defendant in New York); *Fairchild v. Eisai, Inc.*, 2011 WL 3438408, at *2 (D. Conn. Aug. 4, 2011) (considering residence of absent class members).  Members of a putative class have an interest in the case and an interest in where it is heard.  If the proposed class satisfies Federal Rule of Civil Procedure 23(b)(3), they are entitled to notice and an opportunity to opt out.  *See* Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–14 (1985).  They may be subject to discovery. *See Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67 (S.D.N.Y. 2020) (granting some discovery into absent class members); *Indergit v. Rite Aid Corp.*, 2015 WL 7736533 (S.D.N.Y. Nov. 30, 2015) (same); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 344715 (S.D.N.Y. Feb. 4, 2008) (same).  If the case is tried, they may be called as witnesses or have an interest in attending the proceedings.  And, if the case is settled, they will be entitled to notice and have an opportunity to object and be heard.  *See* Fed. R. Civ. P. 23(e).  All of these are legitimate concerns that warrant

deference to a class representative's selection of a forum with which many members of the putative class share a connection.[7]

Moreover, even if the class overall does not disproportionately favor a certain forum, the fact that a plaintiff's choice of forum is given less weight in the class action context than in other contexts does not mean it is given no weight. *See Scalabrini v. PMAB, LLC*, 2020 WL 1049167, at *8 (S.D.N.Y. Mar. 3, 2020) ("Affording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." (quoting *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002))); *see also Turner v. Trans-India Prods., Inc.*, 2020 WL 4369634, at *4 (E.D.N.Y. July 30, 2020) ("While a plaintiff's choice of forum is entitled to less deference in the context of a national class action, a representative plaintiff's choice is still entitled to some deference."); *In re Vale S.A. Sec. Litig.*, 2019 WL 4306362, at *2 (E.D.N.Y. Sept. 9, 2019) ("Plaintiff's choice of forum is, nevertheless, entitled to *some* deference, even in the context of a class action."); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *6 (E.D.N.Y. Sept. 22, 2015) ("Although a plaintiff's choice of forum is given less weight in the class action context, a representative plaintiff's choice is still entitled to some deference").[8]

Lead Plaintiff here is an institutional investor that claims to have lost almost half a million dollars as a result of its investment in PACS common stock. Dkt. No. 28-2. It has a substantial stake in the dispute. Had it filed the case on an individual basis only and not sought to take on the

---

[7] Neither party submits evidence here regarding the location of members of the putative class. Accordingly, the location of members of the class in this case is a neutral factor.

[8] Moving Defendants acknowledge that the plaintiff's choice of forum is still afforded at least "minimal weight" in securities fraud class actions. Dkt. No. 48 at 9. Moving Defendant's cited cases acknowledge the same. *See Doshi*, 2014 WL 12774226, at *4; *Glob. Cash*, 2008 WL 4344531, at *7. None of those cases state that a choice of forum made by a plaintiff representing a nationwide class commands no deference—only that its weight is less than it would be in a case brought in an individual capacity.

responsibility of representing a class, the Court would have accorded its choice of New York substantial weight. That it seeks to represent a class makes its choice of a New York forum no less legitimate, and thus that choice is "entitled to some deference." *Forsher v. J.M. Smucker Co.*, 2019 WL 235639, at *3 (E.D.N.Y. Jan. 16, 2019) (quoting *Stoltz*, 2015 WL 5579872, at *6). There is no reason to question the legitimacy of Lead Plaintiff's choice of forum here. The Pension Fund is headquartered and has always been headquartered in New York, New York. Dkt. No. 53-4 ¶ 2. Its seven satellite offices are all in New York and it does not have any offices located outside of New York. *Id.* ¶¶ 4–5. It has never maintained offices in Utah, and it does not and has never owned, used, or possessed any real property in Utah. *Id.* ¶ 7. Lead Plaintiff received the allegedly misleading materials in New York, made the decision to purchase the securities in New York, and suffered harm in New York. *See Rafton v. Rydex Secs. Funds,* 2010 WL 2629579, at *3 (N.D. Cal. 2010) (holding that this factor weighed against transfer because "Plaintiff resides here, received the relevant materials here, and purchased his Fund shares here," and "[t]hus, even though this is a class action, Plaintiff and Defendants have sufficient connections to this District to warrant giving Plaintiff's choice of forum significant weight").

