# Exhibit 5

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-16
Baltimore, Maryland   21244-1850



## Center for Clinical Standards and Quality/Quality, Safety & Oversight Group

**Ref: QSO-23-13-ALL**

**DATE:**      May 01, 2023

**TO:**        State Survey Agency Directors

**FROM:**      Directors, Quality, Safety & Oversight Group (QSOG) and Survey & Operations Group (SOG)

**SUBJECT:**   Guidance for the Expiration of the COVID-19 Public Health Emergency (PHE)

<div style="border:1px solid black;">

### Memorandum Summary

- Social Security Act Section 1135 emergency waivers for health care providers will terminate with the end of the COVID-19 Public Health Emergency (PHE) on May 11, 2023.
- Certain regulations or other policies included in Interim Final Rules with Comments (IFCs) will be modified with the ending the PHE. Certain policies, such as the Acute Hospital at Home initiative and telehealth flexibilities have been extended by Congress through December 31, 2024.
- Long Term Care and Acute and Continuing Care providers are expected to be in compliance with the requirements according to the timeframes listed below.

</div>

### Background:

The Secretary's authority in Section 1135 of the Social Security Act (the "Act"), allowed CMS to issue several temporary emergency statutory and regulatory waivers and flexibilities to help providers respond to the COVID-19 Public Health Emergency (PHE) and focus on the needs of beneficiaries while working to prevent the spread of COVID-19.  Since the Secretary has announced the PHE will end on May 11, 2023, the authority to issue and maintain 1135 waivers ends on that date.  This memorandum outlines the expiration of the emergency waivers issued during the PHE related to the minimum health and safety requirements for Long Term Care (LTC) and Acute and Continuing Care (ACC) providers.  This memorandum also describes the timelines for certain regulatory requirements issued during the PHE through Interim Final Rules with Comments (IFCs).  The guidance for the termination of emergency waivers and timelines for requirements issued through IFCs are grouped by provider type, starting with guidance that affects all provider-types.

For all LTC and ACC providers/suppliers: Pages 2-3.
For LTC facilities (i.e., nursing homes): Pages 3-6.

For ACC providers: Pages 6-23

## All Providers/Suppliers

**Staff Vaccination Requirements**
On November 5, 2021, the U.S. Department of Health and Human Services' Centers for Medicare & Medicaid Services (CMS) issued an interim final rule (CMS-3415-IFC) requiring Medicare and Medicaid-certified providers and suppliers to ensure that their staff were fully vaccinated for COVID-19 (i.e., obtain the primary vaccination series), which was a critical step to protect patients. On April 10, 2023, the President signed legislation that ended the COVID-19 national emergency. On May 11, 2023, the COVID-19 public health emergency is expected to expire. In light of these developments and comments received on the interim final rule, CMS will soon end the requirement that covered providers and suppliers establish policies and procedures for staff vaccination. CMS will share more details regarding ending this requirement at the anticipated end of the public health emergency. We continue to remind everyone that the strongest protection from COVID-19 is the vaccine. Therefore, CMS urges everyone to stay up to date with your COVID-19 vaccine.

**Emergency Preparedness**
*Training and Testing Program Exemption*
The following information supersedes the previously issued QSO-20-41-ALL-REVISED memo for all certified providers/suppliers. CMS regulations for Emergency Preparedness (EP) require the provider/supplier to conduct exercises to test their EP plan to ensure that it works and that staff are trained appropriately about their roles and the provider/supplier's processes. During or after an actual emergency, the EP regulations allow for a one-year exemption from the requirement that the provider/supplier perform testing exercises. The exemption only applies to the next required full-scale exercise (not the exercise of choice), based on the 12-month exercise cycle. The cycle is determined by the provider/supplier (e.g., calendar, fiscal or another 12-month timeframe). The exemption only applies when a provider/supplier activates its emergency preparedness program for an emergency event.

**Providers/suppliers are expected to return to normal operating status and comply with the regulatory requirements for emergency preparedness with the conclusion of the PHE.** This includes conducting testing exercises based on the regulatory requirements for specific provider/supplier types as follows:
- **Inpatient Providers and Suppliers[1]:** The provider/supplier must conduct a full-scale exercise within its annual cycle for 2023 and an exercise of choice.

---

[1] Inpatient providers and suppliers include: Inpatient hospice facilities, Psychiatric Residential Treatment Facilities (PRTFs), hospitals, Long-Term Care (LTCs) facilities, Intermediate Care Facilities for Individuals with Intellectual Disabilities (ICFs/IIDs), and Critical Access Hospitals (CAHs).

- **Outpatient Providers**[2]: The provider/supplier must conduct either a full-scale exercise or an exercise of choice within its annual cycle for 2023, if scheduled to conduct the full-scale exercise within 2023. The provider/supplier must conduct the exercise of choice, if scheduled during the annual cycle for 2023 and resume the full-scale exercise requirement in 2024.

## Long Term Care Facilities
## (Skilled Nursing Facilities (SNFs) and/or Nursing Facilities (NFs))

CMS terminated many of the 1135 Emergency Waivers for Long Term Care in April 2022 (see QSO-22-15-NH & NLTC & LSC). Information on the remaining regulatory waivers and IFC requirements for LTC facilities is listed below.

**3-Day Prior Hospitalization**
- Pursuant to the authority granted under section 1812(f) of the Act, CMS effectively waived the Medicare Part A SNF coverage requirement that a Medicare beneficiary must have a 3-day qualifying hospital stay (QHS) to qualify for a covered Part A SNF stay (3-day QHS waiver). Additionally, by the same authority under section 1812(f) of the Act, CMS granted certain beneficiaries who exhausted their SNF benefits a one-time renewal of SNF Part A coverage, beginning a new benefit period, without first having the typical 60-day wellness period that must typically occur before a beneficiary to obtain a new benefit period. These waivers will terminate immediately with the expiration of the COVID-19 PHE. This means that all new SNF stays beginning on or after May 12th will require a qualifying hospital stay before Medicare coverage. Additionally, for any new benefit period that begins on or after May 12th, the beneficiary will need to have completed a 60-day wellness period.

**Alcohol-based Hand-Rub (ABHR) Dispensers**
- CMS waived the requirement for ABHR dispensers for SNF/NFs at 42 CFR 483.90(a) during the PHE because of the need for the sudden increased use by staff and others of ABHR in infection control. The waiver of this requirement ends with the conclusion of the PHE.

**Preadmission Screening and Annual Resident Review: (PASARR)**
- CMS waived 42 CFR 483.20(k), allowing nursing homes to admit new residents who have not received Level I or Level II Preadmission Screening. The waiver of this requirement ends with the conclusion of the PHE.

---

[2] Outpatient providers and suppliers include: Ambulatory Surgical Centers (ASCs), freestanding/home-based hospice, Program for the All-Inclusive Care for the Elderly (PACE), Home Health Agencies (HHAs), Comprehensive Outpatient Rehabilitation Facilities (CORFs), Organizations (which include Clinics, Rehabilitation Agencies, and Public Health Agencies as Providers of Outpatient Physical Therapy and Speech-Language Pathology Services), Community Mental Health Clinics (CMHCs), Organ Procurement Organizations (OPOs), Rural Health Clinics (RHCs), Federally Qualified Health Centers (FQHCs), and End-Stage Renal Disease (ESRD) facilities.