The Moving Defendants assert that the Pension Fund "did not even choose to bring the suit in this forum—it entered a pre-existing action in the lead plaintiff process." Dkt. No. 48 at 10. That is a distinction without a difference. As Moving Defendants acknowledge, the Pension Fund was not required to file in this action; it could have filed a separate action elsewhere. Dkt. No. 54 at 2 n.2. That the Pension Fund joined this case through a motion to become lead plaintiff rather than by filing a complaint does not entitle its choice of the Southern District of New York to lesser deference. It is irrelevant that two other investors beat the Pension Fund to the punch by filing initial complaints. The PSLRA expressly contemplates that a person seeking to pursue a claim as

lead plaintiff need not file a new complaint for its application to be considered. 15 U.S.C. § 78u–4(a)(3)(A)(ii), (B)(i). Any different rule would simply lead to a needless proliferation of complaints. And the Pension Fund has taken the position that it wishes to prosecute this case in this District and will file a consolidated amended complaint once the Court has ruled on the motion to transfer. Dkt. No. 46.

The cases cited by Moving Defendants, Dkt. No. 48 at 10, are inapposite. In *Actmedia, Inc. v. Ferrante*, the court discounted the plaintiff's choice of a New York forum because the case had been removed from state court—i.e., the plaintiff had actively selected a different court. 623 F. Supp. 42, 44 (S.D.N.Y. 1985). Moreover, transfer was justified on numerous other grounds, including that the plaintiff was a large national organization while the defendant was a start-up with six employees, the claims did not arise in New York, and "the necessity of defending this litigation in New York could bring ruin to defendant." *Id.* at 43–44. Similarly, in *Encarnacion v. Goord*, the court did not give plaintiff's choice of forum deference where plaintiff "did not choose the West District venue, but rather filed his original complaint in the Southern District," and the Southern District had transferred the case to the Western District *sua sponte*. 2018 WL 3491287, at *1, 5 (W.D.N.Y. July 18, 2018).

The Pension Fund has never selected any venue for this case other than the Southern District of New York. Moving Defendants do not cite a single case in which a court gave the plaintiff's choice of venue any less deference simply because the plaintiff chose the venue after another putative class representative filed a lawsuit in that same venue.

## B. The Convenience of Witnesses

After the plaintiff's choice of forum, the convenience of the witnesses is considered to be "the most important . . . in considering a § 1404(a) motion to transfer." *Larew v. Larew*, 2012 WL

87616, at *4 (S.D.N.Y. Jan. 10, 2012) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)).

The Moving Defendants argue that the convenience of the witnesses weighs in favor of transfer to the District of Utah on the theory that the key witnesses will be those who participated in the drafting or distribution of the challenged statements—most of whom are domiciled in Utah and none of whom are domiciled in New York. Dkt. No. 48 at 6. In support of that claim, the Moving Defendants rely on Apt's declaration, which states that "[t]he PACS employees who had a role in drafting and distributing the statements in the SEC filings, press releases, and investor presentations challenged in the complaints in this matter, as well as the PACS officers who spoke on the earnings calls cited in the complaint, all resided in Utah at the time the statements were made, and all worked at PACS's corporate headquarters in Utah." Dkt. No. 50 ¶ 9. Nearly all continue to reside in Utah full time, with the exception of Apt himself who resides in Utah only part time. *Id.* ¶¶ 6, 9. Apt is silent with respect to third-party witnesses.

Lead Plaintiff counters that the Apt declaration is entirely conclusory. It does not indicate who any of the witnesses would be, what they would say, or why testifying in New York would be inconvenient for any of them. Dkt. No. 52 at 9.

Ordinarily, "[b]ecause of the importance of this factor, the party seeking transfer 'must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover.'" *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185–86 (E.D.N.Y. 2003) (quoting *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)); *see also Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."),

20

*overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *IKB Int'l S.A. v. Wilmington Trust Co.*, 2017 WL 4084052, at *4 (S.D.N.Y. Sept. 14, 2017) (same); *YLD Ltd. v. Node Firm, LLC*, 2016 WL 183564, at *2 (S.D.N.Y. Jan. 14, 2016) ("[T]he movant must identify material witnesses and supply a general description of what their testimony will cover."); *Larew*, 2012 WL 87616, at *4 (same). Furthermore, "[i]n considering the convenience of the witnesses, the Court should not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum [but] must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 436 (E.D.N.Y. 2012); *see also Johnson v. Costco*, 2021 WL 3128236, at *2 (S.D.N.Y. July 23, 2021) (same). Nonetheless, courts have been willing to relieve the moving party of the need to provide a list of witnesses and the probable subject matter of their testimony where "it is obvious that a substantial portion of the witnesses are located in the transferee district." *Energy Transfer*, 2022 WL 17477854, at *3.