CMS expects all providers to be in compliance with the requirements for PASARR with all admissions taking place after May 11, 2023.  The medical record for residents with a mental illness (MI) or intellectual disability (ID) must include evidence that PASARR Level I pre-screening is completed prior to admission and if the Level I pre-screening is positive, Level II screening is conducted prior to admission to the facility.  If the State program permits the use of exceptions and the resident remains in the facility longer than 30 days, the medical record must include evidence of Level I pre-screening and a referral to the appropriate state-designated authority for Level II screening if the Level I pre-screening is positive on or before the 30th day of admission.

### Resident Roommates and Grouping

- CMS waived the requirements in 42 CFR 483.10(e)(5) and (7) solely for the purposes of grouping or cohorting residents with respiratory illness symptoms and/or residents with a confirmed diagnosis of COVID-19 and separating them from residents who are asymptomatic or tested negative for COVID-19. This waiver of these requirements ends with the conclusion of the PHE (note that Section (e)(6) was terminated on 05/10/2021 per QSO-21-17).

  **Note:** Surveyors may need to consider whether a resident who was transferred to a different room within a facility or to a different facility as part of COVID-related cohorting was given the option to move back to his or her original room or facility or to stay in the new room or facility, depending on room availability.  The resident's room preference should not be based on payment source.

### Resident Transfer and Discharge

- CMS waived requirements in 42 CFR 483.10(c)(5) facility to provide advance notification of options relating to the transfer/discharge to another facility; 483.15, (c)(5)(i) and (iv), (c)(9), and (d) the written notice of transfer or discharge to be provided before the transfer or discharge. This notice must be provided as soon as practicable (with some exceptions); to allow a long-term care (LTC) facility to transfer or discharge residents to another LTC facility solely for cohorting purposes.  This waiver of these requirements ends with the conclusion of the PHE. (note that 483.10 (e)(3) was terminated on 05/10/2021 per QSO-21-17).

  **Note:** Surveyors may need to consider whether a resident who was transferred to a different facility as part of COVID-related cohorting was given the option to move back to the facility or to stay in the new facility, depending on room availability.  The resident's preference should not be based on payment source.

### Nurse Aide Training Competency and Evaluation Programs (NATCEP)

- CMS waived the requirements which require that a SNF and NF may not employ anyone for longer than four months unless they met the training and certification requirements under 42 CFR §483.35(d) (except for 42 CFR §483.35(d)(1)(i)). CMS provided additional guidance for this waiver with the release of QSO-21-17-NH.  This memo strongly encouraged states and nurse aides, "to explore ways to complete all training and certification requirements as soon as possible."  CMS memorandum QSO-22-15-NH &

NLTC & LSC terminated this blanket waiver, however, individual States and facilities could apply for a separate time-limited waiver of these requirements for instances where the volume of nurse aides that must complete a state-approved NATCEP exceeded the availability of approved training and testing programs.  All individual waivers granted to States and individual facilities will terminate at the conclusion of the PHE, unless a facility or State has been granted a waiver that expires prior to the end of PHE Uncertified nurse aides working in a Long Term Care facility covered by a waiver granted to a State or individual facility will have 4 months from the date the PHE ends (or from the termination date of the facility's or state's waiver, if earlier) to complete a state approved NATCEP program.  This includes those LTC care facilities, or facilities in states that were granted an extension of the waiver after October 6, 2022.

**Requirements for Reporting related to COVID-19**

- CMS published an IFC (CMS-5531-IFC) requiring all LTC facilities report COVID-19 information using the Center for Disease Control (CDC) National Healthcare Safety Network (NHSN) (42 CFR 483(g)). Additionally, facilities are required to inform the residents, their representatives and families following the occurrence of either a single confirmed infection of COVID-19 or three or more residents or staff with new-onset of symptoms. This requirement to report information was extended through a final rule (CMS-1747-F) and is set to terminate on December 31, 2024, with the exception of the requirements at § 483.80(g)(1)(viii), which will continue to be in effect as a requirement to support national efforts to control the spread of COVID-19.
  - The reporting requirements referenced above also include provisions for reporting COVID-19 information to residents, their representatives and families (per 42 CFR 483.80(g)(3)). The CMS final rule that set reporting requirements to terminate on December 31, 2024 (CMS-1747) was released in November 2021, and at that time, this type of reporting was necessary. However, CMS is concerned that the effort required to continue this reporting provision may outweigh the utility of the information provided. For example, we have heard that providing families with the total number of cumulative COVID-19 cases (from June 2020) is not useful information. Additionally, this information is now publicly available on CMS' COVID-19 Nursing Home Data Website. Therefore, CMS is exercising enforcement discretion and will not expect providers to meet the requirements at 42 CFR 483.80(g)(3) at this time. All other reporting requirements referenced above remain in effect until December 31, 2024.

- CMS issued an IFC (CMS–3414–IFC) requiring facilities to report the COVID-19 vaccination status of residents and staff through NHSN (§483.80(g)(1)(viii) . Through a subsequent rulemaking on November 9, 2021 at CMS-1747-F, the requirement for reporting the COVID-19 vaccine status of residents and staff through NHSN is permanent and will continue indefinitely unless additional regulatory action is taken.

**Requirements for Educating about and Offering Residents and Staff the COVID-19 Vaccine**

- On May 21, 2021, CMS issued an IFC (CMS–3414–IFC) requiring all LTC facilities to educate residents and staff on the COVID-19 vaccine (including any additional doses) and offer to help them get vaccinated. Pursuant to section 1871(a)(3) of the Act, Medicare interim final rules expire 3 years after issuance unless the Secretary determines an earlier end date. Therefore, this requirement will remain in effect until May 21, 2024 unless additional regulatory action is taken.

**Requirements for COVID-19 Testing**

- On August 25, 2020, CMS issued an IFC (CMS-3401-IFC) requiring LTC facilities to perform routine testing of residents and staff for the COVID-19 infection. As noted in the IFC, this testing regulation will expire with the end of the PHE.

  **Note:** CMS issued the testing requirements early in the COVID-19 PHE to ensure facilities were conducting the volume and frequency of tests needed to identify COVID-19 cases and prevent transmission, such as surveillance testing of nursing home staff. Throughout the PHE, CDC and CMS have updated the testing guidance, including most recently, removing the recommendation for surveillance testing of staff. However, COVID-19 testing is still an important action and is a nationally recognized standard to help identify and prevent the spread of COVID-19. Therefore, while this specific regulatory requirement will end with the PHE, CMS still expects facilities to conduct COVID-19 testing in accordance with accepted national standards, such as CDC recommendations. Noncompliance with this expectation will be cited at F-880 for failure to implement an effective Infection Prevention and Control Program in accordance with accepted national standards.

**Focused Infection Control (FIC) Surveys**

- In QSO-20-31-All States are required to conduct FIC surveys in 20% of their nursing homes in fiscal year 2023. They are not required to conduct additional FIC surveys in fiscal year 2024. CMS will continue to make the FIC survey available for states to use at their discretion (e.g., to conduct complaint surveys when concerns related to COVID-19 infection control arise).