The Court considers this factor to be neutral. The persons identified by the Moving Defendants are all current employees, and although the convenience of party witnesses is "not wholly insignificant," it does not weigh as heavily as inconvenience to non-party witnesses. *Pilevesky v. Suntrust Bank*, 2010 WL 4879006, at *3 (E.D.N.Y. Nov. 22, 2010); *see also Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F. Supp. 2d 356, 364 (E.D.N.Y. 2009). Even "former employees are not entitled to the same deference shown to other non-party witnesses because . . . [they] are more likely willing to attend trial than other non-party witnesses." *Pilevesky*, 2010 WL 4879006, at *3 (internal quotation marks and citation omitted); *see also Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 550 (S.D.N.Y. 2024).

And given that a majority of the ten Underwriter Defendants are headquartered in New York, the Underwriter Defendants' relevant employee witnesses are presumably located here as well.[9]  "The convenience of the Underwriter Defendants' employees may maintain some significance," *Steck*, 2015 WL 3767445, at *4 (emphasis omitted), but Moving Defendants and the Underwriter Defendants alike are silent with respect to the relative convenience for the Underwriter Defendants' employee witnesses to sit for a deposition or attend trial in Utah as compared to New York.[10]

### C.    The Convenience of the Parties

The convenience of the parties becomes a neutral factor in the transfer analysis, where, as here, "transferring venue would merely shift the inconvenience to the other party." *NYC Vision Cap., Inc. v. C21FC, LLC*, 2022 WL 2527611, at *6 (S.D.N.Y. July 7, 2022) (quoting *IDT Domestic Telecome, Inc. v. Estrella Telecom, Inc.*, 2010 WL 1047648, at *3 (S.D.N.Y. Mar. 19 2010)); *see Garnish & Gather, LLC v. Target Corp.*, 2019 WL 6729152, at *2 (S.D.N.Y. Dec. 11, 2019); *Berger v. Cushman & Wakefield of Penn., Inc.*, 2013 WL 4565256, at *4 (S.D.N.Y. Aug. 28, 2013); *Williams v. Frank Martz Coach Co.*, 2014 WL 2002853, at *6 (E.D.N.Y. May 14, 2014); *Gerson v. Lurie*, 2013 WL 444013, at *2 (E.D.N.Y. Feb. 1, 2013).

Lead Plaintiff is located entirely in New York, Dkt. No. 53-4, and it is likely that representatives of Lead Plaintiff will be deposed with respect to class certification and potentially

---

[9] Citigroup, JP Morgan, RBC Capital Markets, Goldman Sachs, and Oppenheimer all are headquartered in the Southern District of New York. *New Orleans* Compl. ¶¶ 43–44, 46–47, 49. Truist, Stephens, and UBS maintain offices in the Southern District of New York. *Id.* ¶¶ 45, 48, 50; *see also* Dkt. No. 48 at 2 (stating that six of the ten Underwriter Defendants are headquartered in New York).

[10] While the Underwriter Defendants have joined in the motion to transfer, they tellingly do not argue or offer evidence that trial in Utah would be more convenient for them.  Their joinder smacks of forum-shopping.

with respect to the merits. Given the size of Lead Plaintiff's stake in the outcome of this action, it is also likely representatives would wish to attend the trial.

While the majority of the Underwriter Defendants are located in New York and none claim to be located in or near Utah, the Court gives no consideration to their convenience in the analysis because they have joined the motion to transfer. *See Steck*, 2015 WL 3767445, at *4 ("[P]arties can waive the issue of their own convenience, in which case it is given no consideration in the analysis.").