## <u>Acute and Continuing Care (ACC) Provider Flexibilities</u>

CMS is ending the following emergency declaration flexibilities for ACC providers with the conclusion of the COVID-19 PHE. Providers are expected to take immediate steps so that they may return to compliance with the reinstated health and safety requirements as noted below.

**For Flexibilities Terminating and Returning to Pre-PHE Requirements upon the <u>Conclusion of the PHE</u>. CMS expects all providers to be in compliance with all applicable requirements after May 11, 2023, unless otherwise noted below.**

**Ambulatory Surgical Centers (ASCs)**
*Ambulatory Surgical Centers & Licensed Independent Freestanding Emergency Departments (IFEDs) Temporary Hospital Conversion*

- CMS allowed currently enrolled ASCs to temporarily enroll as hospitals and to provide hospital services to help address the urgent need to increase hospital capacity to take care of patients.  Other interested entities, such as state-licensed IFEDs, could also pursue enrolling temporarily as a hospital during the PHE.  As of December 1, 2021, no new ASC or new IFED requests to temporarily enroll as hospitals have been accepted.  Refer to QSO-22-03 for more information. **ASCs must decide either to meet the certification standards for hospitals at 42 CFR part 482 or return to ASC status when the PHE ends.**  If they choose to return to ASC status, they can only be paid under the ASC payment system for services on the ASC Covered Procedures List.  **Additionally, when the PHE ends, the temporary Medicare IFEDs can no longer bill Medicare for services as their temporary Medicare certification would end.**

  *Voluntary Termination of ASC's Temporary Hospital Status*
  The temporarily enrolled hospital must submit a notification of intent to convert back to an ASC to the applicable CMS Survey and Operations Group (SOG) location on or before the conclusion on the PHE (May 11, 2023) via email or mailed letter.  The notification should include the temporary hospital's and ASC's Legal Business Name, Tax Identification Number, National Provider Identifier, Provider Transaction Access Number and the requested deactivation date of the hospital's temporary billing privileges (that must be by or before May 11, 2023). Once the CMS SOG location receives the notification from the temporary hospital of its desire to convert back to an ASC, the location will terminate the temporary hospital CMS Certification Number (CCN) and send a tie-out notice to the applicable Medicare Administrative Contractor (MAC).  The MAC will deactivate the temporary hospital billing privileges and reinstate the original ASC billing privileges. The MAC will notify the ASC when their billing privileges have been restored. However, the ASC does not need to wait for this notification from the MAC to resume normal ASC operations. The ASC must come back into compliance immediately with all applicable ASC federal participation requirements, including the Conditions for Coverage.  ASCs may refer to COVID-19 Frequently Asked Questions (FAQs) on Medicare Fee-for-Service (FFS) Billing (cms.gov) for more information on claims processing after the PHE ends.

  *Conversion to Hospital*
  If the ASC wishes to participate as a hospital, it must undergo the hospital enrollment process by submitting a form CMS-855A to begin the process of enrollment and initial certification as a hospital on or before the conclusion of the PHE (May 11, 2023).  An initial certification hospital survey, either done by the State Agency (SA) or Accreditation Organization (AO), will be conducted to determine compliance with all applicable hospital Conditions of Participation (CoPs) before CMS issues a final determination letter for Medicare participation.

*ASC Medical Staff - 42 CFR 416.45(b)*
- CMS waived the requirement that medical staff privileges must be periodically reappraised, and the scope of procedures performed in the ASC must be periodically reviewed. **The waiver of this requirement ends with the conclusion of the PHE.**

**Community Mental Health Centers (CMHCs)**
*Quality assessment and performance improvement (QAPI) - 42 CFR 485.917(a)-(d)*
- CMS modified the requirements for CMHC's QAPI to provide flexibility for CMHCs to use their QAPI resources to focus on challenges and opportunities for improvement related to the PHE by waiving the specific detailed requirements for the QAPI program's organization and content. **This waiver of these requirements ends with the conclusion of the PHE.**

*Provision of Services - 42 CFR 485.918(b)(1)(iii)*
- CMS waived the specific requirement that prohibits CMHCs from providing partial hospitalization services and other CMHC services in an individual's home so that clients can safely shelter in place during the PHE while continuing to receive needed care and services from the CMHC. This waiver is a companion to recent regulatory changes (85 FR 27550 (May 8, 2020)) that clarify how CMHCs should bill for services provided in an individual's home, and how such services should be documented in the medical record. While this waiver allowed CMHCs to furnish services in client homes, including through the use of telecommunication technology, CMHCs continued to be, among other things, required to comply with the non-waived provisions of 42 CFR Part 485, Subpart J, requiring that CMHCs: 1) assess client needs, including physician certification of the need for partial hospitalization services, if needed; 2) implement and update each client's individualized active treatment plan that sets forth the type, amount, duration, and frequency of the services; and 3) promote client rights, including a client's right to file a complaint. **The waiver of this requirement ends upon the conclusion of the PHE.**

*40 Percent Rule - 42 CFR 485.918(b)(1)(v)*
- CMS waived the requirement that a CMHC provides at least 40 percent of its items and services to individuals who are not eligible for Medicare benefits. **The waiver of this requirement ends upon the conclusion of the PHE.**

**End Stage Renal Disease (ESRD) Facilities**
*Training Program and Periodic Audits - 42 CFR §494.40(a)*
- CMS waived the requirement related to the condition on Water & Dialysate Quality, specifically that on-time periodic audits for operators of the water/dialysate equipment are waived to allow for flexibilities. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Emergency Preparedness - 42 CFR §494.62(d)(1)(iv)*
- CMS waived the requirements for ESRD facilities to demonstrate as part of their Emergency Preparedness Training and Testing Program, that staff can demonstrate that, at a minimum, its patient care staff maintains current CPR certification. Additionally, CMS waived the requirement for maintenance of CPR certification during the COVID-19

emergency due to the limited availability of CPR classes. **The waiver of this requirement ends with the conclusion of the PHE.**

*Ability to Delay Some Patient Assessments - 42 CFR §494.80(b)*
- CMS waived the following requirements related to the frequency of assessments for patients admitted to the dialysis facility. CMS waived the "on-time" requirements for the initial and follow up comprehensive assessments within the specified timeframes as noted below. This waiver applies to assessments conducted by members of the interdisciplinary team, including: a registered nurse, a physician treating the patient for ESRD, a social worker, and a dietitian. Specifically, CMS waived:
    - o 42 CFR §494.80(b)(1): An initial comprehensive assessment must be conducted on all new patients (that is, all admissions to a dialysis facility), within the latter of 30 calendar days or 13 outpatient hemodialysis sessions beginning with the first outpatient dialysis session.
    - o 42 CFR §494.80(b)(2): A follow up comprehensive reassessment must occur within three months after the completion of the initial assessment to provide information to adjust the patient's plan of care specified in §494.90.
  **The waiver of these requirements ends with the conclusion of the PHE.**