PACS is located in Utah. The Court thus presumes that a Utah forum would be more convenient for PACS than a New York forum. That presumption, however, is qualified. Had the Underwriter Defendants, rather than an investor class, chosen to sue PACS in New York on claims related to PACS's offerings, PACS would be unable to complain of inconvenience. The underwriting agreements for the IPO and SPO contained a choice-of-forum provision under which PACS agreed that disputes between PACS and the Underwriter Defendants would be resolved in a New York court and not in Utah. Dkt. No. 53-5 at 36[11] (agreeing that PACS "waives any objection which it may now or hereafter have to the laying of venue of any such proceeding" arising out of or based upon the agreement or transactions contemplated by the agreement "in any State or U.S. federal court in The City of New York and County of New York"); Dkt. No. 53-6 at 36[12] (agreeing to same); *see Wistron Neweb*, 2022 WL 17067984, at *8 ("[A] permissive forum selection clause is determinative of the parties' convenience." (quotation omitted)).[13] PACS's complaint about litigating in New York against the class with respect to the IPO and the SPO is of

---

[11] ECF pagination.
[12] ECF pagination.
[13] Indeed, has the class sued the Underwriter Defendants alone on a Section 11 claim and the Underwriter Defendants cross-claimed for indemnity and contribution against PACS, PACS could not have complained of a New York forum.

lesser weight given its willingness to accept a New York court for a dispute with the Underwriter Defendants over those same offerings.

Moving Defendants protest that a lawsuit in New York might disrupt PACS's business operations by requiring its executives to fly to this forum, *see* Dkt. No. 48 at 9 (citing *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *4 (S.D.N.Y. May 30, 2019)), but that argument strains credulity given that the executives chose to use New York banks for the underwritings and the Hindenburg Report and news articles indicate that at least some of the relevant executives travel to New York for business and own private jets that could minimize disruption.  Dkt. No. 53-1 at 34–35[14]; Dkt. No. 52 at 11 n.2 (citing *PACS Group, Inc. Announces Closing of Its Initial Public Offering and Full Exercise of the Underwriters' Option to Purchase Additional Shares from the Selling Stockholders*, PACS (Apr. 15, 2024), https://ir.pacs.com/news-events/press-releases/detail/99/pacs-group-inc-announces-closing-of-its-initial-public-offering-and-full-exercise-of-the-underwriters-option-to-purchase-additional-shares-from-the-selling-stockholders); *see also Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J., concurring) ("Jet travel and satellite communications have significantly altered the meaning of 'non conveniens.'"); *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 24 (S.D.N.Y. 2012) (noting that "the number of major airports in close proximity to New York City . . . suggest that New York City may be a more convenient forum to travel to"); *Burlington Indus., Inc. v. Salem Int'l Co.*, 645 F. Supp. 872, 875–76 (S.D.N.Y. 1986) ("While no doubt it would be more convenient for defendants to have the action tried at their home base, the claim that it is burdensome to travel to this District is without substance" because "[t]he airplane trip to this District from defendants' offices or homes is of short duration, with planes conveniently leaving

---

[14] ECF pagination.

. . . on a frequent basis during the day and available for return at a like schedule."). PACS does not identify any particular disruption that would arise from defending a lawsuit in New York as opposed to Utah. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 696 (S.D.N.Y. 2009) (Chin, J.) (rejecting argument that the plaintiff's operations would be placed "in serious jeopardy" if it was required to send its key personnel across the country for a trial because the plaintiff "surely must be able to make arrangements for coverage when its key personnel must travel" (quotation omitted)).

  **D.  The Locus of Operative Facts**

  "The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *SBAV LP v. Porter Bancorp, Inc.*, 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *Smart v. Goord,* 21 F.Supp.2d 309, 316 (S.D.N.Y. 1998)). "The determination of the locus of operative facts for purposes of choice of venue is not a mechanical exercise divorced from the substance of a dispute." *Wistron Neweb*, 2022 WL 17067984, at *8. "The factor is addressed to determining the venue which has the greatest interest in the resolution of the dispute and where evidence relevant to its resolution may be located." *Id.* There is a "local interest in having localized controversies decided at home." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). As stated, at least some of the facts bearing upon class certification are located within this district.

  Where a Section 10(b) securities fraud lawsuit is filed against an issuer alone on the basis the issuer has made, the locus of operative facts is the location from which the misrepresentations and omissions emanated. *See Hanger Orthopedic*, 418 F. Supp. 2d at 16 ("Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." (quoting *In re Nematron Corp.,* 30 F.Supp.2d at 404)).