*Time Period for Initiation of Care Planning and Monthly Physician Visits - 42 CFR §494.90(b)(2) and 42 CFR §494.90(b)(4)*
CMS modified the following two requirements related to care planning, specifically:
- 42 CFR §494.90(b)(2): requiring that the dialysis facility implement the initial plan of care within the latter of 30 calendar days after admission to the dialysis facility or 13 outpatient hemodialysis sessions beginning with the first outpatient dialysis session. This modification also applies to the requirement for monthly or annual updates of the plan of care within 15 days of the completion of the additional patient assessments. **CMS will end this waiver at the conclusion of the COVID-19 PHE.**
- 42 CFR §494.90(b)(4): requiring the ESRD dialysis facility to ensure that all dialysis patients are seen by a physician, nurse practitioner, clinical nurse specialist, or physician's assistant providing ESRD care at least monthly, and periodically while the hemodialysis patient is receiving in-facility dialysis. CMS waived the requirement for a monthly in-person visit if the patient is considered stable and also recommends exercising telehealth flexibilities; e.g., phone calls to ensure patient safety. <span style="color:red">**After the PHE ends, the Consolidated Appropriations Act, 2023 provides for an extension of telehealth flexibility through December 31, 2024.**</span>

*Dialysis Home Visits to Assess Adaptation and Home Dialysis Machine Designation - 42 CFR §494.100(c)(1)(i)*
- CMS waived the requirement which requires the periodic monitoring of the patient's home adaptation, including visits to the patient's home by facility personnel. **The waiver of this requirement ends with the conclusion of the PHE.**

*Special Purpose Renal Dialysis Facilities (SPRDF) Designation Expanded - 42 CFR §494.120*
- CMS authorized the establishment of SPRDFs without requiring normal determination regarding lack of access to care at 42 CFR §494.120(b) as this standard has been met during the period of the national emergency. **The waiver of this requirement ends**

**upon the conclusion of the PHE.**

*Dialysis Patient Care Technician (PCT) Certification - 42 CFR §494.140(e)(4)*
- CMS modified the requirement for dialysis PCTs to obtain certification under a state certification program or a national commercially available certification program within 18 months of being hired as a dialysis PCT for newly employed patient care technicians. CMS was aware of the challenges that PCTs are facing with the limited availability and closures of testing sites during the time of this crisis. CMS allowed PCTs to continue working even if they have not achieved certification within 18 months or have not met on time renewals. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Transferability of Physician Credentialing - 42 CFR §494.180(c)(1)*
- CMS waived the requirement which requires that all medical staff appointments and credentialing are in accordance with state law, including attending physicians, physician assistants, nurse practitioners, and clinical nurse specialists. These waivers allowed physicians that are appropriately credentialed at a certified dialysis facility to function to the fullest extent of their licensure to provide care at designated isolation locations without separate credentialing at that facility, and may be implemented as long as they were consistent with a state's emergency preparedness or pandemic plan. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Furnishing Dialysis Services on the Main Premises- 42 CFR §494.180(d)*
- CMS waived the ESRD requirements for dialysis facilities to provide services directly on its main premises or on other premises that are contiguous with the main premises, allowing dialysis facilities to provide services to its patients in nursing homes, long-term care facilities, assisted living facilities, and similar types of facilities. **The waiver of this requirement ends upon the conclusion of the PHE.**

**Home Health Agencies (HHAs)**
*Initial Assessments - 42 CFR § 484.55(a)*
- CMS waived the requirements at 42 CFR § 484.55(a) to allow HHAs to perform Medicare-covered initial assessments and determine patients' homebound status remotely or by record review. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Allow Occupational Therapists (OTs), Physical Therapists (PTs), and Speech Language Pathologists (SLPs) to Perform Initial and Comprehensive Assessment for all Patients - 42 CFR § 484.55(a)(2) and § 484.55(b)(3)*
- CMS waived the requirements that rehabilitation skilled professionals may only perform the initial and comprehensive assessment when only therapy services are ordered. This temporary blanket modification allowed any rehabilitation professional (OT, PT, or SLP) to perform the initial and comprehensive assessment for all patients receiving therapy services as part of the plan of care, to the extent permitted under state law, regardless of whether or not the service establishes eligibility for the patient to be receiving home care. **Of note, as a part of the CY 2022 Home Health Prospective Payment System Final Rule (86 FR** 62240 **(November 9, 2021))** https://www.govinfo.gov/content/pkg/FR-2021-11-09/pdf/2021-23993.pdf **CMS finalized changes to § 484.55(a) and (b)(2) to permanently allow occupational therapists to complete the initial and**

**comprehensive assessments for patients, in accordance with section 115 of the Consolidated Appropriations Act (CAA), 2021 (Public Law 116–260). Division CC, section 115 of the Consolidated Appropriations Act (CAA) 2021.**

*Detailed Information Sharing for Discharge Planning - 42 CFR §484.58(a)*
- CMS waived the requirement to provide detailed information regarding discharge planning, to patients and their caregivers, or the patient's representative in selecting a post-acute care provider by using and sharing data that includes, but is not limited to, (another) HHA, skilled nursing facility (SNF), inpatient rehabilitation facility (IRF), and long-term care hospital (LTCH) quality measures and resource use measures. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Waive Onsite Visits for HHA Aide Supervision – 42 CFR §484.80(h)*
- CMS waived the requirements for a nurse to conduct an onsite visit every two weeks. **The waiver of this requirement ends upon the conclusion of the PHE. Of note, as a part of the CY 2022 Home Health Prospective Payment System Final Rule ([86 FR 62240](https://www.govinfo.gov/content/pkg/FR-2021-11-09/pdf/2021-23993.pdf) (November 9, 2021))**[https://www.govinfo.gov/content/pkg/FR-2021-11-09/pdf/2021-23993.pdf](https://www.govinfo.gov/content/pkg/FR-2021-11-09/pdf/2021-23993.pdf)**, CMS finalized the provision for aide supervision for patients receiving skilled care every 14 days to now allow for one virtual visit per 60-day episode per patient and only in rare circumstances. For patients receiving non-skilled care, the registered nurse must make an onsite, in person visit every 60 days to assess the quality of care and services provided by the home health aide and to ensure that services meet the patient's needs; semi-annually the nurse must make a supervisory direct observation visit for each patient to which the aide is providing services.**

*Clinical Records - 42 CFR §484.110(e)*
- CMS extended the deadline for completion of the requirement for HHAs to provide a patient a copy of their medical record at no cost during the next visit or within four business days (when requested by the patient). **The waiver of this requirement ends with the conclusion of the PHE.**

*OASIS Reporting*
- CMS has been providing relief to HHAs on the timeframes related to OASIS transmission through the following 1) extending the five-day completion requirement for the comprehensive assessment to 30 days; and 2) waiving the 30-day OASIS submission requirement. **The waiver of this requirement ends with the conclusion of the PHE.**

**Hospice**
*Comprehensive Assessments - 42 CFR §418.54*
- CMS waived certain requirements related to the timeframes for updating the comprehensive assessments of patients. **The waiver of this requirement ends with the conclusion of the PHE.**

*Hospice Aide Competency Testing Allow Use of Pseudo Patients - 42 CFR §418.76(c)(1)*