A different question is presented, however, regarding the locus of operative facts with respect to the Section 11 claims.  Although the statements alleged to be misleading may have emanated from Utah, the offerings were underwritten by firms mainly located in New York, pursuant to underwriting agreements that provided that the lead underwriters, primarily located in New York, would purchase and then distribute the securities for delivery in New York, with indemnification and contribution provisions enforceable in the courts of New York and governed by New York law.  Dkt. No. 53-5 §§ 2, 3, 8, 14, 18; Dkt. No. 53-6 §§ 2, 3, 8, 14, 18.  There is no dispute that the Underwriter Defendants' due diligence would have been conducted from New York and the securities sold from New York.  Although the misstatements may have emanated from Utah, "critical events took place in this District."  *SEC v. Milton*, 2022 WL 3156180, at *9 (S.D.N.Y. Aug. 8, 2022); *see Funke*, 2003 WL 194204, at *3 (S.D.N.Y. Jan. 28, 2003) (denying motion to transfer where "[t]he locus of operative facts is . . . split—some [occurred] in California (the accounting calculations); some occurred in New York (the underwriting and the IPO)"); *Nematron*, 30 F. Supp. 2d at 404 (considering location of due diligence efforts in determining the locus of operative facts).[15]  A court sitting in New York with a jury sitting in New York would have an interest in addressing the standard of care of underwriters sited in New York.  "Where significant contacts exist with several fora, the locus of operative events becomes less of a concern in deciding the motion to transfer venue."  *Colabufo v. Cont'l Cas. Co.*, 2006 WL 1210919, at *3 (E.D.N.Y. Apr. 27, 2006).

---

[15] Moving Defendants argue that "the Underwriter Defendants' potential due diligence defense will arise only if liability is established."  Dkt. No. 48 at 7 (quoting *Garity*, 2019 WL 2314691, at *3).  But the fact that the Underwriter Defendants' liability is contingent does not mean that the operative facts concerning the Underwriter's liability do not bear upon transfer.

Because the locus of operative facts with respect to the Section 10(b) claim lies in Utah and the operative facts relevant to the Section 11 claim are split between Utah and New York, this factor weighs in favor of transfer.

### E.    The Location of Relevant Documents and Relative Ease of Access to Sources of Proofs, The Availability of Process to Compel the Attendance of Unwilling Witnesses, and the Relative Means of the Parties

The factors pertaining to the location of relevant documents, availability of process, and relative means of the parties all are neutral.

"As a general rule, courts have consistently held that the 'location of relevant documents is not a major consideration in an era of electronic records and eDiscovery.'" *Energy Transfer*, 2022 WL 17477854, at *4 (quoting *Datacatalyst, LLC v. Infoverity, LLC*, 2020 WL 1272199, at *4 (S.D.N.Y. Mar. 17, 2020)). "[A]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport." *IKB Int'l S.A.*, 2017 WL 4084052, at *6 (quoting *Constitution Reinsurance Corp. v. Stonewall ins. Co.*, 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995)); *see also Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). Moving Defendants suggests that the location of relevant documents weighs in favor of transfer to Utah because securities fraud cases invariably involve the production of a large amount of documents, almost all of which will be in the Defendants' possession. Dkt. No. 48 at 7–8. But they offer no evidence that they actually possess a large quantity of documents relevant to this case or that those documents do not exist in electronic form. The Underwriter Defendants are similarly silent as to where their documents reside and thus the Court presumes

that they are located where those defendants are located—primarily in New York. And the documents of Lead Plaintiff would be in New York, where the Lead Plaintiff is located.

The factor pertaining to the availability of process by which the Court could compel unwilling non-party witnesses to testify "does not enter the Court's analysis" where, as here, the parties do not present evidence suggesting "that any of the non-party witnesses would be unwilling to testify." *Wistron Neweb*, 2022 WL 17067984, at *9 (quoting *Soto v. Bey Transp. Co.*, 1997 WL 407247, at *4 (S.D.N.Y. July 21, 1997)); *see also Cosa Xentaur Corp v. Bow*, 2014 WL 1331030, at *14 (E.D.N.Y. Mar. 31, 2014) (describing the factor as "inapplicable" when defendant did not allege that witness "indicated that he would be unwilling to testify . . . absent compulsion").