- CMS waived the requirement that a hospice aide must be evaluated by observing an aide's performance of certain tasks with a patient. This modification allowed hospices to utilize pseudo-patients, such as a person trained to participate in a role-play situation or a computer-based mannequin device, instead of actual patients, in the competency testing of hospice aides for those tasks that must be observed being performed on a patient. This increased the speed of performing competency testing and allowed new aides to begin serving patients more quickly without affecting patient health and safety during the PHE. **Of note, as a part of the FY 2022 Hospice Wage Index and Payment Rate Update Final Rule (86 FR 42528 (August 4, 2021))**https://www.govinfo.gov/content/pkg/FR-2021-08-04/pdf/2021-16311.pdf**, CMS finalized the hospice aide requirements to allow the use of the pseudo-patient for conducting hospice aide competency evaluations. We also finalized the hospice aide supervision requirements to address situations when deficient practice is noted and remediation is needed related to both deficient and related skills, in accordance with §418.76(c).**

*Waive Non-Core Services - 42 CFR §418.72*
- CMS waived the requirement for hospices to provide certain non-core hospice services for physical therapy, occupational therapy, and speech language pathology. **The waiver of this requirement ends upon the conclusion of the PHE.**

**HHA/Hospice**
*Quality Assessment and Performance Improvement (QAPI) - 42 CFR §418.58 and §484.65*
- CMS waived the requirements for hospices and HHAs, which require these providers to develop, implement, evaluate, and maintain an effective, ongoing, hospice/HHA-wide, data-driven QAPI program. Specifically, CMS modified the requirements to narrow the scope of the QAPI program to concentrate on infection control issues, while retaining the requirement that remaining activities should continue to focus on adverse events. **The waiver of this requirement ends upon the conclusion of the PHE.**

**Hospitals**
*Acute Hospital Care at Home – 42 CFR §482.23(b) and (b)(1)*
- CMS established the acute hospital care at home initiative by waiving this Medicare Hospital Conditions of Participation, suspending the requirement for nursing services to be provided on premises 24 hours a day, 7 days a week, and for the immediate availability of a registered nurse for care of any patient. Additional waivers and flexibilities were also extended to individual hospitals that submitted an application, met certain criteria, and agreed to submit required data. **Section 4141 of the Consolidated Appropriations Act, 2023 included an extension of the waivers and flexibilities associated with the Acute Hospital at Home initiative to allow it to continue through December 31, 2024. Explicit criteria and data collection requirements were established as part of this extension.**

**Hospitals/CAHs/ASCs**
*Anesthesia Services - 42 CFR §482.52(a)(5), §485.639(c) (2), and §416.42 (b)(2)*
- CMS waived requirements that a certified registered nurse anesthetist (CRNA) is under the supervision of a physician. **The waiver of this requirement ends upon the**

**conclusion of the PHE.** [However, the provisions for ASCs, hospitals, and CAHs at 42 CFR 416.42(c), 42 CFR 482.52(c), and 42 CFR 485.639(e), respectively, all provide for an exemption to the physician supervision requirements if the state in which the facility is located submits a letter to CMS signed by the Governor, following consultation with the State's Boards of Medicine and Nursing, requesting exemption from physician supervision of CRNAs. The request for exemption and recognition of state laws, and the withdrawal of the request may be submitted at any time, and are effective upon submission. Facilities and states should see the provisions cited here for further details on these requirements.]

**Hospitals/Psychiatric Hospitals/Critical Access Hospitals (CAHs)**
*Emergency Medical Treatment & Labor Act (EMTALA).*
- CMS waived the enforcement of section 1867(a) of the Act.  This allowed hospitals, psychiatric hospitals, and critical access hospitals (CAHs) to screen patients at a location offsite from the hospital's campus to prevent the spread of COVID-19, as long as it was consistent with a state's emergency preparedness or pandemic plan.  **The waiver of this requirement ends upon the conclusion of the PHE.**

*Verbal Orders - 42 CFR §482.23, §482.24 and §485.635(d)(3)*
- CMS waived the requirements of 42 CFR §§ 482.23, 482.24 and 485.635(d)(3) to provide additional flexibility related to verbal orders where read-back verification is required but authentication may occur later than 48 hours.  **The waiver of this requirement ends upon the conclusion of the PHE.**

*Reporting Requirements - 42 CFR §482.13(g)(1)(i)-(ii)*
- CMS waived the requirements which require that hospitals report patients in an intensive care unit whose death is caused by their disease, but who required soft wrist restraints to prevent pulling tubes/IVs, no later than the close of business on the next business day.  **The waiver of this requirement ends upon the conclusion of the PHE.**

*Patient Rights - 42 CFR §482.13*
- CMS waived requirements for hospitals that are considered to be impacted by a widespread outbreak of COVID-19.  Hospitals that are located in a state that has widespread confirmed cases (i.e., 51 or more confirmed cases*), as updated on the CDC website at, CDC States Reporting Cases of COVID-19, were not required to meet the following requirements:
    - §482.13(d)(2) — With respect to timeframes in providing a copy of a medical record.
    - §482.13(h) — Related to patient visitation, including the requirement to have written policies and procedures on visitation of patients who are in COVID-19 isolation and quarantine processes.
    - §482.13(e)(1)(ii) — Regarding seclusion. *The waiver flexibility is based on the number of confirmed cases as reported by CDC and will be assessed accordingly when COVID-19 confirmed cases decrease.
  **The waiver of this requirement ends upon the conclusion of the PHE.**

*Sterile Compounding - 2 CFR §482.25(b)(1) and §485.635(a)(3)*
- CMS waived requirements to allow used face masks to be removed and retained in the compounding area to be re-donned and reused during the same work shift in the compounding area only. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Detailed Information Sharing for Discharge Planning for Hospitals and CAHs - 42 CFR §482.43(a)(8), §482.61(e), and §485.642(a)(8)*
- CMS waived the requirement to provide detailed information regarding discharge planning. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Limiting Detailed Discharge Planning for Hospitals - 42 CFR §482.43(c)*
- CMS waived all the requirements and subparts related to post-acute care services so as to expedite the safe discharge and movement of patients among care settings and to be responsive to fluid situations in various areas of the country. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Medical Staff - 42 CFR §482.22(a)(1)-(4)*
- CMS waived the requirements at 42 CFR §482.22(a)(1)-(4) to allow for physicians whose privileges will expire to continue practicing at the hospital and for new physicians to be able to practice before full medical staff/governing body review and approval to address workforce concerns related to COVID-19. CMS waived §482.22(a) (1)-(4) regarding details of the credentialing and privileging process. (Please also refer to Practitioner Locations Blanket Waiver listed below.) **The waiver of this requirement ends upon the conclusion of the PHE.**

*Medical Records - 42 CFR §482.24(a) through (c)*
- CMS waived requirements which cover the subjects of the organization and staffing of the medical records department, requirements for the form and content of the medical record, and record retention requirements, and these flexibilities could be implemented as long as they were consistent with a state's emergency preparedness or pandemic plan. CMS also waived §482.24(c)(4)(viii) related to medical records to allow flexibility in completion of medical records within 30 days following discharge from a hospital. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Flexibility in Patient Self Determination Act Requirements (Advance Directives).*
- CMS waived the requirements at sections 1902(a)(58) and 1902(w)(1)(A) of the Act (for Medicaid); 1852(i) of the Act (for Medicare Advantage); and 1866(f) of the Act and 42 CFR §489.102 (for Medicare), which require hospitals and CAHs to provide information about their advance directive policies to patients. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Physical Environment - 42 CFR §482.41 and 42 CFR §485.623*
- CMS waived certain physical environment requirements under the Medicare conditions of participation to allow for increased flexibilities for surge capacity and patient quarantine at hospitals, psychiatric hospitals, and CAHs as a result of COVID-19. CMS

permitted facility and non-facility space that is not normally used for patient care to be utilized for patient care or quarantine, provided the location was approved by the state (ensuring that safety and comfort for patients and staff are sufficiently addressed) and was consistent with the state's emergency preparedness or pandemic plan. **The waiver of this requirement ends upon the conclusion of the PHE.**