"In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, 2009 WL 2252116, at *8 (S.D.N.Y. July 28, 2009) (quotation omitted). No party demonstrates that litigating in New York or Utah would unduly burden its finances. *See Kaufman v. Salesforce.com, Inc.*, 2021 WL 1687378, at *11 (S.D.N.Y. Apr. 29, 2021), *aff'd*, 2021 WL 2269552 (S.D.N.Y. June 3, 2021). PACS is one of the largest operators of skilled nursing facilities, with more than 40,000 employees serving over 27,000 patients daily across its national portfolio of approximately 280 facilities in 16 states. *New Orleans* Compl. ¶¶ 4, 23. Its revenue is in the millions. *Id.* ¶¶ 8, 24. The Individual Defendants likewise have not shown any lack of means. Murray and Hancock paid themselves $194.5 million in dividends prior to the April 2024 IPO and have since sold $656.5 million in stock. Dkt. No. 53-1 at 4–5. For its part, the Pension Fund describes itself as a "large, sophisticated institutional investor." Dkt. No. 27 at 3. Its website indicates it has "more

than $16.8 billion in assets."  Dkt. No. 48 at 11 (quoting *Who We Are*, 1199SEIU Family of Funds, https://www.1199seiubenefits.org/about-1199seiu-funds/who-we-are/).

### F.    Familiarity with the Governing Law and Trial Efficiency

The forum's familiarity with the governing law is a neutral factor.  "[F]ederal courts throughout the nation are equally capable of applying federal securities laws."  *Global Cash Access*, 2008 WL 4344531, at *7.

By contrast, trial efficiency favors keeping this case in the Southern District of New York. Moving Defendants argue that calendar congestion favors Utah because the docket there contains approximately 500 pending cases per judgeship compared to 593 pending cases per judgeship in the Southern District of New York.  Dkt. No. 48 at 12.[16]  "[D]ocket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight."  *Miller v. Bombardier Inc.*, 1993 WL 378585, at *5 (S.D.N.Y. Sept. 23, 1993).  However, "[c]ourts in this District generally tread lightly on the issue of comparing calendar congestion across federal districts."  *SEC v. Brda*, 2024 WL 4817475, at *9 (S.D.N.Y. Nov. 18, 2024) (quoting *Alpha Indus., Inc.* v. *Alpha Clothing Co. LLC*, 2021 WL 2688722, at *8 (S.D.N.Y. June 30, 2021)); *see also Nuss* v. *Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *9 (S.D.N.Y. May 5, 2021) (declining to decide which district is "busier or more burdened"); *Duro Textiles, LLC v. Ricci*, 2014 WL 641443, at *3 (S.D.N.Y. Feb. 18, 2014) ("This Court will tread lightly on the issue of comparing calendar congestion across federal districts.  Both districts have busy calendars.").

---

[16] Moving Defendants rely upon a caseload statistics data table that is available at https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distcomparison1231.2024.pdf). That table does not purely support Moving Defendants' argument as it indicates that the median time for civil filings to receive a disposition is 6.6 months in the Southern District of New York and 9.2 months in the District of Utah.  Therefore, even if the District of Utah has a slightly lower per-judge caseload, that statistic does not translate directly into trial efficiency.

What is more significant is that the consolidated shareholder derivative action is pending in this Court. *In re PACS Group, Inc. Derivative Litigation*, No. 25-cv-1343 (S.D.N.Y.). That case presents similar facts and issues to those presented in the instant suit. Accordingly, trial efficiency would be enhanced by the two sets of cases being heard by the same judge in the same District. *See Savin v. CSX Corp.*, 657 F. Supp. 1210, 1214 (S.D.N.Y. 1987) (Walker, J.) ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." (quoting *Wyndham Associates v. Bintliff, A.G.*, 398 F.2d 614, 619 (2d Cir. 1968), *cert. denied*, 393 U.S. 977 (1968))); *see also Ahrens*, 2016 WL 2932170, at *4; *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999); *cf. Milton*, 2022 WL 3156180, at *9 (holding that the existence of private securities actions pending before the proposed transferee court did not weigh in favor of transfer because the SEC's case would not be consolidated with the private actions and because the SEC's case was more similar to a criminal trial proceeding within the transferor district).

## CONCLUSION

In sum, the only factor even somewhat supporting transfer is the locus of operative facts. On the other side, the deference owed to Lead Plaintiff's choice of forum and concerns regarding trial efficiency counsel against transfer. All of the remaining factors are neutral. The Court determines that the balance of these factors lean against transfer to the District of Utah. The Moving Defendants have not satisfied their burden. The motion to transfer venue is accordingly DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 47.

SO ORDERED.

Dated: May 2, 2025
     New York, New York
                                            LEWIS J. LIMAN
                                  United States District Judge