- CMS modified inspection, testing and maintenance (ITM) requirements for facility and medical equipment, which permitted facilities to adjust ITM frequencies and activities as necessary to reduce disruption of patient care and potential exposure/transmission of COVID-19. **The waiver of this requirement ends upon the conclusion of the PHE.**

- CMS modified ITM required by the Life Safety Code (LSC) and Health Care Facilities Code, with specified exceptions, which permitted facilities to adjust scheduled ITM frequencies and activities as necessary to reduce disruption of patient care and potential exposure/transmission of COVID-19. **The waiver of this requirement ends upon the conclusion of the PHE.**

- CMS waived fire drills required by the LSC due to the inadvisability of drills that move and mass staff together. Instead, CMS permitted a documented orientation training program related to the current fire plan, which considered current facility conditions. **The waiver of this requirement ends upon the conclusion of the PHE.**

- CMS waived LSC requirements that would not permit temporary walls and barriers between patients. **The waiver of this requirement ends upon the conclusion of the PHE.**

- CMS waived the requirement to have an outside window or outside door in every sleeping room. This permitted spaces not normally used for patient care to be utilized for patient care and quarantine. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Telemedicine - 42 CFR §482.12(a)(8)– (9) and §485.616(c)*

- CMS waived the requirements for written agreements between those hospitals and CAHs using telemedicine services and the distant-site hospitals or distant-site telemedicine entities furnishing the services. These telemedicine requirements are specific to the credentialing and privileging processes (and their supporting written agreements) used by hospitals and CAHs for the credentialing and privileging of distant-site telemedicine practitioners providing services to patients in the hospital or CAH. **The waiver of this requirement ends upon the conclusion of the PHE.**

- NOTE: these telemedicine CoP requirements are *not* related to the waivers under the PHE that have allowed all Medicare beneficiaries to receive Medicare telehealth and other communications technology-based services. After the PHE ends, the Consolidated Appropriations Act (CAA), 2023, provides for an extension for some of these telehealth flexibilities for professional services under the Physician Fee Schedule as well as services furnished by rural health clinics and federally qualified health centers through December 31, 2024. (For more details on the extension of telehealth flexibilities provided under the CAA 2023, please see:) and https://www.cms.gov/files/document/rural-health-clinics-and-federally-qualified-health-centers-cms-flexibilities-fight-covid-19.pdf).

*Physician Services - 42 CFR §482.12(c)(1)– (2) and §482.12(c)(4)*

- CMS waived requirements for Medicare patients to be under the care of a physician. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Utilization Review - 42 CFR §482.1(a)(3) and 42 CFR §482.30*
- CMS waived certain requirements which address the statutory basis for hospitals and includes the requirement that hospitals participating in Medicare and Medicaid must have a utilization review plan that meets specified requirements.
- CMS also waived the entire utilization review condition of participation which requires that a hospital must have a UR plan with a UR committee that provides for a review of services furnished to Medicare and Medicaid beneficiaries to evaluate the medical necessity of the admission, duration of stay, and services provided.
**The waiver of this requirement ends upon the conclusion of the PHE.**

*Written Policies and Procedures for Appraisal of Emergencies at Off Campus Hospital Departments - 42 CFR §482.12(f)(3)*
- CMS waived emergency services with respect to surge facilities only, such that written policies and procedures for staff to use when evaluating emergencies are not required for surge facilities. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Emergency Preparedness Policies and Procedures - 42 CFR §482.15(b), §485.625(b), §482.15(c)(1)– (5) and §485.625(c)(1)– (5)*
- CMS waived requirements for the hospital and CAH to develop and implement emergency preparedness policies and procedures and the emergency preparedness communication plans for hospitals and CAHs to contain specified elements with respect to the surge site. The requirement under the communication plan required hospitals and CAHs to have specific contact information for staff, entities providing services under arrangement, patients' physicians, other hospitals and CAHs, and volunteers. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Quality Assessment and Performance Improvement Program - 42 CFR §482.21(a)–(d) and (f), and §485.641(a), (b), and (d)*
- CMS waived requirements which provide details on the scope of the program, the incorporation and setting of priorities for the program's performance improvement activities and integrated QAPI programs (for hospitals that are part of a hospital system). These flexibilities applied to both hospitals and CAHs as long as they were consistent with a state's emergency preparedness or pandemic plan. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Nursing Services - 42 CFR §482.23(b)(4), §482.23(b)(7), and §485.635(d)(4)*
- CMS waived the requirements for nursing staff to develop and keep current a nursing care plan for each patient, hospitals to have policies and procedures in place establishing which outpatient departments are not required to have a registered nurse present and establishing nursing-related policies and procedures for outpatient departments is likely of lower priority. These waivers applied to both hospitals and CAHs. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Food and Dietetic Services - 42 CFR §482.28(b)(3)*
- CMS waived the requirement for providers to have a current therapeutic diet manual approved by the dietitian and medical staff readily available to all medical, nursing, and food service personnel. CMS allowed these flexibilities to be implemented as long as they were consistent with a state's emergency preparedness or pandemic plan. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Respiratory Care Services - 42 CFR §482.57(b)(1)*
- CMS waived the requirements for hospitals to designate in writing the personnel qualified to perform specific respiratory care procedures and the amount of supervision required for personnel to carry out specific procedures. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Hospitals Able to Provide Care in Temporary Expansion Sites*
- As part of the CMS Hospital Without Walls initiative during the PHE, hospitals could provide hospital services in other hospitals and sites that otherwise would not have been considered part of a healthcare facility, or could set up temporary expansion sites to help address the urgent need to increase capacity to care for patients. During the PHE, CMS provided additional flexibilities for hospitals to create surge capacity by allowing them to provide room and board, nursing, and other hospital services at remote locations, such as hotels or community facilities. During the PHE, hospitals were expected to control and oversee the services provided at an alternative location. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Expanded Ability for Hospitals to Offer Long-term Care Services ("Swing Beds") for Patients Who Do Not Require Acute Care but Do Meet the Skilled Nursing Facility (SNF) Level of Care Criteria as Set Forth at 42 CFR 409.31.*
- CMS waived the requirements at 42 CFR 482.58, special requirements for hospital providers of long-term care services (swing beds), subsections (a)(1)-(4) "Eligibility," to allow hospitals to establish SNF swing beds payable under the SNF prospective payment system (PPS) to provide additional options for hospitals with patients who no longer require acute care but are unable to find placement in a SNF. This waiver applied to all Medicare enrolled hospitals, except psychiatric and long-term care hospitals that need to provide post-hospital SNF level swing-bed services for non-acute care patients in hospitals, as long as the waiver is consistent with the state's emergency preparedness or pandemic plan. The hospital shall not bill for SNF PPS payment using swing beds when patients require acute level care or continued acute care at any time while this waiver is in effect. This waiver is permissible for swing-bed admissions during the COVID-19 PHE with an understanding that the hospital must have a plan to discharge swing-bed patients as soon as practicable, when a SNF bed becomes available, or when the PHE ends, whichever is earlier. **The waiver of this requirement ends upon the conclusion of the PHEs.**

*Care for Excluded Inpatient Psychiatric Unit Patients in the Acute Care Unit of a Hospital*
- CMS waived requirements to allow acute care hospitals with excluded distinct part inpatient psychiatric units that, as a result of a disaster or emergency, need to relocate inpatients from the excluded distinct part psychiatric unit to an acute care bed and unit. The hospital should continue to bill for inpatient psychiatric services under the Inpatient Psychiatric Facility Prospective Payment System (IPF PPS) for such patients and annotate the medical record to indicate the patient is a psychiatric inpatient being cared for in an acute care bed, because of capacity or other exigent circumstances related to the COVID-19 PHE. This waiver could be utilized where the hospital's acute care beds are appropriate for psychiatric patients and the staff and environment are conducive to safe care. For psychiatric patients, this includes assessment of the acute care bed and unit location to ensure those patients at risk of harm to self and others are safely cared for. **The waiver of this requirement ends upon the conclusion of the PHEs. Inpatients receiving psychiatric services paid under the IPF PPS and furnished by the excluded distinct part psychiatric unit of an acute care hospital cannot be housed in an acute care bed and unit.**

*Care for Excluded Inpatient Rehabilitation Unit Patients in the Acute Care Unit of a Hospital*
- CMS waived requirements to allow acute care hospitals with excluded distinct part inpatient rehabilitation units that, as a result of a disaster or emergency, need to relocate inpatients from the excluded distinct part rehabilitation unit to an acute care bed and unit. The hospital should continue to bill for inpatient rehabilitation services under the Inpatient Rehabilitation Facility Prospective Payment System for such patients and annotate the medical record to indicate the patient is a rehabilitation inpatient being cared for in an acute care bed, because of capacity or other exigent circumstances related to the disaster or emergency. This waiver could be utilized where the hospital's acute care beds are appropriate for providing care to rehabilitation patients and such patients continue to receive intensive rehabilitation services. **The waiver of this requirement ends upon the conclusion of the PHEs. Inpatients receiving rehabilitation services, paid under the IRF PPS and furnished by the excluded distinct part rehabilitation unit of an acute care hospital, cannot be housed in an acute care bed and unit.**

*CAH Personnel Qualifications - 42 CFR §485.604(a)(2), §485.604(b)(1)– (3), and §485.604(c)(1)– (3)*
- CMS waived the minimum personnel qualifications for clinical nurse specialists, nurse practitioners, and physician assistants. Removing these federal personnel requirements allowed CAHs to employ individuals in these roles who meet state licensure requirements and provide maximum staffing flexibility. **The waiver of this requirement ends upon the conclusion of the PHE.**

*CAH Staff Licensure - 42 CFR §485.608(d)*
- CMS deferred to staff licensure, certification, or registration to state law by waiving the requirement that staff of the CAH be licensed, certified, or registered in accordance with applicable federal, state, and local laws and regulations. **The waiver of this requirement ends upon the conclusion of the PHE.**

*CAH Status and Location - 42 CFR §485.610(b) and §485.610(e)*
- CMS waived the requirement that the CAH be located in a rural area or an area being treated as being rural, allowing the CAH flexibility in the establishment of surge site locations. CMS also waived the requirement regarding the CAH's off-campus and co-location requirements, allowing the CAH flexibility in establishing temporary off-site locations. **The waiver of this requirement ends upon the conclusion of the PHE.**

*CAH Length of Stay - 42 CFR §485.620*
- CMS waived the requirements that CAHs limit the number of beds to 25 and that the length of stay be limited to 96 hours under the Medicare conditions of participation for number of beds and length of stay. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Temporary Expansion Locations - 42 CFR §482.41, §485.623, and §413.65*
- CMS waived certain requirements and the provider-based department requirements to allow hospitals to establish and operate as part of the hospital any location meeting those conditions of participation, for hospitals that continue to apply during the PHE. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Responsibilities of Physicians in Critical Access Hospitals (CAHs) - 42 CFR § 485.631(b)(2)*
- CMS waived the requirement for CAHs that a doctor of medicine or osteopathy be physically present to provide medical direction, consultation, and supervision for the services provided in the CAH. CMS retained the regulatory language in the second part of the requirement at § 485.631(b)(2) that a physician be available "through direct radio or telephone communication, or electronic communication for consultation, assistance with medical emergencies, or patient referral." Retaining this longstanding CMS policy and related longstanding sub-regulatory guidance that further described communication between CAHs and physicians assured an appropriate level of physician direction and supervision for the services provided by the CAH. **The waiver of this requirement ends upon the conclusion of the PHE.**

*EMTALA:*
- CMS waived the enforcement of section 1867(a) of the Act. This allowed hospitals, psychiatric hospitals, and critical access hospitals (CAHs) to screen patients at a location offsite from the hospital's campus to prevent the spread of COVID-19, as long as it is consistent with a state's emergency preparedness or pandemic plan. **The waiver of this requirement ends upon the conclusion of the PHE.**

**Intermediate Care Facilities for Individuals with Intellectual Disabilities (ICF/IIDs)**
*Suspension of Community Outings - 42 CFR §483.420(a)(11)*
- CMS waived the requirements for clients have the opportunity to participate in social, religious, and community group activities. The federal and/or state emergency restrictions will dictate the level of restriction from the community based on whether it is for social, religious, or medical purposes. States may have also imposed more restrictive limitations. CMS authorized the facility to implement social distancing precautions with respect to on and off-campus movement. State and federal restrictive measures should be

made in the context of competent, person-centered planning for each client. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Suspend Mandatory Training Requirements - 42 CFR §483.430(e)(1)*
- CMS waived, in part, the requirements related to routine staff training programs unrelated to the public health emergency. **The waiver of this requirement ends upon the conclusion of the PHE.**

**Life Safety Code (LSC) for Multiple Providers**
*Alcohol-based Hand-Rub (ABHR) Dispensers - 42 CFR §482.41(b) for hospitals; §485.623(c) for CAHs; §418.110(d) for inpatient hospice; and §483.470(j) for ICF/IIDs*
- CMS waived the requirement for ABHR dispensers. We waived the prescriptive requirements for the placement of ABHR dispensers for use by staff and others to the need for the increased use of ABHR in infection control. **The waiver of this requirement ends upon the conclusion of the PHE.**

**Rural Health Clinics/Federally Qualified Health Clinics (RHCs/FQHCs)**
*Staffing - 42 CFR §491.8(a)(6)*
- CMS waived the requirement that a nurse practitioner, physician assistant, or certified nurse-midwife be available to furnish patient care services at least 50% of the time the RHC and FQHC operates. **The waiver of this requirement ends upon the conclusion of the PHE.**

*Temporary Expansion Locations Flexibility in RHCs and FQHCs- 42 CFR §491.5(a)(3)(iii)*
- CMS waived the requirement for RHCs and FQHCs to be independently considered for Medicare approval if services are furnished in more than one permanent location and removed the location restrictions. **The waiver of this requirement ends upon the conclusion of the PHE, and RHCs and FQHCs at temporary expansion locations will no longer be able to render services at that location.**

**CMS acknowledges concerns raised by stakeholders related to staffing challenges that continued during the PHE. These waivers were intended to be temporary, but we recognize that some providers/suppliers are still constrained by workforce shortages. CMS will utilize our enforcement discretion on a case-by-case basis for circumstances beyond the provider's/supplier's control according to the timeframes for each waiver outlined below. This memo provides additional clarification for surveyors based on information previously issued via the CMS press release referencing the provider-specific fact sheets.**

**Surveyor determinations of a provider's/supplier's compliance with the following requirements will begin 60 Days after the conclusion of the PHE on July 11, 2023:**
**HHA/Hospice**
*Training and Assessment of Aides - 42 CFR §418.76(h)(2) and 42 CFR §484.80(h)(1)(iii)*
- CMS waived the requirement for hospices and HHAs that a registered nurse, or in the case of an HHA a registered nurse or other appropriate skilled professional (physical therapist/occupational therapist, speech language pathologist), make an annual onsite

supervisory visit (direct observation) for each aide that provides services on behalf of the agency.  https://www.govinfo.gov/content/pkg/FR-2021-11-09/pdf/2021-23993.pdf

**Intermediate Care Facilities for Individuals with Intellectual Disabilities (ICF/IIDs)**
*Modification of Adult Training Programs and Active Treatment - 42 CFR §483.440(a)(1)*
- CMS waived the requirement that each client must receive a continuous active treatment program, which includes consistent implementation of a program of specialized and generic training, treatment, health services and related services.  CMS waived those components of beneficiaries' active treatment programs and training that would violate current state and local requirements for social distancing, staying at home, and traveling for essential services only.  In accordance with §483.440(c)(1), any modification to a client's Individual Program Plan (IPP) in response to treatment changes requires the approval of the interdisciplinary team.  For facilities that have interdisciplinary team members who were unavailable due to the COVID-19 crisis, CMS allowed for a retroactive review of the IPP under 483.440(f)(2) in order to allow IPPs to receive modifications as necessary based on the impact of the COVID-19 crisis.

**Surveyor determinations of a provider's compliance for the following requirement will begin at the end of the first full quarter after the conclusion of the PHE on September 30, 2023:**
**Hospice**
*Annual Training - 42 CFR §418.100(g)(3)*
- CMS waived the requirement for hospices to annually assess the skills and competence of all individuals furnishing care and provide in-service training and education programs where required.  **Selected hospice staff must complete training and have their competency evaluated by the end of the first full quarter after the declaration of the PHE concludes.**

**Surveyor determinations of a provider's/supplier's compliance with the following requirements will begin at the end of the calendar year that the PHE ends which is December 31, 2023:**
**HHA/Hospice**
*12-hour annual in-service training requirement for home health aides - 42 CFR. §484.80(d) & hospice aides - 42 CFR 418.76(d).*
- CMS waived the requirement that home health agencies and hospices must assure that each aide receives 12 hours of in-service training in a 12-month period.

**Hospice**
*Waived requirement for hospices to use volunteers – 42 CFR §418.78(e)*
- CMS waived the requirement that hospices must use volunteers (at least 5% of total patient care hours of all paid hospice employees).  It is anticipated that hospice volunteer availability and use may still be reduced.

**Intermediate Care Facilities for Individuals with Intellectual Disabilities (ICF/IIDs)**
*Staffing Flexibilities - 42 CFR §483.430(c)(4)*
- CMS waived the requirements for the facility to provide sufficient Direct Support Staff (DSS) so that Direct Care Staff (DCS) are not required to perform support services that interfere with direct client care. DSS perform activities such as cleaning of the facility, cooking, and laundry services. DSC perform activities such as teaching clients appropriate hygiene, budgeting, or effective communication and socialization skills. During the time of this waiver, DCS may be needed to conduct some of the activities normally performed by the DSS. This allowed facilities to adjust staffing patterns, while maintaining the minimum staffing ratios required at §483.430(d)(3).

**RHCs/FQHCs**
*Physician Supervision of NPs - 42 CFR §491.8(b)(1)*
- CMS waived the requirement that physicians must provide medical direction for the clinics or centers health care activities and consultation for, and medical supervision of, the health care staff, only with respect to medical supervision of nurse practitioners and only to the extent permitted by state law.

## IFCs for ACC Providers Issued During the PHE

Pursuant to section 1871(a)(3) of the Act, Medicare interim final rules typically expire 3 years after issuance unless they are finalized or CMS determines an earlier end date.

On September 2, 2020, CMS issued an IFC (85 FR 54820 through 54874) that included new requirements for hospitals and CAHs to report data in accordance with a frequency and in a standardized format as specified by the Secretary during the PHE for COVID–19. Furthermore, on August 10, 2022, CMS issued a final rule (87 FR 48780 through 49499) revising the hospital and CAH infection prevention and control CoP requirements to continue COVID–19-related reporting requirements. Beginning at the conclusion of the COVID–19 PHE and continuing until April 30, 2024 (unless the Secretary determines an earlier end date) hospitals and CAHs are required to report data for COVID-19 and seasonal influenza in a standardized format and frequency as specified by the Secretary.

On May 13, 2021, CMS issued an IFC (86 FR 26306 through 26336) revising the infection control requirements that ICFs/IID must meet to participate in the Medicare and Medicaid programs. ICFs/IID are encouraged to report COVID-19 vaccine and therapeutics treatment information to the CDC's NHSN.

This memorandum supersedes the following memorandums issued for LTC and ACC providers during the PHE: QSO-20-09-ALL; QSO-20-12-ALL; QSO-20-13-Hospitals-CAHs REVISED; QSO-20-15-Hospital/CAH/EMTALA REVISED; QSO-20-14-NH-REVISED QSO-20-16-Hospice; QSO-20-17-ALL; QSO-20-18-HHA REVISED; QSO-20-19-ESRD REVISED; QSO-20-20-ALL; QSO-20-22-ASC,CORF,CMHC,OPT,RHC/FQHC; QSO-20-23-ICF/IID & PRTF; QSO-20-24 ASC REVISED; QSO-20-25-NH QSO-20-27-Hospitals; QSO-20-30-NH-REVISED

QSO-20-35-ALL; QSO-20-36-ESRD; QSO-20-38-NH REVISED; QSO-20-39-NH REVISED; QSO-20-41-ALL-REVISED; QSO-21-07-Psych Hospital, PRTF&ICF/IID; QSO-21-09-ASC; QSO-21-14-ICF/IID&PRTF REVISED; QSO-21-16-Hospitals; QSO-21-17-NH; QSO-22-03-ASC&Hospital; QSO-22-15-NH & NLTC & LSC REVISED.

**Resources:**
For information regarding waivers or flexibilities not directly related to the health and safety requirements for LTC and ACC providers listed in this memorandum, please continue to monitor the CMS Emergencies Page for the most up to date information.

**Contact:**
For questions related to this memorandum, please visit the CMS 1135 Waiver website to submit an inquiry.

**Effective Date:**
Immediately.  Please communicate to all appropriate staff within 30 days.

/s/

|  |  |
|---|---|
| Karen L. Tritz | David R. Wright |
| Director, Survey & Operations Group | Director, Quality, Safety & Oversight Group |