# Exhibit 8

Case 1:24-cv-08636-LJL    Document 86-8    Filed 02/17/26    Page 2 of 155

Revenue ↓

# 606 Revenue from Contracts with Customers 10 Overall

## 00 Status

> ⓘ **General Note:** The Status Section identifies changes to this Subtopic resulting from Accounting Standards Updates. The Section provides references to the affected Codification content and links to the related Accounting Standards Updates. Nonsubstantive changes for items such as editorial, link and similar corrections are included separately in Maintenance Updates.

## General

**606-10-00-1**   The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| Award | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| Contract | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Contract Asset | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Contract Liability | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Customer | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Grant Date | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| Lease | Added | Accounting Standards Update No. 2016-02 | 02/25/2016 |
| Not-for-Profit Entity | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Performance Condition | Amended | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| Performance Condition | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| Performance Obligation | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Probable (2nd def.) | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Public Business Entity | Amended | Maintenance Update 2017-06 🗎 | 04/07/2017 |
| Public Business Entity | Amended | Maintenance Update 2016-11 🗎 | 06/27/2016 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| | | | |
|---|---|---|---|
| Public Business Entity | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Revenue | Amended | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Service Condition | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| Share-Based Payment Arrangements | Added | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| Standalone Selling Price | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| Transaction Price | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-05-1 through 05-6 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-10-1 through 10-4 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-15-1 through 15-5 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-15-2 | Amended | Maintenance Update 2021-02 🗎 | 01/19/2021 |
| 606-10-15-2 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-15-2 | Amended | Accounting Standards Update No. 2016-02 | 02/25/2016 |
| 606-10-15-2 | Amended | Accounting Standards Update No. 2016-01 | 01/05/2016 |
| 606-10-15-2A | Added | Accounting Standards Update No. 2018-08 | 06/21/2018 |
| 606-10-15-3 | Amended | Accounting Standards Update No. 2018-18 | 11/05/2018 |
| 606-10-15-3A | Added | Accounting Standards Update No. 2025-07 | 09/29/2025 |
| 606-10-25-1 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-25-1 through 25-37 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-25-3 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-25-5 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-25-7 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-25-16 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-16A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-16B | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-17 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-18 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-18A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-18B | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-18C | Added | Accounting Standards Update No. 2021-02 | 01/28/2021 |
| 606-10-25-19 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-25-21 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-32-1 through 32-45 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| 606-10-32-2A | Added | Accounting Standards Update No. 2016-12 | 05/09/2016 |
|---|---|---|---|
| 606-10-32-21 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-32-23 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-32-25 | Amended | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-32-25 | Amended | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| 606-10-32-25 | Amended | Accounting Standards Update No. 2018-07 | 06/20/2018 |
| 606-10-32-25A | Amended | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-32-25A | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| 606-10-45-1 through 45-5 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-45-3 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-45-4 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-50-1 through 50-23 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-50-4 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-50-5 | Amended | Accounting Standards Update No. 2025-11 | 12/08/2025 |
| 606-10-50-6 | Amended | Accounting Standards Update No. 2025-11 | 12/08/2025 |
| 606-10-50-8 | Amended | Accounting Standards Update No. 2025-11 | 12/08/2025 |
| 606-10-50-8 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-50-11 | Amended | Maintenance Update 2017-08 🗎 | 05/01/2017 |
| 606-10-50-12A | Amended | Accounting Standards Update No. 2025-11 | 12/08/2025 |
| 606-10-50-12A | Added | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-50-13 | Amended | Accounting Standards Update No. 2025-11 | 12/08/2025 |
| 606-10-50-14 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-50-14A | Added | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-50-14B | Added | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-50-15 | Amended | Accounting Standards Update No. 2025-11 | 12/08/2025 |
| 606-10-50-15 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-1 through 55-413 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-55-3 | Amended | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-55-3 | Amended | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| 606-10-55-3 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-55-3 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-3A through 55-3C | Added | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-55-36 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-36A | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-37 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-37A | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| 606-10-55-37B | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
|---|---|---|---|
| 606-10-55-38 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-39 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-39A | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-40 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-54 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-55 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-57 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-58 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-58A through 55-58C | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-59 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-60 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-61 | Superseded | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-62 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-63 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-63A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-64 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-64A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-65A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-65B | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-68 | Amended | Accounting Standards Update No. 2016-02 | 02/25/2016 |
| 606-10-55-72 | Amended | Accounting Standards Update No. 2016-02 | 02/25/2016 |
| 606-10-55-88A | Amended | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-55-88A | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| 606-10-55-88AA through 55-88AC | Added | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-55-88B | Amended | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-55-88B | Added | Accounting Standards Update No. 2019-08 | 11/11/2019 |
| 606-10-55-88C | Added | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-55-93 | Amended | Accounting Standards Update No. 2025-07 | 09/29/2025 |
| 606-10-55-93 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-93 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-94 through 55-98 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-55-98A through 55-98L | Added | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-55-108 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-55-109 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 606-10-55-125 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-127 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-128 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-136 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-137 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-139 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-140A through 55-140F | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-142 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-143 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-145 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-147 through 55-150 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-150A through 55-150K | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-153 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-153A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-155 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-156 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-157A through 55-157E | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-231 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-55-237 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-55-239 | Amended | Accounting Standards Update No. 2016-13 | 06/16/2016 |
| 606-10-55-247 | Amended | Accounting Standards Update No. 2025-07 | 09/29/2025 |
| 606-10-55-248 | Amended | Accounting Standards Update No. 2025-07 | 09/29/2025 |
| 606-10-55-250 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-55-250A through 55-250D | Added | Accounting Standards Update No. 2025-07 | 09/29/2025 |
| 606-10-55-285 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-286 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-293 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-300 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-305A | Added | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-55-309 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-311 through 55-313 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| | | | |
|---|---|---|---|
| 606-10-55-316 through 55-318 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-318A through 55-318C | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-323 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-323A | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-323B | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-324 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-324A through 55-324G | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-326 through 55-328 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-328A through 55-328C | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-329 through 55-331 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-333 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-333A | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-333B | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-334 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-334A through 55-334F | Added | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-55-361 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-363 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-363A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-363B | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-364 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-365 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-365A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-366 through 55-368 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-370 through 55-372 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-372A | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

12/20/2025, 5:07 PM
Case 1:24-cv-08636-LJL    Document 86-8    Filed 02/17/26    Page 8 of 155
Combine Sections - 606 Revenue from Contracts with Customers

| | | | |
|---|---|---|---|
| 606-10-55-373 through 55-383 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-385 through 55-392 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-392A through 55-392D | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-393 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-394 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-396 through 55-399 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-399A through 55-3990 | Added | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-55-404 | Amended | Accounting Standards Update No. 2025-12 | 12/17/2025 |
| 606-10-55-407 | Amended | Accounting Standards Update No. 2016-02 | 02/25/2016 |
| 606-10-60-1 through 60-16 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2020-05 | 06/03/2020 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2017-13 | 09/29/2017 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2017-05 | 02/22/2017 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2017-03 | 01/23/2017 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2016-20 | 12/21/2016 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2016-12 | 05/09/2016 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2016-10 | 04/14/2016 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2016-08 | 03/17/2016 |
| 606-10-65-1 | Amended | Accounting Standards Update No. 2015-14 | 08/12/2015 |
| 606-10-65-1 | Added | Accounting Standards Update No. 2014-09 | 05/28/2014 |
| 606-10-65-2 | Added | Accounting Standards Update No. 2025-04 | 05/15/2025 |
| 606-10-65-3 | Added | Accounting Standards Update No. 2025-07 | 09/29/2025 |

# 05 Overview and Background

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

> (i) **General Note:**The Overview and Background Section provides overview and background material for the guidance contained in the Subtopic. It does not provide the historical background or due process. It may contain certain material that users generally consider useful to understand the typical situations addressed by the standards. The Section does not summarize the accounting and reporting requirements.

# General

**606-10-05-1**   This Topic specifies the accounting for revenue from contracts with customers.

**606-10-05-2**   This Topic establishes principles for reporting useful information to users of financial statements about the nature, amount, timing, and uncertainty of revenue and cash flows arising from the entity's contracts with customers.

**606-10-05-3**   The core principle of this Topic is that an entity recognizes revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services.

**606-10-05-4**   An entity recognizes revenue in accordance with that core principle by applying the following steps:

a. Step 1: Identify the contract(s) with a customer—A contract is an agreement between two or more parties that creates enforceable rights and obligations. The guidance in this Topic applies to each contract that has been agreed upon with a customer and meets specified criteria. In some cases, this Topic requires an entity to combine contracts and account for them as one contract. This Topic also provides requirements for the accounting for contract modifications. (See paragraphs 606-10-25-1 through 25-13.)

b. Step 2: Identify the performance obligations in the contract—A contract includes promises to transfer goods or services to a customer. If those goods or services are distinct, the promises are performance obligations and are accounted for separately. A good or service is distinct if the customer can benefit from the good or service on its own or together with other resources that are readily available to the customer and the entity's promise to transfer the good or service to the customer is separately identifiable from other promises in the contract. (See paragraphs 606-10-25-14 through 25-22.)

c. Step 3: Determine the transaction price—The transaction price is the amount of consideration in a contract to which an entity expects to be entitled in exchange for transferring promised goods or services to a customer. The transaction price can be a fixed amount of customer consideration, but it may sometimes include variable consideration or consideration in a form other than cash. The transaction price also is adjusted for the effects of the time value of money if the contract includes a significant financing component and for any consideration payable to the customer. If the consideration is variable, an entity estimates the amount of consideration to which it will be entitled in exchange for the promised goods or services. The estimated amount of variable consideration will be included in the transaction price only to the extent that it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur when the uncertainty associated with the variable consideration is subsequently resolved. (See paragraphs 606-10-32-2 through 32-27.)

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

d. Step 4: Allocate the transaction price to the performance obligations in the contract—An entity typically allocates the transaction price to each performance obligation on the basis of the relative standalone selling prices of each distinct good or service promised in the contract. If a standalone selling price is not observable, an entity estimates it. Sometimes, the transaction price includes a discount or a variable amount of consideration that relates entirely to a part of the contract. The requirements specify when an entity allocates the discount or variable consideration to one or more, but not all, performance obligations (or distinct goods or services) in the contract. (See paragraphs 606-10-32-28 through 32-41.)

e. Step 5: Recognize revenue when (or as) the entity satisfies a performance obligation—An entity recognizes revenue when (or as) it satisfies a performance obligation by transferring a promised good or service to a customer (which is when the customer obtains control of that good or service). The amount of revenue recognized is the amount allocated to the satisfied performance obligation. A performance obligation may be satisfied at a point in time (typically for promises to transfer goods to a customer) or over time (typically for promises to transfer services to a customer). For performance obligations satisfied over time, an entity recognizes revenue over time by selecting an appropriate method for measuring the entity's progress toward complete satisfaction of that performance obligation. (See paragraphs 606-10-25-23 through 25-30.)

**606-10-05-5**   This Topic also includes a cohesive set of disclosure requirements that would result in an entity providing users of financial statements with comprehensive information about the nature, amount, timing, and uncertainty of revenue and cash flows arising from the entity's contracts with customers. Specifically, Section 606-10-50 requires an entity to provide information about:

a. Revenue recognized from contracts with customers, including the disaggregation of revenue into appropriate categories

b. Contract balances, including the opening and closing balances of receivables, contract assets, and contract liabilities

c. Performance obligations, including when the entity typically satisfies its performance obligations and the transaction price that is allocated to the remaining performance obligations in a contract

d. Significant judgments, and changes in judgments, made in applying the requirements to those contracts.

Additionally, Section 340-40-50 requires an entity to provide quantitative and/or qualitative information about assets recognized from the costs to obtain or fulfill a contract with a customer.

**606-10-05-6**   Paragraphs presented in **bold type** in this Topic state the main principles. All paragraphs have equal authority.

# 10 Objectives

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

> (i) **General Note:**The Objectives Section provides the high-level objectives that the Subtopic is intended to accomplish or attain. The Section does not summarize or discuss the main principles of accounting and reporting requirements.

# General

606-10-10-1    The objective of the guidance in this Topic is to establish the principles that an entity shall apply to report useful information to users of financial statements about the nature, amount, timing, and uncertainty of revenue and cash flows arising from a contract with a customer.

## > Meeting the Objective

606-10-10-2    To meet the objective in paragraph 606-10-10-1, the core principle of the guidance in this Topic is that an entity shall recognize revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration to which the entity expects to be entitled in exchange for those goods or services.

606-10-10-3    An entity shall consider the terms of the contract and all relevant facts and circumstances when applying this guidance. An entity shall apply this guidance, including the use of any practical expedients, consistently to contracts with similar characteristics and in similar circumstances.

606-10-10-4    This guidance specifies the accounting for an individual contract with a customer. However, as a practical expedient, an entity may apply this guidance to a portfolio of contracts (or performance obligations) with similar characteristics if the entity reasonably expects that the effects on the financial statements of applying this guidance to the portfolio would not differ materially from applying this guidance to the individual contracts (or performance obligations) within that portfolio. When accounting for a portfolio, an entity shall use estimates and assumptions that reflect the size and composition of the portfolio.

# 15 Scope and Scope Exceptions

> (i) **General Note:**The Scope and Scope Exceptions Section outlines the items (for example, the entities, transactions, instruments, or events) to which the guidance in the Subtopic does or does not apply. In some cases, the Section may contain definitional or other text to frame the scope.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

# General

## > Entities

**606-10-15-1**    The guidance in this Subtopic applies to all entities.

## > Transactions

**606-10-15-2**    An entity shall apply the guidance in this Topic to all contracts with customers, except the following:

a. Lease contracts within the scope of Topic 842, Leases.

b. Contracts within the scope of Topic 944, Financial Services—Insurance.

c. Financial instruments and other contractual rights or obligations within the scope of the following Topics:

1. Topic 310, Receivables

2. Topic 320, Investments—Debt Securities

2a. Topic 321, Investments—Equity Securities

3. Topic 323, Investments—Equity Method and Joint Ventures

4. Topic 325, Investments—Other

5. Topic 405, Liabilities

6. Topic 470, Debt

7. Topic 815, Derivatives and Hedging

8. Topic 825, Financial Instruments

9. Topic 860, Transfers and Servicing.

d. Guarantees (other than product or service warranties) within the scope of Topic 460, Guarantees.

e. Nonmonetary exchanges between entities in the same line of business to facilitate sales to customers or potential customers. For example, this Topic would not apply to a contract between two oil companies that agree to an exchange of oil to fulfill demand from their customers in different specified locations on a timely basis. Topic 845 on nonmonetary transactions may apply to nonmonetary exchanges that are not within the scope of this Topic.

**606-10-15-2A**    An entity shall consider the guidance in Subtopic 958-605 on not-for-profit entities—revenue recognition—contributions when determining whether a transaction is a contribution within the scope of Subtopic 958-605 or a transaction within the scope of this Topic.

**606-10-15-3**    An entity shall apply the guidance in this Topic to a contract (other than a contract listed in paragraph 606-10-15-2) only if the counterparty to the contract is a customer. A customer is a party that has

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

contracted with an entity to obtain goods or services that are an output of the entity's ordinary activities in exchange for consideration.

**606-10-15-3A**

> ⏲ PENDING CONTENT　　　　　　　　　　　　　　　　　　　　　⑦
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 │ **Transition Guidance:** 606-10-65-3
>
> An entity shall apply the guidance in this Topic, including the guidance on noncash consideration in paragraphs 606-10-32-21 through 32-24, to a contract with share-based noncash consideration (for example, shares, share options, or other equity instruments) from a customer for the transfer of goods or services. The guidance in other Topics (including Topic 815 on derivatives and hedging and Topic 321 on equity securities) does not apply to share-based noncash consideration from a customer for the transfer of goods or services unless and until the entity's right to receive or retain the share-based noncash consideration is unconditional under this Topic. To assess whether the right is unconditional under this Topic, only the contract terms that relate to the entity's performance obligations (or a specific outcome of the entity's performance) within the scope of this Topic are evaluated. The determination of whether the right is unconditional is consistent with the guidance in paragraph 606-10-45-4, which states that a right to consideration is unconditional if only the passage of time is required before payment of that consideration is due.

**606-10-15-4**　A contract with a customer may be partially within the scope of this Topic and partially within the scope of other Topics listed in paragraph 606-10-15-2.

　　a. If the other Topics specify how to separate and/or initially measure one or more parts of the contract, then an entity shall first apply the separation and/or measurement guidance in those Topics. An entity shall exclude from the transaction price the amount of the part (or parts) of the contract that are initially measured in accordance with other Topics and shall apply paragraphs 606-10-32-28 through 32-41 to allocate the amount of the transaction price that remains (if any) to each performance obligation within the scope of this Topic and to any other parts of the contract identified by paragraph 606-10-15-4(b).

　　b. If the other Topics do not specify how to separate and/or initially measure one or more parts of the contract, then the entity shall apply the guidance in this Topic to separate and/or initially measure the part (or parts) of the contract.

**606-10-15-5**　Subtopic 340-40 on other assets and deferred costs from contracts with customers includes guidance on accounting for the incremental costs of obtaining a contract with a customer and for the costs incurred to fulfill a contract with a customer if those costs are not within the scope of another Topic (see Subtopic 340-40). An entity shall apply that guidance only to the costs incurred that relate to a contract with a customer (or part of that contract) that is within the scope of the guidance in this Topic.

# 20 Glossary

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

ⓘ **General Note:**The Master Glossary contains all terms identified as glossary terms throughout the Codification. Clicking on any term in the Master Glossary will display where the term is used. The Master Glossary may contain identical terms with different definitions, some of which may not be appropriate for a particular Subtopic. For any particular Subtopic, users should only use the glossary terms included in the particular Subtopic Glossary Section (Section 20).

## Award

The collective noun for multiple instruments with the same terms and conditions granted at the same time either to a single grantee or to a group of grantees. An award may specify multiple vesting dates, referred to as graded vesting, and different parts of an award may have different expected terms. References to an award also apply to a portion of an award.

## Contract

An agreement between two or more parties that creates enforceable rights and obligations.

## Contract Asset

An entity's right to consideration in exchange for goods or services that the entity has transferred to a customer when that right is conditioned on something other than the passage of time (for example, the entity's future performance).

## Contract Liability

An entity's obligation to transfer goods or services to a customer for which the entity has received consideration (or the amount is due) from the customer.

## Customer

A party that has contracted with an entity to obtain goods or services that are an output of the entity's ordinary activities in exchange for consideration.

## Grant Date

The date at which a grantor and a grantee reach a mutual understanding of the key terms and conditions of a share-based payment award. The grantor becomes contingently obligated on the grant date to issue equity instruments or transfer assets to a grantee who delivers goods or renders services or purchases goods or services as a customer. Awards made under an arrangement that is subject to shareholder approval are not deemed to be granted until that approval is obtained unless approval is essentially a formality (or perfunctory), for example, if management and the members of the board of directors control enough votes to approve the arrangement. Similarly, individual awards that are subject to approval by the board of directors, management, or both are not deemed to be granted until all such approvals are obtained. The grant date for an award of equity instruments is the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

date that a grantee begins to benefit from, or be adversely affected by, subsequent changes in the price of the grantor's equity shares. Paragraph 718-10-25-5 provides guidance on determining the grant date. See Service Inception Date.

## Lease

A contract, or part of a contract, that conveys the right to control the use of identified property, plant, or equipment (an identified asset) for a period of time in exchange for consideration.

## Not-for-Profit Entity

An entity that possesses the following characteristics, in varying degrees, that distinguish it from a business entity:

a. Contributions of significant amounts of resources from resource providers who do not expect commensurate or proportionate pecuniary return

b. Operating purposes other than to provide goods or services at a profit

c. Absence of ownership interests like those of business entities.

Entities that clearly fall outside this definition include the following:

a. All investor-owned entities

b. Entities that provide dividends, lower costs, or other economic benefits directly and proportionately to their owners, members, or participants, such as mutual insurance entities, credit unions, farm and rural electric cooperatives, and employee benefit plans.

## Performance Condition

A condition affecting the vesting, exercisability, exercise price, or other pertinent factors used in determining the fair value of an award that relates to both of the following:

a. Rendering service or delivering goods for a specified (either explicitly or implicitly) period of time

b. Achieving a specified performance target that is defined solely by reference to the grantor's own operations (or activities) or by reference to the grantee's performance related to the grantor's own operations (or activities).

Attaining a specified growth rate in return on assets, obtaining regulatory approval to market a specified product, selling shares in an initial public offering or other financing event, and a change in control are examples of performance conditions. A performance target also may be defined by reference to the same performance measure of another entity or group of entities. For example, attaining a growth rate in earnings per share (EPS) that exceeds the average growth rate in EPS of other entities in the same industry is a performance condition. A performance target might pertain to the performance of the entity as a whole or to some part of the entity, such as a division, or to the performance of the grantee if such performance is in accordance with the terms of the award and solely relates to the grantor's own operations (or activities).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.



**⏱ PENDING CONTENT**

**Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-2

1. For share-based payments in which a grantor acquires goods or services to be used or consumed in the grantor's own operations, a condition affecting the vesting, exercisability, exercise price, or other pertinent factors used in determining the fair value of an award that relates to both of the following:

  a. Rendering service or delivering goods for a specified (either explicitly or implicitly) period of time

  b. Achieving a specified performance target that is defined solely by reference to the grantor's own operations (or activities) or by reference to the grantee's performance related to the grantor's own operations (or activities).

Attaining a specified growth rate in return on assets, obtaining regulatory approval to market a specified product, selling shares in an initial public offering or other financing event, and a change in control are examples of performance conditions. A performance target also may be defined by reference to the same performance measure of another entity or group of entities. For example, attaining a growth rate in earnings per share (EPS) that exceeds the average growth rate in EPS of other entities in the same industry is a performance condition. A performance target might pertain to the performance of the entity as a whole or to some part of the entity, such as a division, or to the performance of the grantee if such performance is in accordance with the terms of the award and solely relates to the grantor's own operations (or activities).

2. For share-based consideration payable to a customer that can result in a reduction of the transaction price in accordance with Topic 606, a condition affecting the vesting, exercisability, exercise price, or other pertinent factors used in determining the fair value of an award that relates to any of the following:

  a. Achieving a specified performance target that is defined solely by reference to the grantor's own operations (or activities) or by reference to the grantee's (the customer's) performance related to the grantor's own operations (or activities)

  b. The grantee's purchase (or potential purchase) of the grantor's goods or services from either the grantor or the grantor's customers

  c. A purchase (or potential purchase) of the grantor's goods or services from either the grantee or the grantee's customers.

The performance targets listed in this definition for employee and nonemployee awards (for example, a change in control) are also examples of performance conditions for share-based consideration payable to a customer.

## Performance Obligation

A promise in a contract with a customer to transfer to the customer either:

  a. A good or service (or a bundle of goods or services) that is distinct

  b. A series of distinct goods or services that are substantially the same and that have the same pattern of transfer to the customer.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

## Probable

The future event or events are likely to occur.

## Public Business Entity

A public business entity is a business entity meeting any one of the criteria below. Neither a not-for-profit entity nor an employee benefit plan is a business entity.

a. It is required by the U.S. Securities and Exchange Commission (SEC) to file or furnish financial statements, or does file or furnish financial statements (including voluntary filers), with the SEC (including other entities whose financial statements or financial information are required to be or are included in a filing).

b. It is required by the Securities Exchange Act of 1934 (the Act), as amended, or rules or regulations promulgated under the Act, to file or furnish financial statements with a regulatory agency other than the SEC.

c. It is required to file or furnish financial statements with a foreign or domestic regulatory agency in preparation for the sale of or for purposes of issuing securities that are not subject to contractual restrictions on transfer.

d. It has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market.

e. It has one or more securities that are not subject to contractual restrictions on transfer, and it is required by law, contract, or regulation to prepare U.S. GAAP financial statements (including notes) and make them publicly available on a periodic basis (for example, interim or annual periods). An entity must meet both of these conditions to meet this criterion.

An entity may meet the definition of a public business entity solely because its financial statements or financial information is included in another entity's filing with the SEC. In that case, the entity is only a public business entity for purposes of financial statements that are filed or furnished with the SEC.

## Revenue

Inflows or other enhancements of assets of an entity or settlements of its liabilities (or a combination of both) from delivering or producing goods, rendering services, or other activities that constitute the entity's ongoing major or central operations.

## Security

A share, participation, or other interest in property or in an entity of the issuer or an obligation of the issuer that has all of the following characteristics:

a. It is either represented by an instrument issued in bearer or registered form or, if not represented by an instrument, is registered in books maintained to record transfers by or on behalf of the issuer.

b. It is of a type commonly dealt in on securities exchanges or markets or, when represented by an instrument, is commonly recognized in any area in which it is issued or dealt in as a medium for investment.

c. It either is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

### Service Condition

A condition affecting the vesting, exercisability, exercise price, or other pertinent factors used in determining the fair value of an award that depends solely on an employee rendering service to the employer for the requisite service period or a nonemployee delivering goods or rendering services to the grantor over a vesting period. A condition that results in the acceleration of vesting in the event of a grantee's death, disability, or termination without cause is a service condition.

### Service Inception Date

The date at which the employee's requisite service period or the nonemployee's vesting period begins. The service inception date usually is the grant date, but the service inception date may differ from the grant date (see Example 6 [see paragraph 718-10-55-107] for an illustration of the application of this term to an employee award).

### Share-Based Payment Arrangements

An arrangement under which either of the following conditions is met:

a. One or more suppliers of goods or services (including employees) receive awards of equity shares, equity share options, or other equity instruments.

b. The entity incurs liabilities to suppliers that meet either of the following conditions:

1. The amounts are based, at least in part, on the price of the entity's shares or other equity instruments. (The phrase at least in part is used because an award may be indexed to both the price of the entity's shares and something other than either the price of the entity's shares or a market, performance, or service condition.)

2. The awards require or may require settlement by issuance of the entity's shares.

The term shares includes various forms of ownership interest that may not take the legal form of securities (for example, partnership interests), as well as other interests, including those that are liabilities in substance but not in form. Equity shares refers only to shares that are accounted for as equity.
Also called share-based compensation arrangements.

### Standalone Selling Price

The price at which an entity would sell a promised good or service separately to a customer.

### Transaction Price

The amount of consideration to which an entity expects to be entitled in exchange for transferring promised goods or services to a customer, excluding amounts collected on behalf of third parties.

# 25 Recognition

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

> ⓘ **General Note:** The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

# General

👥 Related Proposed ASUs

## > Identifying the Contract

**606-10-25-1**    An entity shall account for a contract with a customer that is within the scope of this Topic only when all of the following criteria are met:

> a. The parties to the contract have approved the contract (in writing, orally, or in accordance with other customary business practices) and are committed to perform their respective obligations.
>
> b. The entity can identify each party's rights regarding the goods or services to be transferred.
>
> c. The entity can identify the payment terms for the goods or services to be transferred.
>
> d. The contract has commercial substance (that is, the risk, timing, or amount of the entity's future cash flows is expected to change as a result of the contract).
>
> e. It is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer (see paragraphs 606-10-55-3A through 55-3C). In evaluating whether collectibility of an amount of consideration is probable, an entity shall consider only the customer's ability and intention to pay that amount of consideration when it is due. The amount of consideration to which the entity will be entitled may be less than the price stated in the contract if the consideration is variable because the entity may offer the customer a price concession (see paragraph 606-10-32-7).

**606-10-25-2**    A contract is an agreement between two or more parties that creates enforceable rights and obligations. Enforceability of the rights and obligations in a contract is a matter of law. Contracts can be written, oral, or implied by an entity's customary business practices. The practices and processes for establishing contracts with customers vary across legal jurisdictions, industries, and entities. In addition, they may vary within an entity (for example, they may depend on the class of customer or the nature of the promised goods or services). An entity shall consider those practices and processes in determining whether and when an agreement with a customer creates enforceable rights and obligations.

**606-10-25-3**    Some contracts with customers may have no fixed duration and can be terminated or modified by either party at any time. Other contracts may automatically renew on a periodic basis that is specified in the contract. An entity shall apply the guidance in this Topic to the duration of the contract (that is, the contractual period) in which the parties to the contract have present enforceable rights and obligations. In evaluating the criterion in paragraph 606-10-25-1(e), an entity shall assess the collectibility of the consideration promised in a contract for the goods or services that will be transferred to the customer rather than assessing the collectibility of the consideration promised in

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

the contract for all of the promised goods or services (see paragraphs 606-10-55-3A through 55-3C). However, if an entity determines that all of the criteria in paragraph 606-10-25-1 are met, the remainder of the guidance in this Topic shall be applied to all of the promised goods or services in the contract.

**606-10-25-4**   For the purpose of applying the guidance in this Topic, a contract does not exist if each party to the contract has the unilateral enforceable right to terminate a wholly unperformed contract without compensating the other party (or parties). A contract is wholly unperformed if both of the following criteria are met:

a. The entity has not yet transferred any promised goods or services to the customer.

b. The entity has not yet received, and is not yet entitled to receive, any consideration in exchange for promised goods or services.

**606-10-25-5**   If a contract with a customer meets the criteria in paragraph 606-10-25-1 at contract inception, an entity shall not reassess those criteria unless there is an indication of a significant change in facts and circumstances. For example, if a customer's ability to pay the consideration deteriorates significantly, an entity would reassess whether it is probable that the entity will collect the consideration to which the entity will be entitled in exchange for the remaining goods or services that will be transferred to the customer (see paragraphs 606-10-55-3A through 55-3C).

**606-10-25-6**   If a contract with a customer does not meet the criteria in paragraph 606-10-25-1, an entity shall continue to assess the contract to determine whether the criteria in paragraph 606-10-25-1 are subsequently met.

**606-10-25-7**   When a contract with a customer does not meet the criteria in paragraph 606-10-25-1 and an entity receives consideration from the customer, the entity shall recognize the consideration received as revenue only when one or more of the following events have occurred:

a. The entity has no remaining obligations to transfer goods or services to the customer, and all, or substantially all, of the consideration promised by the customer has been received by the entity and is nonrefundable.

b. The contract has been terminated, and the consideration received from the customer is nonrefundable.

c. The entity has transferred control of the goods or services to which the consideration that has been received relates, the entity has stopped transferring goods or services to the customer (if applicable) and has no obligation under the contract to transfer additional goods or services, and the consideration received from the customer is nonrefundable.

**606-10-25-8**   An entity shall recognize the consideration received from a customer as a liability until one of the events in paragraph 606-10-25-7 occurs or until the criteria in paragraph 606-10-25-1 are subsequently met (see paragraph 606-10-25-6). Depending on the facts and circumstances relating to the contract, the liability recognized represents the entity's obligation to either transfer goods or services in the future or refund the consideration received. In either case, the liability shall be measured at the amount of consideration received from the customer.

## > Combination of Contracts

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-25-9**    An entity shall combine two or more contracts entered into at or near the same time with the same customer (or related parties of the customer) and account for the contracts as a single contract if one or more of the following criteria are met:

   a. The contracts are negotiated as a package with a single commercial objective.

   b. The amount of consideration to be paid in one contract depends on the price or performance of the other contract.

   c. The goods or services promised in the contracts (or some goods or services promised in each of the contracts) are a single performance obligation in accordance with paragraphs 606-10-25-14 through 25-22.

## > Contract Modifications

**606-10-25-10**    A contract modification is a change in the scope or price (or both) of a contract that is approved by the parties to the contract. In some industries and jurisdictions, a contract modification may be described as a change order, a variation, or an amendment. A contract modification exists when the parties to a contract approve a modification that either creates new or changes existing enforceable rights and obligations of the parties to the contract. A contract modification could be approved in writing, by oral agreement, or implied by customary business practices. If the parties to the contract have not approved a contract modification, an entity shall continue to apply the guidance in this Topic to the existing contract until the contract modification is approved.

**606-10-25-11**    A contract modification may exist even though the parties to the contract have a dispute about the scope or price (or both) of the modification or the parties have approved a change in the scope of the contract but have not yet determined the corresponding change in price. In determining whether the rights and obligations that are created or changed by a modification are enforceable, an entity shall consider all relevant facts and circumstances including the terms of the contract and other evidence. If the parties to a contract have approved a change in the scope of the contract but have not yet determined the corresponding change in price, an entity shall estimate the change to the transaction price arising from the modification in accordance with paragraphs 606-10-32-5 through 32-9 on estimating variable consideration and paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration.

**606-10-25-12**    An entity shall account for a contract modification as a separate contract if both of the following conditions are present:

   a. The scope of the contract increases because of the addition of promised goods or services that are distinct (in accordance with paragraphs 606-10-25-18 through 25-22).

   b. The price of the contract increases by an amount of consideration that reflects the entity's standalone selling prices of the additional promised goods or services and any appropriate adjustments to that price to reflect the circumstances of the particular contract. For example, an entity may adjust the standalone selling price of an additional good or service for a discount that the customer receives, because it is not necessary for the entity to incur the selling-related costs that it would incur when selling a similar good or service to a new customer.

**606-10-25-13**    If a contract modification is not accounted for as a separate contract in accordance with paragraph 606-10-25-12, an entity shall account for the promised goods or services not yet transferred at the date of the contract modification (that is, the remaining promised goods or services) in whichever of the following ways is applicable:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. An entity shall account for the contract modification as if it were a termination of the existing contract, and the creation of a new contract, if the remaining goods or services are distinct from the goods or services transferred on or before the date of the contract modification. The amount of consideration to be allocated to the remaining performance obligations (or to the remaining distinct goods or services in a single performance obligation identified in accordance with paragraph 606-10-25-14(b)) is the sum of:

> 1. The consideration promised by the customer (including amounts already received from the customer) that was included in the estimate of the transaction price and that had not been recognized as revenue and

> 2. The consideration promised as part of the contract modification.

b. An entity shall account for the contract modification as if it were a part of the existing contract if the remaining goods or services are not distinct and, therefore, form part of a single performance obligation that is partially satisfied at the date of the contract modification. The effect that the contract modification has on the transaction price, and on the entity's measure of progress toward complete satisfaction of the performance obligation, is recognized as an adjustment to revenue (either as an increase in or a reduction of revenue) at the date of the contract modification (that is, the adjustment to revenue is made on a cumulative catch-up basis).

c. If the remaining goods or services are a combination of items (a) and (b), then the entity shall account for the effects of the modification on the unsatisfied (including partially unsatisfied) performance obligations in the modified contract in a manner that is consistent with the objectives of this paragraph.

## > Identifying Performance Obligations

**606-10-25-14**    At contract inception, an entity shall assess the goods or services promised in a contract with a customer and shall identify as a performance obligation each promise to transfer to the customer either:

a. A good or service (or a bundle of goods or services) that is distinct

b. A series of distinct goods or services that are substantially the same and that have the same pattern of transfer to the customer (see paragraph 606-10-25-15).

**606-10-25-15**    A series of distinct goods or services has the same pattern of transfer to the customer if both of the following criteria are met:

a. Each distinct good or service in the series that the entity promises to transfer to the customer would meet the criteria in paragraph 606-10-25-27 to be a performance obligation satisfied over time.

b. In accordance with paragraphs 606-10-25-31 through 25-32, the same method would be used to measure the entity's progress toward complete satisfaction of the performance obligation to transfer each distinct good or service in the series to the customer.

### · > Promises in Contracts with Customers

**606-10-25-16**    A contract with a customer generally explicitly states the goods or services that an entity promises to transfer to a customer. However, the promised goods and services identified in a contract with a customer may not be limited to the goods or services that are explicitly stated in that contract. This is

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

because a contract with a customer also may include promises that are implied by an entity's customary business practices, published policies, or specific statements if, at the time of entering into the contract, those promises create a reasonable expectation of the customer that the entity will transfer a good or service to the customer.

**606-10-25-16A** An entity is not required to assess whether promised goods or services are performance obligations if they are immaterial in the context of the contract with the customer. If the revenue related to a performance obligation that includes goods or services that are immaterial in the context of the contract is recognized before those immaterial goods or services are transferred to the customer, then the related costs to transfer those goods or services shall be accrued.

**606-10-25-16B** An entity shall not apply the guidance in paragraph 606-10-25-16A to a customer option to acquire additional goods or services that provides the customer with a material right, in accordance with paragraphs 606-10-55-41 through 55-45.

**606-10-25-17** Promised goods or services do not include activities that an entity must undertake to fulfill a contract unless those activities transfer a good or service to a customer. For example, a services provider may need to perform various administrative tasks to set up a contract. The performance of those tasks does not transfer a service to the customer as the tasks are performed. Therefore, those setup activities are not promised goods or services in the contract with the customer.

**606-10-25-18** Depending on the contract, promised goods or services may include, but are not limited to, the following:

     a. Sale of goods produced by an entity (for example, inventory of a manufacturer)

     b. Resale of goods purchased by an entity (for example, merchandise of a retailer)

     c. Resale of rights to goods or services purchased by an entity (for example, a ticket resold by an entity acting as a principal, as described in paragraphs 606-10-55-36 through 55-40)

     d. Performing a contractually agreed-upon task (or tasks) for a customer

     e. Providing a service of standing ready to provide goods or services (for example, unspecified updates to software that are provided on a when-and-if-available basis) or of making goods or services available for a customer to use as and when the customer decides

     f. Providing a service of arranging for another party to transfer goods or services to a customer (for example, acting as an agent of another party, as described in paragraphs 606-10-55-36 through 55-40)

     g. Granting rights to goods or services to be provided in the future that a customer can resell or provide to its customer (for example, an entity selling a product to a retailer promises to transfer an additional good or service to an individual who purchases the product from the retailer)

     h. Constructing, manufacturing, or developing an asset on behalf of a customer

     i. Granting licenses (see paragraphs 606-10-55-54 through 55-60 and paragraphs 606-10-55-62 through 55-65B)

     j. Granting options to purchase additional goods or services (when those options provide a customer with a material right, as described in paragraphs 606-10-55-41 through 55-45).

**606-10-25-18A** An entity that promises a good to a customer also might perform shipping and handling activities related to that good. If the shipping and handling activities are performed before the customer obtains control of the good (see paragraphs 606-10-25-23 through 25-30 for guidance on satisfying performance obligations), then the shipping and handling activities are not a promised service to the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

customer. Rather, shipping and handling are activities to fulfill the entity's promise to transfer the good.

**606-10-25-18B**   If shipping and handling activities are performed after a customer obtains control of the good, then the entity may elect to account for shipping and handling as activities to fulfill the promise to transfer the good. The entity shall apply this accounting policy election consistently to similar types of transactions. An entity that makes this election would not evaluate whether shipping and handling activities are promised services to its customers. If revenue is recognized for the related good before the shipping and handling activities occur, the related costs of those shipping and handling activities shall be accrued. An entity that applies this accounting policy election shall comply with the accounting policy disclosure requirements in paragraphs 235-10-50-1 through 50-6.

**606-10-25-18C**   See Subtopic 952-606, Franchisors—Revenue from Contracts with Customers, for additional guidance and a practical expedient for entities within the scope of that guidance that are not public business entities.

## · > Distinct Goods or Services

**606-10-25-19**   A good or service that is promised to a customer is distinct if both of the following criteria are met:

> a. The customer can benefit from the good or service either on its own or together with other resources that are readily available to the customer (that is, the good or service is capable of being distinct).
>
> b. The entity's promise to transfer the good or service to the customer is separately identifiable from other promises in the contract (that is, the promise to transfer the good or service is distinct within the context of the contract).

**606-10-25-20**   A customer can benefit from a good or service in accordance with paragraph 606-10-25-19(a) if the good or service could be used, consumed, sold for an amount that is greater than scrap value, or otherwise held in a way that generates economic benefits. For some goods or services, a customer may be able to benefit from a good or service on its own. For other goods or services, a customer may be able to benefit from the good or service only in conjunction with other readily available resources. A readily available resource is a good or service that is sold separately (by the entity or another entity) or a resource that the customer has already obtained from the entity (including goods or services that the entity will have already transferred to the customer under the contract) or from other transactions or events. Various factors may provide evidence that the customer can benefit from a good or service either on its own or in conjunction with other readily available resources. For example, the fact that the entity regularly sells a good or service separately would indicate that a customer can benefit from the good or service on its own or with other readily available resources.

**606-10-25-21**   In assessing whether an entity's promises to transfer goods or services to the customer are separately identifiable in accordance with paragraph 606-10-25-19(b), the objective is to determine whether the nature of the promise, within the context of the contract, is to transfer each of those goods or services individually or, instead, to transfer a combined item or items to which the promised goods or services are inputs. Factors that indicate that two or more promises to transfer goods or services to a customer are not separately identifiable include, but are not limited to, the following:

> a. The entity provides a significant service of integrating goods or services with other goods or services promised in the contract into a bundle of goods or services that represent the combined output or outputs for which the customer has contracted. In other words, the entity is using the goods or services as inputs to produce or deliver the combined output or outputs specified by the customer. A combined output or outputs might include more than one phase, element, or unit.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

b. One or more of the goods or services significantly modifies or customizes, or are significantly modified or customized by, one or more of the other goods or services promised in the contract.

c. The goods or services are highly interdependent or highly interrelated. In other words, each of the goods or services is significantly affected by one or more of the other goods or services in the contract. For example, in some cases, two or more goods or services are significantly affected by each other because the entity would not be able to fulfill its promise by transferring each of the goods or services independently.

**606-10-25-22**    If a promised good or service is not distinct, an entity shall combine that good or service with other promised goods or services until it identifies a bundle of goods or services that is distinct. In some cases, that would result in the entity accounting for all the goods or services promised in a contract as a single performance obligation.

# > Satisfaction of Performance Obligations

**606-10-25-23**    An entity shall recognize revenue when (or as) the entity satisfies a performance obligation by transferring a promised good or service (that is, an asset) to a customer. An asset is transferred when (or as) the customer obtains control of that asset.

**606-10-25-24**    For each performance obligation identified in accordance with paragraphs 606-10-25-14 through 25-22, an entity shall determine at contract inception whether it satisfies the performance obligation over time (in accordance with paragraphs 606-10-25-27 through 25-29) or satisfies the performance obligation at a point in time (in accordance with paragraph 606-10-25-30). If an entity does not satisfy a performance obligation over time, the performance obligation is satisfied at a point in time.

**606-10-25-25**    Goods and services are assets, even if only momentarily, when they are received and used (as in the case of many services). Control of an asset refers to the ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset. Control includes the ability to prevent other entities from directing the use of, and obtaining the benefits from, an asset. The benefits of an asset are the potential cash flows (inflows or savings in outflows) that can be obtained directly or indirectly in many ways, such as by:

a. Using the asset to produce goods or provide services (including public services)

b. Using the asset to enhance the value of other assets

c. Using the asset to settle liabilities or reduce expenses

d. Selling or exchanging the asset

e. Pledging the asset to secure a loan

f. Holding the asset.

**606-10-25-26**    When evaluating whether a customer obtains control of an asset, an entity shall consider any agreement to repurchase the asset (see paragraphs 606-10-55-66 through 55-78).

## · > Performance Obligations Satisfied Over Time

**606-10-25-27**    An entity transfers control of a good or service over time and, therefore, satisfies a performance obligation and recognizes revenue over time, if one of the following criteria is met:

a. The customer simultaneously receives and consumes the benefits provided by the entity's performance as the entity performs (see paragraphs 606-10-55-5 through 55-6).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

b. The entity's performance creates or enhances an asset (for example, work in process) that the customer controls as the asset is created or enhanced (see paragraph 606-10-55-7).

c. The entity's performance does not create an asset with an alternative use to the entity (see paragraph 606-10-25-28), and the entity has an enforceable right to payment for performance completed to date (see paragraph 606-10-25-29).

**606-10-25-28** An asset created by an entity's performance does not have an alternative use to an entity if the entity is either restricted contractually from readily directing the asset for another use during the creation or enhancement of that asset or limited practically from readily directing the asset in its completed state for another use. The assessment of whether an asset has an alternative use to the entity is made at contract inception. After contract inception, an entity shall not update the assessment of the alternative use of an asset unless the parties to the contract approve a contract modification that substantively changes the performance obligation. Paragraphs 606-10-55-8 through 55-10 provide guidance for assessing whether an asset has an alternative use to an entity.

**606-10-25-29** An entity shall consider the terms of the contract, as well as any laws that apply to the contract, when evaluating whether it has an enforceable right to payment for performance completed to date in accordance with paragraph 606-10-25-27(c). The right to payment for performance completed to date does not need to be for a fixed amount. However, at all times throughout the duration of the contract, the entity must be entitled to an amount that at least compensates the entity for performance completed to date if the contract is terminated by the customer or another party for reasons other than the entity's failure to perform as promised. Paragraphs 606-10-55-11 through 55-15 provide guidance for assessing the existence and enforceability of a right to payment and whether an entity's right to payment would entitle the entity to be paid for its performance completed to date.

## · > Performance Obligations Satisfied at a Point in Time

**606-10-25-30** If a performance obligation is not satisfied over time in accordance with paragraphs 606-10-25-27 through 25-29, an entity satisfies the performance obligation at a point in time. To determine the point in time at which a customer obtains control of a promised asset and the entity satisfies a performance obligation, the entity shall consider the guidance on control in paragraphs 606-10-25-23 through 25-26. In addition, an entity shall consider indicators of the transfer of control, which include, but are not limited to, the following:

a. The entity has a present right to payment for the asset—If a customer presently is obliged to pay for an asset, then that may indicate that the customer has obtained the ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset in exchange.

b. The customer has legal title to the asset—Legal title may indicate which party to a contract has the ability to direct the use of, and obtain substantially all of the remaining benefits from, an asset or to restrict the access of other entities to those benefits. Therefore, the transfer of legal title of an asset may indicate that the customer has obtained control of the asset. If an entity retains legal title solely as protection against the customer's failure to pay, those rights of the entity would not preclude the customer from obtaining control of an asset.

c. The entity has transferred physical possession of the asset—The customer's physical possession of an asset may indicate that the customer has the ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset or to restrict the access of other entities to those benefits. However, physical possession may not coincide with control of an asset. For example, in some repurchase agreements and in some consignment arrangements, a customer or consignee may have physical possession of an asset that the entity controls.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

Conversely, in some bill-and-hold arrangements, the entity may have physical possession of an asset that the customer controls. Paragraphs 606-10-55-66 through 55-78, 606-10-55-79 through 55-80, and 606-10-55-81 through 55-84 provide guidance on accounting for repurchase agreements, consignment arrangements, and bill-and-hold arrangements, respectively.

d. The customer has the significant risks and rewards of ownership of the asset—The transfer of the significant risks and rewards of ownership of an asset to the customer may indicate that the customer has obtained the ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset. However, when evaluating the risks and rewards of ownership of a promised asset, an entity shall exclude any risks that give rise to a separate performance obligation in addition to the performance obligation to transfer the asset. For example, an entity may have transferred control of an asset to a customer but not yet satisfied an additional performance obligation to provide maintenance services related to the transferred asset.

e. The customer has accepted the asset—The customer's acceptance of an asset may indicate that it has obtained the ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset. To evaluate the effect of a contractual customer acceptance clause on when control of an asset is transferred, an entity shall consider the guidance in paragraphs 606-10-55-85 through 55-88.

### · > Measuring Progress toward Complete Satisfaction of a Performance Obligation

**606-10-25-31**  For each performance obligation satisfied over time in accordance with paragraphs 606-10-25-27 through 25-29, an entity shall recognize revenue over time by measuring the progress toward complete satisfaction of that performance obligation. The objective when measuring progress is to depict an entity's performance in transferring control of goods or services promised to a customer (that is, the satisfaction of an entity's performance obligation).

**606-10-25-32**  An entity shall apply a single method of measuring progress for each performance obligation satisfied over time, and the entity shall apply that method consistently to similar performance obligations and in similar circumstances. At the end of each reporting period, an entity shall remeasure its progress toward complete satisfaction of a performance obligation satisfied over time.

### · · > Methods for Measuring Progress

**606-10-25-33**  Appropriate methods of measuring progress include output methods and input methods. Paragraphs 606-10-55-16 through 55-21 provide guidance for using output methods and input methods to measure an entity's progress toward complete satisfaction of a performance obligation. In determining the appropriate method for measuring progress, an entity shall consider the nature of the good or service that the entity promised to transfer to the customer.

**606-10-25-34**  When applying a method for measuring progress, an entity shall exclude from the measure of progress any goods or services for which the entity does not transfer control to a customer. Conversely, an entity shall include in the measure of progress any goods or services for which the entity does transfer control to a customer when satisfying that performance obligation.

**606-10-25-35**  As circumstances change over time, an entity shall update its measure of progress to reflect any changes in the outcome of the performance obligation. Such changes to an entity's measure of progress shall be accounted for as a change in accounting estimate in accordance with Subtopic 250-10 on accounting changes and error corrections.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· · > Reasonable Measures of Progress

**606-10-25-36**    An entity shall recognize revenue for a performance obligation satisfied over time only if the entity can reasonably measure its progress toward complete satisfaction of the performance obligation. An entity would not be able to reasonably measure its progress toward complete satisfaction of a performance obligation if it lacks reliable information that would be required to apply an appropriate method of measuring progress.

**606-10-25-37**    In some circumstances (for example, in the early stages of a contract), an entity may not be able to reasonably measure the outcome of a performance obligation, but the entity expects to recover the costs incurred in satisfying the performance obligation. In those circumstances, the entity shall recognize revenue only to the extent of the costs incurred until such time that it can reasonably measure the outcome of the performance obligation.

# 32 Measurement

ⓘ **General Note:** The Measurement Section provides guidance on both the initial and subsequent measurement. Specifically, this Section provides the criteria and amounts used to measure a particular item at the date of initial recognition. In addition, this Section provides guidance on an entity's subsequent measurement and subsequent recognition of an item. Situations that may result in subsequent changes to carrying amount include impairment, fair value adjustments, depreciation and amortization, and so forth.

# General

⚖ Related Proposed ASUs

**606-10-32-1**    When (or as) a performance obligation is satisfied, an entity shall recognize as revenue the amount of the transaction price (which excludes estimates of variable consideration that are constrained in accordance with paragraphs 606-10-32-11 through 32-13) that is allocated to that performance obligation.

## > Determining the Transaction Price

**606-10-32-2**    An entity shall consider the terms of the contract and its customary business practices to determine the transaction price. The transaction price is the amount of consideration to which an entity expects to be entitled in exchange for transferring promised goods or services to a customer, excluding amounts collected on behalf of third parties (for example, some sales taxes). The consideration promised in a contract with a customer may include fixed amounts, variable amounts, or both.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-32-2A**  An entity may make an accounting policy election to exclude from the measurement of the transaction price all taxes assessed by a governmental authority that are both imposed on and concurrent with a specific revenue-producing transaction and collected by the entity from a customer (for example, sales, use, value added, and some excise taxes). Taxes assessed on an entity's total gross receipts or imposed during the inventory procurement process shall be excluded from the scope of the election. An entity that makes this election shall exclude from the transaction price all taxes in the scope of the election and shall comply with the applicable accounting policy guidance, including the disclosure requirements in paragraphs 235-10-50-1 through 50-6.

**606-10-32-3**  The nature, timing, and amount of consideration promised by a customer affect the estimate of the transaction price. When determining the transaction price, an entity shall consider the effects of all of the following:

   a. Variable consideration (see paragraphs 606-10-32-5 through 32-10 and 606-10-32-14)

   b. Constraining estimates of variable consideration (see paragraphs 606-10-32-11 through 32-13)

   c. The existence of a significant financing component in the contract (see paragraphs 606-10-32-15 through 32-20)

   d. Noncash consideration (see paragraphs 606-10-32-21 through 32-24)

   e. Consideration payable to a customer (see paragraphs 606-10-32-25 through 32-27).

**606-10-32-4**  For the purpose of determining the transaction price, an entity shall assume that the goods or services will be transferred to the customer as promised in accordance with the existing contract and that the contract will not be cancelled, renewed, or modified.

## · > Variable Consideration

**606-10-32-5**  If the consideration promised in a contract includes a variable amount, an entity shall estimate the amount of consideration to which the entity will be entitled in exchange for transferring the promised goods or services to a customer.

**606-10-32-6**  An amount of consideration can vary because of discounts, rebates, refunds, credits, price concessions, incentives, performance bonuses, penalties, or other similar items. The promised consideration also can vary if an entity's entitlement to the consideration is contingent on the occurrence or nonoccurrence of a future event. For example, an amount of consideration would be variable if either a product was sold with a right of return or a fixed amount is promised as a performance bonus on achievement of a specified milestone.

**606-10-32-7**  The variability relating to the consideration promised by a customer may be explicitly stated in the contract. In addition to the terms of the contract, the promised consideration is variable if either of the following circumstances exists:

   a. The customer has a valid expectation arising from an entity's customary business practices, published policies, or specific statements that the entity will accept an amount of consideration that is less than the price stated in the contract. That is, it is expected that the entity will offer a price concession. Depending on the jurisdiction, industry, or customer this offer may be referred to as a discount, rebate, refund, or credit.

   b. Other facts and circumstances indicate that the entity's intention, when entering into the contract with the customer, is to offer a price concession to the customer.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-32-8**  An entity shall estimate an amount of variable consideration by using either of the following methods, depending on which method the entity expects to better predict the amount of consideration to which it will be entitled:

> a. The expected value—The expected value is the sum of probability-weighted amounts in a range of possible consideration amounts. An expected value may be an appropriate estimate of the amount of variable consideration if an entity has a large number of contracts with similar characteristics.

> b. The most likely amount—The most likely amount is the single most likely amount in a range of possible consideration amounts (that is, the single most likely outcome of the contract). The most likely amount may be an appropriate estimate of the amount of variable consideration if the contract has only two possible outcomes (for example, an entity either achieves a performance bonus or does not).

**606-10-32-9**  An entity shall apply one method consistently throughout the contract when estimating the effect of an uncertainty on an amount of variable consideration to which the entity will be entitled. In addition, an entity shall consider all the information (historical, current, and forecast) that is reasonably available to the entity and shall identify a reasonable number of possible consideration amounts. The information that an entity uses to estimate the amount of variable consideration typically would be similar to the information that the entity's management uses during the bid-and-proposal process and in establishing prices for promised goods or services.

· · > Refund Liabilities

**606-10-32-10**  An entity shall recognize a refund liability if the entity receives consideration from a customer and expects to refund some or all of that consideration to the customer. A refund liability is measured at the amount of consideration received (or receivable) for which the entity does not expect to be entitled (that is, amounts not included in the transaction price). The refund liability (and corresponding change in the transaction price and, therefore, the contract liability) shall be updated at the end of each reporting period for changes in circumstances. To account for a refund liability relating to a sale with a right of return, an entity shall apply the guidance in paragraphs 606-10-55-22 through 55-29.

· · > Constraining Estimates of Variable Consideration

**606-10-32-11**  An entity shall include in the transaction price some or all of an amount of variable consideration estimated in accordance with paragraph 606-10-32-8 only to the extent that it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur when the uncertainty associated with the variable consideration is subsequently resolved.

**606-10-32-12**  In assessing whether it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur once the uncertainty related to the variable consideration is subsequently resolved, an entity shall consider both the likelihood and the magnitude of the revenue reversal. Factors that could increase the likelihood or the magnitude of a revenue reversal include, but are not limited to, any of the following:

> a. The amount of consideration is highly susceptible to factors outside the entity's influence. Those factors may include volatility in a market, the judgment or actions of third parties, weather conditions, and a high risk of obsolescence of the promised good or service.

> b. The uncertainty about the amount of consideration is not expected to be resolved for a long period of time.

> c. The entity's experience (or other evidence) with similar types of contracts is limited, or that experience (or other evidence) has limited predictive value.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

d. The entity has a practice of either offering a broad range of price concessions or changing the payment terms and conditions of similar contracts in similar circumstances.

e. The contract has a large number and broad range of possible consideration amounts.

**606-10-32-13**    An entity shall apply paragraph 606-10-55-65 to account for consideration in the form of a sales-based or usage-based royalty that is promised in exchange for a license of intellectual property.

· · > Reassessment of Variable Consideration

**606-10-32-14**    At the end of each reporting period, an entity shall update the estimated transaction price (including updating its assessment of whether an estimate of variable consideration is constrained) to represent faithfully the circumstances present at the end of the reporting period and the changes in circumstances during the reporting period. The entity shall account for changes in the transaction price in accordance with paragraphs 606-10-32-42 through 32-45.

· > The Existence of a Significant Financing Component in the Contract

**606-10-32-15**    In determining the transaction price, an entity shall adjust the promised amount of consideration for the effects of the time value of money if the timing of payments agreed to by the parties to the contract (either explicitly or implicitly) provides the customer or the entity with a significant benefit of financing the transfer of goods or services to the customer. In those circumstances, the contract contains a significant financing component. A significant financing component may exist regardless of whether the promise of financing is explicitly stated in the contract or implied by the payment terms agreed to by the parties to the contract.

**606-10-32-16**    The objective when adjusting the promised amount of consideration for a significant financing component is for an entity to recognize revenue at an amount that reflects the price that a customer would have paid for the promised goods or services if the customer had paid cash for those goods or services when (or as) they transfer to the customer (that is, the cash selling price). An entity shall consider all relevant facts and circumstances in assessing whether a contract contains a financing component and whether that financing component is significant to the contract, including both of the following:

a. The difference, if any, between the amount of promised consideration and the cash selling price of the promised goods or services

b. The combined effect of both of the following:

1. The expected length of time between when the entity transfers the promised goods or services to the customer and when the customer pays for those goods or services

2. The prevailing interest rates in the relevant market.

**606-10-32-17**    Notwithstanding the assessment in paragraph 606-10-32-16, a contract with a customer would not have a significant financing component if any of the following factors exist:

a. The customer paid for the goods or services in advance, and the timing of the transfer of those goods or services is at the discretion of the customer.

b. A substantial amount of the consideration promised by the customer is variable, and the amount or timing of that consideration varies on the basis of the occurrence or nonoccurrence of a future event that is not substantially within the control of the customer or the entity (for example, if the consideration is a sales-based royalty).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

c. The difference between the promised consideration and the cash selling price of the good or service (as described in paragraph 606-10-32-16) arises for reasons other than the provision of finance to either the customer or the entity, and the difference between those amounts is proportional to the reason for the difference. For example, the payment terms might provide the entity or the customer with protection from the other party failing to adequately complete some or all of its obligations under the contract.

**606-10-32-18**   As a practical expedient, an entity need not adjust the promised amount of consideration for the effects of a significant financing component if the entity expects, at contract inception, that the period between when the entity transfers a promised good or service to a customer and when the customer pays for that good or service will be one year or less.

**606-10-32-19**   To meet the objective in paragraph 606-10-32-16 when adjusting the promised amount of consideration for a significant financing component, an entity shall use the discount rate that would be reflected in a separate financing transaction between the entity and its customer at contract inception. That rate would reflect the credit characteristics of the party receiving financing in the contract, as well as any collateral or security provided by the customer or the entity, including assets transferred in the contract. An entity may be able to determine that rate by identifying the rate that discounts the nominal amount of the promised consideration to the price that the customer would pay in cash for the goods or services when (or as) they transfer to the customer. After contract inception, an entity shall not update the discount rate for changes in interest rates or other circumstances (such as a change in the assessment of the customer's credit risk).

**606-10-32-20**   An entity shall present the effects of financing (interest income or interest expense) separately from revenue from contracts with customers in the statement of comprehensive income (statement of activities). Interest income or interest expense is recognized only to the extent that a contract asset (or receivable) or a contract liability is recognized in accounting for a contract with a customer. In accounting for the effects of the time value of money, an entity also shall consider the subsequent measurement guidance in Subtopic 835-30, specifically the guidance in paragraphs 835-30-45-1A through 45-3 on presentation of the discount and premium in the financial statements and the guidance in paragraphs 835-30-55-2 through 55-3 on the application of the interest method.

### · > Noncash Consideration

**606-10-32-21**   To determine the transaction price for contracts in which a customer promises consideration in a form other than cash, an entity shall measure the estimated fair value of the noncash consideration at contract inception (that is, the date at which the criteria in paragraph 606-10-25-1 are met).

**606-10-32-22**   If an entity cannot reasonably estimate the fair value of the noncash consideration, the entity shall measure the consideration indirectly by reference to the standalone selling price of the goods or services promised to the customer (or class of customer) in exchange for the consideration.

**606-10-32-23**   The fair value of the noncash consideration may vary after contract inception because of the form of the consideration (for example, a change in the price of a share to which an entity is entitled to receive from a customer). Changes in the fair value of noncash consideration after contract inception that are due to the form of the consideration are not included in the transaction price. If the fair value of the noncash consideration promised by a customer varies for reasons other than the form of the consideration (for example, the exercise price of a share option changes because of the entity's performance), an entity shall apply the guidance on variable consideration in paragraphs 606-10-32-5 through 32-14. If the fair value of the noncash consideration varies because of the form of the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

consideration and for reasons other than the form of the consideration, an entity shall apply the guidance in paragraphs 606-10-32-5 through 32-14 on variable consideration only to the variability resulting from reasons other than the form of the consideration.

**606-10-32-24**    If a customer contributes goods or services (for example, materials, equipment, or labor) to facilitate an entity's fulfillment of the contract, the entity shall assess whether it obtains control of those contributed goods or services. If so, the entity shall account for the contributed goods or services as noncash consideration received from the customer.

## · > Consideration Payable to a Customer

**606-10-32-25**    Consideration payable to a customer includes:

> a. Cash amounts that an entity pays, or expects to pay, to the customer (or to other parties that purchase the entity's goods or services from the customer)
>
> b. Credit or other items (for example, a coupon or voucher) that can be applied against amounts owed to the entity (or to other parties that purchase the entity's goods or services from the customer)
>
> c. Equity instruments (liability or equity classified) granted in conjunction with selling goods or services (for example, shares, share options, or other equity instruments).

An entity shall account for consideration payable to a customer as a reduction of the transaction price and, therefore, of revenue unless the payment to the customer is in exchange for a distinct good or service (as described in paragraphs 606-10-25-18 through 25-22) that the customer transfers to the entity. If the consideration payable to a customer includes a variable amount, an entity shall estimate the transaction price (including assessing whether the estimate of variable consideration is constrained) in accordance with paragraphs 606-10-32-5 through 32-13.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

> **⏱ PENDING CONTENT**
>
> **Transition Date:** **Ⓟ** December 16, 2026; **Ⓝ** December 16, 2026 │ **Transition Guidance:** 606-10-65-2
>
> Consideration payable to a customer includes:
>
> a. Cash amounts that an entity pays, or expects to pay, to the customer (or to other parties that purchase the entity's goods or services from the customer)
>
> b. Credit or other items (for example, a coupon or voucher) that can be applied against amounts owed to the entity (or to other parties that purchase the entity's goods or services from the customer)
>
> c. Share-based consideration (liability or equity classified) granted to the customer (or to other parties that purchase the grantor's goods or services from the customer) in conjunction with selling goods or services. Share-based consideration encompasses the same instruments as share-based payment arrangements (for example, shares, cash-settled stock appreciation rights, share options and warrants, or other equity instruments), but the grantee (as a customer) need not be a supplier of goods or services to the grantor.
>
> An entity shall account for consideration payable to a customer as a reduction of the transaction price and, therefore, of revenue unless the payment to the customer is in exchange for a distinct good or service (as described in paragraphs 606-10-25-18 through 25-22) that the customer transfers to the entity. If the consideration payable to a customer (other than share-based consideration) includes a variable amount, an entity shall estimate the transaction price (including assessing whether the estimate of variable consideration is constrained) in accordance with paragraphs 606-10-32-5 through 32-13. See paragraph 606-10-32-25A for guidance applicable to share-based consideration payable to a customer.

**606-10-32-25A**   Equity instruments granted by an entity in conjunction with selling goods or services shall be measured and classified under Topic 718 on stock compensation. The equity instrument shall be measured at the grant date in accordance with Topic 718 (for both equity-classified and liability-classified share-based payment awards). Changes in the measurement of the equity instrument (through the application of Topic 718) after the grant date that are due to the form of the consideration shall not be included in the transaction price. Any changes due to the form of the consideration shall be reflected elsewhere in the grantor's income statement. See paragraphs 606-10-55-88A through 55-88B for implementation guidance on equity instruments granted as consideration payable to a customer.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

> ⏱ PENDING CONTENT
>
> **Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-2
>
> Share-based consideration granted by an entity in conjunction with selling goods or services shall be measured and classified under Topic 718 on stock compensation. The share-based consideration shall be measured at the grant date in accordance with Topic 718 (for both equity-classified and liability-classified awards). Changes in the measurement of the share-based consideration (through the application of Topic 718) after the grant date that are due to the form of the consideration shall not be included in the transaction price. Any changes due to the form of the consideration shall be reflected elsewhere in the grantor's income statement. See paragraphs 606-10-55-88A through 55-88C for implementation guidance on share-based consideration payable to a customer.

**606-10-32-26**   If consideration payable to a customer is a payment for a distinct good or service from the customer, then an entity shall account for the purchase of the good or service in the same way that it accounts for other purchases from suppliers. If the amount of consideration payable to the customer exceeds the fair value of the distinct good or service that the entity receives from the customer, then the entity shall account for such an excess as a reduction of the transaction price. If the entity cannot reasonably estimate the fair value of the good or service received from the customer, it shall account for all of the consideration payable to the customer as a reduction of the transaction price.

**606-10-32-27**   Accordingly, if consideration payable to a customer is accounted for as a reduction of the transaction price, an entity shall recognize the reduction of revenue when (or as) the later of either of the following events occurs:

  a. The entity recognizes revenue for the transfer of the related goods or services to the customer.

  b. The entity pays or promises to pay the consideration (even if the payment is conditional on a future event). That promise might be implied by the entity's customary business practices.

## > Allocating the Transaction Price to Performance Obligations

**606-10-32-28**   The objective when allocating the transaction price is for an entity to allocate the transaction price to each performance obligation (or distinct good or service) in an amount that depicts the amount of consideration to which the entity expects to be entitled in exchange for transferring the promised goods or services to the customer.

**606-10-32-29**   To meet the allocation objective, an entity shall allocate the transaction price to each performance obligation identified in the contract on a relative standalone selling price basis in accordance with paragraphs 606-10-32-31 through 32-35, except as specified in paragraphs 606-10-32-36 through 32-38 (for allocating discounts) and paragraphs 606-10-32-39 through 32-41 (for allocating consideration that includes variable amounts).

**606-10-32-30**   Paragraphs 606-10-32-31 through 32-41 do not apply if a contract has only one performance obligation. However, paragraphs 606-10-32-39 through 32-41 may apply if an entity promises to transfer a series of distinct goods or services identified as a single performance obligation in

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

accordance with paragraph 606-10-25-14(b) and the promised consideration includes variable amounts.

## · > Allocation Based on Standalone Selling Prices

**606-10-32-31**  To allocate the transaction price to each performance obligation on a relative standalone selling price basis, an entity shall determine the standalone selling price at contract inception of the distinct good or service underlying each performance obligation in the contract and allocate the transaction price in proportion to those standalone selling prices.

**606-10-32-32**  The standalone selling price is the price at which an entity would sell a promised good or service separately to a customer. The best evidence of a standalone selling price is the observable price of a good or service when the entity sells that good or service separately in similar circumstances and to similar customers. A contractually stated price or a list price for a good or service may be (but shall not be presumed to be) the standalone selling price of that good or service.

**606-10-32-33**  If a standalone selling price is not directly observable, an entity shall estimate the standalone selling price at an amount that would result in the allocation of the transaction price meeting the allocation objective in paragraph 606-10-32-28. When estimating a standalone selling price, an entity shall consider all information (including market conditions, entity-specific factors, and information about the customer or class of customer) that is reasonably available to the entity. In doing so, an entity shall maximize the use of observable inputs and apply estimation methods consistently in similar circumstances.

**606-10-32-34**  Suitable methods for estimating the standalone selling price of a good or service include, but are not limited to, the following:

a. Adjusted market assessment approach—An entity could evaluate the market in which it sells goods or services and estimate the price that a customer in that market would be willing to pay for those goods or services. That approach also might include referring to prices from the entity's competitors for similar goods or services and adjusting those prices as necessary to reflect the entity's costs and margins.

b. Expected cost plus a margin approach—An entity could forecast its expected costs of satisfying a performance obligation and then add an appropriate margin for that good or service.

c. Residual approach—An entity may estimate the standalone selling price by reference to the total transaction price less the sum of the observable standalone selling prices of other goods or services promised in the contract. However, an entity may use a residual approach to estimate, in accordance with paragraph 606-10-32-33, the standalone selling price of a good or service only if one of the following criteria is met:

1. The entity sells the same good or service to different customers (at or near the same time) for a broad range of amounts (that is, the selling price is highly variable because a representative standalone selling price is not discernible from past transactions or other observable evidence).

2. The entity has not yet established a price for that good or service, and the good or service has not previously been sold on a standalone basis (that is, the selling price is uncertain).

**606-10-32-35**  A combination of methods may need to be used to estimate the standalone selling prices of the goods or services promised in the contract if two or more of those goods or services have highly variable or uncertain standalone selling prices. For example, an entity may use a residual approach to estimate the aggregate standalone selling price for those promised goods or services with highly

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

variable or uncertain standalone selling prices and then use another method to estimate the standalone selling prices of the individual goods or services relative to that estimated aggregate standalone selling price determined by the residual approach. When an entity uses a combination of methods to estimate the standalone selling price of each promised good or service in the contract, the entity shall evaluate whether allocating the transaction price at those estimated standalone selling prices would be consistent with the allocation objective in paragraph 606-10-32-28 and the guidance on estimating standalone selling prices in paragraph 606-10-32-33.

### · > Allocation of a Discount

**606-10-32-36**   A customer receives a discount for purchasing a bundle of goods or services if the sum of the standalone selling prices of those promised goods or services in the contract exceeds the promised consideration in a contract. Except when an entity has observable evidence in accordance with paragraph 606-10-32-37 that the entire discount relates to only one or more, but not all, performance obligations in a contract, the entity shall allocate a discount proportionately to all performance obligations in the contract. The proportionate allocation of the discount in those circumstances is a consequence of the entity allocating the transaction price to each performance obligation on the basis of the relative standalone selling prices of the underlying distinct goods or services.

**606-10-32-37**   An entity shall allocate a discount entirely to one or more, but not all, performance obligations in the contract if all of the following criteria are met:

> a. The entity regularly sells each distinct good or service (or each bundle of distinct goods or services) in the contract on a standalone basis.

> b. The entity also regularly sells on a standalone basis a bundle (or bundles) of some of those distinct goods or services at a discount to the standalone selling prices of the goods or services in each bundle.

> c. The discount attributable to each bundle of goods or services described in (b) is substantially the same as the discount in the contract, and an analysis of the goods or services in each bundle provides observable evidence of the performance obligation (or performance obligations) to which the entire discount in the contract belongs.

**606-10-32-38**   If a discount is allocated entirely to one or more performance obligations in the contract in accordance with paragraph 606-10-32-37, an entity shall allocate the discount before using the residual approach to estimate the standalone selling price of a good or service in accordance with paragraph 606-10-32-34(c).

### · > Allocation of Variable Consideration

**606-10-32-39**   Variable consideration that is promised in a contract may be attributable to the entire contract or to a specific part of the contract, such as either of the following:

> a. One or more, but not all, performance obligations in the contract (for example, a bonus may be contingent on an entity transferring a promised good or service within a specified period of time)

> b. One or more, but not all, distinct goods or services promised in a series of distinct goods or services that forms part of a single performance obligation in accordance with paragraph 606-10-25-14(b) (for example, the consideration promised for the second year of a two-year cleaning service contract will increase on the basis of movements in a specified inflation index).

**606-10-32-40**   An entity shall allocate a variable amount (and subsequent changes to that amount) entirely to a performance obligation or to a distinct good or service that forms part of a single performance

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

obligation in accordance with paragraph 606-10-25-14(b) if both of the following criteria are met:

a. The terms of a variable payment relate specifically to the entity's efforts to satisfy the performance obligation or transfer the distinct good or service (or to a specific outcome from satisfying the performance obligation or transferring the distinct good or service).

b. Allocating the variable amount of consideration entirely to the performance obligation or the distinct good or service is consistent with the allocation objective in paragraph 606-10-32-28 when considering all of the performance obligations and payment terms in the contract.

**606-10-32-41**    The allocation requirements in paragraphs 606-10-32-28 through 32-38 shall be applied to allocate the remaining amount of the transaction price that does not meet the criteria in paragraph 606-10-32-40.

## > Changes in the Transaction Price

**606-10-32-42**    After contract inception, the transaction price can change for various reasons, including the resolution of uncertain events or other changes in circumstances that change the amount of consideration to which an entity expects to be entitled in exchange for the promised goods or services.

**606-10-32-43**    An entity shall allocate to the performance obligations in the contract any subsequent changes in the transaction price on the same basis as at contract inception. Consequently, an entity shall not reallocate the transaction price to reflect changes in standalone selling prices after contract inception. Amounts allocated to a satisfied performance obligation shall be recognized as revenue, or as a reduction of revenue, in the period in which the transaction price changes.

**606-10-32-44**    An entity shall allocate a change in the transaction price entirely to one or more, but not all, performance obligations or distinct goods or services promised in a series that forms part of a single performance obligation in accordance with paragraph 606-10-25-14(b) only if the criteria in paragraph 606-10-32-40 on allocating variable consideration are met.

**606-10-32-45**    An entity shall account for a change in the transaction price that arises as a result of a contract modification in accordance with paragraphs 606-10-25-10 through 25-13. However, for a change in the transaction price that occurs after a contract modification, an entity shall apply paragraphs 606-10-32-42 through 32-44 to allocate the change in the transaction price in whichever of the following ways is applicable:

a. An entity shall allocate the change in the transaction price to the performance obligations identified in the contract before the modification if, and to the extent that, the change in the transaction price is attributable to an amount of variable consideration promised before the modification and the modification is accounted for in accordance with paragraph 606-10-25-13(a).

b. In all other cases in which the modification was not accounted for as a separate contract in accordance with paragraph 606-10-25-12, an entity shall allocate the change in the transaction price to the performance obligations in the modified contract (that is, the performance obligations that were unsatisfied or partially unsatisfied immediately after the modification).

# 45 Other Presentation Matters

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

> ⓘ **General Note:**The Other Presentation Matters Section provides guidance on other presentation matters not addressed in the Recognition, Initial Measurement, Subsequent Measurement, and Derecognition Sections. Other presentation matters may include items such as current or long-term balance sheet classification, cash flow presentation, earnings per share matters, and so forth. The FASB Codification also contains Presentation Topics, which provide guidance for general presentation and display items. See those Topics for general guidance.

# General

**606-10-45-1**   When either party to a contract has performed, an entity shall present the contract in the statement of financial position as a contract asset or a contract liability, depending on the relationship between the entity's performance and the customer's payment. An entity shall present any unconditional rights to consideration separately as a receivable.

**606-10-45-2**   If a customer pays consideration, or an entity has a right to an amount of consideration that is unconditional (that is, a receivable), before the entity transfers a good or service to the customer, the entity shall present the contract as a contract liability when the payment is made or the payment is due (whichever is earlier). A contract liability is an entity's obligation to transfer goods or services to a customer for which the entity has received consideration (or an amount of consideration is due) from the customer.

**606-10-45-3**   If an entity performs by transferring goods or services to a customer before the customer pays consideration or before payment is due, the entity shall present the contract as a contract asset, excluding any amounts presented as a receivable. A contract asset is an entity's right to consideration in exchange for goods or services that the entity has transferred to a customer. An entity shall assess a contract asset for credit losses in accordance with Subtopic 326-20 on financial instruments measured at amortized cost. A credit loss of a contract asset shall be measured, presented, and disclosed in accordance with Subtopic 326-20 (see also paragraph 606-10-50-4(b)).

**606-10-45-4**   A receivable is an entity's right to consideration that is unconditional. A right to consideration is unconditional if only the passage of time is required before payment of that consideration is due. For example, an entity would recognize a receivable if it has a present right to payment even though that amount may be subject to refund in the future. An entity shall account for a receivable in accordance with Topic 310 and Subtopic 326-20. Upon initial recognition of a receivable from a contract with a customer, any difference between the measurement of the receivable in accordance with Subtopic 326-20 and the corresponding amount of revenue recognized shall be presented as a credit loss expense.

**606-10-45-5**   This guidance uses the terms *contract asset* and *contract liability* but does not prohibit an entity from using alternative descriptions in the statement of financial position for those items. If an entity uses an alternative description for a contract asset, the entity shall provide sufficient information for a user of the financial statements to distinguish between receivables and contract assets.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

# 50 Disclosure

> (i) **General Note:** The Disclosure Section provides guidance regarding the disclosure in the notes to financial statements. In some cases, disclosure may relate to disclosure on the face of the financial statements.

## General

&#9783; **Related Proposed ASUs**

**606-10-50-1**    The objective of the disclosure requirements in this Topic is for an entity to disclose sufficient information to enable users of financial statements to understand the nature, amount, timing, and uncertainty of revenue and cash flows arising from contracts with customers. To achieve that objective, an entity shall disclose qualitative and quantitative information about all of the following:

> a. Its contracts with customers (see paragraphs 606-10-50-4 through 50-16)

> b. The significant judgments, and changes in the judgments, made in applying the guidance in this Topic to those contracts (see paragraphs 606-10-50-17 through 50-21)

> c. Any assets recognized from the costs to obtain or fulfill a contract with a customer in accordance with paragraph 340-40-25-1 or 340-40-25-5 (see paragraphs 340-40-50-1 through 50-6).

**606-10-50-2**    An entity shall consider the level of detail necessary to satisfy the disclosure objective and how much emphasis to place on each of the various requirements. An entity shall aggregate or disaggregate disclosures so that useful information is not obscured by either the inclusion of a large amount of insignificant detail or the aggregation of items that have substantially different characteristics.

**606-10-50-3**    Amounts disclosed are for each reporting period for which a statement of comprehensive income (statement of activities) is presented and as of each reporting period for which a statement of financial position is presented. An entity need not disclose information in accordance with the guidance in this Topic if it has provided the information in accordance with another Topic.

## > Contracts with Customers

**606-10-50-4**    An entity shall disclose all of the following amounts for the reporting period unless those amounts are presented separately in the statement of comprehensive income (statement of activities) in accordance with other Topics:

> a. Revenue recognized from contracts with customers, which the entity shall disclose separately from its other sources of revenue

> b. Credit losses recorded (in accordance with Subtopic 326-20 on financial instruments measured at amortized cost) on any receivables or contract assets arising from an entity's

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

contracts with customers, which the entity shall disclose separately from credit losses from other contracts.

· > Disaggregation of Revenue

**606-10-50-5**

An entity shall disaggregate revenue recognized from contracts with customers into categories that depict how the nature, amount, timing, and uncertainty of revenue and cash flows are affected by economic factors. An entity shall apply the guidance in paragraphs 606-10-55-89 through 55-91 when selecting the categories to use to disaggregate revenue.

> ⏰ PENDING CONTENT
>
> **Transition Date:** 🅟 December 16, 2027;  🅝 December 16, 2028 | **Transition Guidance:** 270-10-65-1
>
> For interim and annual reporting periods, an entity shall disaggregate revenue recognized from contracts with customers into categories that depict how the nature, amount, timing, and uncertainty of revenue and cash flows are affected by economic factors. An entity shall apply the guidance in paragraphs 606-10-55-89 through 55-91 when selecting the categories to use to disaggregate revenue.

**606-10-50-6**

In addition, an entity shall disclose sufficient information to enable users of financial statements to understand the relationship between the disclosure of disaggregated revenue (in accordance with paragraph 606-10-50-5) and revenue information that is disclosed for each reportable segment, if the entity applies Topic 280 on segment reporting.

> ⏰ PENDING CONTENT
>
> **Transition Date:** 🅟 December 16, 2027;  🅝 December 16, 2028 | **Transition Guidance:** 270-10-65-1
>
> In addition, in interim and annual reporting periods, an entity shall disclose sufficient information to enable users of financial statements to understand the relationship between the disclosure of disaggregated revenue (in accordance with paragraph 606-10-50-5) and revenue information that is disclosed for each reportable segment, if the entity applies Topic 280 on segment reporting.

**606-10-50-7**

An entity, except for a public business entity, a not-for-profit entity that has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market, or an employee benefit plan that files or furnishes financial statements with or to the Securities and Exchange Commission (SEC), may elect not to apply the quantitative disaggregation disclosure guidance in paragraphs 606-10-50-5 through 50-6 and 606-10-55-89 through 55-91. If an entity elects not to provide those disclosures, the entity shall disclose, at a minimum, revenue disaggregated according to the timing of transfer of goods or services (for example, revenue from goods or services transferred to customers at a point in time and revenue from goods or services transferred to customers over time) and qualitative information about how economic factors (such as type of customer, geographical location of customers, and type of contract) affect the nature, amount, timing, and uncertainty of revenue and cash flows.

· > Contract Balances

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-50-8**    An entity shall disclose all of the following:

a. The opening and closing balances of receivables, contract assets, and contract liabilities from contracts with customers, if not otherwise separately presented or disclosed

b. Revenue recognized in the reporting period that was included in the contract liability balance at the beginning of the period

c. Subparagraph superseded by Accounting Standards Update No. 2016-20.

> ⏰ PENDING CONTENT   
>
> **Transition Date:** Ⓟ December 16, 2027; Ⓝ December 16, 2028 | **Transition Guidance:** 270-10-65-1
>
> For interim and annual reporting periods, an entity shall disclose all of the following:
>
> a. The opening and closing balances of receivables, contract assets, and contract liabilities from contracts with customers, if not otherwise separately presented or disclosed
>
> b. Revenue recognized in the reporting period that was included in the contract liability balance at the beginning of the period
>
> c. Subparagraph superseded by Accounting Standards Update No. 2016-20.

**606-10-50-9**    An entity shall explain how the timing of satisfaction of its performance obligations (see paragraph 606-10-50-12(a)) relates to the typical timing of payment (see paragraph 606-10-50-12(b)) and the effect that those factors have on the contract asset and the contract liability balances. The explanation provided may use qualitative information.

**606-10-50-10**    An entity shall provide an explanation of the significant changes in the contract asset and the contract liability balances during the reporting period. The explanation shall include qualitative and quantitative information. Examples of changes in the entity's balances of contract assets and contract liabilities include any of the following:

a. Changes due to business combinations

b. Cumulative catch-up adjustments to revenue that affect the corresponding contract asset or contract liability, including adjustments arising from a change in the measure of progress, a change in an estimate of the transaction price (including any changes in the assessment of whether an estimate of variable consideration is constrained), or a contract modification

c. Impairment of a contract asset

d. A change in the time frame for a right to consideration to become unconditional (that is, for a contract asset to be reclassified to a receivable)

e. A change in the time frame for a performance obligation to be satisfied (that is, for the recognition of revenue arising from a contract liability).

**606-10-50-11**    An entity, except for a public business entity, a not-for-profit entity that has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market, or an employee benefit plan that files or furnishes financial statements with or to the SEC, may elect not to provide any or all of the disclosures in paragraphs 606-10-50-8 through 50-10 and 606-10-50-12A. However, if an entity elects not to provide the disclosures in paragraphs 606-10-50-8 through 50-10 and 606-10-50-12A, the entity shall provide the disclosure in paragraph 606-10-50-8(a), which requires the disclosure of the opening and closing balances of receivables, contract

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

assets, and contract liabilities from contracts with customers, if not otherwise separately presented or disclosed.

## · > Performance Obligations

**606-10-50-12**    An entity shall disclose information about its performance obligations in contracts with customers, including a description of all of the following:

> a. When the entity typically satisfies its performance obligations (for example, upon shipment, upon delivery, as services are rendered, or upon completion of service) including when performance obligations are satisfied in a bill-and-hold arrangement
>
> b. The significant payment terms (for example, when payment typically is due, whether the contract has a significant financing component, whether the consideration amount is variable, and whether the estimate of variable consideration is typically constrained in accordance with paragraphs 606-10-32-11 through 32-13)
>
> c. The nature of the goods or services that the entity has promised to transfer, highlighting any performance obligations to arrange for another party to transfer goods or services (that is, if the entity is acting as an agent)
>
> d. Obligations for returns, refunds, and other similar obligations
>
> e. Types of warranties and related obligations.

**606-10-50-12A**    An entity shall disclose revenue recognized in the reporting period from performance obligations satisfied (or partially satisfied) in previous periods (for example, changes in transaction price).

> ⏰ **PENDING CONTENT**                                                            ⓘ
>
> **Transition Date:** Ⓟ December 16, 2027;  Ⓝ December 16, 2028  |  **Transition Guidance:** 270-10-65-1
>
> For interim and annual reporting periods, an entity shall disclose revenue recognized in the reporting period from performance obligations satisfied (or partially satisfied) in previous periods (for example, changes in transaction price).

## · > Transaction Price Allocated to the Remaining Performance Obligations

**606-10-50-13**    An entity shall disclose the following information about its remaining performance obligations:

> a. The aggregate amount of the transaction price allocated to the performance obligations that are unsatisfied (or partially unsatisfied) as of the end of the reporting period
>
> b. An explanation of when the entity expects to recognize as revenue the amount disclosed in accordance with paragraph 606-10-50-13(a), which the entity shall disclose in either of the following ways:
>
> > 1. On a quantitative basis using the time bands that would be most appropriate for the duration of the remaining performance obligations
> >
> > 2. By using qualitative information.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

>
>
> ⏰ PENDING CONTENT
>
> ───────────────────────────────
>
> **Transition Date:** Ⓟ December 16, 2027;  Ⓝ December 16, 2028  |  **Transition Guidance:** 270-10-65-1
>
> For interim and annual reporting periods, an entity shall disclose the following information about its remaining performance obligations:
>
> a. The aggregate amount of the transaction price allocated to the performance obligations that are unsatisfied (or partially unsatisfied) as of the end of the reporting period
>
> b. An explanation of when the entity expects to recognize as revenue the amount disclosed in accordance with paragraph 606-10-50-13(a), which the entity shall disclose in either of the following ways:
>
> > 1. On a quantitative basis using the time bands that would be most appropriate for the duration of the remaining performance obligations
> >
> > 2. By using qualitative information.

**606-10-50-14**  An entity need not disclose the information in paragraph 606-10-50-13 for a performance obligation if either of the following conditions is met:

a. The performance obligation is part of a contract that has an original expected duration of one year or less.

b. The entity recognizes revenue from the satisfaction of the performance obligation in accordance with paragraph 606-10-55-18.

**606-10-50-14A**  An entity need not disclose the information in paragraph 606-10-50-13 for variable consideration for which either of the following conditions is met:

a. The variable consideration is a sales-based or usage-based royalty promised in exchange for a license of intellectual property accounted for in accordance with paragraphs 606-10-55-65 through 55-65B.

b. The variable consideration is allocated entirely to a wholly unsatisfied performance obligation or to a wholly unsatisfied promise to transfer a distinct good or service that forms part of a single performance obligation in accordance with paragraph 606-10-25-14(b), for which the criteria in paragraph 606-10-32-40 have been met.

**606-10-50-14B**  The optional exemptions in paragraphs 606-10-50-14(b) and 606-10-50-14A shall not be applied to fixed consideration.

**606-10-50-15**  An entity shall disclose which optional exemptions in paragraphs 606-10-50-14 through 50-14A it is applying. In addition, an entity applying the optional exemptions in paragraphs 606-10-50-14 through 50-14A shall disclose the nature of the performance obligations, the remaining duration (see paragraph 606-10-25-3), and a description of the variable consideration (for example, the nature of the variability and how that variability will be resolved) that has been excluded from the information disclosed in accordance with paragraph 606-10-50-13. This information shall include sufficient detail to enable users of financial statements to understand the remaining performance obligations that the entity excluded from the information disclosed in accordance with paragraph 606-10-50-13. In

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

addition, an entity shall explain whether any consideration from contracts with customers is not included in the transaction price and, therefore, not included in the information disclosed in accordance with paragraph 606-10-50-13. For example, an estimate of the transaction price would not include any estimated amounts of variable consideration that are constrained (see paragraphs 606-10-32-11 through 32-13).

> **⏲ PENDING CONTENT**
>
> **Transition Date: Ⓟ** December 16, 2027;  **Ⓝ** December 16, 2028  │ **Transition Guidance:** 270-10-65-1
>
> For interim and annual reporting periods, an entity shall disclose which optional exemptions in paragraphs 606-10-50-14 through 50-14A it is applying. In addition, an entity applying the optional exemptions in paragraphs 606-10-50-14 through 50-14A shall disclose in interim and annual reporting periods the nature of the performance obligations, the remaining duration (see paragraph 606-10-25-3), and a description of the variable consideration (for example, the nature of the variability and how that variability will be resolved) that has been excluded from the information disclosed in accordance with paragraph 606-10-50-13. This information shall include sufficient detail to enable users of financial statements to understand the remaining performance obligations that the entity excluded from the information disclosed in accordance with paragraph 606-10-50-13. In addition, an entity shall explain whether any consideration from contracts with customers is not included in the transaction price and, therefore, not included in the information disclosed in accordance with paragraph 606-10-50-13. For example, an estimate of the transaction price would not include any estimated amounts of variable consideration that are constrained (see paragraphs 606-10-32-11 through 32-13).

**606-10-50-16**  An entity, except for a public business entity, a not-for-profit entity that has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market, or an employee benefit plan that files or furnishes financial statements with or to the SEC, may elect not to provide the disclosures in paragraphs 606-10-50-13 through 50-15.

## > Significant Judgments in the Application of the Guidance in This Topic

**606-10-50-17**  An entity shall disclose the judgments, and changes in the judgments, made in applying the guidance in this Topic that significantly affect the determination of the amount and timing of revenue from contracts with customers. In particular, an entity shall explain the judgments, and changes in the judgments, used in determining both of the following:

   a. The timing of satisfaction of performance obligations (see paragraphs 606-10-50-18 through 50-19)

   b. The transaction price and the amounts allocated to performance obligations (see paragraph 606-10-50-20).

### · > Determining the Timing of Satisfaction of Performance Obligations

**606-10-50-18**  For performance obligations that an entity satisfies over time, an entity shall disclose both of the following:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. The methods used to recognize revenue (for example, a description of the output methods or input methods used and how those methods are applied)

b. An explanation of why the methods used provide a faithful depiction of the transfer of goods or services.

**606-10-50-19**  For performance obligations satisfied at a point in time, an entity shall disclose the significant judgments made in evaluating when a customer obtains control of promised goods or services.

### · > Determining the Transaction Price and the Amounts Allocated to Performance Obligations

**606-10-50-20**  An entity shall disclose information about the methods, inputs, and assumptions used for all of the following:

a. Determining the transaction price, which includes, but is not limited to, estimating variable consideration, adjusting the consideration for the effects of the time value of money, and measuring noncash consideration

b. Assessing whether an estimate of variable consideration is constrained

c. Allocating the transaction price, including estimating standalone selling prices of promised goods or services and allocating discounts and variable consideration to a specific part of the contract (if applicable)

d. Measuring obligations for returns, refunds, and other similar obligations.

**606-10-50-21**  An entity except for a public business entity, a not-for-profit entity that has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market, or an employee benefit plan that files or furnishes financial statements with or to the SEC, may elect not to provide any or all of the following disclosures:

a. Paragraph 606-10-50-18(b), which states that an entity shall disclose, for performance obligations satisfied over time, an explanation of why the methods used to recognize revenue provide a faithful depiction of the transfer of goods or services to a customer

b. Paragraph 606-10-50-19, which states that an entity shall disclose, for performance obligations satisfied at a point in time, the significant judgments made in evaluating when a customer obtains control of promised goods or services

c. Paragraph 606-10-50-20, which states that an entity shall disclose the methods, inputs, and assumptions used to determine the transaction price and to allocate the transaction price. However, if an entity elects not to provide the disclosures in paragraph 606-10-50-20, the entity shall provide the disclosure in paragraph 606-10-50-20(b), which states that an entity shall disclose the methods, inputs, and assumptions used to assess whether an estimate of variable consideration is constrained.

## > Practical Expedients

**606-10-50-22**  If an entity elects to use the practical expedient in either paragraph 606-10-32-18 (about the existence of a significant financing component) or paragraph 340-40-25-4 (about the incremental costs of obtaining a contract), the entity shall disclose that fact.

**606-10-50-23**  An entity, except for a public business entity, a not-for-profit entity that has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

market, or an employee benefit plan that files or furnishes financial statements with or to the SEC, may elect not to provide the disclosures in paragraph 606-10-50-22.

# 55 Implementation Guidance and Illustrations

ⓘ **General Note:** The Implementation Guidance and Illustrations Section contains implementation guidance and illustrations that are an integral part of the Subtopic. The implementation guidance and illustrations do not address all possible variations. Users must consider carefully the actual facts and circumstances in relation to the requirements of the Subtopic.

# General

⚖ **Related Proposed ASUs**

**606-10-55-1**    The Implementation Guidance and Illustrations Section is organized as follows:

a. Implementation guidance is provided in paragraphs 606-10-55-2 through 55-91 with a listing of contents in paragraph 606-10-55-3.

b. Illustrations are provided in paragraphs 606-10-55-92 through 55-413 with a listing of contents in paragraph 606-10-55-93.

## > Implementation Guidance

**606-10-55-2**    Paragraphs 606-10-55-2 through 55-91 are an integral part of this Topic. These paragraphs provide additional guidance that addresses the application of the guidance on revenue from contracts with customers.

**606-10-55-3**    This implementation guidance is organized into the following categories:

a. Assessing collectibility (paragraphs 606-10-55-3A through 55-3C)

aa. Performance obligations satisfied over time (paragraphs 606-10-55-4 through 55-15)

b. Methods for measuring progress toward complete satisfaction of a performance obligation (paragraphs 606-10-55-16 through 55-21)

c. Sale with a right of return (paragraphs 606-10-55-22 through 55-29)

d. Warranties (paragraphs 606-10-55-30 through 55-35)

e. Principal versus agent considerations (paragraphs 606-10-55-36 through 55-40)

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

f. Customer options for additional goods or services (paragraphs 606-10-55-41 through 55-45)

g. Customers' unexercised rights (paragraphs 606-10-55-46 through 55-49)

h. Nonrefundable upfront fees (and some related costs) (paragraphs 606-10-55-50 through 55-53)

i. Licensing (paragraphs 606-10-55-54 through 55-60 and 606-10-55-62 through 55-65B)

j. Repurchase agreements (paragraphs 606-10-55-66 through 55-78)

k. Consignment arrangements (paragraphs 606-10-55-79 through 55-80)

l. Bill-and-hold arrangements (paragraphs 606-10-55-81 through 55-84)

m. Customer acceptance (paragraphs 606-10-55-85 through 55-88)

mm. Equity instruments granted as consideration payable to a customer (paragraphs 606-10-55-88A through 55-88B)

n. Disclosure of disaggregated revenue (paragraphs 606-10-55-89 through 55-91).

🕒 PENDING CONTENT

**Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-2

This implementation guidance is organized into the following categories:

a. Assessing collectibility (paragraphs 606-10-55-3A through 55-3C)

aa. Performance obligations satisfied over time (paragraphs 606-10-55-4 through 55-15)

b. Methods for measuring progress toward complete satisfaction of a performance obligation (paragraphs 606-10-55-16 through 55-21)

c. Sale with a right of return (paragraphs 606-10-55-22 through 55-29)

d. Warranties (paragraphs 606-10-55-30 through 55-35)

e. Principal versus agent considerations (paragraphs 606-10-55-36 through 55-40)

f. Customer options for additional goods or services (paragraphs 606-10-55-41 through 55-45)

g. Customers' unexercised rights (paragraphs 606-10-55-46 through 55-49)

h. Nonrefundable upfront fees (and some related costs) (paragraphs 606-10-55-50 through 55-53)

i. Licensing (paragraphs 606-10-55-54 through 55-60 and 606-10-55-62 through 55-65B)

j. Repurchase agreements (paragraphs 606-10-55-66 through 55-78)

k. Consignment arrangements (paragraphs 606-10-55-79 through 55-80)

l. Bill-and-hold arrangements (paragraphs 606-10-55-81 through 55-84)

m. Customer acceptance (paragraphs 606-10-55-85 through 55-88)

mm. Share-based consideration payable to a customer (paragraphs 606-10-55-88A through 55-88C)

n. Disclosure of disaggregated revenue (paragraphs 606-10-55-89 through 55-91).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· > Assessing Collectibility

**606-10-55-3A**  Paragraph 606-10-25-1(e) requires an entity to assess whether it is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer. The assessment, which is part of identifying whether there is a contract with a customer, is based on whether the customer has the ability and intention to pay the consideration to which the entity will be entitled in exchange for the goods or services that will be transferred to the customer. The objective of this assessment is to evaluate whether there is a substantive transaction between the entity and the customer, which is a necessary condition for the contract to be accounted for under the revenue model in this Topic.

**606-10-55-3B**  The collectibility assessment in paragraph 606-10-25-1(e) is partly a forward-looking assessment. It requires an entity to use judgment and consider all of the facts and circumstances, including the entity's customary business practices and its knowledge of the customer, in determining whether it is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the goods or services that the entity expects to transfer to the customer. The assessment is not necessarily based on the customer's ability and intention to pay the entire amount of promised consideration for the entire duration of the contract.

**606-10-55-3C**  When assessing whether a contract meets the criterion in paragraph 606-10-25-1(e), an entity should determine whether the contractual terms and its customary business practices indicate that the entity's exposure to credit risk is less than the entire consideration promised in the contract because the entity has the ability to mitigate its credit risk. Examples of contractual terms or customary business practices that might mitigate the entity's credit risk include the following:

a. Payment terms—In some contracts, payment terms limit an entity's exposure to credit risk. For example, a customer may be required to pay a portion of the consideration promised in the contract before the entity transfers promised goods or services to the customer. In those cases, any consideration that will be received before the entity transfers promised goods or services to the customer would not be subject to credit risk.

b. The ability to stop transferring promised goods or services—An entity may limit its exposure to credit risk if it has the right to stop transferring additional goods or services to a customer in the event that the customer fails to pay consideration when it is due. In those cases, an entity should assess only the collectibility of the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer on the basis of the entity's rights and customary business practices. Therefore, if the customer fails to perform as promised and, consequently, the entity would respond to the customer's failure to perform by not transferring additional goods or services to the customer, the entity would not consider the likelihood of payment for the promised goods or services that will not be transferred under the contract.

An entity's ability to repossess an asset transferred to a customer should not be considered for the purpose of assessing the entity's ability to mitigate its exposure to credit risk.

· > Performance Obligations Satisfied Over Time

**606-10-55-4**  In accordance with paragraph 606-10-25-27, a performance obligation is satisfied over time if one of the following criteria is met:

a. The customer simultaneously receives and consumes the benefits provided by the entity's performance as the entity performs (see paragraphs 606-10-55-5 through 55-6).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

b. The entity's performance creates or enhances an asset (for example, work in process) that the customer controls as the asset is created or enhanced (see paragraph 606-10-55-7).

c. The entity's performance does not create an asset with an alternative use to the entity (see paragraphs 606-10-55-8 through 55-10), and the entity has an enforceable right to payment for performance completed to date (see paragraphs 606-10-55-11 through 55-15).

· · > Simultaneous Receipt and Consumption of the Benefits of the Entity's Performance (paragraph 606-10-25-27(a))

**606-10-55-5**     For some types of performance obligations, the assessment of whether a customer receives the benefits of an entity's performance as the entity performs and simultaneously consumes those benefits as they are received will be straightforward. Examples include routine or recurring services (such as a cleaning service) in which the receipt and simultaneous consumption by the customer of the benefits of the entity's performance can be readily identified.

**606-10-55-6**     For other types of performance obligations, an entity may not be able to readily identify whether a customer simultaneously receives and consumes the benefits from the entity's performance as the entity performs. In those circumstances, a performance obligation is satisfied over time if an entity determines that another entity would not need to substantially reperform the work that the entity has completed to date if that other entity were to fulfill the remaining performance obligation to the customer. In determining whether another entity would not need to substantially reperform the work the entity has completed to date, an entity should make both of the following assumptions:

a. Disregard potential contractual restrictions or practical limitations that otherwise would prevent the entity from transferring the remaining performance obligation to another entity

b. Presume that another entity fulfilling the remainder of the performance obligation would not have the benefit of any asset that is presently controlled by the entity and that would remain controlled by the entity if the performance obligation were to transfer to another entity.

· · > Customer Controls the Asset As It Is Created or Enhanced (paragraph 606-10-25-27(b))

**606-10-55-7**     In determining whether a customer controls an asset as it is created or enhanced in accordance with paragraph 606-10-25-27(b), an entity should apply the guidance on control in paragraphs 606-10-25-23 through 25-26 and 606-10-25-30. The asset that is being created or enhanced (for example, a work in process asset) could be either tangible or intangible.

· · > Entity's Performance Does Not Create an Asset with an Alternative Use (paragraph 606-10-25-27(c))

**606-10-55-8**     In assessing whether an asset has an alternative use to an entity in accordance with paragraph 606-10-25-28, an entity should consider the effects of contractual restrictions and practical limitations on the entity's ability to readily direct that asset for another use, such as selling it to a different customer. The possibility of the contract with the customer being terminated is not a relevant consideration in assessing whether the entity would be able to readily direct the asset for another use.

**606-10-55-9**     A contractual restriction on an entity's ability to direct an asset for another use must be substantive for the asset not to have an alternative use to the entity. A contractual restriction is substantive if a customer could enforce its rights to the promised asset if the entity sought to direct the asset for another use. In contrast, a contractual restriction is not substantive if, for example, an asset is largely interchangeable with other assets that the entity could transfer to another customer without breaching

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

the contract and without incurring significant costs that otherwise would not have been incurred in relation to that contract.

**606-10-55-10**   A practical limitation on an entity's ability to direct an asset for another use exists if an entity would incur significant economic losses to direct the asset for another use. A significant economic loss could arise because the entity either would incur significant costs to rework the asset or would only be able to sell the asset at a significant loss. For example, an entity may be practically limited from redirecting assets that either have design specifications that are unique to a customer or are located in remote areas.

· · > Right to Payment for Performance Completed to Date (paragraph 606-10-25-27(c))

**606-10-55-11**   In accordance with paragraph 606-10-25-29, an entity has a right to payment for performance completed to date if the entity would be entitled to an amount that at least compensates the entity for its performance completed to date in the event that the customer or another party terminates the contract for reasons other than the entity's failure to perform as promised. An amount that would compensate an entity for performance completed to date would be an amount that approximates the selling price of the goods or services transferred to date (for example, recovery of the costs incurred by an entity in satisfying the performance obligation plus a reasonable profit margin) rather than compensation for only the entity's potential loss of profit if the contract were to be terminated. Compensation for a reasonable profit margin need not equal the profit margin expected if the contract was fulfilled as promised, but an entity should be entitled to compensation for either of the following amounts:

a. A proportion of the expected profit margin in the contract that reasonably reflects the extent of the entity's performance under the contract before termination by the customer (or another party)

b. A reasonable return on the entity's cost of capital for similar contracts (or the entity's typical operating margin for similar contracts) if the contract-specific margin is higher than the return the entity usually generates from similar contracts.

**606-10-55-12**   An entity's right to payment for performance completed to date need not be a present unconditional right to payment. In many cases, an entity will have an unconditional right to payment only at an agreed-upon milestone or upon complete satisfaction of the performance obligation. In assessing whether it has a right to payment for performance completed to date, an entity should consider whether it would have an enforceable right to demand or retain payment for performance completed to date if the contract were to be terminated before completion for reasons other than the entity's failure to perform as promised.

**606-10-55-13**   In some contracts, a customer may have a right to terminate the contract only at specified times during the life of the contract or the customer might not have any right to terminate the contract. If a customer acts to terminate a contract without having the right to terminate the contract at that time (including when a customer fails to perform its obligations as promised), the contract (or other laws) might entitle the entity to continue to transfer to the customer the goods or services promised in the contract and require the customer to pay the consideration promised in exchange for those goods or services. In those circumstances, an entity has a right to payment for performance completed to date because the entity has a right to continue to perform its obligations in accordance with the contract and to require the customer to perform its obligations (which include paying the promised consideration).

**606-10-55-14**   In assessing the existence and enforceability of a right to payment for performance completed to date, an entity should consider the contractual terms as well as any legislation or legal precedent that could supplement or override those contractual terms. This would include an assessment of whether:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. Legislation, administrative practice, or legal precedent confers upon the entity a right to payment for performance to date even though that right is not specified in the contract with the customer.

b. Relevant legal precedent indicates that similar rights to payment for performance completed to date in similar contracts have no binding legal effect.

c. An entity's customary business practices of choosing not to enforce a right to payment has resulted in the right being rendered unenforceable in that legal environment. However, notwithstanding that an entity may choose to waive its right to payment in similar contracts, an entity would continue to have a right to payment to date if, in the contract with the customer, its right to payment for performance to date remains enforceable.

**606-10-55-15**  The payment schedule specified in a contract does not necessarily indicate whether an entity has an enforceable right to payment for performance completed to date. Although the payment schedule in a contract specifies the timing and amount of consideration that is payable by a customer, the payment schedule might not necessarily provide evidence of the entity's right to payment for performance completed to date. This is because, for example, the contract could specify that the consideration received from the customer is refundable for reasons other than the entity failing to perform as promised in the contract.

## · > Methods for Measuring Progress toward Complete Satisfaction of a Performance Obligation

**606-10-55-16**  Methods that can be used to measure an entity's progress toward complete satisfaction of a performance obligation satisfied over time in accordance with paragraphs 606-10-25-27 through 25-29 include the following:

a. Output methods (see paragraphs 606-10-55-17 through 55-19)

b. Input methods (see paragraphs 606-10-55-20 through 55-21).

### · · > Output Methods

**606-10-55-17**  Output methods recognize revenue on the basis of direct measurements of the value to the customer of the goods or services transferred to date relative to the remaining goods or services promised under the contract. Output methods include methods such as surveys of performance completed to date, appraisals of results achieved, milestones reached, time elapsed, and units produced or units delivered. When an entity evaluates whether to apply an output method to measure its progress, the entity should consider whether the output selected would faithfully depict the entity's performance toward complete satisfaction of the performance obligation. An output method would not provide a faithful depiction of the entity's performance if the output selected would fail to measure some of the goods or services for which control has transferred to the customer. For example, output methods based on units produced or units delivered would not faithfully depict an entity's performance in satisfying a performance obligation if, at the end of the reporting period, the entity's performance has produced work in process or finished goods controlled by the customer that are not included in the measurement of the output.

**606-10-55-18**  As a practical expedient, if an entity has a right to consideration from a customer in an amount that corresponds directly with the value to the customer of the entity's performance completed to date (for example, a service contract in which an entity bills a fixed amount for each hour of service provided), the entity may recognize revenue in the amount to which the entity has a right to invoice.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-19**    The disadvantages of output methods are that the outputs used to measure progress may not be directly observable and the information required to apply them may not be available to an entity without undue cost. Therefore, an input method may be necessary.

· · > Input Methods

**606-10-55-20**    Input methods recognize revenue on the basis of the entity's efforts or inputs to the satisfaction of a performance obligation (for example, resources consumed, labor hours expended, costs incurred, time elapsed, or machine hours used) relative to the total expected inputs to the satisfaction of that performance obligation. If the entity's efforts or inputs are expended evenly throughout the performance period, it may be appropriate for the entity to recognize revenue on a straight-line basis.

**606-10-55-21**    A shortcoming of input methods is that there may not be a direct relationship between an entity's inputs and the transfer of control of goods or services to a customer. Therefore, an entity should exclude from an input method the effects of any inputs that, in accordance with the objective of measuring progress in paragraph 606-10-25-31, do not depict the entity's performance in transferring control of goods or services to the customer. For instance, when using a cost-based input method, an adjustment to the measure of progress may be required in the following circumstances:

   a. When a cost incurred does not contribute to an entity's progress in satisfying the performance obligation. For example, an entity would not recognize revenue on the basis of costs incurred that are attributable to significant inefficiencies in the entity's performance that were not reflected in the price of the contract (for example, the costs of unexpected amounts of wasted materials, labor, or other resources that were incurred to satisfy the performance obligation).

   b. When a cost incurred is not proportionate to the entity's progress in satisfying the performance obligation. In those circumstances, the best depiction of the entity's performance may be to adjust the input method to recognize revenue only to the extent of that cost incurred. For example, a faithful depiction of an entity's performance might be to recognize revenue at an amount equal to the cost of a good used to satisfy a performance obligation if the entity expects at contract inception that all of the following conditions would be met:

      1. The good is not distinct.

      2. The customer is expected to obtain control of the good significantly before receiving services related to the good.

      3. The cost of the transferred good is significant relative to the total expected costs to completely satisfy the performance obligation.

      4. The entity procures the good from a third party and is not significantly involved in designing and manufacturing the good (but the entity is acting as a principal in accordance with paragraphs 606-10-55-36 through 55-40).

· > Sale with a Right of Return

**606-10-55-22**    In some contracts, an entity transfers control of a product to a customer and also grants the customer the right to return the product for various reasons (such as dissatisfaction with the product) and receive any combination of the following:

      a. A full or partial refund of any consideration paid

      b. A credit that can be applied against amounts owed, or that will be owed, to the entity

      c. Another product in exchange.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-23**    To account for the transfer of products with a right of return (and for some services that are provided subject to a refund), an entity should recognize all of the following:

> a. Revenue for the transferred products in the amount of consideration to which the entity expects to be entitled (therefore, revenue would not be recognized for the products expected to be returned)

> b. A refund liability

> c. An asset (and corresponding adjustment to cost of sales) for its right to recover products from customers on settling the refund liability.

**606-10-55-24**    An entity's promise to stand ready to accept a returned product during the return period should not be accounted for as a performance obligation in addition to the obligation to provide a refund.

**606-10-55-25**    An entity should apply the guidance in paragraphs 606-10-32-2 through 32-27 (including the guidance on constraining estimates of variable consideration in paragraphs 606-10-32-11 through 32-13) to determine the amount of consideration to which the entity expects to be entitled (that is, excluding the products expected to be returned). For any amounts received (or receivable) for which an entity does not expect to be entitled, the entity should not recognize revenue when it transfers products to customers but should recognize those amounts received (or receivable) as a refund liability. Subsequently, at the end of each reporting period, the entity should update its assessment of amounts for which it expects to be entitled in exchange for the transferred products and make a corresponding change to the transaction price and, therefore, in the amount of revenue recognized.

**606-10-55-26**    An entity should update the measurement of the refund liability at the end of each reporting period for changes in expectations about the amount of refunds. An entity should recognize corresponding adjustments as revenue (or reductions of revenue).

**606-10-55-27**    An asset recognized for an entity's right to recover products from a customer on settling a refund liability initially should be measured by reference to the former carrying amount of the product (for example, inventory) less any expected costs to recover those products (including potential decreases in the value to the entity of returned products). At the end of each reporting period, an entity should update the measurement of the asset arising from changes in expectations about products to be returned. An entity should present the asset separately from the refund liability.

**606-10-55-28**    Exchanges by customers of one product for another of the same type, quality, condition, and price (for example, one color or size for another) are not considered returns for the purposes of applying the guidance in this Topic.

**606-10-55-29**    Contracts in which a customer may return a defective product in exchange for a functioning product should be evaluated in accordance with the guidance on warranties in paragraphs 606-10-55-30 through 55-35.

### · > Warranties

**606-10-55-30**    It is common for an entity to provide (in accordance with the contract, the law, or the entity's customary business practices) a warranty in connection with the sale of a product (whether a good or service). The nature of a warranty can vary significantly across industries and contracts. Some warranties provide a customer with assurance that the related product will function as the parties intended because it complies with agreed-upon specifications. Other warranties provide the customer with a service in addition to the assurance that the product complies with agreed-upon specifications.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-31**    If a customer has the option to purchase a warranty separately (for example, because the warranty is priced or negotiated separately), the warranty is a distinct service because the entity promises to provide the service to the customer in addition to the product that has the functionality described in the contract. In those circumstances, an entity should account for the promised warranty as a performance obligation in accordance with paragraphs 606-10-25-14 through 25-22 and allocate a portion of the transaction price to that performance obligation in accordance with paragraphs 606-10-32-28 through 32-41.

**606-10-55-32**    If a customer does not have the option to purchase a warranty separately, an entity should account for the warranty in accordance with the guidance on product warranties in Subtopic 460-10 on guarantees, unless the promised warranty, or a part of the promised warranty, provides the customer with a service in addition to the assurance that the product complies with agreed-upon specifications.

**606-10-55-33**    In assessing whether a warranty provides a customer with a service in addition to the assurance that the product complies with agreed-upon specifications, an entity should consider factors such as:

   a. Whether the warranty is required by law—If the entity is required by law to provide a warranty, the existence of that law indicates that the promised warranty is not a performance obligation because such requirements typically exist to protect customers from the risk of purchasing defective products.

   b. The length of the warranty coverage period—The longer the coverage period, the more likely it is that the promised warranty is a performance obligation because it is more likely to provide a service in addition to the assurance that the product complies with agreed-upon specifications.

   c. The nature of the tasks that the entity promises to perform—If it is necessary for an entity to perform specified tasks to provide the assurance that a product complies with agreed-upon specifications (for example, a return shipping service for a defective product), then those tasks likely do not give rise to a performance obligation.

**606-10-55-34**    If a warranty, or a part of a warranty, provides a customer with a service in addition to the assurance that the product complies with agreed-upon specifications, the promised service is a performance obligation. Therefore, an entity should allocate the transaction price to the product and the service. If an entity promises both an assurance-type warranty and a service-type warranty but cannot reasonably account for them separately, the entity should account for both of the warranties together as a single performance obligation.

**606-10-55-35**    A law that requires an entity to pay compensation if its products cause harm or damage does not give rise to a performance obligation. For example, a manufacturer might sell products in a jurisdiction in which the law holds the manufacturer liable for any damages (for example, to personal property) that might be caused by a consumer using a product for its intended purpose. Similarly, an entity's promise to indemnify the customer for liabilities and damages arising from claims of patent, copyright, trademark, or other infringement by the entity's products does not give rise to a performance obligation. The entity should account for such obligations in accordance with the guidance on loss contingencies in Subtopic 450-20 on contingencies.

### · > Principal versus Agent Considerations

**606-10-55-36**    When another party is involved in providing goods or services to a customer, the entity should determine whether the nature of its promise is a performance obligation to provide the specified goods or services itself (that is, the entity is a principal) or to arrange for those goods or services to be provided by the other party (that is, the entity is an agent). An entity determines whether it is a principal or an agent for each specified good or service promised to the customer. A specified good or

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

service is a distinct good or service (or a distinct bundle of goods or services) to be provided to the customer (see paragraphs 606-10-25-19 through 25-22). If a contract with a customer includes more than one specified good or service, an entity could be a principal for some specified goods or services and an agent for others.

**606-10-55-36A** To determine the nature of its promise (as described in paragraph 606-10-55-36), the entity should:

> a. Identify the specified goods or services to be provided to the customer (which, for example, could be a right to a good or service to be provided by another party [see paragraph 606-10-25-18])
>
> b. Assess whether it controls (as described in paragraph 606-10-25-25) each specified good or service before that good or service is transferred to the customer.

**606-10-55-37** An entity is a principal if it controls the specified good or service before that good or service is transferred to a customer. However, an entity does not necessarily control a specified good if the entity obtains legal title to that good only momentarily before legal title is transferred to a customer. An entity that is a principal may satisfy its performance obligation to provide the specified good or service itself or it may engage another party (for example, a subcontractor) to satisfy some or all of the performance obligation on its behalf.

**606-10-55-37A** When another party is involved in providing goods or services to a customer, an entity that is a principal obtains control of any one of the following:

> a. A good or another asset from the other party that it then transfers to the customer.
>
> b. A right to a service to be performed by the other party, which gives the entity the ability to direct that party to provide the service to the customer on the entity's behalf.
>
> c. A good or service from the other party that it then combines with other goods or services in providing the specified good or service to the customer. For example, if an entity provides a significant service of integrating goods or services (see paragraph 606-10-25-21(a)) provided by another party into the specified good or service for which the customer has contracted, the entity controls the specified good or service before that good or service is transferred to the customer. This is because the entity first obtains control of the inputs to the specified good or service (which include goods or services from other parties) and directs their use to create the combined output that is the specified good or service.

**606-10-55-37B** When (or as) an entity that is a principal satisfies a performance obligation, the entity recognizes revenue in the gross amount of consideration to which it expects to be entitled in exchange for the specified good or service transferred.

**606-10-55-38** An entity is an agent if the entity's performance obligation is to arrange for the provision of the specified good or service by another party. An entity that is an agent does not control the specified good or service provided by another party before that good or service is transferred to the customer. When (or as) an entity that is an agent satisfies a performance obligation, the entity recognizes revenue in the amount of any fee or commission to which it expects to be entitled in exchange for arranging for the specified goods or services to be provided by the other party. An entity's fee or commission might be the net amount of consideration that the entity retains after paying the other party the consideration received in exchange for the goods or services to be provided by that party.

**606-10-55-39** Indicators that an entity controls the specified good or service before it is transferred to the customer (and is therefore a principal [see paragraph 606-10-55-37]) include, but are not limited to, the following:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. The entity is primarily responsible for fulfilling the promise to provide the specified good or service. This typically includes responsibility for the acceptability of the specified good or service (for example, primary responsibility for the good or service meeting customer specifications). If the entity is primarily responsible for fulfilling the promise to provide the specified good or service, this may indicate that the other party involved in providing the specified good or service is acting on the entity's behalf.

b. The entity has inventory risk before the specified good or service has been transferred to a customer or after transfer of control to the customer (for example, if the customer has a right of return). For example, if the entity obtains, or commits to obtain, the specified good or service before obtaining a contract with a customer, that may indicate that the entity has the ability to direct the use of, and obtain substantially all of the remaining benefits from, the good or service before it is transferred to the customer.

c. The entity has discretion in establishing the price for the specified good or service. Establishing the price that the customer pays for the specified good or service may indicate that the entity has the ability to direct the use of that good or service and obtain substantially all of the remaining benefits. However, an agent can have discretion in establishing prices in some cases. For example, an agent may have some flexibility in setting prices in order to generate additional revenue from its service of arranging for goods or services to be provided by other parties to customers.

d. Subparagraph superseded by Accounting Standards Update No. 2016-08.

e. Subparagraph superseded by Accounting Standards Update No. 2016-08.

**606-10-55-39A**    The indicators in paragraph 606-10-55-39 may be more or less relevant to the assessment of control depending on the nature of the specified good or service and the terms and conditions of the contract. In addition, different indicators may provide more persuasive evidence in different contracts.

**606-10-55-40**    If another entity assumes the entity's performance obligations and contractual rights in the contract so that the entity is no longer obliged to satisfy the performance obligation to transfer the specified good or service to the customer (that is, the entity is no longer acting as the principal), the entity should not recognize revenue for that performance obligation. Instead, the entity should evaluate whether to recognize revenue for satisfying a performance obligation to obtain a contract for the other party (that is, whether the entity is acting as an agent).

## · > Customer Options for Additional Goods or Services

**606-10-55-41**    Customer options to acquire additional goods or services for free or at a discount come in many forms, including sales incentives, customer award credits (or points), contract renewal options, or other discounts on future goods or services.

**606-10-55-42**    If, in a contract, an entity grants a customer the option to acquire additional goods or services, that option gives rise to a performance obligation in the contract only if the option provides a material right to the customer that it would not receive without entering into that contract (for example, a discount that is incremental to the range of discounts typically given for those goods or services to that class of customer in that geographical area or market). If the option provides a material right to the customer, the customer in effect pays the entity in advance for future goods or services, and the entity recognizes revenue when those future goods or services are transferred or when the option expires.

**606-10-55-43**    If a customer has the option to acquire an additional good or service at a price that would reflect the standalone selling price for that good or service, that option does not provide the customer with a material right even if the option can be exercised only by entering into a previous contract. In those

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

cases, the entity has made a marketing offer that it should account for in accordance with the guidance in this Topic only when the customer exercises the option to purchase the additional goods or services.

**606-10-55-44**      Paragraph 606-10-32-29 requires an entity to allocate the transaction price to performance obligations on a relative standalone selling price basis. If the standalone selling price for a customer's option to acquire additional goods or services is not directly observable, an entity should estimate it. That estimate should reflect the discount that the customer would obtain when exercising the option, adjusted for both of the following:

> a. Any discount that the customer could receive without exercising the option
> b. The likelihood that the option will be exercised.

**606-10-55-45**      If a customer has a material right to acquire future goods or services and those goods or services are similar to the original goods or services in the contract and are provided in accordance with the terms of the original contract, then an entity may, as a practical alternative to estimating the standalone selling price of the option, allocate the transaction price to the optional goods or services by reference to the goods or services expected to be provided and the corresponding expected consideration. Typically, those types of options are for contract renewals.

## · > Customers' Unexercised Rights

**606-10-55-46**      In accordance with paragraph 606-10-45-2, upon receipt of a prepayment from a customer, an entity should recognize a contract liability in the amount of the prepayment for its performance obligation to transfer, or to stand ready to transfer, goods or services in the future. An entity should derecognize that contract liability (and recognize revenue) when it transfers those goods or services and, therefore, satisfies its performance obligation.

**606-10-55-47**      A customer's nonrefundable prepayment to an entity gives the customer a right to receive a good or service in the future (and obliges the entity to stand ready to transfer a good or service). However, customers may not exercise all of their contractual rights. Those unexercised rights are often referred to as breakage.

**606-10-55-48**      If an entity expects to be entitled to a breakage amount in a contract liability, the entity should recognize the expected breakage amount as revenue in proportion to the pattern of rights exercised by the customer. If an entity does not expect to be entitled to a breakage amount, the entity should recognize the expected breakage amount as revenue when the likelihood of the customer exercising its remaining rights becomes remote. To determine whether an entity expects to be entitled to a breakage amount, the entity should consider the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration.

**606-10-55-49**      An entity should recognize a liability (and not revenue) for any consideration received that is attributable to a customer's unexercised rights for which the entity is required to remit to another party, for example, a government entity in accordance with applicable unclaimed property laws.

## · > Nonrefundable Upfront Fees (and Some Related Costs)

**606-10-55-50**      In some contracts, an entity charges a customer a nonrefundable upfront fee at or near contract inception. Examples include joining fees in health club membership contracts, activation fees in telecommunication contracts, setup fees in some services contracts, and initial fees in some supply contracts.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-51**    To identify performance obligations in such contracts, an entity should assess whether the fee relates to the transfer of a promised good or service. In many cases, even though a nonrefundable upfront fee relates to an activity that the entity is required to undertake at or near contract inception to fulfill the contract, that activity does not result in the transfer of a promised good or service to the customer (see paragraph 606-10-25-17). Instead, the upfront fee is an advance payment for future goods or services and, therefore, would be recognized as revenue when those future goods or services are provided. The revenue recognition period would extend beyond the initial contractual period if the entity grants the customer the option to renew the contract and that option provides the customer with a material right as described in paragraph 606-10-55-42.

**606-10-55-52**    If the nonrefundable upfront fee relates to a good or service, the entity should evaluate whether to account for the good or service as a separate performance obligation in accordance with paragraphs 606-10-25-14 through 25-22.

**606-10-55-53**    An entity may charge a nonrefundable fee in part as compensation for costs incurred in setting up a contract (or other administrative tasks as described in paragraph 606-10-25-17). If those setup activities do not satisfy a performance obligation, the entity should disregard those activities (and related costs) when measuring progress in accordance with paragraph 606-10-55-21. That is because the costs of setup activities do not depict the transfer of services to the customer. The entity should assess whether costs incurred in setting up a contract have resulted in an asset that should be recognized in accordance with paragraph 340-40-25-5.

· > Licensing

**606-10-55-54**    A license establishes a customer's rights to the intellectual property of an entity. Licenses of intellectual property may include, but are not limited to, licenses of any of the following:

> a. Software (other than software subject to a hosting arrangement that does not meet the criteria in paragraph 985-20-15-5) and technology
>
> b. Motion pictures, music, and other forms of media and entertainment
>
> c. Franchises
>
> d. Patents, trademarks, and copyrights.

**606-10-55-55**    In addition to a promise to grant a license (or licenses) to a customer, an entity may also promise to transfer other goods or services to the customer. Those promises may be explicitly stated in the contract or implied by an entity's customary business practices, published policies, or specific statements (see paragraph 606-10-25-16). As with other types of contracts, when a contract with a customer includes a promise to grant a license (or licenses) in addition to other promised goods or services, an entity applies paragraphs 606-10-25-14 through 25-22 to identify each of the performance obligations in the contract.

**606-10-55-56**    If the promise to grant a license is not distinct from other promised goods or services in the contract in accordance with paragraphs 606-10-25-18 through 25-22, an entity should account for the promise to grant a license and those other promised goods or services together as a single performance obligation. Examples of licenses that are not distinct from other goods or services promised in the contract include the following:

> a. A license that forms a component of a tangible good and that is integral to the functionality of the good

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

b. A license that the customer can benefit from only in conjunction with a related service (such as an online service provided by the entity that enables, by granting a license, the customer to access content).

606-10-55-57    When a single performance obligation includes a license (or licenses) of intellectual property and one or more other goods or services, the entity considers the nature of the combined good or service for which the customer has contracted (including whether the license that is part of the single performance obligation provides the customer with a right to use or a right to access intellectual property in accordance with paragraphs 606-10-55-59 through 55-60 and 606-10-55-62 through 55-64A) in determining whether that combined good or service is satisfied over time or at a point in time in accordance with paragraphs 606-10-25-23 through 25-30 and, if over time, in selecting an appropriate method for measuring progress in accordance with paragraphs 606-10-25-31 through 25-37.

606-10-55-58    In evaluating whether a license transfers to a customer at a point in time or over time, an entity should consider whether the nature of the entity's promise in granting the license to a customer is to provide the customer with either:

a. A right to access the entity's intellectual property throughout the license period (or its remaining economic life, if shorter)

b. A right to use the entity's intellectual property as it exists at the point in time at which the license is granted.

606-10-55-58A    An entity should account for a promise to provide a customer with a right to access the entity's intellectual property as a performance obligation satisfied over time because the customer will simultaneously receive and consume the benefit from the entity's performance of providing access to its intellectual property as the performance occurs (see paragraph 606-10-25-27(a)). An entity should apply paragraphs 606-10-25-31 through 25-37 to select an appropriate method to measure its progress toward complete satisfaction of that performance obligation to provide access to its intellectual property.

606-10-55-58B    An entity's promise to provide a customer with the right to use its intellectual property is satisfied at a point in time. The entity should apply paragraph 606-10-25-30 to determine the point in time at which the license transfers to the customer.

606-10-55-58C    Notwithstanding paragraphs 606-10-55-58A through 55-58B, revenue cannot be recognized from a license of intellectual property before both:

a. An entity provides (or otherwise makes available) a copy of the intellectual property to the customer.

b. The beginning of the period during which the customer is able to use and benefit from its right to access or its right to use the intellectual property. That is, an entity would not recognize revenue before the beginning of the license period even if the entity provides (or otherwise makes available) a copy of the intellectual property before the start of the license period or the customer has a copy of the intellectual property from another transaction. For example, an entity would recognize revenue from a license renewal no earlier than the beginning of the renewal period.

· · > Determining the Nature of the Entity's Promise

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-59**    To determine whether the entity's promise to provide a right to access its intellectual property or a right to use its intellectual property, the entity should consider the nature of the intellectual property to which the customer will have rights. Intellectual property is either:

> a. Functional intellectual property. Intellectual property that has significant standalone functionality (for example, the ability to process a transaction, perform a function or task, or be played or aired). Functional intellectual property derives a substantial portion of its utility (that is, its ability to provide benefit or value) from its significant standalone functionality.

> b. Symbolic intellectual property. Intellectual property that is not functional intellectual property (that is, intellectual property that does not have significant standalone functionality). Because symbolic intellectual property does not have significant standalone functionality, substantially all of the utility of symbolic intellectual property is derived from its association with the entity's past or ongoing activities, including its ordinary business activities.

**606-10-55-60**    A customer's ability to derive benefit from a license to symbolic intellectual property depends on the entity continuing to support or maintain the intellectual property. Therefore, a license to symbolic intellectual property grants the customer a right to access the entity's intellectual property, which is satisfied over time (see paragraphs 606-10-55-58A and 606-10-55-58C) as the entity fulfills its promise to both:

> a. Grant the customer rights to use and benefit from the entity's intellectual property

> b. Support or maintain the intellectual property. An entity generally supports or maintains symbolic intellectual property by continuing to undertake those activities from which the utility of the intellectual property is derived and/or refraining from activities or other actions that would significantly degrade the utility of the intellectual property.

> c. Subparagraph superseded by Accounting Standards Update No. 2016-10.

**606-10-55-61**    Paragraph superseded by Accounting Standards Update No. 2016-10.

**606-10-55-62**    A license to functional intellectual property grants a right to use the entity's intellectual property as it exists at the point in time at which the license is granted unless both of the following criteria are met:

> a. The functionality of the intellectual property to which the customer has rights is expected to substantively change during the license period as a result of activities of the entity that do not transfer a promised good or service to the customer (see paragraphs 606-10-25-16 through 25-18). Additional promised goods or services (for example, intellectual property upgrade rights or rights to use or access additional intellectual property) are not considered in assessing this criterion.

> b. The customer is contractually or practically required to use the updated intellectual property resulting from the activities in criterion (a).

If both of those criteria are met, then the license grants a right to access the entity's intellectual property.

**606-10-55-63**    Because functional intellectual property has significant standalone functionality, an entity's activities that do not substantively change that functionality do not significantly affect the utility of the intellectual property to which the customer has rights. Therefore, the entity's promise to the customer in granting a license to functional intellectual property does not include supporting or maintaining the intellectual property. Consequently, if a license to functional intellectual property is a separate performance obligation (see paragraph 606-10-55-55) and does not meet the criteria in paragraph 606-10-55-62, it is satisfied at a point in time (see paragraphs 606-10-55-58B through 55-58C).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-63A**    The following flowchart depicts the decision process for evaluating whether the nature of an entity's promise in granting a license is to provide the customer with a right to access the entity's intellectual property or a right to use the entity's intellectual property. The flowchart does not include all of the guidance on determining the nature of an entity's promise in granting a license of intellectual property in this Subtopic and is not intended as a substitute for the guidance in this Subtopic.



· · > Other Licensing Considerations

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-64**  Contractual provisions that explicitly or implicitly require an entity to transfer control of additional goods or services to a customer (for example, by requiring the entity to transfer control of additional rights to use or rights to access intellectual property that the customer does not already control) should be distinguished from contractual provisions that explicitly or implicitly define the attributes of a single promised license (for example, restrictions of time, geographical region, or use). Attributes of a promised license define the scope of a customer's right to use or right to access the entity's intellectual property and, therefore, do not define whether the entity satisfies its performance obligation at a point in time or over time and do not create an obligation for the entity to transfer any additional rights to use or access its intellectual property.

    a. Subparagraph superseded by Accounting Standards Update No. 2016-10.

    b. Subparagraph superseded by Accounting Standards Update No. 2016-10.

**606-10-55-64A**  Guarantees provided by the entity that it has a valid patent to intellectual property and that it will defend that patent from unauthorized use do not affect whether a license provides a right to access the entity's intellectual property or a right to use the entity's intellectual property. Similarly, a promise to defend a patent right is not a promised good or service because it provides assurance to the customer that the license transferred meets the specifications of the license promised in the contract.

· · > Sales-Based or Usage-Based Royalties

**606-10-55-65**  Notwithstanding the guidance in paragraphs 606-10-32-11 through 32-14, an entity should recognize revenue for a sales-based or usage-based royalty promised in exchange for a license of intellectual property only when (or as) the later of the following events occurs:

    a. The subsequent sale or usage occurs.

    b. The performance obligation to which some or all of the sales-based or usage-based royalty has been allocated has been satisfied (or partially satisfied).

**606-10-55-65A**  The guidance for a sales-based or usage-based royalty in paragraph 606-10-55-65 applies when the royalty relates only to a license of intellectual property or when a license of intellectual property is the predominant item to which the royalty relates (for example, the license of intellectual property may be the predominant item to which the royalty relates when the entity has a reasonable expectation that the customer would ascribe significantly more value to the license than to the other goods or services to which the royalty relates).

**606-10-55-65B**  When the guidance in paragraph 606-10-55-65A is met, revenue from a sales-based or usage-based royalty should be recognized wholly in accordance with the guidance in paragraph 606-10-55-65. When the guidance in paragraph 606-10-55-65A is not met, the guidance on variable consideration in paragraphs 606-10-32-5 through 32-14 applies to the sales-based or usage-based royalty.

· > Repurchase Agreements

**606-10-55-66**  A repurchase agreement is a contract in which an entity sells an asset and also promises or has the option (either in the same contract or in another contract) to repurchase the asset. The repurchased asset may be the asset that was originally sold to the customer, an asset that is substantially the same as that asset, or another asset of which the asset that was originally sold is a component.

**606-10-55-67**  Repurchase agreements generally come in three forms:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. An entity's obligation to repurchase the asset (a forward)

b. An entity's right to repurchase the asset (a call option)

c. An entity's obligation to repurchase the asset at the customer's request (a put option).

· · > A Forward or a Call Option

**606-10-55-68**    If an entity has an obligation or a right to repurchase the asset (a forward or a call option), a customer does not obtain control of the asset because the customer is limited in its ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset even though the customer may have physical possession of the asset. Consequently, the entity should account for the contract as either of the following:

a. A lease in accordance with Topic 842 on leases, if the entity can or must repurchase the asset for an amount that is less than the original selling price of the asset unless the contract is part of a sale and leaseback transaction. If the contract is part of a sale and leaseback transaction, the entity should account for the contract as a financing arrangement and not as a sale and leaseback transaction in accordance with Subtopic 842-40.

b. A financing arrangement in accordance with paragraph 606-10-55-70, if the entity can or must repurchase the asset for an amount that is equal to or more than the original selling price of the asset.

**606-10-55-69**    When comparing the repurchase price with the selling price, an entity should consider the time value of money.

**606-10-55-70**    If the repurchase agreement is a financing arrangement, the entity should continue to recognize the asset and also recognize a financial liability for any consideration received from the customer. The entity should recognize the difference between the amount of consideration received from the customer and the amount of consideration to be paid to the customer as interest and, if applicable, as processing or holding costs (for example, insurance).

**606-10-55-71**    If the option lapses unexercised, an entity should derecognize the liability and recognize revenue.

· · > A Put Option

**606-10-55-72**    If an entity has an obligation to repurchase the asset at the customer's request (a put option) at a price that is lower than the original selling price of the asset, the entity should consider at contract inception whether the customer has a significant economic incentive to exercise that right. The customer's exercising of that right results in the customer effectively paying the entity consideration for the right to use a specified asset for a period of time. Therefore, if the customer has a significant economic incentive to exercise that right, the entity should account for the agreement as a lease in accordance with Topic 842 on leases unless the contract is part of a sale and leaseback transaction. If the contract is part of a sale and leaseback transaction, the entity should account for the contract as a financing arrangement and not as a sale and leaseback transaction in accordance with Subtopic 842-40.

**606-10-55-73**    To determine whether a customer has a significant economic incentive to exercise its right, an entity should consider various factors, including the relationship of the repurchase price to the expected market value of the asset at the date of the repurchase and the amount of time until the right expires. For example, if the repurchase price is expected to significantly exceed the market value of the asset, this may indicate that the customer has a significant economic incentive to exercise the put option.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-74**    If the customer does not have a significant economic incentive to exercise its right at a price that is lower than the original selling price of the asset, the entity should account for the agreement as if it were the sale of a product with a right of return as described in paragraphs 606-10-55-22 through 55-29.

**606-10-55-75**    If the repurchase price of the asset is equal to or greater than the original selling price and is more than the expected market value of the asset, the contract is in effect a financing arrangement and, therefore, should be accounted for as described in paragraph 606-10-55-70.

**606-10-55-76**    If the repurchase price of the asset is equal to or greater than the original selling price and is less than or equal to the expected market value of the asset, and the customer does not have a significant economic incentive to exercise its right, then the entity should account for the agreement as if it were the sale of a product with a right of return as described in paragraphs 606-10-55-22 through 55-29.

**606-10-55-77**    When comparing the repurchase price with the selling price, an entity should consider the time value of money.

**606-10-55-78**    If the option lapses unexercised, an entity should derecognize the liability and recognize revenue.

## · > Consignment Arrangements

**606-10-55-79**    When an entity delivers a product to another party (such as a dealer or a distributor) for sale to end customers, the entity should evaluate whether that other party has obtained control of the product at that point in time. A product that has been delivered to another party may be held in a consignment arrangement if that other party has not obtained control of the product. Accordingly, an entity should not recognize revenue upon delivery of a product to another party if the delivered product is held on consignment.

**606-10-55-80**    Indicators that an arrangement is a consignment arrangement include, but are not limited to, the following:

> a. The product is controlled by the entity until a specified event occurs, such as the sale of the product to a customer of the dealer, or until a specified period expires.

> b. The entity is able to require the return of the product or transfer the product to a third party (such as another dealer).

> c. The dealer does not have an unconditional obligation to pay for the product (although it might be required to pay a deposit).

## · > Bill-and-Hold Arrangements

**606-10-55-81**    A bill-and-hold arrangement is a contract under which an entity bills a customer for a product but the entity retains physical possession of the product until it is transferred to the customer at a point in time in the future. For example, a customer may request an entity to enter into such a contract because of the customer's lack of available space for the product or because of delays in the customer's production schedules.

**606-10-55-82**    An entity should determine when it has satisfied its performance obligation to transfer a product by evaluating when a customer obtains control of that product (see paragraph 606-10-25-30). For some contracts, control is transferred either when the product is delivered to the customer's site or when the product is shipped, depending on the terms of the contract (including delivery and shipping

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

terms). However, for some contracts, a customer may obtain control of a product even though that product remains in an entity's physical possession. In that case, the customer has the ability to direct the use of, and obtain substantially all of the remaining benefits from, the product even though it has decided not to exercise its right to take physical possession of that product. Consequently, the entity does not control the product. Instead, the entity provides custodial services to the customer over the customer's asset.

**606-10-55-83**   In addition to applying the guidance in paragraph 606-10-25-30, for a customer to have obtained control of a product in a bill-and-hold arrangement, all of the following criteria must be met:

> a. The reason for the bill-and-hold arrangement must be substantive (for example, the customer has requested the arrangement).
>
> b. The product must be identified separately as belonging to the customer.
>
> c. The product currently must be ready for physical transfer to the customer.
>
> d. The entity cannot have the ability to use the product or to direct it to another customer.

**606-10-55-84**   If an entity recognizes revenue for the sale of a product on a bill-and-hold basis, the entity should consider whether it has remaining performance obligations (for example, for custodial services) in accordance with paragraphs 606-10-25-14 through 25-22 to which the entity should allocate a portion of the transaction price in accordance with paragraphs 606-10-32-28 through 32-41.

## · > Customer Acceptance

**606-10-55-85**   In accordance with paragraph 606-10-25-30(e), a customer's acceptance of an asset may indicate that the customer has obtained control of the asset. Customer acceptance clauses allow a customer to cancel a contract or require an entity to take remedial action if a good or service does not meet agreed-upon specifications. An entity should consider such clauses when evaluating when a customer obtains control of a good or service.

**606-10-55-86**   If an entity can objectively determine that control of a good or service has been transferred to the customer in accordance with the agreed-upon specifications in the contract, then customer acceptance is a formality that would not affect the entity's determination of when the customer has obtained control of the good or service. For example, if the customer acceptance clause is based on meeting specified size and weight characteristics, an entity would be able to determine whether those criteria have been met before receiving confirmation of the customer's acceptance. The entity's experience with contracts for similar goods or services may provide evidence that a good or service provided to the customer is in accordance with the agreed-upon specifications in the contract. If revenue is recognized before customer acceptance, the entity still must consider whether there are any remaining performance obligations (for example, installation of equipment) and evaluate whether to account for them separately.

**606-10-55-87**   However, if an entity cannot objectively determine that the good or service provided to the customer is in accordance with the agreed-upon specifications in the contract, then the entity would not be able to conclude that the customer has obtained control until the entity receives the customer's acceptance. That is because, in that circumstance the entity cannot determine that the customer has the ability to direct the use of, and obtain substantially all of the remaining benefits from, the good or service.

**606-10-55-88**   If an entity delivers products to a customer for trial or evaluation purposes and the customer is not committed to pay any consideration until the trial period lapses, control of the product is not transferred to the customer until either the customer accepts the product or the trial period lapses.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· > Equity Instruments Granted as Consideration Payable to a Customer

**606-10-55-88A**    Paragraph 606-10-32-25A requires that equity instruments granted in conjunction with an entity selling goods or services be measured and classified under Topic 718 on stock compensation. If the number of equity instruments promised in a contract is variable due to a service condition or a performance condition that affects the vesting of an award, an entity should estimate the number of equity instruments that it will be obligated to issue to its customer and update the estimate of the number of equity instruments until the award ultimately vests in accordance with Topic 718. When measuring each instrument, the entity should include, in accordance with Topic 718, the effect of any market conditions and service or performance conditions that affect factors other than vesting. Examples of factors other than vesting are included in paragraph 718-10-30-15. Changes in the grant-date fair value of an award due to revisions in the expected outcome of a service condition or a performance condition (both those that affect vesting and those that affect factors other than vesting) are not deemed to be changes due to the form of the consideration (as described in paragraph 606-10-32-23) and, therefore, should be reflected in the transaction price.

> ⏰ PENDING CONTENT    ⑦
>
> **Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026  |  **Transition Guidance:** 606-10-65-2
>
> ---
> _**Editor's Note**: The content of paragraph 606-10-55-88A will change upon transition, together with a change in the heading noted below._
>
> ---
> · > Share-Based Consideration Payable to a Customer
>
> Paragraph 606-10-32-25A requires that share-based consideration granted in conjunction with an entity selling goods or services be measured and classified under Topic 718 on stock compensation. If the number of awards promised in a contract is variable due to a service condition or a performance condition that affects vesting, the grantor should estimate the number of awards that it will be obligated to issue to the grantee and reduce the transaction price by the grant-date fair value of the number of awards that are expected to vest (for awards with service conditions in accordance with paragraph 718-10-35-1D(a)) or for which vesting is probable (for awards with performance conditions in accordance with paragraph 718-10-25-20). A grantor should update the estimate of the number of awards until the awards ultimately vest or are forfeited in accordance with Topic 718. When measuring each award, the grantor should include, in accordance with Topic 718, the effect of any market conditions and service or performance conditions that affect factors other than vesting. Examples of factors other than vesting are included in paragraph 718-10-30-15. Changes in the expected outcome of a service condition or a performance condition (both those that affect vesting and those that affect factors other than vesting) are not deemed to be changes due to the form of the consideration (as described in paragraph 606-10-32-23) and, therefore, should be reflected in the transaction price.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-88AA**

> ⏰ PENDING CONTENT
>
> ──────────────────────────
>
> **Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026 │ **Transition Guidance:** 606-10-65-2
>
> Examples of performance conditions in share-based consideration payable to a customer that can result in a reduction of the transaction price in accordance with this Topic include those with performance targets based on the grantee (or other parties that purchase the grantor's goods or services from the grantee) purchasing (or potentially purchasing) any of the following from the grantor (or the grantor's customers):
>
> > a. A specified volume of goods or services (including over a specified period of time). This includes performance targets achieved upon the first purchase from the grantor (or the grantor's customers).
> >
> > b. A specified monetary amount of goods or services (including over a specified period of time).

**606-10-55-88AB**

> ⏰ PENDING CONTENT
>
> ──────────────────────────
>
> **Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026 │ **Transition Guidance:** 606-10-65-2
>
> If share-based consideration payable to a customer is a payment for a distinct good or service from the customer and the grantor accounts for any portion of the share-based consideration as a reduction of the transaction price in accordance with paragraph 606-10-32-26, the grantor should apply the definition of performance condition that is specific to share-based consideration payable to a customer that can result in a reduction of the transaction price in accordance with this Topic to the entire award (including the portion that is not accounted for as a reduction of the transaction price).

**606-10-55-88AC**

> ⏰ PENDING CONTENT
>
> ──────────────────────────
>
> **Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026 │ **Transition Guidance:** 606-10-65-2
>
> A grantor should not apply by analogy the aspects of the definition of performance condition that are specific to share-based consideration payable to a customer that can result in a reduction of the transaction price in accordance with this Topic to awards that are solely within the scope of Topic 718.

**606-10-55-88B**   Paragraph 606-10-32-25A requires that equity instruments granted by an entity in conjunction with selling goods or services be measured and classified under Topic 718 at the grant date of the instrument. When an estimate of the fair value of an equity instrument is required before the grant date in accordance with the guidance on variable consideration in paragraph 606-10-32-7, the estimate should be based on the fair value of the award at the reporting dates that occur before the grant date. An entity should change the transaction price for the cumulative effect of measuring the fair value at each reporting period after the initial estimate until the grant date occurs. In the period in

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

which the grant date occurs, the entity should change the transaction price for the cumulative effect of measuring the fair value at the grant date rather than the fair value previously used at any prior reporting date.

> ⏲ PENDING CONTENT ⓘ
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 │ **Transition Guidance:** 606-10-65-2
>
> Paragraph 606-10-32-25A requires that share-based consideration granted by an entity in conjunction with selling goods or services be measured and classified under Topic 718 at the grant date of the instrument. When an estimate of the fair value of share-based consideration is required before the grant date in accordance with the guidance on variable consideration in paragraph 606-10-32-7, the estimate should be based on the fair value (measured in accordance with Topic 718) of the award at the reporting dates that occur before the grant date. The grantor should change the transaction price for the cumulative effect of measuring the fair value at each reporting period after the initial estimate until the grant date occurs. In the period in which the grant date occurs, the grantor should change the transaction price for the cumulative effect of measuring the fair value at the grant date rather than the fair value previously used at any prior reporting date.

**606-10-55-88C**

> ⏲ PENDING CONTENT ⓘ
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 │ **Transition Guidance:** 606-10-65-2
>
> Regardless of whether an award's grant date has occurred, the guidance on constraining estimates of variable consideration in paragraphs 606-10-32-11 through 32-12 should not be applied to share-based consideration payable to a customer that is measured and classified under Topic 718.

## · > Disclosure of Disaggregated Revenue

**606-10-55-89**  Paragraph 606-10-50-5 requires an entity to disaggregate revenue from contracts with customers into categories that depict how the nature, amount, timing, and uncertainty of revenue and cash flows are affected by economic factors. Consequently, the extent to which an entity's revenue is disaggregated for the purposes of this disclosure depends on the facts and circumstances that pertain to the entity's contracts with customers. Some entities may need to use more than one type of category to meet the objective in paragraph 606-10-50-5 for disaggregating revenue. Other entities may meet the objective by using only one type of category to disaggregate revenue.

**606-10-55-90**  When selecting the type of category (or categories) to use to disaggregate revenue, an entity should consider how information about the entity's revenue has been presented for other purposes, including all of the following:

a. Disclosures presented outside the financial statements (for example, in earnings releases, annual reports, or investor presentations)

b. Information regularly reviewed by the chief operating decision maker for evaluating the financial performance of operating segments

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

c. Other information that is similar to the types of information identified in (a) and (b) and that is used by the entity or users of the entity's financial statements to evaluate the entity's financial performance or make resource allocation decisions.

**606-10-55-91**    Examples of categories that might be appropriate include, but are not limited to, all of the following:

a. Type of good or service (for example, major product lines)

b. Geographical region (for example, country or region)

c. Market or type of customer (for example, government and nongovernment customers)

d. Type of contract (for example, fixed-price and time-and-materials contracts)

e. Contract duration (for example, short-term and long-term contracts)

f. Timing of transfer of goods or services (for example, revenue from goods or services transferred to customers at a point in time and revenue from goods or services transferred over time)

g. Sales channels (for example, goods sold directly to consumers and goods sold through intermediaries).

## > Illustrations

**606-10-55-92**    These Examples portray hypothetical situations illustrating how an entity might apply some of the guidance in this Topic to particular aspects of a contract with a customer on the basis of the limited facts presented. The analysis in each Example is not intended to represent the only manner in which the guidance could be applied, nor are the Examples intended to only apply to the specific industry illustrated. Although some aspects of the Examples may be present in actual fact patterns, all relevant facts and circumstances of a particular fact pattern would need to be evaluated when applying the guidance in this Topic.

**606-10-55-93**    The Examples are organized as follows:

a. Identifying the Contract

　　Example 1—Collectibility of the Consideration

　　Example 2—Consideration Is Not the Stated Price—Implicit Price Concession

　　Example 3—Implicit Price Concession

　　Example 4—Reassessing the Criteria for Identifying a Contract

b. Contract Modifications

　　Example 5—Modification of a Contract for Goods

　　Example 6—Change in the Transaction Price after a Contract Modification

　　Example 7—Modification of a Services Contract

　　Example 8—Modification Resulting in a Cumulative Catch-Up Adjustment to Revenue

　　Example 9—Unapproved Change in Scope and Price

c. Identifying Performance Obligations

　　Example 10—Goods and Services Are Not Distinct

　　Example 11—Determining Whether Goods or Services Are Distinct

　　Example 12—Explicit and Implicit Promises in a Contract

　　Example 12A—Series of Distinct Goods or Services

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

d. Performance Obligations Satisfied Over Time

    Example 13—Customer Simultaneously Receives and Consumes the Benefits

    Example 14—Assessing Alternative Use and Right to Payment

    Example 15—Asset Has No Alternative Use to the Entity

    Example 16—Enforceable Right to Payment for Performance Completed to Date

    Example 17—Assessing Whether a Performance Obligation Is Satisfied at a Point in Time or Over Time

e. Measuring Progress toward Complete Satisfaction of a Performance Obligation

    Example 18—Measuring Progress When Making Goods or Services Available

    Example 19—Uninstalled Materials

f. Variable Consideration

    Example 20—Penalty Gives Rise to Variable Consideration

    Example 21—Estimating Variable Consideration

g. Constraining Estimates of Variable Consideration

    Example 22—Right of Return

    Example 23—Price Concessions

    Example 24—Volume Discount Incentive

    Example 25—Management Fees Subject to the Constraint

h. The Existence of a Significant Financing Component in the Contract

    Example 26—Significant Financing Component and Right of Return

    Example 27—Withheld Payments on a Long-Term Contract

    Example 28—Determining the Discount Rate

    Example 29—Advance Payment and Assessment of the Discount Rate

    Example 30—Advance Payment

i. Noncash Consideration

    Example 31—Entitlement to Noncash Consideration

j. Consideration Payable to a Customer

    Example 32—Consideration Payable to a Customer

k. Allocating the Transaction Price to Performance Obligations

    Example 33—Allocation Methodology

    Example 34—Allocating a Discount

    Example 35—Allocation of Variable Consideration

l. Contract Costs

    Example 36—Incremental Costs of Obtaining a Contract

    Example 37—Costs That Give Rise to an Asset

m. Presentation

    Example 38—Contract Liability and Receivable

    Example 39—Contract Asset Recognized for the Entity's Performance

    Example 40—Receivable Recognized for the Entity's Performance

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

n. Disclosure

Example 41—Disaggregation of Revenue Quantitative Disclosure

Example 42—Disclosure of the Transaction Price Allocated to the Remaining Performance Obligations

Example 43—Disclosure of the Transaction Price Allocated to the Remaining Performance Obligations—Qualitative

o. Warranties

Example 44—Warranties

p. Principal versus Agent Considerations

Example 45—Arranging for the Provision of Goods or Services (Entity Is an Agent)

Example 46—Promise to Provide Goods or Services (Entity Is a Principal)

Example 46A—Promise to Provide Goods or Services (Entity Is a Principal)

Example 47—Promise to Provide Goods or Services (Entity Is a Principal)

Example 48—Arranging for the Provision of Goods or Services (Entity Is an Agent)

Example 48A—Entity Is a Principal and an Agent in the Same Contract

q. Customer Options for Additional Goods or Services

Example 49—Option That Provides the Customer with a Material Right (Discount Voucher)

Example 50—Option That Does Not Provide the Customer with a Material Right (Additional Goods or Services)

Example 51—Option That Provides the Customer with a Material Right (Renewal Option)

Example 52—Customer Loyalty Program

r. Nonrefundable Upfront Fees

Example 53—Nonrefundable Upfront Fee

s. Licensing

Example 54—Right to Use Intellectual Property

Example 55—License of Intellectual Property

Example 56—Identifying a Distinct License

Example 57—Franchise Rights

Example 58—Access to Intellectual Property

Example 59—Right to Use Intellectual Property

Example 60—Sales-Based Royalty Promised in Exchange for a License of Intellectual Property and Other Goods and Services

Example 61—Access to Intellectual Property

Example 61A—Right to Use Intellectual Property

Example 61B—Distinguishing Multiple Licenses from Attributes of a Single License

t. Repurchase Agreements

Example 62—Repurchase Agreements

u. Bill-and-Hold Arrangements

Example 63—Bill-and-Hold Arrangement

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

⏲ PENDING CONTENT                                                                                                                        ⊘

**Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026  |  **Transition Guidance:**  606-10-65-3

The Examples are organized as follows:

a. Identifying the Contract

    Example 1—Collectibility of the Consideration

    Example 2—Consideration Is Not the Stated Price—Implicit Price Concession

    Example 3—Implicit Price Concession

    Example 4—Reassessing the Criteria for Identifying a Contract

b. Contract Modifications

    Example 5—Modification of a Contract for Goods

    Example 6—Change in the Transaction Price after a Contract Modification

    Example 7—Modification of a Services Contract

    Example 8—Modification Resulting in a Cumulative Catch-Up Adjustment to Revenue

    Example 9—Unapproved Change in Scope and Price

c. Identifying Performance Obligations

    Example 10—Goods and Services Are Not Distinct

    Example 11—Determining Whether Goods or Services Are Distinct

    Example 12—Explicit and Implicit Promises in a Contract

    Example 12A—Series of Distinct Goods or Services

d. Performance Obligations Satisfied Over Time

    Example 13—Customer Simultaneously Receives and Consumes the Benefits

    Example 14—Assessing Alternative Use and Right to Payment

    Example 15—Asset Has No Alternative Use to the Entity

    Example 16—Enforceable Right to Payment for Performance Completed to Date

    Example 17—Assessing Whether a Performance Obligation Is Satisfied at a Point in Time or Over Time

e. Measuring Progress toward Complete Satisfaction of a Performance Obligation

    Example 18—Measuring Progress When Making Goods or Services Available

    Example 19—Uninstalled Materials

                                                        Example 20—Penalty Gives Rise to Variable Consideration

f. Variable Consideration          Example 21—Estimating Variable Consideration

g. Constraining Estimates of Variable Consideration

    Example 22—Right of Return

    Example 23—Price Concessions

    Example 24—Volume Discount Incentive

    Example 25—Management Fees Subject to the Constraint

h. The Existence of a Significant Financing Component in the Contract

    Example 26—Significant Financing Component and Right of Return

    Example 27—Withheld Payments on a Long-Term Contract

    Example 28—Determining the Discount Rate

    Example 29—Advance Payment and Assessment of the Discount Rate

    Example 30—Advance Payment

Copyright © 2025 by Fina
Certified Public Accounta                                                                                                        . may
not be reproduced, store                                                                                                        ise,
without the prior written                                                                                                        yright
in any portion hereof tha

Example 30—Entitlement to Noncash Consideration

i. Noncash Consideration      Example 31A—Share-Based Noncash Consideration

j. Consideration Payable to a Customer

    Example 32—Consideration Payable to a Customer

k. Allocating the Transaction Price to Performance Obligations

    Example 33—Allocation Methodology

    Example 34—Allocating a Discount

    Example 35—Allocation of Variable Consideration

    Example 36—Incremental Costs of Obtaining a Contract

l. Contract Costs      Example 37—Costs That Give Rise to an Asset

    Example 38—Contract Liability and Receivable

    Example 39—Contract Asset Recognized for the Entity's Performance

m. Presentation      Example 40—Receivable Recognized for the Entity's Performance

n. Disclosure

    Example 41—Disaggregation of Revenue Quantitative Disclosure

    Example 42—Disclosure of the Transaction Price Allocated to the Remaining Performance Obligations

    Example 43—Disclosure of the Transaction Price Allocated to the Remaining Performance Obligations—Qualitative

o. Warranties      Example 44—Warranties

p. Principal versus Agent Considerations

    Example 45—Arranging for the Provision of Goods or Services (Entity Is an Agent)

    Example 46—Promise to Provide Goods or Services (Entity Is a Principal)

    Example 46A—Promise to Provide Goods or Services (Entity Is a Principal)

    Example 47—Promise to Provide Goods or Services (Entity Is a Principal)

    Example 48—Arranging for the Provision of Goods or Services (Entity Is an Agent)

    Example 48A—Entity Is a Principal and an Agent in the Same Contract

q. Customer Options for Additional Goods or Services

    Example 49—Option That Provides the Customer with a Material Right (Discount Voucher)

    Example 50—Option That Does Not Provide the Customer with a Material Right (Additional Goods or Services)

    Example 51—Option That Provides the Customer with a Material Right (Renewal Option)

    Example 52—Customer Loyalty Program

r. Nonrefundable Upfront Fees      Example 53—Nonrefundable Upfront Fee

s. Licensing

    Example 54—Right to Use Intellectual Property

    Example 55—License of Intellectual Property

    Example 56—Identifying a Distinct License

    Example 57—Franchise Rights

    Example 58—Access to Intellectual Property

    Example 59—Right to Use Intellectual Property

    Example 60—Sales-Based Royalty Promised in Exchange for a License of Intellectual Property and Other Goods and Services

    Example 61—Access to Intellectual Property

    Example 61A—Right to Use Intellectual Property

Copyright © 2025 by Fina...
Certified Public Accounta...
not be reproduced, store...
without the prior written...
in any portion hereof that...

Example 61B—Distinguishing Multiple Licenses from Attributes of a Single License

12/20/2025, 5:07 PM

Case 1:24-cv-08636-LJL    Document 86-8    Filed 02/17/26    Page 75 of 155

tomers

t. Repurchase Agreements    Example 62—Repurchase Agreements

u. Bill-and-Hold Arrangements    Example 63—Bill-and-Hold Arrangement

## · > Identifying the Contract

**606-10-55-94**   Examples 1-4 illustrate the guidance in paragraphs 606-10-25-1 through 25-8 on identifying the contract. In addition, the following guidance is illustrated in these Examples:

   a. Paragraph 606-10-25-1(e) and paragraphs 606-10-55-3A through 55-3C on assessing collectibility (Example 1)

   b. The interaction of paragraph 606-10-25-1 with paragraphs 606-10-32-2 and 606-10-32-7 on estimating variable consideration (Examples 2 and 3)

   c. Paragraph 606-10-55-65 on consideration in the form of sales-based or usage-based royalties on licenses of intellectual property (Example 4).

### · · > Example 1—Collectibility of the Consideration

### · · · > Case A—Collectibility Is Not Probable

**606-10-55-95**   An entity, a real estate developer, enters into a contract with a customer for the sale of a building for $1 million. The customer intends to open a restaurant in the building. The building is located in an area where new restaurants face high levels of competition, and the customer has little experience in the restaurant industry.

**606-10-55-96**   The customer pays a nonrefundable deposit of $50,000 at inception of the contract and enters into a long-term financing agreement with the entity for the remaining 95 percent of the promised consideration. The financing arrangement is provided on a nonrecourse basis, which means that if the customer defaults, the entity can repossess the building but cannot seek further compensation from the customer, even if the collateral does not cover the full value of the amount owed.

**606-10-55-97**   The entity concludes that not all of the criteria in paragraph 606-10-25-1 are met. The entity concludes that the criterion in paragraph 606-10-25-1(e) is not met because it is not probable that the entity will collect substantially all of the consideration to which it is entitled in exchange for the transfer of the building. In reaching this conclusion, the entity observes that the customer's ability and intention to pay may be in doubt because of the following factors:

   a. The customer intends to repay the loan (which has a significant balance) primarily from income derived from its restaurant business (which is a business facing significant risks because of high competition in the industry and the customer's limited experience).

   b. The customer lacks other income or assets that could be used to repay the loan.

   c. The customer's liability under the loan is limited because the loan is nonrecourse.

**606-10-55-98**   The entity continues to assess the contract in accordance with paragraph 606-10-25-6 to determine whether the criteria in paragraph 606-10-25-1 are subsequently met or whether the events in paragraph 606-10-25-7 have occurred.

### · · · > Case B—Credit Risk Is Mitigated

**606-10-55-98A**   An entity, a service provider, enters into a three-year service contract with a new customer of low credit quality at the beginning of a calendar month.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-98B**    The transaction price of the contract is $720, and $20 is due at the end of each month. The standalone selling price of the monthly service is $20. Both parties are subject to termination penalties if the contract is cancelled.

**606-10-55-98C**    The entity's history with this class of customer indicates that while the entity cannot conclude it is probable the customer will pay the transaction price of $720, the customer is expected to make the payments required under the contract for at least 9 months. If, during the contract term, the customer stops making the required payments, the entity's customary business practice is to limit its credit risk by not transferring further services to the customer and to pursue collection for the unpaid services.

**606-10-55-98D**    In assessing whether the contract meets the criteria in paragraph 606-10-25-1, the entity assesses whether it is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the services that will be transferred to the customer. This includes assessing the entity's history with this class of customer in accordance with paragraph 606-10-55-3B and its business practice of stopping service in response to customer nonpayment in accordance with paragraph 606-10-55-3C. Consequently, as part of this analysis, the entity does not consider the likelihood of payment for services that would not be provided in the event of the customer's nonpayment because the entity is not exposed to credit risk for those services.

**606-10-55-98E**    It is not probable that the entity will collect the entire transaction price ($720) because of the customer's low credit rating. However, the entity's exposure to credit risk is mitigated because the entity has the ability and intention (as evidenced by its customary business practice) to stop providing services if the customer does not pay the promised consideration for services provided when it is due. Therefore, the entity concludes that the contract meets the criterion in paragraph 606-10-25-1(e) because it is probable that the customer will pay substantially all of the consideration to which the entity is entitled for the services the entity will transfer to the customer (that is, for the services the entity will provide for as long as the customer continues to pay for the services provided). Consequently, assuming the criteria in paragraph 606-10-25-1(a) through (d) are met, the entity would apply the remaining guidance in this Topic to recognize revenue and only reassess the criteria in paragraph 606-10-25-1 if there is an indication of a significant change in facts or circumstances such as the customer not making its required payments.

· · · > Case C—Credit Risk Is Not Mitigated

**606-10-55-98F**    The same facts as in Case B apply to Case C, except that the entity's history with this class of customer indicates that there is a risk that the customer will not pay substantially all of the consideration for services received from the entity, including the risk that the entity will never receive any payment for any services provided.

**606-10-55-98G**    In assessing whether the contract with the customer meets the criteria in paragraph 606-10-25-1, the entity assesses whether it is probable that it will collect substantially all of the consideration to which it will be entitled in exchange for the goods or services that will be transferred to the customer. This includes assessing the entity's history with this class of customer and its business practice of stopping service in response to the customer's nonpayment in accordance with paragraph 606-10-55-3C.

**606-10-55-98H**    At contract inception, the entity concludes that the criterion in paragraph 606-10-25-1(e) is not met because it is not probable that the customer will pay substantially all of the consideration to which the entity will be entitled under the contract for the services that will be transferred to the customer.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

12/20/2025, 5:07 PM
Case 1:24-cv-08636-LJL    Document 86-8    Filed 02/17/26    Page 77 of 155
Combine Sections - 606 Revenue from Contracts with Customers

The entity concludes that not only is there a risk that the customer will not pay for services received from the entity, but also there is a risk that the entity will never receive any payment for any services provided. Subsequently, when the customer initially pays for one month of service, the entity accounts for the consideration received in accordance with paragraphs 606-10-25-7 through 25-8. The entity concludes that none of the events in paragraph 606-10-25-7 have occurred because the contract has not been terminated, the entity has not received substantially all of the consideration promised in the contract, and the entity is continuing to provide services to the customer.

**606-10-55-98I**   Assume that the customer has made timely payments for several months. In accordance with paragraph 606-10-25-6, the entity assesses the contract to determine whether the criteria in paragraph 606-10-25-1 are subsequently met. In making that evaluation, the entity considers, among other things, its experience with this specific customer. On the basis of the customer's performance under the contract, the entity concludes that the criteria in 606-10-25-1 have been met, including the collectibility criterion in paragraph 606-10-25-1(e). Once the criteria in paragraph 606-10-25-1 are met, the entity applies the remaining guidance in this Topic to recognize revenue.

· · · > Case D—Advance Payment

**606-10-55-98J**   An entity, a health club, enters into a one-year membership with a customer of low credit quality. The transaction price of the contract is $120, and $10 is due at the beginning of each month. The standalone selling price of the monthly service is $10.

**606-10-55-98K**   On the basis of the customer's credit history and in accordance with the entity's customary business practice, the customer is required to pay each month before the entity provides the customer with access to the health club. In response to nonpayment, the entity's customary business practice is to stop providing service to the customer upon nonpayment. The entity does not have exposure to credit risk because all payments are made in advance and the entity does not provide services unless the advance payment has been received.

**606-10-55-98L**   The contract meets the criterion in paragraph 606-10-25-1(e) because it is probable that the entity will collect the consideration to which it will be entitled in exchange for the services that will be transferred to the customer (that is, one month of payment in advance for each month of service).

· · > Example 2—Consideration is Not the Stated Price—Implicit Price Concession

**606-10-55-99**   An entity sells 1,000 units of a prescription drug to a customer for promised consideration of $1 million. This is the entity's first sale to a customer in a new region, which is experiencing significant economic difficulty. Thus, the entity expects that it will not be able to collect from the customer the full amount of the promised consideration. Despite the possibility of not collecting the full amount, the entity expects the region's economy to recover over the next two to three years and determines that a relationship with the customer could help it to forge relationships with other potential customers in the region.

**606-10-55-100**   When assessing whether the criterion in paragraph 606-10-25-1(e) is met, the entity also considers paragraphs 606-10-32-2 and 606-10-32-7(b). Based on the assessment of the facts and circumstances, the entity determines that it expects to provide a price concession and accept a lower amount of consideration from the customer. Accordingly, the entity concludes that the transaction price is not $1 million and, therefore, the promised consideration is variable. The entity estimates the variable consideration and determines that it expects to be entitled to $400,000.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-101**　The entity considers the customer's ability and intention to pay the consideration and concludes that even though the region is experiencing economic difficulty it is probable that it will collect $400,000 from the customer. Consequently, the entity concludes that the criterion in paragraph 606-10-25-1(e) is met based on an estimate of variable consideration of $400,000. In addition, based on an evaluation of the contract terms and other facts and circumstances, the entity concludes that the other criteria in paragraph 606-10-25-1 are also met. Consequently, the entity accounts for the contract with the customer in accordance with the guidance in this Topic.

· · > Example 3—Implicit Price Concession

**606-10-55-102**　An entity, a hospital, provides medical services to an uninsured patient in the emergency room. The entity has not previously provided medical services to this patient but is required by law to provide medical services to all emergency room patients. Because of the patient's condition upon arrival at the hospital, the entity provides the services immediately and, therefore, before the entity can determine whether the patient is committed to perform its obligations under the contract in exchange for the medical services provided. Consequently, the contract does not meet the criteria in paragraph 606-10-25-1, and in accordance with paragraph 606-10-25-6, the entity will continue to assess its conclusion based on updated facts and circumstances.

**606-10-55-103**　After providing services, the entity obtains additional information about the patient including a review of the services provided, standard rates for such services, and the patient's ability and intention to pay the entity for the services provided. During the review, the entity notes its standard rate for the services provided in the emergency room is $10,000. The entity also reviews the patient's information and to be consistent with its policies designates the patient to a customer class based on the entity's assessment of the patient's ability and intention to pay. The entity determines that the services provided are not charity care based on the entity's internal policy and the patient's income level. In addition, the patient does not qualify for governmental subsidies.

**606-10-55-104**　Before reassessing whether the criteria in paragraph 606-10-25-1 have been met, the entity considers paragraphs 606-10-32-2 and 606-10-32-7(b). Although the standard rate for the services is $10,000 (which may be the amount invoiced to the patient), the entity expects to accept a lower amount of consideration in exchange for the services. Accordingly, the entity concludes that the transaction price is not $10,000 and, therefore, the promised consideration is variable. The entity reviews its historical cash collections from this customer class and other relevant information about the patient. The entity estimates the variable consideration and determines that it expects to be entitled to $1,000.

**606-10-55-105**　In accordance with paragraph 606-10-25-1(e), the entity evaluates the patient's ability and intention to pay (that is, the credit risk of the patient). On the basis of its collection history from patients in this customer class, the entity concludes it is probable that the entity will collect $1,000 (which is the estimate of variable consideration). In addition, on the basis of an assessment of the contract terms and other facts and circumstances, the entity concludes that the other criteria in paragraph 606-10-25-1 also are met. Consequently, the entity accounts for the contract with the patient in accordance with the guidance in this Topic.

· · > Example 4—Reassessing the Criteria for Identifying a Contract

**606-10-55-106**　An entity licenses a patent to a customer in exchange for a usage-based royalty. At contract inception, the contract meets all the criteria in paragraph 606-10-25-1, and the entity accounts for the contract with the customer in accordance with the guidance in this Topic. The entity recognizes revenue when the customer's subsequent usage occurs in accordance with paragraph 606-10-55-65.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-107**    Throughout the first year of the contract, the customer provides quarterly reports of usage and pays within the agreed-upon period.

**606-10-55-108**    During the second year of the contract, the customer continues to use the entity's patent, but the customer's financial condition declines. The customer's current access to credit and available cash on hand are limited. The entity continues to recognize revenue on the basis of the customer's usage throughout the second year. The customer pays the first quarter's royalties but makes nominal payments for the usage of the patent in quarters 2-4. The entity accounts for any credit losses on the existing receivable in accordance with Subtopic 326-20 on financial instruments measured at amortized cost.

**606-10-55-109**    During the third year of the contract, the customer continues to use the entity's patent. However, the entity learns that the customer has lost access to credit and its major customers and thus the customer's ability to pay significantly deteriorates. The entity therefore concludes that it is unlikely that the customer will be able to make any further royalty payments for ongoing usage of the entity's patent. As a result of this significant change in facts and circumstances, in accordance with paragraph 606-10-25-5, the entity reassesses the criteria in paragraph 606-10-25-1 and determines that they are not met because it is no longer probable that the entity will collect the consideration to which it will be entitled. Accordingly, the entity does not recognize any further revenue associated with the customer's future usage of its patent. The entity accounts for additional credit losses on the existing receivable in accordance with Subtopic 326-20.

## · > Contract Modifications

**606-10-55-110**    Examples 5-9 illustrate the guidance in paragraphs 606-10-25-10 through 25-13 on contract modifications. In addition, the following guidance is illustrated in these Examples:

> a. Paragraphs 606-10-25-14 through 25-22 on identifying performance obligations (Examples 7 and 8)

> b. Paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration (Examples 6, 8, and 9)

> c. Paragraphs 606-10-32-42 through 32-45 on changes in the transaction price (Example 6).

### · · > Example 5—Modification of a Contract for Goods

**606-10-55-111**    An entity promises to sell 120 products to a customer for $12,000 ($100 per product). The products are transferred to the customer over a six-month period. The entity transfers control of each product at a point in time. After the entity has transferred control of 60 products to the customer, the contract is modified to require the delivery of an additional 30 products (a total of 150 identical products) to the customer. The additional 30 products were not included in the initial contract.

#### · · · > Case A—Additional Products for a Price That Reflects the Standalone Selling Price

**606-10-55-112**    When the contract is modified, the price of the contract modification for the additional 30 products is an additional $2,850 or $95 per product. The pricing for the additional products reflects the standalone selling price of the products at the time of the contract modification, and the additional products are distinct (in accordance with paragraph 606-10-25-19) from the original products.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-113**    In accordance with paragraph 606-10-25-12, the contract modification for the additional 30 products is, in effect, a new and separate contract for future products that does not affect the accounting for the existing contract. The entity recognizes revenue of $100 per product for the 120 products in the original contract and $95 per product for the 30 products in the new contract.

··· > Case B—Additional Products for a Price That Does Not Reflect the Standalone Selling Price

**606-10-55-114**    During the process of negotiating the purchase of an additional 30 products, the parties initially agree on a price of $80 per product. However, the customer discovers that the initial 60 products transferred to the customer contained minor defects that were unique to those delivered products. The entity promises a partial credit of $15 per product to compensate the customer for the poor quality of those products. The entity and the customer agree to incorporate the credit of $900 ($15 credit × 60 products) into the price that the entity charges for the additional 30 products. Consequently, the contract modification specifies that the price of the additional 30 products is $1,500 or $50 per product. That price comprises the agreed-upon price for the additional 30 products of $2,400, or $80 per product, less the credit of $900.

**606-10-55-115**    At the time of modification, the entity recognizes the $900 as a reduction of the transaction price and, therefore, as a reduction of revenue for the initial 60 products transferred. In accounting for the sale of the additional 30 products, the entity determines that the negotiated price of $80 per product does not reflect the standalone selling price of the additional products. Consequently, the contract modification does not meet the conditions in paragraph 606-10-25-12 to be accounted for as a separate contract. Because the remaining products to be delivered are distinct from those already transferred, the entity applies the guidance in paragraph 606-10-25-13(a) and accounts for the modification as a termination of the original contract and the creation of a new contract.

**606-10-55-116**    Consequently, the amount recognized as revenue for each of the remaining products is a blended price of $93.33 {[($100 × 60 products not yet transferred under the original contract) + ($80 × 30 products to be transferred under the contract modification)] ÷ 90 remaining products}.

·· > Example 6—Change in the Transaction Price after a Contract Modification

**606-10-55-117**    On July 1, 20X0, an entity promises to transfer two distinct products to a customer. Product X transfers to the customer at contract inception and Product Y transfers on March 31, 20X1. The consideration promised by the customer includes fixed consideration of $1,000 and variable consideration that is estimated to be $200. The entity includes its estimate of variable consideration in the transaction price because it concludes that it is probable that a significant reversal in cumulative revenue recognized will not occur when the uncertainty is resolved.

**606-10-55-118**    The transaction price of $1,200 is allocated equally to the performance obligation for Product X and the performance obligation for Product Y. This is because both products have the same standalone selling prices and the variable consideration does not meet the criteria in paragraph 606-10-32-40 that requires allocation of the variable consideration to one but not both of the performance obligations.

**606-10-55-119**    When Product X transfers to the customer at contract inception, the entity recognizes revenue of $600.

**606-10-55-120**    On November 30, 20X0, the scope of the contract is modified to include the promise to transfer Product Z (in addition to the undelivered Product Y) to the customer on June 30, 20X1, and the price of the contract is increased by $300 (fixed consideration), which does not represent the standalone

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

selling price of Product Z. The standalone selling price of Product Z is the same as the standalone selling prices of Products X and Y.

**606-10-55-121**  The entity accounts for the modification as if it were the termination of the existing contract and the creation of a new contract. This is because the remaining Products Y and Z are distinct from Product X, which had transferred to the customer before the modification, and the promised consideration for the additional Product Z does not represent its standalone selling price. Consequently, in accordance with paragraph 606-10-25-13(a), the consideration to be allocated to the remaining performance obligations comprises the consideration that had been allocated to the performance obligation for Product Y (which is measured at an allocated transaction price amount of $600) and the consideration promised in the modification (fixed consideration of $300). The transaction price for the modified contract is $900, and that amount is allocated equally to the performance obligation for Product Y and the performance obligation for Product Z (that is, $450 is allocated to each performance obligation).

**606-10-55-122**  After the modification but before the delivery of Products Y and Z, the entity revises its estimate of the amount of variable consideration to which it expects to be entitled to $240 (rather than the previous estimate of $200). The entity concludes that the change in estimate of the variable consideration can be included in the transaction price because it is probable that a significant reversal in cumulative revenue recognized will not occur when the uncertainty is resolved. Even though the modification was accounted for as if it were the termination of the existing contract and the creation of a new contract in accordance with paragraph 606-10-25-13(a), the increase in the transaction price of $40 is attributable to variable consideration promised before the modification. Therefore, in accordance with paragraph 606-10-32-45, the change in the transaction price is allocated to the performance obligations for Product X and Product Y on the same basis as at contract inception. Consequently, the entity recognizes revenue of $20 for Product X in the period in which the change in the transaction price occurs. Because Product Y had not transferred to the customer before the contract modification, the change in the transaction price that is attributable to Product Y is allocated to the remaining performance obligations at the time of the contract modification. This is consistent with the accounting that would have been required by paragraph 606-10-25-13(a) if that amount of variable consideration had been estimated and included in the transaction price at the time of the contract modification.

**606-10-55-123**  The entity also allocates the $20 increase in the transaction price for the modified contract equally to the performance obligations for Product Y and Product Z. This is because the products have the same standalone selling prices and the variable consideration does not meet the criteria in paragraph 606-10-32-40 that require allocation of the variable consideration to one but not both of the performance obligations. Consequently, the amount of the transaction price allocated to the performance obligations for Product Y and Product Z increases by $10 to $460 each.

**606-10-55-124**  On March 31, 20X1, Product Y is transferred to the customer, and the entity recognizes revenue of $460. On June 30, 20X1, Product Z is transferred to the customer, and the entity recognizes revenue of $460.

· · > Example 7—Modification of a Services Contract

**606-10-55-125**  An entity enters into a three-year contract to clean a customer's offices on a weekly basis. The customer promises to pay $100,000 per year. The standalone selling price of the services at contract inception is $100,000 per year. The entity recognizes revenue of $100,000 per year during the first 2 years of providing services. At the end of the second year, the contract is modified and the fee for the third year is reduced to $80,000. In addition, the customer agrees to extend the contract for 3

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

additional years for consideration of $200,000 payable in 3 equal annual installments of $66,667 at the beginning of years 4, 5, and 6. The standalone selling price of the services for years 4 through 6 at the beginning of the third year is $80,000 per year. The entity's standalone selling price at the beginning of the third year, multiplied by the additional 3 years of services, is $240,000, which is deemed to be an appropriate estimate of the standalone selling price of the multiyear contract.

**606-10-55-126**  At contract inception, the entity assesses that each week of cleaning service is distinct in accordance with paragraph 606-10-25-19. Notwithstanding that each week of cleaning service is distinct, the entity accounts for the cleaning contract as a single performance obligation in accordance with paragraph 606-10-25-14(b). This is because the weekly cleaning services are a series of distinct services that are substantially the same and have the same pattern of transfer to the customer (the services transfer to the customer over time and use the same method to measure progress—that is, a time-based measure of progress).

**606-10-55-127**  At the date of the modification, the entity assesses the additional services to be provided and concludes that they are distinct. However, the price change does not reflect the standalone selling price.

**606-10-55-128**  Consequently, the entity accounts for the modification in accordance with paragraph 606-10-25-13(a) as if it were a termination of the original contract and the creation of a new contract with consideration of $280,000 for 4 years of cleaning service. The entity recognizes revenue of $70,000 per year ($280,000 ÷ 4 years) as the services are provided over the remaining 4 years.

· · > Example 8—Modification Resulting in a Cumulative Catch-Up Adjustment to Revenue

**606-10-55-129**  An entity, a construction company, enters into a contract to construct a commercial building for a customer on customer-owned land for promised consideration of $1 million and a bonus of $200,000 if the building is completed within 24 months. The entity accounts for the promised bundle of goods and services as a single performance obligation satisfied over time in accordance with paragraph 606-10-25-27(b) because the customer controls the building during construction. At the inception of the contract, the entity expects the following:

| | | |
|---|---|---|
| Transaction price | $ | 1,000,000 |
| Expected costs | | 700,000 |
| Expected profit (30%) | $ | 300,000 |

**606-10-55-130**  At contract inception, the entity excludes the $200,000 bonus from the transaction price because it cannot conclude that it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur. Completion of the building is highly susceptible to factors outside the entity's influence, including weather and regulatory approvals. In addition, the entity has limited experience with similar types of contracts.

**606-10-55-131**  The entity determines that the input measure, on the basis of costs incurred, provides an appropriate measure of progress toward complete satisfaction of the performance obligation. By the end of the first year, the entity has satisfied 60 percent of its performance obligation on the basis of costs incurred to date ($420,000) relative to total expected costs ($700,000). The entity reassesses the variable consideration and concludes that the amount is still constrained in accordance with paragraphs 606-10-32-11 through 32-13. Consequently, the cumulative revenue and costs recognized for the first year are as follows:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| Revenue | $ | 600,000 |
|---|---|---|
| Costs | | 420,000 |
| Gross profit | $ | 180,000 |

**606-10-55-132**  In the first quarter of the second year, the parties to the contract agree to modify the contract by changing the floor plan of the building. As a result, the fixed consideration and expected costs increase by $150,000 and $120,000, respectively. Total potential consideration after the modification is $1,350,000 ($1,150,000 fixed consideration + $200,000 completion bonus). In addition, the allowable time for achieving the $200,000 bonus is extended by 6 months to 30 months from the original contract inception date. At the date of the modification, on the basis of its experience and the remaining work to be performed, which is primarily inside the building and not subject to weather conditions, the entity concludes that it is probable that including the bonus in the transaction price will not result in a significant reversal in the amount of cumulative revenue recognized in accordance with paragraph 606-10-32-11 and includes the $200,000 in the transaction price. In assessing the contract modification, the entity evaluates paragraph 606-10-25-19(b) and concludes (on the basis of the factors in paragraph 606-10-25-21) that the remaining goods and services to be provided using the modified contract are not distinct from the goods and services transferred on or before the date of contract modification; that is, the contract remains a single performance obligation.

**606-10-55-133**  Consequently, the entity accounts for the contract modification as if it were part of the original contract (in accordance with paragraph 606-10-25-13(b)). The entity updates its measure of progress and estimates that it has satisfied 51.2 percent of its performance obligation ($420,000 actual costs incurred ÷ $820,000 total expected costs). The entity recognizes additional revenue of $91,200 [(51.2 percent complete × $1,350,000 modified transaction price) - $600,000 revenue recognized to date] at the date of the modification as a cumulative catch-up adjustment.

·· > Example 9—Unapproved Change in Scope and Price

**606-10-55-134**  An entity enters into a contract with a customer to construct a building on customer-owned land. The contract states that the customer will provide the entity with access to the land within 30 days of contract inception. However, the entity was not provided access until 120 days after contract inception because of storm damage to the site that occurred after contract inception. The contract specifically identifies any delay (including force majeure) in the entity's access to customer-owned land as an event that entitles the entity to compensation that is equal to actual costs incurred as a direct result of the delay. The entity is able to demonstrate that the specific direct costs were incurred as a result of the delay in accordance with the terms of the contract and prepares a claim. The customer initially disagreed with the entity's claim.

**606-10-55-135**  The entity assesses the legal basis of the claim and determines, on the basis of the underlying contractual terms, that it has enforceable rights. Consequently, it accounts for the claim as a contract modification in accordance with paragraphs 606-10-25-10 through 25-13. The modification does not result in any additional goods and services being provided to the customer. In addition, all of the remaining goods and services after the modification are not distinct and form part of a single performance obligation. Consequently, the entity accounts for the modification in accordance with paragraph 606-10-25-13(b) by updating the transaction price and the measure of progress toward complete satisfaction of the performance obligation. The entity considers the constraint on estimates of variable consideration in paragraphs 606-10-32-11 through 32-13 when estimating the transaction price.

· > Identifying Performance Obligations

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-136**   Examples 10-12A illustrate the guidance in paragraphs 606-10-25-14 through 25-22 on identifying performance obligations.

·· > Example 10—Goods and Services Are Not Distinct

··· > Case A—Significant Integration Service

**606-10-55-137**   An entity, a contractor, enters into a contract to build a hospital for a customer. The entity is responsible for the overall management of the project and identifies various promised goods and services, including engineering, site clearance, foundation, procurement, construction of the structure, piping and wiring, installation of equipment, and finishing.

**606-10-55-138**   The promised goods and services are capable of being distinct in accordance with paragraph 606-10-25-19(a). That is, the customer can benefit from the goods and services either on their own or together with other readily available resources. This is evidenced by the fact that the entity, or competitors of the entity, regularly sells many of these goods and services separately to other customers. In addition, the customer could generate economic benefit from the individual goods and services by using, consuming, selling, or holding those goods or services.

**606-10-55-139**   However, the promises to transfer the goods and services are not separately identifiable in accordance with paragraph 606-10-25-19(b) (on the basis of the factors in paragraph 606-10-25-21). This is evidenced by the fact that the entity provides a significant service of integrating the goods and services (the inputs) into the hospital (the combined output) for which the customer has contracted.

**606-10-55-140**   Because both criteria in paragraph 606-10-25-19 are not met, the goods and services are not distinct. The entity accounts for all of the goods and services in the contract as a single performance obligation.

··· > Case B—Significant Integration Service

**606-10-55-140A**   An entity enters into a contract with a customer that will result in the delivery of multiple units of a highly complex, specialized device. The terms of the contract require the entity to establish a manufacturing process in order to produce the contracted units. The specifications are unique to the customer based on a custom design that is owned by the customer and that were developed under the terms of a separate contract that is not part of the current negotiated exchange. The entity is responsible for the overall management of the contract, which requires the performance and integration of various activities including procurement of materials; identifying and managing subcontractors; and performing manufacturing, assembly, and testing.

**606-10-55-140B**   The entity assesses the promises in the contract and determines that each of the promised devices is capable of being distinct in accordance with paragraph 606-10-25-19(a) because the customer can benefit from each device on its own. This is because each unit can function independently of the other units.

**606-10-55-140C**   The entity observes that the nature of its promise is to establish and provide a service of producing the full complement of devices for which the customer has contracted in accordance with the customer's specifications. The entity considers that it is responsible for overall management of the contract and for providing a significant service of integrating various goods and services (the inputs) into its overall service and the resulting devices (the combined output) and, therefore, the devices and the various promised goods and services inherent in producing those devices are not separately

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

identifiable in accordance with paragraphs 606-10-25-19(b) and 606-10-25-21. In this Case, the manufacturing process provided by the entity is specific to its contract with the customer. In addition, the nature of the entity's performance and, in particular, the significant integration service of the various activities mean that a change in one of the entity's activities to produce the devices has a significant effect on the other activities required to produce the highly complex specialized devices such that the entity's activities are highly interdependent and highly interrelated. Because the criterion in paragraph 606-10-25-19(b) is not met, the goods and services that will be provided by the entity are not separately identifiable, and, therefore, are not distinct. The entity accounts for all of the goods and services promised in the contract as a single performance obligation.

· · · > Case C—Combined Item

**606-10-55-140D**    An entity grants a customer a three-year term license to anti-virus software and promises to provide the customer with when-and-if available updates to that software during the license period. The entity frequently provides updates that are critical to the continued utility of the software. Without the updates, the customer's ability to benefit from the software would decline significantly during the three-year arrangement.

**606-10-55-140E**    The entity concludes that the software and the updates are each promised goods or services in the contract and are each capable of being distinct in accordance with paragraph 606-10-25-19(a). The software and the updates are capable of being distinct because the customer can derive economic benefit from the software on its own throughout the license period (that is, without the updates the software would still provide its original functionality to the customer), while the customer can benefit from the updates together with the software license transferred at the outset of the contract.

**606-10-55-140F**    The entity concludes that its promises to transfer the software license and to provide the updates, when-and-if available, are not separately identifiable (in accordance with paragraph 606-10-25-19(b)) because the license and the updates are, in effect, inputs to a combined item (anti-virus protection) in the contract. The updates significantly modify the functionality of the software (that is, they permit the software to protect the customer from a significant number of additional viruses that the software did not protect against previously) and are integral to maintaining the utility of the software license to the customer. Consequently, the license and updates fulfill a single promise to the customer in the contract (a promise to provide protection from computer viruses for three years). Therefore, in this Example, the entity accounts for the software license and the when-and-if available updates as a single performance obligation. In accordance with paragraph 606-10-25-33, the entity concludes that the nature of the combined good or service it promised to transfer to the customer in this Example is computer virus protection for three years. The entity considers the nature of the combined good or service (that is, to provide anti-virus protection for three years) in determining whether the performance obligation is satisfied over time or at a point in time in accordance with paragraphs 606-10-25-23 through 25-30 and in determining the appropriate method for measuring progress toward complete satisfaction of the performance obligation in accordance with paragraphs 606-10-25-31 through 25-37.

· · > Example 11—Determining Whether Goods or Services Are Distinct

· · · > Case A—Distinct Goods or Services

**606-10-55-141**    An entity, a software developer, enters into a contract with a customer to transfer a software license, perform an installation service, and provide unspecified software updates and technical support (online and telephone) for a two-year period. The entity sells the license, installation service, and

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

technical support separately. The installation service includes changing the web screen for each type of user (for example, marketing, inventory management, and information technology). The installation service is routinely performed by other entities and does not significantly modify the software. The software remains functional without the updates and the technical support.

**606-10-55-142**    The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity observes that the software is delivered before the other goods and services and remains functional without the updates and the technical support. The customer can benefit from the updates together with the software license transferred at the outset of the contract. Thus, the entity concludes that the customer can benefit from each of the goods and services either on their own or together with the other goods and services that are readily available and the criterion in paragraph 606-10-25-19(a) is met.

**606-10-55-143**    The entity also considers the principle and the factors in paragraph 606-10-25-21 and determines that the promise to transfer each good and service to the customer is separately identifiable from each of the other promises (thus, the criterion in paragraph 606-10-25-19(b) is met). In reaching this determination the entity considers that although it integrates the software into the customer's system, the installation services do not significantly affect the customer's ability to use and benefit from the software license because the installation services are routine and can be obtained from alternate providers. The software updates do not significantly affect the customer's ability to use and benefit from the software license because, in contrast with Example 10 (Case C), the software updates in this contract are not necessary to ensure that the software maintains a high level of utility to the customer during the license period. The entity further observes that none of the promised goods or services significantly modify or customize one another and the entity is not providing a significant service of integrating the software and the services into a combined output. Lastly, the entity concludes that the software and the services do not significantly affect each other and, therefore, are not highly interdependent or highly interrelated because the entity would be able to fulfill its promise to transfer the initial software license independent from its promise to subsequently provide the installation service, software updates, or technical support.

**606-10-55-144**    On the basis of this assessment, the entity identifies four performance obligations in the contract for the following goods or services:

a. The software license

b. An installation service

c. Software updates

d. Technical support.

**606-10-55-145**    The entity applies paragraphs 606-10-25-23 through 25-30 to determine whether each of the performance obligations for the installation service, software updates, and technical support are satisfied at a point in time or over time. The entity also assesses the nature of the entity's promise to transfer the software license in accordance with paragraphs 606-10-55-59 through 55-60 and 606-10-55-62 through 55-64A (see Example 54 in paragraphs 606-10-55-362 through 55-363B).

· · · > Case B—Significant Customization

**606-10-55-146**    The promised goods and services are the same as in Case A, except that the contract specifies that, as part of the installation service, the software is to be substantially customized to add significant new functionality to enable the software to interface with other customized software applications used by the customer. The customized installation service can be provided by other entities.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-147**   The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity first assesses whether the criterion in paragraph 606-10-25-19(a) has been met. For the same reasons as in Case A, the entity determines that the software license, installation, software updates, and technical support each meet that criterion. The entity next assesses whether the criterion in paragraph 606-10-25-19(b) has been met by evaluating the principle and the factors in paragraph 606-10-25-21. The entity observes that the terms of the contract result in a promise to provide a significant service of integrating the licensed software into the existing software system by performing a customized installation service as specified in the contract. In other words, the entity is using the license and the customized installation service as inputs to produce the combined output (that is, a functional and integrated software system) specified in the contract (see paragraph 606-10-25-21(a)). The software is significantly modified and customized by the service (see paragraph 606-10-25-21(b)). Consequently, the entity determines that the promise to transfer the license is not separately identifiable from the customized installation service and, therefore, the criterion in paragraph 606-10-25-19(b) is not met. Thus, the software license and the customized installation service are not distinct.

**606-10-55-148**   On the basis of the same analysis as in Case A, the entity concludes that the software updates and technical support are distinct from the other promises in the contract.

**606-10-55-149**   On the basis of this assessment, the entity identifies three performance obligations in the contract for the following goods or services:

> a. Software customization which is comprised of the license to the software and the customized installation service
>
> b. Software updates
>
> c. Technical support.

**606-10-55-150**   The entity applies paragraphs 606-10-25-23 through 25-30 to determine whether each performance obligation is satisfied at a point in time or over time and paragraphs 606-10-25-31 through 25-37 to measure progress toward complete satisfaction of those performance obligations determined to be satisfied over time. In applying those paragraphs to the software customization, the entity considers that the customized software to which the customer will have rights is functional intellectual property and that the functionality of that software will not change during the license period as a result of activities that do not transfer a good or service to the customer. Therefore, the entity is providing a right to use the customized software. Consequently, the software customization performance obligation is completely satisfied upon completion of the customized installation service. The entity considers the other specific facts and circumstances of the contract in the context of the guidance in paragraphs 606-10-25-23 through 25-30 in determining whether it should recognize revenue related to the single software customization performance obligation as it performs the customized installation service or at the point in time the customized software is transferred to the customer.

· · · > Case C—Promises Are Separately Identifiable (Installation)

**606-10-55-150A**   An entity contracts with a customer to sell a piece of equipment and installation services. The equipment is operational without any customization or modification. The installation required is not complex and is capable of being performed by several alternative service providers.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-150B**    The entity identifies two promised goods and services in the contract: (a) equipment and (b) installation. The entity assesses the criteria in paragraph 606-10-25-19 to determine whether each promised good or service is distinct. The entity determines that the equipment and the installation each meet the criterion in paragraph 606-10-25-19(a). The customer can benefit from the equipment on its own, by using it or reselling it for an amount greater than scrap value, or together with other readily available resources (for example, installation services available from alternative providers). The customer also can benefit from the installation services together with other resources that the customer will already have obtained from the entity (that is, the equipment).

**606-10-55-150C**    The entity further determines that its promises to transfer the equipment and to provide the installation services are each separately identifiable (in accordance with paragraph 606-10-25-19(b)). The entity considers the principle and the factors in paragraph 606-10-25-21 in determining that the equipment and the installation services are not inputs to a combined item in this contract. In this Case, each of the factors in paragraph 606-10-25-21 contributes to, but is not individually determinative of, the conclusion that the equipment and the installation services are separately identifiable as follows:

> a. The entity is not providing a significant integration service. That is, the entity has promised to deliver the equipment and then install it; the entity would be able to fulfill its promise to transfer the equipment separately from its promise to subsequently install it. The entity has not promised to combine the equipment and the installation services in a way that would transform them into a combined output.

> b. The entity's installation services will not significantly customize or significantly modify the equipment.

> c. Although the customer can benefit from the installation services only after it has obtained control of the equipment, the installation services do not significantly affect the equipment because the entity would be able to fulfill its promise to transfer the equipment independently of its promise to provide the installation services. Because the equipment and the installation services do not each significantly affect the other, they are not highly interdependent or highly interrelated.

On the basis of this assessment, the entity identifies two performance obligations (the equipment and installation services) in the contract.

**606-10-55-150D**    The entity applies paragraphs 606-10-25-23 through 25-30 to determine whether each performance obligation is satisfied at a point in time or over time.

· · · > Case D—Promises Are Separately Identifiable (Contractual Restrictions)

**606-10-55-150E**    Assume the same facts as in Case C, except that the customer is contractually required to use the entity's installation services.

**606-10-55-150F**    The contractual requirement to use the entity's installation services does not change the evaluation of whether the promised goods and services are distinct in this Case. This is because the contractual requirement to use the entity's installation services does not change the characteristics of the goods or services themselves, nor does it change the entity's promises to the customer. Although the customer is required to use the entity's installation services, the equipment and the installation services are capable of being distinct (that is, they each meet the criterion in paragraph 606-10-25-19(a)), and the entity's promises to provide the equipment and to provide the installation services are each separately identifiable (that is, they each meet the criterion in paragraph 606-10-25-19(b)). The entity's analysis in this regard is consistent with Case C.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

#### · · · > Case E—Promises Are Separately Identifiable (Consumables)

**606-10-55-150G**  An entity enters into a contract with a customer to provide a piece of off-the-shelf equipment (that is, it is operational without any significant customization or modification) and to provide specialized consumables for use in the equipment at predetermined intervals over the next three years. The consumables are produced only by the entity, but are sold separately by the entity.

**606-10-55-150H**  The entity determines that the customer can benefit from the equipment together with the readily available consumables. The consumables are readily available in accordance with paragraph 606-10-25-20 because they are regularly sold separately by the entity (that is, through refill orders to customers that previously purchased the equipment). The customer can benefit from the consumables that will be delivered under the contract together with the delivered equipment that is transferred to the customer initially under the contract. Therefore, the equipment and the consumables are each capable of being distinct in accordance with paragraph 606-10-25-19(a).

**606-10-55-150I**  The entity determines that its promises to transfer the equipment and to provide consumables over a three-year period are each separately identifiable in accordance with paragraph 606-10-25-19(b). In determining that the equipment and the consumables are not inputs to a combined item in this contract, the entity considers that it is not providing a significant integration service that transforms the equipment and consumables into a combined output. Additionally, neither the equipment nor the consumables are significantly customized or modified by the other. Lastly, the entity concludes that the equipment and the consumables are not highly interdependent or highly interrelated because they do not significantly affect each other. Although the customer can benefit from the consumables in this contract only after it has obtained control of the equipment (that is, the consumables would have no use without the equipment) and the consumables are required for the equipment to function, the equipment and the consumables do not each significantly affect the other. This is because the entity would be able to fulfill each of its promises in the contract independently of the other. That is, the entity would be able to fulfill its promise to transfer the equipment even if the customer did not purchase any consumables and would be able to fulfill its promise to provide the consumables even if the customer acquired the equipment separately.

**606-10-55-150J**  On the basis of this assessment, the entity identifies two performance obligations in the contract for the following goods or services:

    a. The equipment
    b. The consumables.

**606-10-55-150K**  The entity applies paragraphs 606-10-25-23 through 25-30 to determine whether each performance obligation is satisfied at a point in time or over time.

#### · · > Example 12—Explicit and Implicit Promises in a Contract

**606-10-55-151**  An entity, a manufacturer, sells a product to a distributor (that is, its customer), who will then resell it to an end customer.

#### · · · > Case A—Explicit Promise of Service

**606-10-55-152**  In the contract with the distributor, the entity promises to provide maintenance services for no additional consideration (that is, "free") to any party (that is, the end customer) that purchases the product from the distributor. The entity outsources the performance of the maintenance services to

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

the distributor and pays the distributor an agreed-upon amount for providing those services on the entity's behalf. If the end customer does not use the maintenance services, the entity is not obliged to pay the distributor.

**606-10-55-153**  The contract with the customer includes two promised goods or services—(a) the product and (b) the maintenance services (because the promise of maintenance services is a promise to transfer goods or services in the future and is part of the negotiated exchange between the entity and the distributor). The entity assesses whether each good or service is distinct in accordance with paragraph 606-10-25-19. The entity determines that both the product and the maintenance services meet the criterion in paragraph 606-10-25-19(a). The entity regularly sells the product on a standalone basis, which indicates that the customer can benefit from the product on its own. The customer can benefit from the maintenance services together with a resource the customer already has obtained from the entity (that is, the product).

**606-10-55-153A**  The entity further determines that its promises to transfer the product and to provide the maintenance services are separately identifiable (in accordance with paragraph 606-10-25-19(b)) on the basis of the principle and the factors in paragraph 606-10-25-21. The product and the maintenance services are not inputs to a combined item in this contract. The entity is not providing a significant integration service because the presence of the product and the services together in this contract do not result in any additional or combined functionality. In addition, neither the product nor the services modify or customize the other. Lastly, the product and the maintenance services are not highly interdependent or highly interrelated because the entity would be able to satisfy each of the promises in the contract independent of its efforts to satisfy the other (that is, the entity would be able to transfer the product even if the customer declined maintenance services and would be able to provide maintenance services in relation to products sold previously through other distributors). The entity also observes, in applying the principle in paragraph 606-10-25-21, that the entity's promise to provide maintenance is not necessary for the product to continue to provide significant benefit to the customer. Consequently, the entity allocates a portion of the transaction price to each of the two performance obligations (that is, the product and the maintenance services) in the contract.

· · · > Case B—Implicit Promise of Service

**606-10-55-154**  The entity has historically provided maintenance services for no additional consideration (that is, "free") to end customers that purchase the entity's product from the distributor. The entity does not explicitly promise maintenance services during negotiations with the distributor, and the final contract between the entity and the distributor does not specify terms or conditions for those services.

**606-10-55-155**  However, on the basis of its customary business practice, the entity determines at contract inception that it has made an implicit promise to provide maintenance services as part of the negotiated exchange with the distributor. That is, the entity's past practices of providing these services create reasonable expectations of the entity's customers (that is, the distributor and end customers) in accordance with paragraph 606-10-25-16. Consequently, the entity assesses whether the promise of maintenance services is a performance obligation. For the same reasons as in Case A, the entity determines that the product and maintenance services are separate performance obligations.

· · · > Case C—Services Are Not a Promised Service

**606-10-55-156**  In the contract with the distributor, the entity does not promise to provide any maintenance services. In addition, the entity typically does not provide maintenance services, and, therefore, the entity's customary business practices, published policies, and specific statements at the time of entering into the contract have not created an implicit promise to provide goods or services to its customers. The

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

entity transfers control of the product to the distributor and, therefore, the contract is completed. However, before the sale to the end customer, the entity makes an offer to provide maintenance services to any party that purchases the product from the distributor for no additional promised consideration.

**606-10-55-157**    The promise of maintenance is not included in the contract between the entity and the distributor at contract inception. That is, in accordance with paragraph 606-10-25-16, the entity does not explicitly or implicitly promise to provide maintenance services to the distributor or the end customers. Consequently, the entity does not identify the promise to provide maintenance services as a performance obligation. Instead, the obligation to provide maintenance services is accounted for in accordance with Topic 450 on contingencies.

**606-10-55-157A**    Although the maintenance services are not a promised service in the current contract, in future contracts with customers the entity would assess whether it has created a business practice resulting in an implied promise to provide maintenance services.

· · > Example 12A—Series of Distinct Goods or Services

**606-10-55-157B**    An entity, a hotel manager, enters into a contract with a customer to manage a customer-owned property for 20 years. The entity receives consideration monthly that is equal to 1 percent of the revenue from the customer-owned property.

**606-10-55-157C**    The entity evaluates the nature of its promise to the customer in this contract and determines that its promise is to provide a hotel management service. The service comprises various activities that may vary each day (for example, cleaning services, reservation services, and property maintenance). However, those tasks are activities to fulfill the hotel management service and are not separate promises in the contract. The entity determines that each increment of the promised service (for example, each day of the management service) is distinct in accordance with paragraph 606-10-25-19. This is because the customer can benefit from each increment of service on its own (that is, it is capable of being distinct) and each increment of service is separately identifiable because no day of service significantly modifies or customizes another and no day of service significantly affects either the entity's ability to fulfill another day of service or the benefit to the customer of another day of service.

**606-10-55-157D**    The entity also evaluates whether it is providing a series of distinct goods or services in accordance with paragraphs 606-10-25-14 through 25-15. First, the entity determines that the services provided each day are substantially the same. This is because the nature of the entity's promise is the same each day and the entity is providing the same overall management service each day (although the underlying tasks or activities the entity performs to provide that service may vary from day to day). The entity then determines that the services have the same pattern of transfer to the customer because both criteria in paragraph 606-10-25-15 are met. The entity determines that the criterion in paragraph 606-10-25-15(a) is met because each distinct service meets the criteria in paragraph 606-10-25-27 to be a performance obligation satisfied over time. The customer simultaneously receives and consumes the benefits provided by the entity as it performs. The entity determines that the criterion in paragraph 606-10-25-15(b) also is met because the same measure of progress (in this case, a time-based output method) would be used to measure the entity's progress toward satisfying its promise to provide the hotel management service each day.

**606-10-55-157E**    After determining that the entity is providing a series of distinct daily hotel management services over the 20-year management period, the entity next determines the transaction price. The entity

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

determines that the entire amount of the consideration is variable consideration. The entity considers whether the variable consideration may be allocated to one or more, but not all, of the distinct days of service in the series in accordance with paragraph 606-10-32-39(b). The entity evaluates the criteria in paragraph 606-10-32-40 and determines that the terms of the variable consideration relate specifically to the entity's efforts to transfer each distinct daily service and that allocation of the variable consideration earned based on the activities performed by the entity each day to the distinct day in which those activities are performed is consistent with the overall allocation objective. Therefore, as each distinct daily service is completed, the variable consideration allocated to that period may be recognized, subject to the constraint on variable consideration.

## · > Performance Obligations Satisfied Over Time

**606-10-55-158**   Examples 13-17 illustrate the guidance in paragraphs 606-10-25-27 through 25-29 and 606-10-55-4 through 55-15 on performance obligations satisfied over time. In addition, the following guidance is illustrated in these Examples:

> a. Paragraphs 606-10-25-27(a) and 606-10-55-5 through 55-6 on when a customer simultaneously receives and consumes the benefits provided by the entity's performance as the entity performs (Examples 13 and 14)

> b. Paragraphs 606-10-25-27(c) and 606-10-25-28 through 25-29 and 606-10-55-8 through 55-15 on an entity's performance that does not create an asset with an alternative use and an entity's enforceable right to payment for performance completed to date (Examples 14-17)

> c. Paragraph 606-10-25-30 on performance obligations satisfied at a point in time (Example 17).

## · · > Example 13—Customer Simultaneously Receives and Consumes the Benefits

**606-10-55-159**   An entity enters into a contract to provide monthly payroll processing services to a customer for one year.

**606-10-55-160**   The promised payroll processing services are accounted for as a single performance obligation in accordance with paragraph 606-10-25-14(b). The performance obligation is satisfied over time in accordance with paragraph 606-10-25-27(a) because the customer simultaneously receives and consumes the benefits of the entity's performance in processing each payroll transaction as and when each transaction is processed. The fact that another entity would not need to reperform payroll processing services for the service that the entity has provided to date also demonstrates that the customer simultaneously receives and consumes the benefits of the entity's performance as the entity performs. (The entity disregards any practical limitations on transferring the remaining performance obligation, including setup activities that would need to be undertaken by another entity.) The entity recognizes revenue over time by measuring its progress toward complete satisfaction of that performance obligation in accordance with paragraphs 606-10-25-31 through 25-37 and 606-10-55-16 through 55-21.

## · · > Example 14—Assessing Alternative Use and Right to Payment

**606-10-55-161**   An entity enters into a contract with a customer to provide a consulting service that results in the entity providing a professional opinion to the customer. The professional opinion relates to facts and circumstances that are specific to the customer. If the customer were to terminate the consulting contract for reasons other than the entity's failure to perform as promised, the contract requires the customer to compensate the entity for its costs incurred plus a 15 percent margin. The 15 percent margin approximates the profit margin that the entity earns from similar contracts.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-162**    The entity considers the criterion in paragraph 606-10-25-27(a) and the guidance in paragraphs 606-10-55-5 through 55-6 to determine whether the customer simultaneously receives and consumes the benefits of the entity's performance. If the entity were to be unable to satisfy its obligation and the customer hired another consulting firm to provide the opinion, the other consulting firm would need to substantially reperform the work that the entity had completed to date because the other consulting firm would not have the benefit of any work in progress performed by the entity. The nature of the professional opinion is such that the customer will receive the benefits of the entity's performance only when the customer receives the professional opinion. Consequently, the entity concludes that the criterion in paragraph 606-10-25-27(a) is not met.

**606-10-55-163**    However, the entity's performance obligation meets the criterion in paragraph 606-10-25-27(c) and is a performance obligation satisfied over time because of both of the following factors:

> a. In accordance with paragraphs 606-10-25-28 and 606-10-55-8 through 55-10, the development of the professional opinion does not create an asset with alternative use to the entity because the professional opinion relates to facts and circumstances that are specific to the customer. Therefore, there is a practical limitation on the entity's ability to readily direct the asset to another customer.

> b. In accordance with paragraphs 606-10-25-29 and 606-10-55-11 through 55-15, the entity has an enforceable right to payment for its performance completed to date for its costs plus a reasonable margin, which approximates the profit margin in other contracts.

**606-10-55-164**    Consequently, the entity recognizes revenue over time by measuring the progress toward complete satisfaction of the performance obligation in accordance with paragraphs 606-10-25-31 through 25-37 and 606-10-55-16 through 55-21.

· · > Example 15—Asset Has No Alternative Use to the Entity

**606-10-55-165**    An entity enters into a contract with a customer, a government agency, to build a specialized satellite. The entity builds satellites for various customers, such as governments and commercial entities. The design and construction of each satellite differ substantially, on the basis of each customer's needs and the type of technology that is incorporated into the satellite.

**606-10-55-166**    At contract inception, the entity assesses whether its performance obligation to build the satellite is a performance obligation satisfied over time in accordance with paragraph 606-10-25-27.

**606-10-55-167**    As part of that assessment, the entity considers whether the satellite in its completed state will have an alternative use to the entity. Although the contract does not preclude the entity from directing the completed satellite to another customer, the entity would incur significant costs to rework the design and function of the satellite to direct that asset to another customer. Consequently, the asset has no alternative use to the entity (see paragraphs 606-10-25-27(c), 606-10-25-28, and 606-10-55-8 through 55-10) because the customer-specific design of the satellite limits the entity's practical ability to readily direct the satellite to another customer.

**606-10-55-168**    For the entity's performance obligation to be satisfied over time when building the satellite, paragraph 606-10-25-27(c) also requires the entity to have an enforceable right to payment for performance completed to date. This condition is not illustrated in this Example.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· · > Example 16—Enforceable Right to Payment for Performance Completed to Date

**606-10-55-169** An entity enters into a contract with a customer to build an item of equipment. The payment schedule in the contract specifies that the customer must make an advance payment at contract inception of 10 percent of the contract price, regular payments throughout the construction period (amounting to 50 percent of the contract price), and a final payment of 40 percent of the contract price after construction is completed and the equipment has passed the prescribed performance tests. The payments are nonrefundable unless the entity fails to perform as promised. If the customer terminates the contract, the entity is entitled only to retain any progress payments received from the customer. The entity has no further rights to compensation from the customer.

**606-10-55-170** At contract inception, the entity assesses whether its performance obligation to build the equipment is a performance obligation satisfied over time in accordance with paragraph 606-10-25-27.

**606-10-55-171** As part of that assessment, the entity considers whether it has an enforceable right to payment for performance completed to date in accordance with paragraphs 606-10-25-27(c), 606-10-25-29, and 606-10-55-11 through 55-15 if the customer were to terminate the contract for reasons other than the entity's failure to perform as promised. Even though the payments made by the customer are nonrefundable, the cumulative amount of those payments is not expected, at all times throughout the contract, to at least correspond to the amount that would be necessary to compensate the entity for performance completed to date. This is because at various times during construction the cumulative amount of consideration paid by the customer might be less than the selling price of the partially completed item of equipment at that time. Consequently, the entity does not have a right to payment for performance completed to date.

**606-10-55-172** Because the entity does not have a right to payment for performance completed to date, the entity's performance obligation is not satisfied over time in accordance with paragraph 606-10-25-27(c). Accordingly, the entity does not need to assess whether the equipment would have an alternative use to the entity. The entity also concludes that it does not meet the criteria in paragraph 606-10-25-27(a) or (b), and, thus, the entity accounts for the construction of the equipment as a performance obligation satisfied at a point in time in accordance with paragraph 606-10-25-30.

· · > Example 17—Assessing Whether a Performance Obligation Is Satisfied at a Point in Time or Over Time

**606-10-55-173** An entity is developing a multi-unit residential complex. A customer enters into a binding sales contract with the entity for a specified unit that is under construction. Each unit has a similar floor plan and is of a similar size, but other attributes of the units are different (for example, the location of the unit within the complex).

· · · > Case A—Entity Does Not Have an Enforceable Right to Payment for Performance Completed to Date

**606-10-55-174** The customer pays a deposit upon entering into the contract, and the deposit is refundable only if the entity fails to complete construction of the unit in accordance with the contract. The remainder of the contract price is payable on completion of the contract when the customer obtains physical possession of the unit. If the customer defaults on the contract before completion of the unit, the entity only has the right to retain the deposit.

**606-10-55-175** At contract inception, the entity applies paragraph 606-10-25-27(c) to determine whether its promise to construct and transfer the unit to the customer is a performance obligation satisfied over time. The

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

entity determines that it does not have an enforceable right to payment for performance completed to date because until construction of the unit is complete, the entity only has a right to the deposit paid by the customer. Because the entity does not have a right to payment for work completed to date, the entity's performance obligation is not a performance obligation satisfied over time in accordance with paragraph 606-10-25-27(c). Instead, the entity accounts for the sale of the unit as a performance obligation satisfied at a point in time in accordance with paragraph 606-10-25-30.

· · · > Case B—Entity Has an Enforceable Right to Payment for Performance Completed to Date

**606-10-55-176**    The customer pays a nonrefundable deposit upon entering into the contract and will make progress payments during construction of the unit. The contract has substantive terms that preclude the entity from being able to direct the unit to another customer. In addition, the customer does not have the right to terminate the contract unless the entity fails to perform as promised. If the customer defaults on its obligations by failing to make the promised progress payments as and when they are due, the entity would have a right to all of the consideration promised in the contract if it completes the construction of the unit. The courts have previously upheld similar rights that entitle developers to require the customer to perform, subject to the entity meeting its obligations under the contract.

**606-10-55-177**    At contract inception, the entity applies paragraph 606-10-25-27(c) to determine whether its promise to construct and transfer the unit to the customer is a performance obligation satisfied over time. The entity determines that the asset (unit) created by the entity's performance does not have an alternative use to the entity because the contract precludes the entity from transferring the specified unit to another customer. The entity does not consider the possibility of a contract termination in assessing whether the entity is able to direct the asset to another customer.

**606-10-55-178**    The entity also has a right to payment for performance completed to date in accordance with paragraphs 606-10-25-29 and 606-10-55-11 through 55-15. This is because if the customer were to default on its obligations, the entity would have an enforceable right to all of the consideration promised under the contract if it continues to perform as promised.

**606-10-55-179**    Therefore, the terms of the contract and the practices in the legal jurisdiction indicate that there is a right to payment for performance completed to date. Consequently, the criteria in paragraph 606-10-25-27(c) are met, and the entity has a performance obligation that it satisfies over time. To recognize revenue for that performance obligation satisfied over time, the entity measures its progress toward complete satisfaction of its performance obligation in accordance with paragraphs 606-10-25-31 through 25-37 and 606-10-55-16 through 55-21.

**606-10-55-180**    In the construction of a multi-unit residential complex, the entity may have many contracts with individual customers for the construction of individual units within the complex. The entity would account for each contract separately. However, depending on the nature of the construction, the entity's performance in undertaking the initial construction works (that is, the foundation and the basic structure), as well as the construction of common areas, may need to be reflected when measuring its progress toward complete satisfaction of its performance obligations in each contract.

· · · > Case C—Entity Has an Enforceable Right to Payment for Performance Completed to Date

**606-10-55-181**    The same facts as in Case B apply to Case C, except that in the event of a default by the customer, either the entity can require the customer to perform as required under the contract or the entity can cancel the contract in exchange for the asset under construction and an entitlement to a penalty of a proportion of the contract price.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-182**  Notwithstanding that the entity could cancel the contract (in which case the customer's obligation to the entity would be limited to transferring control of the partially completed asset to the entity and paying the penalty prescribed), the entity has a right to payment for performance completed to date because the entity also could choose to enforce its rights to full payment under the contract. The fact that the entity may choose to cancel the contract in the event the customer defaults on its obligations would not affect that assessment (see paragraph 606-10-55-13), provided that the entity's rights to require the customer to continue to perform as required under the contract (that is, pay the promised consideration) are enforceable.

## · > Measuring Progress toward Complete Satisfaction of a Performance Obligation

**606-10-55-183**  Examples 18 and 19 illustrate the guidance in paragraphs 606-10-25-31 through 25-37 on measuring progress toward complete satisfaction of a performance obligation satisfied over time. Example 19 also illustrates the guidance in paragraph 606-10-55-21 on uninstalled materials when costs incurred are not proportionate to the entity's progress in satisfying a performance obligation.

### · · > Example 18—Measuring Progress When Making Goods or Services Available

**606-10-55-184**  An entity, an owner and manager of health clubs, enters into a contract with a customer for one year of access to any of its health clubs. The customer has unlimited use of the health clubs and promises to pay $100 per month.

**606-10-55-185**  The entity determines that its promise to the customer is to provide a service of making the health clubs available for the customer to use as and when the customer wishes. This is because the extent to which the customer uses the health clubs does not affect the amount of the remaining goods and services to which the customer is entitled. The entity concludes that the customer simultaneously receives and consumes the benefits of the entity's performance as it performs by making the health clubs available. Consequently, the entity's performance obligation is satisfied over time in accordance with paragraph 606-10-25-27(a).

**606-10-55-186**  The entity also determines that the customer benefits from the entity's service of making the health clubs available evenly throughout the year. (That is, the customer benefits from having the health clubs available, regardless of whether the customer uses it or not.) Consequently, the entity concludes that the best measure of progress toward complete satisfaction of the performance obligation over time is a time-based measure, and it recognizes revenue on a straight-line basis throughout the year at $100 per month.

### · · > Example 19—Uninstalled Materials

**606-10-55-187**  In November 20X2, an entity contracts with a customer to refurbish a 3-story building and install new elevators for total consideration of $5 million. The promised refurbishment service, including the installation of elevators, is a single performance obligation satisfied over time. Total expected costs are $4 million, including $1.5 million for the elevators. The entity determines that it acts as a principal in accordance with paragraphs 606-10-55-36 through 55-40 because it obtains control of the elevators before they are transferred to the customer.

**606-10-55-188**  A summary of the transaction price and expected costs is as follows:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| Transaction price | $ 5,000,000 |
|---|---|
| Expected costs: | |
| Elevators | 1,500,000 |
| Other costs | 2,500,000 |
| Total expected costs | $ 4,000,000 |

**606-10-55-189**   The entity uses an input method based on costs incurred to measure its progress toward complete satisfaction of the performance obligation. The entity assesses whether the costs incurred to procure the elevators are proportionate to the entity's progress in satisfying the performance obligation in accordance with paragraph 606-10-55-21. The customer obtains control of the elevators when they are delivered to the site in December 20X2, although the elevators will not be installed until June 20X3. The costs to procure the elevators ($1.5 million) are significant relative to the total expected costs to completely satisfy the performance obligation ($4 million). The entity is not involved in designing or manufacturing the elevators.

**606-10-55-190**   The entity concludes that including the costs to procure the elevators in the measure of progress would overstate the extent of the entity's performance. Consequently, in accordance with paragraph 606-10-55-21, the entity adjusts its measure of progress to exclude the costs to procure the elevators from the measure of costs incurred and from the transaction price. The entity recognizes revenue for the transfer of the elevators in an amount equal to the costs to procure the elevators (that is, at a zero margin).

**606-10-55-191**   As of December 31, 20X2, the entity observes that:

a. Other costs incurred (excluding elevators) are$500,000.

b. Performance is 20% complete (that is, $500,000 ÷ $2,500,000).

**606-10-55-192**   Consequently, at December 31, 20X2, the entity recognizes the following:

| Revenue | $ 2,200,000 [a] |
|---|---|
| Costs of goods sold | 2,000,000 [b] |
| Profit | $ 200,000 |

(a)   Revenue recognized is calculated as (20% × $3,500,000 ) + $1,500,000. ($3,500,000  is $5,000,000 transaction price – $1,500,000 costs of elevators.)

(b)   Cost of goods sold is $500,000 of costs incurred + $1,500,000 costs of elevators.

## · > Variable Consideration

**606-10-55-193**   Examples 20 and 21 illustrate the guidance in paragraphs 606-10-32-5 through 32-9 on identifying variable consideration.

## · · > Example 20—Penalty Gives Rise to Variable Consideration

**606-10-55-194**   An entity enters into a contract with a customer to build an asset for $1 million. In addition, the terms of the contract include a penalty of $100,000 if the construction is not completed within 3 months of a date specified in the contract.

**606-10-55-195**   The entity concludes that the consideration promised in the contract includes a fixed amount of $900,000 and a variable amount of $100,000 (arising from the penalty).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-196**    The entity estimates the variable consideration in accordance with paragraphs 606-10-32-5 through 32-9 and considers the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration.

· · > Example 21—Estimating Variable Consideration

**606-10-55-197**    An entity enters into a contract with a customer to build a customized asset. The promise to transfer the asset is a performance obligation that is satisfied over time. The promised consideration is $2.5 million, but that amount will be reduced or increased depending on the timing of completion of the asset. Specifically, for each day after March 31, 20X7 that the asset is incomplete, the promised consideration is reduced by $10,000. For each day before March 31, 20X7 that the asset is complete, the promised consideration increases by $10,000.

**606-10-55-198**    In addition, upon completion of the asset, a third party will inspect the asset and assign a rating based on metrics that are defined in the contract. If the asset receives a specified rating, the entity will be entitled to an incentive bonus of $150,000.

**606-10-55-199**    In determining the transaction price, the entity prepares a separate estimate for each element of variable consideration to which the entity will be entitled using the estimation methods described in paragraph 606-10-32-8:

> a. The entity decides to use the expected value method to estimate the variable consideration associated with the daily penalty or incentive (that is, $2.5 million, plus or minus $10,000 per day). This is because it is the method that the entity expects to better predict the amount of consideration to which it will be entitled.

> b. The entity decides to use the most likely amount to estimate the variable consideration associated with the incentive bonus. This is because there are only 2 possible outcomes ($150,000 or $0) and it is the method that the entity expects to better predict the amount of consideration to which it will be entitled.

**606-10-55-200**    The entity considers the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration to determine whether the entity should include some or all of its estimate of variable consideration in the transaction price.

## · > Constraining Estimates of Variable Consideration

**606-10-55-201**    Examples 22-25 illustrate the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration. In addition, the following guidance is illustrated in these Examples:

> a. Paragraph 606-10-32-10 on refund liabilities (Example 22)

> b. Paragraphs 606-10-55-22 through 55-29 on sales with a right of return (Example 22)

> c. Paragraphs 606-10-32-39 through 32-41 on allocating variable consideration to performance obligations (Example 25).

· · > Example 22—Right of Return

**606-10-55-202**    An entity enters into 100 contracts with customers. Each contract includes the sale of 1 product for $100 (100 total products × $100 = $10,000 total consideration). Cash is received when control of a

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

product transfers. The entity's customary business practice is to allow a customer to return any unused product within 30 days and receive a full refund. The entity's cost of each product is $60.

**606-10-55-203**  The entity applies the guidance in this Topic to the portfolio of 100 contracts because it reasonably expects that, in accordance with paragraph 606-10-10-4, the effects on the financial statements from applying this guidance to the portfolio would not differ materially from applying the guidance to the individual contracts within the portfolio.

**606-10-55-204**  Because the contract allows a customer to return the products, the consideration received from the customer is variable. To estimate the variable consideration to which the entity will be entitled, the entity decides to use the expected value method (see paragraph 606-10-32-8(a)) because it is the method that the entity expects to better predict the amount of consideration to which it will be entitled. Using the expected value method, the entity estimates that 97 products will not be returned.

**606-10-55-205**  The entity also considers the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration to determine whether the estimated amount of variable consideration of $9,700 ($100 × 97 products not expected to be returned) can be included in the transaction price. The entity considers the factors in paragraph 606-10-32-12 and determines that although the returns are outside the entity's influence, it has significant experience in estimating returns for this product and customer class. In addition, the uncertainty will be resolved within a short time frame (that is, the 30-day return period). Thus, the entity concludes that it is probable that a significant reversal in the cumulative amount of revenue recognized (that is, $9,700) will not occur as the uncertainty is resolved (that is, over the return period).

**606-10-55-206**  The entity estimates that the costs of recovering the products will be immaterial and expects that the returned products can be resold at a profit.

**606-10-55-207**  Upon transfer of control of the 100 products, the entity does not recognize revenue for the 3 products that it expects to be returned. Consequently, in accordance with paragraphs 606-10-32-10 and 606-10-55-23, the entity recognizes the following:

| | |
|---|---|
| Cash | $10,000 ($100 × 100 products transferred) |
| Revenue | $9,700 ($100 × 97 products not expected to be returned) |
| Refund liability | $300 ($100 refund × 3 products expected to be returned) |
| | |
| Cost of sales | $5,820 ($60 × 97 products not expected to be returned) |
| Asset | $180 ($60 × 3 products for its right to recover products from customers on settling the refund liability) |
| Inventory | $6,000 ($60 × 100 products) |

· · > Example 23—Price Concessions

**606-10-55-208**  An entity enters into a contract with a customer, a distributor, on December 1, 20X7. The entity transfers 1,000 products at contract inception for a price stated in the contract of $100 per product (total consideration is $100,000). Payment from the customer is due when the customer sells the products to the end customers. The entity's customer generally sells the products within 90 days of obtaining them. Control of the products transfers to the customer on December 1, 20X7.

**606-10-55-209**  On the basis of its past practices and to maintain its relationship with the customer, the entity anticipates granting a price concession to its customer because this will enable the customer to discount the product and thereby move the product through the distribution chain. Consequently, the consideration in the contract is variable.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· · · > Case A—Estimate of Variable Consideration Is Not Constrained

**606-10-55-210**    The entity has significant experience selling this and similar products. The observable data indicate that historically the entity grants a price concession of approximately 20 percent of the sales price for these products. Current market information suggests that a 20 percent reduction in price will be sufficient to move the products through the distribution chain. The entity has not granted a price concession significantly greater than 20 percent in many years.

**606-10-55-211**    To estimate the variable consideration to which the entity will be entitled, the entity decides to use the expected value method (see paragraph 606-10-32-8(a)) because it is the method that the entity expects to better predict the amount of consideration to which it will be entitled. Using the expected value method, the entity estimates the transaction price to be $80,000 ($80 × 1,000 products).

**606-10-55-212**    The entity also considers the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration to determine whether the estimated amount of variable consideration of $80,000 can be included in the transaction price. The entity considers the factors in paragraph 606-10-32-12 and determines that it has significant previous experience with this product and current market information that supports its estimate. In addition, despite some uncertainty resulting from factors outside its influence, based on its current market estimates, the entity expects the price to be resolved within a short time frame. Thus, the entity concludes that it is probable that a significant reversal in the cumulative amount of revenue recognized (that is, $80,000) will not occur when the uncertainty is resolved (that is, when the total amount of price concessions is determined). Consequently, the entity recognizes $80,000 as revenue when the products are transferred on December 1, 20X7.

· · · > Case B-Estimate of Variable Consideration Is Constrained

**606-10-55-213**    The entity has experience selling similar products. However, the entity's products have a high risk of obsolescence, and the entity is experiencing high volatility in the pricing of its products. The observable data indicate that historically the entity grants a broad range of price concessions ranging from 20 to 60 percent of the sales price for similar products. Current market information also suggests that a 15 to 50 percent reduction in price may be necessary to move the products through the distribution chain.

**606-10-55-214**    To estimate the variable consideration to which the entity will be entitled, the entity decides to use the expected value method (see paragraph 606-10-32-8(a)) because it is the method that the entity expects to better predict the amount of consideration to which it will be entitled. Using the expected value method, the entity estimates that a discount of 40 percent will be provided and, therefore, the estimate of the variable consideration is $60,000 ($60 × 1,000 products).

**606-10-55-215**    The entity also considers the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration to determine whether some or all of the estimated amount of variable consideration of $60,000 can be included in the transaction price. The entity considers the factors in paragraph 606-10-32-12 and observes that the amount of consideration is highly susceptible to factors outside the entity's influence (that is, risk of obsolescence) and it is likely that the entity may be required to provide a broad range of price concessions to move the products through the distribution chain. Consequently, the entity cannot include its estimate of $60,000 (that is, a discount of 40 percent) in the transaction price because it cannot conclude that it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur. Although the entity's historical price concessions have ranged from 20 to 60 percent, market information currently

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

suggests that a price concession of 15 to 50 percent will be necessary. The entity's actual results have been consistent with then-current market information in previous, similar transactions. Consequently, the entity concludes that it is probable that a significant reversal in the cumulative amount of revenue recognized will not occur if the entity includes $50,000 in the transaction price ($100 sales price and a 50 percent price concession) and, therefore, recognizes revenue at that amount. Therefore, the entity recognizes revenue of $50,000 when the products are transferred and reassesses the estimates of the transaction price at each reporting date until the uncertainty is resolved in accordance with paragraph 606-10-32-14.

· · > Example 24—Volume Discount Incentive

**606-10-55-216**    An entity enters into a contract with a customer on January 1, 20X8, to sell Product A for $100 per unit. If the customer purchases more than 1,000 units of Product A in a calendar year, the contract specifies that the price per unit is retrospectively reduced to $90 per unit. Consequently, the consideration in the contract is variable.

**606-10-55-217**    For the first quarter ended March 31, 20X8, the entity sells 75 units of Product A to the customer. The entity estimates that the customer's purchases will not exceed the 1,000-unit threshold required for the volume discount in the calendar year.

**606-10-55-218**    The entity considers the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration, including the factors in paragraph 606-10-32-12. The entity determines that it has significant experience with this product and with the purchasing pattern of the entity. Thus, the entity concludes that it is probable that a significant reversal in the cumulative amount of revenue recognized (that is, $100 per unit) will not occur when the uncertainty is resolved (that is, when the total amount of purchases is known). Consequently, the entity recognizes revenue of $7,500 (75 units × $100 per unit) for the quarter ended March 31, 20X8.

**606-10-55-219**    In May 20X8, the entity's customer acquires another company and in the second quarter ended June 30, 20X8, the entity sells an additional 500 units of Product A to the customer. In light of the new fact, the entity estimates that the customer's purchases will exceed the 1,000-unit threshold for the calendar year and, therefore, it will be required to retrospectively reduce the price per unit to $90.

**606-10-55-220**    Consequently, the entity recognizes revenue of $44,250 for the quarter ended June 30, 20X8. That amount is calculated from $45,000 for the sale of 500 units (500 units × $90 per unit) less the change in transaction price of $750 (75 units × $10 price reduction) for the reduction of revenue relating to units sold for the quarter ended March 31, 20X8 (see paragraphs 606-10-32-42 through 32-43).

· · > Example 25—Management Fees Subject to the Constraint

**606-10-55-221**    On January 1, 20X8, an entity enters into a contract with a client to provide asset management services for five years. The entity receives a 2 percent quarterly management fee based on the client's assets under management at the end of each quarter. In addition, the entity receives a performance-based incentive fee of 20 percent of the fund's return in excess of the return of an observable market index over the 5-year period. Consequently, both the management fee and the performance fee in the contract are variable consideration.

**606-10-55-222**    The entity accounts for the services as a single performance obligation in accordance with paragraph 606-10-25-14(b), because it is providing a series of distinct services that are substantially the same

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

and have the same pattern of transfer (the services transfer to the customer over time and use the same method to measure progress—that is, a time-based measure of progress).

**606-10-55-223**    At contract inception, the entity considers the guidance in paragraphs 606-10-32-5 through 32-9 on estimating variable consideration and the guidance in paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration, including the factors in paragraph 606-10-32-12. The entity observes that the promised consideration is dependent on the market and, thus, is highly susceptible to factors outside the entity's influence. In addition, the incentive fee has a large number and a broad range of possible consideration amounts. The entity also observes that although it has experience with similar contracts, that experience is of little predictive value in determining the future performance of the market. Therefore, at contract inception, the entity cannot conclude that it is probable that a significant reversal in the cumulative amount of revenue recognized would not occur if the entity included its estimate of the management fee or the incentive fee in the transaction price.

**606-10-55-224**    At each reporting date, the entity updates its estimate of the transaction price. Consequently, at the end of each quarter, the entity concludes that it can include in the transaction price the actual amount of the quarterly management fee because the uncertainty is resolved. However, the entity concludes that it cannot include its estimate of the incentive fee in the transaction price at those dates. This is because there has not been a change in its assessment from contract inception—the variability of the fee based on the market index indicates that the entity cannot conclude that it is probable that a significant reversal in the cumulative amount of revenue recognized would not occur if the entity included its estimate of the incentive fee in the transaction price. At March 31, 20X8, the client's assets under management are $100 million. Therefore, the resulting quarterly management fee and the transaction price is $2 million.

**606-10-55-225**    At the end of each quarter, the entity allocates the quarterly management fee to the distinct services provided during the quarter in accordance with paragraphs 606-10-32-39(b) and 606-10-32-40. This is because the fee relates specifically to the entity's efforts to transfer the services for that quarter, which are distinct from the services provided in other quarters, and the resulting allocation will be consistent with the allocation objective in paragraph 606-10-32-28. Consequently, the entity recognizes $2 million as revenue for the quarter ended March 31, 20X8.

## · > The Existence of a Significant Financing Component in the Contract

**606-10-55-226**    Examples 26-30 illustrate the guidance in paragraphs 606-10-32-15 through 32-20 on the existence of a significant financing component in the contract. In addition, the following guidance is illustrated in Example 26:

> a. Paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration
>
> b. Paragraphs 606-10-55-22 through 55-29 on sales with a right of return.

## · · > Example 26—Significant Financing Component and Right of Return

**606-10-55-227**    An entity sells a product to a customer for $121 that is payable 24 months after delivery. The customer obtains control of the product at contract inception. The contract permits the customer to return the product within 90 days. The product is new, and the entity has no relevant historical evidence of product returns or other available market evidence.

**606-10-55-228**    The cash selling price of the product is $100, which represents the amount that the customer would pay upon delivery for the same product sold under otherwise identical terms and conditions as at

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

12/20/2025, 5:07 PM
Case 1:24-cv-08636-LJL    Document 86-8    Filed 02/17/26    Page 103 of 155
Combine Sections - 606 Revenue from Contracts with Customers

contract inception. The entity's cost of the product is $80.

**606-10-55-229**  The entity does not recognize revenue when control of the product transfers to the customer. This is because the existence of the right of return and the lack of relevant historical evidence means that the entity cannot conclude that it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur in accordance with paragraphs 606-10-32-11 through 32-13. Consequently, revenue is recognized after three months when the right of return lapses.

**606-10-55-230**  The contract includes a significant financing component, in accordance with paragraphs 606-10-32-15 through 32-17. This is evident from the difference between the amount of promised consideration of $121 and the cash selling price of $100 at the date that the goods are transferred to the customer.

**606-10-55-231**  The contract includes an implicit interest rate of 10 percent (that is, the interest rate that over 24 months discounts the promised consideration of $121 to the cash selling price of $100). The entity evaluates the rate and concludes that it is commensurate with the rate that would be reflected in a separate financing transaction between the entity and its customer at contract inception. The following journal entries illustrate how the entity accounts for this contract in accordance with paragraphs 606-10-55-22 through 55-29:

 a. When the product is transferred to the customer, in accordance with paragraph 606-10-55-23.

| | | |
|---|---|---|
| Asset for right to recover product to be returned | $80 [(a)] | |
| Inventory | | $80 |

 (a) This Example does not consider expected costs to recover the asset.

 b. During the three-month right of return period, no interest is recognized in accordance with paragraph 606-10-32-20 because no contract asset or receivable has been recognized.

 c. When the right of return lapses (the product is not returned).

| | | |
|---|---|---|
| Receivable | $100 [(b)] | |
| Revenue | | $100 |
| | | |
| Cost of sales | $80 | |
| Asset for product to be returned | | $80 |

 (b) The receivable recognized would be measured in accordance with Subtopic 326-20. This Example does not consider the credit loss accounting for the receivable.

**606-10-55-232**  Until the entity receives the cash payment from the customer, interest income would be recognized consistently with the subsequent measurement guidance in Subtopic 835-30 on imputation of interest. The entity would accrete the receivable up to $121 from the time the right of return lapses until customer payment.

· · > Example 27—Withheld Payments on a Long-Term Contract

**606-10-55-233**  An entity enters into a contract for the construction of a building that includes scheduled milestone payments for the performance by the entity throughout the contract term of three years. The performance obligation will be satisfied over time, and the milestone payments are scheduled to coincide with the entity's expected performance. The contract provides that a specified percentage of each milestone payment is to be withheld (that is, retained) by the customer throughout the arrangement and paid to the entity only when the building is complete.

**606-10-55-234**  The entity concludes that the contract does not include a significant financing component. The milestone payments coincide with the entity's performance, and the contract requires amounts to be

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

retained for reasons other than the provision of finance in accordance with paragraph 606-10-32-17(c). The withholding of a specified percentage of each milestone payment is intended to protect the customer from the contractor failing to adequately complete its obligations under the contract.

· · > Example 28—Determining the Discount Rate

**606-10-55-235**   An entity enters into a contract with a customer to sell equipment. Control of the equipment transfers to the customer when the contract is signed. The price stated in the contract is $1 million plus a 5 percent contractual rate of interest, payable in 60 monthly installments of $18,871.

· · · > Case A—Contractual Discount Rate Reflects the Rate in a Separate Financing Transaction

**606-10-55-236**   In evaluating the discount rate in the contract that contains a significant financing component, the entity observes that the 5 percent contractual rate of interest reflects the rate that would be used in a separate financing transaction between the entity and its customer at contract inception (that is, the contractual rate of interest of 5 percent reflects the credit characteristics of the customer).

**606-10-55-237**   The market terms of the financing mean that the cash selling price of the equipment is $1 million. This amount is recognized as revenue and as a loan receivable when control of the equipment transfers to the customer. The entity accounts for the receivable in accordance with Topic 310 on receivables, Subtopic 326-20 on financial instruments measured at amortized cost, and Subtopic 835-30 on the imputation of interest.

· · · > Case B—Contractual Discount Rate Does Not Reflect the Rate in a Separate Financing Transaction

**606-10-55-238**   In evaluating the discount rate in the contract that contains a significant financing component, the entity observes that the 5 percent contractual rate of interest is significantly lower than the 12 percent interest rate that would be used in a separate financing transaction between the entity and its customer at contract inception (that is, the contractual rate of interest of 5 percent does not reflect the credit characteristics of the customer). This suggests that the cash selling price is less than $1 million.

**606-10-55-239**   In accordance with paragraph 606-10-32-19, the entity determines the transaction price by adjusting the promised amount of consideration to reflect the contractual payments using the 12 percent interest rate that reflects the credit characteristics of the customer. Consequently, the entity determines that the transaction price is $848,357 (60 monthly payments of $18,871 discounted at 12 percent). The entity recognizes revenue and a loan receivable for that amount. The entity accounts for the loan receivable in accordance with Subtopic 310-10 on receivables, Subtopic 326-20 on financial instruments measured at amortized cost, and Subtopic 835-30 on the imputation of interest.

· · > Example 29—Advance Payment and Assessment of Discount Rate

**606-10-55-240**   An entity enters into a contract with a customer to sell an asset. Control of the asset will transfer to the customer in two years (that is, the performance obligation will be satisfied at a point in time). The contract includes 2 alternative payment options: payment of $5,000 in 2 years when the customer obtains control of the asset or payment of $4,000 when the contract is signed. The customer elects to pay $4,000 when the contract is signed.

**606-10-55-241**   The entity concludes that the contract contains a significant financing component because of the length of time between when the customer pays for the asset and when the entity transfers the asset

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

to the customer, as well as the prevailing interest rates in the market.

**606-10-55-242** The interest rate implicit in the transaction is 11.8 percent, which is the interest rate necessary to make the 2 alternative payment options economically equivalent. However, the entity determines that, in accordance with paragraph 606-10-32-19, the rate that should be used in adjusting the promised consideration is 6 percent, which is the entity's incremental borrowing rate.

**606-10-55-243** The following journal entries illustrate how the entity would account for the significant financing component.

    a. Recognize a contract liability for the $4,000 payment received at contract inception.

| | | |
|---|---|---|
| Cash | $4,000 | |
| Contract liability | | $4,000 |

    b. During the 2 years from contract inception until the transfer of the asset, the entity adjusts the promised amount of consideration (in accordance with paragraph 606-10-32-20) and accretes the contract liability by recognizing interest on $4,000 at 6 percent for 2 years.

| | | |
|---|---|---|
| Interest expense | $494 [a] | |
| Contract liability | | $494 |

    (a) $494 = $4,000 contract liability × (6 percent interest per year for 2 years)

    c. Recognize revenue for the transfer of the asset.

| | | |
|---|---|---|
| Contract liability | $4,494 | |
| Revenue | | $4,494 |

· · > Example 30—Advance Payment

**606-10-55-244** An entity, a technology product manufacturer, enters into a contract with a customer to provide global telephone technology support and repair coverage for three years along with its technology product. The customer purchases this support service at the time of buying the product. Consideration for the service is an additional $300. Customers electing to buy this service must pay for it upfront (that is, a monthly payment option is not available).

**606-10-55-245** To determine whether there is a significant financing component in the contract, the entity considers the nature of the service being offered and the purpose of the payment terms. The entity charges a single upfront amount, not with the primary purpose of obtaining financing from the customer but, instead, to maximize profitability, taking into consideration the risks associated with providing the service. Specifically, if customers could pay monthly, they would be less likely to renew, and the population of customers that continue to use the support service in the later years may become smaller and less diverse over time (that is, customers that choose to renew historically are those that make greater use of the service, thereby increasing the entity's costs). In addition, customers tend to use services more if they pay monthly rather than making an upfront payment. Finally, the entity would incur higher administration costs such as the costs related to administering renewals and collection of monthly payments.

**606-10-55-246** In assessing the guidance in paragraph 606-10-32-17(c), the entity determines that the payment terms were structured primarily for reasons other than the provision of finance to the entity. The entity charges a single upfront amount for the services because other payment terms (such as a monthly payment plan) would affect the nature of the risks assumed by the entity to provide the service and may make it uneconomical to provide the service. As a result of its analysis, the entity concludes that there is not a significant financing component.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

## · > Noncash Consideration

### · · > Example 31—Entitlement to Noncash Consideration

**606-10-55-247**    Example 31 illustrates the guidance in paragraphs 606-10-32-21 through 32-24 on noncash consideration. In addition, the following guidance is illustrated in this Example:

> a. Paragraph 606-10-25-14 on identifying performance obligations

> b. Paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration.

---

🕒 **PENDING CONTENT**   

**Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-3

Example 31 illustrates the guidance in paragraph 606-10-15-3A on share-based noncash consideration from a customer for the transfer of goods or services and the guidance in paragraphs 606-10-32-21 through 32-24 on noncash consideration. In addition, the following guidance is illustrated in this Example:

> a. Paragraph 606-10-25-14 on identifying performance obligations

> b. Paragraphs 606-10-32-11 through 32-13 on constraining estimates of variable consideration.

---

**606-10-55-248**    An entity enters into a contract with a customer to provide a weekly service for one year. The contract is signed on January 1, 20X1, and work begins immediately. The entity concludes that the service is a single performance obligation in accordance with paragraph 606-10-25-14(b). This is because the entity is providing a series of distinct services that are substantially the same and have the same pattern of transfer (the services transfer to the customer over time and use the same method to measure progress—that is, a time-based measure of progress).

**606-10-55-249**    In exchange for the service, the customer promises 100 shares of its common stock per week of service (a total of 5,200 shares for the contract). The terms in the contract require that the shares must be paid upon the successful completion of each week of service.

**606-10-55-250**    To determine the transaction price (and the amount of revenue to be recognized), the entity measures the estimated fair value of 5,200 shares at contract inception (that is, on January 1, 20X1). The entity measures its progress toward complete satisfaction of the performance obligation and recognizes revenue as each week of service is complete. The entity does not reflect any changes in the fair value of the 5,200 shares after contract inception in the transaction price. However, the entity assesses any related contract asset or receivable for impairment. Upon receipt of the noncash consideration, the entity would apply the guidance related to the form of the noncash consideration to determine whether and how any changes in fair value that occurred after contract inception should be recognized.

### · · > Example 31A—Share-Based Noncash Consideration

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-250A**

>
>
> ⏰ PENDING CONTENT
>
> ─────────────────────────────────────
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-3
>
> Example 31A illustrates the guidance in paragraph 606-10-15-3A on share-based noncash consideration from a customer for the transfer of goods or services and the guidance in paragraphs 606-10-32-21 through 32-24 on noncash consideration. In addition, the following guidance is illustrated in this Example:
>
> a. Paragraph 606-10-25-14 on identifying performance obligations
>
> b. Paragraph 606-10-32-4 on determining transaction price
>
> c. Paragraphs 606-10-32-5 through 32-14 on variable consideration
>
> d. Paragraphs 606-10-32-28 through 32-41 on allocating transaction price to the performance obligations in the contract
>
> e. Paragraph 606-10-45-4 on an unconditional right to consideration.

**606-10-55-250B**

>
>
> ⏰ PENDING CONTENT
>
> ─────────────────────────────────────
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-3
>
> On January 1, 20X7, an entity enters into a contract with a customer to sell 5,000 units of Product A. The customer will pay $100 for each unit upon delivery. If the entity delivers all 5,000 units within 2 years from contract inception, the customer promises a performance bonus of 100 warrants for the customer's common stock. The estimated fair value of the 100 warrants at contract inception is $100,000. At contract inception, the entity concludes that each unit is a performance obligation that is satisfied at a point in time. Based on its experience, the entity expects that all 5,000 units will be delivered to the customer before the end of 20X8. Accordingly, it concludes that the variable consideration related to the 100 warrants is not constrained and the transaction price is $600,000 ([5,000 units × $100] + $100,000 estimated fair value of 100 warrants at contract inception). Accordingly, the transaction price allocated to each unit is $120 ($600,000/5,000 units).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-250C**

>  PENDING CONTENT ⑦
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-3
>
> During 20X7, the entity delivers 3,000 units to the customer. At the end of 20X7, the entity continues to expect that the remaining 2,000 units will be delivered to the customer before the end of 20X8. Therefore, the transaction price determined at contract inception is unchanged. For 20X7, the entity recognizes revenue of $360,000 (3,000 units × $120), cash of $300,000, and a contract asset of $60,000 ($100,000 estimated fair value of 100 warrants at contract inception × [3,000 delivered units/5,000 units]). The entity does not reflect any changes in the fair value of the 100 warrants in the transaction price. However, the entity assesses the related contract asset for impairment.

**606-10-55-250D**

>  PENDING CONTENT ⑦
>
> **Transition Date:** Ⓟ December 16, 2026; Ⓝ December 16, 2026 | **Transition Guidance:** 606-10-65-3
>
> During 20X8, the entity delivers the remaining 2,000 units to the customer. For 20X8, the entity recognizes revenue of $240,000 (2,000 units × $120), cash of $200,000, and a contract asset of $40,000 ($100,000 estimated fair value of 100 warrants at contract inception × [2,000 delivered units/5,000 units]). The entity does not reflect any changes in the fair value of the 100 warrants in the transaction price. However, the entity assesses the related contract asset for impairment. When all 5,000 units have been delivered, the entity concludes that its right to receive or retain the 100 warrants is unconditional under this Topic. At that point, the entity derecognizes the contract asset and applies the guidance in other Topics to account for the 100 warrants.

## · > Consideration Payable to a Customer

**606-10-55-251**    Example 32 illustrates the guidance in paragraphs 606-10-32-25 through 32-27 on consideration payable to a customer.

## · · > Example 32—Consideration Payable to a Customer

**606-10-55-252**    An entity that manufactures consumer goods enters into a one-year contract to sell goods to a customer that is a large global chain of retail stores. The customer commits to buy at least $15 million of products during the year. The contract also requires the entity to make a nonrefundable payment of $1.5 million to the customer at the inception of the contract. The $1.5 million payment will compensate the customer for the changes it needs to make to its shelving to accommodate the entity's products.

**606-10-55-253**    The entity considers the guidance in paragraphs 606-10-32-25 through 32-27 and concludes that the payment to the customer is not in exchange for a distinct good or service that transfers to the entity. This is because the entity does not obtain control of any rights to the customer's shelves. Consequently, the entity determines that, in accordance with paragraph 606-10-32-25, the $1.5 million payment is a reduction of the transaction price.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-254**  The entity applies the guidance in paragraph 606-10-32-27 and concludes that the consideration payable is accounted for as a reduction in the transaction price when the entity recognizes revenue for the transfer of the goods. Consequently, as the entity transfers goods to the customer, the entity reduces the transaction price for each good by 10 percent ($1.5 million ÷ $15 million). Therefore, in the first month in which the entity transfers goods to the customer, the entity recognizes revenue of $1.8 million ($2.0 million invoiced amount - $0.2 million of consideration payable to the customer).

## · > Allocating the Transaction Price to Performance Obligations

**606-10-55-255**  Examples 33-35 illustrate the guidance in paragraphs 606-10-32-28 through 32-41 on allocating the transaction price to performance obligations. In addition, the following guidance is illustrated in Example 35:

   a. Paragraph 606-10-32-8 on variable consideration

   b. Paragraph 606-10-55-65 on consideration in the form of sales-based or usage-based royalties on licenses of intellectual property.

### · · > Example 33—Allocation Methodology

**606-10-55-256**  An entity enters into a contract with a customer to sell Products A, B, and C in exchange for $100. The entity will satisfy the performance obligations for each of the products at different points in time. The entity regularly sells Product A separately, and, therefore the standalone selling price is directly observable. The standalone selling prices of Products B and C are not directly observable.

**606-10-55-257**  Because the standalone selling prices for Products B and C are not directly observable, the entity must estimate them. To estimate the standalone selling prices, the entity uses the adjusted market assessment approach for Product B and the expected cost plus a margin approach for Product C. In making those estimates, the entity maximizes the use of observable inputs (in accordance with paragraph 606-10-32-33). The entity estimates the standalone selling prices as follows:

| Product | Standalone Selling Price | Method |
|---|---|---|
| Product A | $ 50 | Directly observable (see paragraph 606-10-32-32) |
| Product B | 25 | Adjusted market assessment approach (see paragraph 606-10-32-34(a)) |
| Product C | 75 | Expected cost plus a margin approach (see paragraph 606-10-32-34(b)) |
| Total | $ 150 | |

**606-10-55-258**  The customer receives a discount for purchasing the bundle of goods because the sum of the standalone selling prices ($150) exceeds the promised consideration ($100). The entity considers whether it has observable evidence about the performance obligation to which the entire discount belongs (in accordance with paragraph 606-10-32-37) and concludes that it does not. Consequently, in accordance with paragraphs 606-10-32-31 and 606-10-32-36, the discount is allocated proportionately across Products A, B, and C. The discount, and therefore the transaction price, is allocated as follows:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| Product | Allocated Transaction Price | | |
|---|---|---|---|
| Product A | $ | 33 | ($50 ÷ $150 × $100) |
| Product B | | 17 | ($25 ÷ $150 × $100) |
| Product C | | 50 | ($75 ÷ $150 × $100) |
| Total | $ | 100 | |

·· > Example 34—Allocating a Discount

**606-10-55-259**   An entity regularly sells Products A, B, and C individually, thereby establishing the following standalone selling prices:

| Product | Standalone Selling Price | |
|---|---|---|
| Product A | $ | 40 |
| Product B | | 55 |
| Product C | | 45 |
| Total | $ | 140 |

**606-10-55-260**   In addition, the entity regularly sells Products B and C together for $60.

··· > Case A—Allocating a Discount to One or More Performance Obligations

**606-10-55-261**   The entity enters into a contract with a customer to sell Products A, B, and C in exchange for $100. The entity will satisfy the performance obligations for each of the products at different points in time.

**606-10-55-262**   The contract includes a discount of $40 on the overall transaction, which would be allocated proportionately to all 3 performance obligations when allocating the transaction price using the relative standalone selling price method (in accordance with paragraph 606-10-32-36). However, because the entity regularly sells Products B and C together for $60 and Product A for $40, it has evidence that the entire discount should be allocated to the promises to transfer Products B and C in accordance with paragraph 606-10-32-37.

**606-10-55-263**   If the entity transfers control of Products B and C at the same point in time, then the entity could, as a practical matter, account for the transfer of those products as a single performance obligation. That is, the entity could allocate $60 of the transaction price to the single performance obligation and recognize revenue of $60 when Products B and C simultaneously transfer to the customer.

**606-10-55-264**   If the contract requires the entity to transfer control of Products B and C at different points in time, then the allocated amount of $60 is individually allocated to the promises to transfer Product B (standalone selling price of $55) and Product C (standalone selling price of $45) as follows:

| Product | Allocated Transaction Price | | |
|---|---|---|---|
| Product B | $ | 33 | ($55 ÷ $100 total standalone selling price × $60) |
| Product C | | 27 | ($45 ÷ $100 total standalone selling price × $60) |
| Total | $ | 60 | |

··· > Case B—Residual Approach Is Appropriate

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-265**   The entity enters into a contract with a customer to sell Products A, B, and C as described in Case A. The contract also includes a promise to transfer Product D. Total consideration in the contract is $130. The standalone selling price for Product D is highly variable (see paragraph 606-10-32-34(c)(1)) because the entity sells Product D to different customers for a broad range of amounts ($15 - $45). Consequently, the entity decides to estimate the standalone selling price of Product D using the residual approach.

**606-10-55-266**   Before estimating the standalone selling price of Product D using the residual approach, the entity determines whether any discount should be allocated to the other performance obligations in the contract in accordance with paragraphs 606-10-32-37 through 32-38.

**606-10-55-267**   As in Case A, because the entity regularly sells Products B and C together for $60 and Product A for $40, it has observable evidence that $100 should be allocated to those 3 products and a $40 discount should be allocated to the promises to transfer Products B and C in accordance with paragraph 606-10-32-37. Using the residual approach, the entity estimates the standalone selling price of Product D to be $30 as follows:

| Product | Standalone Selling Price | | Method |
|---|---|---|---|
| Product A | $ | 40 | Directly observable (see paragraph 606-10-32-32) |
| Products B and C | | 60 | Directly observable with discount (see paragraph 606-10-32-37) |
| Product D | | 30 | Residual approach (see paragraph 606-10-32-34(c)) |
| Total | $ | 130 | |

**606-10-55-268**   The entity observes that the resulting $30 allocated to Product D is within the range of its observable selling prices ($15 - $45). Therefore, the resulting allocation (see above table) is consistent with the allocation objective in paragraph 606-10-32-28 and the guidance in paragraph 606-10-32-33.

··· > Case C—Residual Approach Is Inappropriate

**606-10-55-269**   The same facts as in Case B apply to Case C except the transaction price is $105 instead of $130. Consequently, the application of the residual approach would result in a standalone selling price of $5 for Product D ($105 transaction price less $100 allocated to Products A, B, and C). The entity concludes that $5 would not faithfully depict the amount of consideration to which the entity expects to be entitled in exchange for satisfying its performance obligation to transfer Product D because $5 does not approximate the standalone selling price of Product D, which ranges from $15 - $45. Consequently, the entity reviews its observable data, including sales and margin reports, to estimate the standalone selling price of Product D using another suitable method. The entity allocates the transaction price of $105 to Products A, B, C, and D using the relative standalone selling prices of those products in accordance with paragraphs 606-10-32-28 through 32-35.

·· > Example 35—Allocation of Variable Consideration

**606-10-55-270**   An entity enters into a contract with a customer for two intellectual property licenses (Licenses X and Y), which the entity determines to represent two performance obligations each satisfied at a point in time. The standalone selling prices of Licenses X and Y are $800 and $1,000, respectively.

··· > Case A—Variable Consideration Allocated Entirely to One Performance Obligation

**606-10-55-271**   The price stated in the contract for License X is a fixed amount of $800, and for License Y the consideration is 3 percent of the customer's future sales of products that use License Y. For

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

purposes of allocation, the entity estimates its sales-based royalties (that is, the variable consideration) to be $1,000, in accordance with paragraph 606-10-32-8.

**606-10-55-272** To allocate the transaction price, the entity considers the criteria in paragraph 606-10-32-40 and concludes that the variable consideration (that is, the sales-based royalties) should be allocated entirely to License Y. The entity concludes that the criteria in paragraph 606-10-32-40 are met for the following reasons:

> a. The variable payment relates specifically to an outcome from the performance obligation to transfer License Y (that is, the customer's subsequent sales of products that use License Y).

> b. Allocating the expected royalty amounts of $1,000 entirely to License Y is consistent with the allocation objective in paragraph 606-10-32-28. This is because the entity's estimate of the amount of sales-based royalties ($1,000) approximates the standalone selling price of License Y and the fixed amount of $800 approximates the standalone selling price of License X. The entity allocates $800 to License X in accordance with paragraph 606-10-32-41. This is because, based on an assessment of the facts and circumstances relating to both licenses, allocating to License Y some of the fixed consideration in addition to all of the variable consideration would not meet the allocation objective in paragraph 606-10-32-28.

**606-10-55-273** The entity transfers License Y at inception of the contract and transfers License X one month later. Upon the transfer of License Y, the entity does not recognize revenue because the consideration allocated to License Y is in the form of a sales-based royalty. Therefore, in accordance with paragraph 606-10-55-65, the entity recognizes revenue for the sales-based royalty when those subsequent sales occur.

**606-10-55-274** When License X is transferred, the entity recognizes as revenue the $800 allocated to License X.

· · · > Case B—Variable Consideration Allocated on the Basis of Standalone Selling Prices

**606-10-55-275** The price stated in the contract for License X is a fixed amount of $300, and for License Y the consideration is 5 percent of the customer's future sales of products that use License Y. The entity's estimate of the sales-based royalties (that is, the variable consideration) is $1,500 in accordance with paragraph 606-10-32-8.

**606-10-55-276** To allocate the transaction price, the entity applies the criteria in paragraph 606-10-32-40 to determine whether to allocate the variable consideration (that is, the sales-based royalties) entirely to License Y. In applying the criteria, the entity concludes that even though the variable payments relate specifically to an outcome from the performance obligation to transfer License Y (that is, the customer's subsequent sales of products that use License Y), allocating the variable consideration entirely to License Y would be inconsistent with the principle for allocating the transaction price. Allocating $300 to License X and $1,500 to License Y does not reflect a reasonable allocation of the transaction price on the basis of the standalone selling prices of Licenses X and Y of $800 and $1,000, respectively. Consequently, the entity applies the general allocation requirements in paragraphs 606-10-32-31 through 32-35.

**606-10-55-277** The entity allocates the transaction price of $300 to Licenses X and Y on the basis of relative standalone selling prices of $800 and $1,000, respectively. The entity also allocates the consideration related to the sales-based royalty on a relative standalone selling price basis. However, in accordance with paragraph 606-10-55-65, when an entity licenses intellectual property in which the consideration is in the form of a sales-based royalty, the entity cannot recognize revenue until the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

later of the following events: the subsequent sales occur or the performance obligation is satisfied (or partially satisfied).

**606-10-55-278**    License Y is transferred to the customer at the inception of the contract, and License X is transferred three months later. When License Y is transferred, the entity recognizes as revenue the $167 ($1,000 ÷ $1,800 × $300) allocated to License Y. When License X is transferred, the entity recognizes as revenue the $133 ($800 ÷ $1,800 × $300) allocated to License X.

**606-10-55-279**    In the first month, the royalty due from the customer's first month of sales is $200. Consequently, in accordance with paragraph 606-10-55-65, the entity recognizes as revenue the $111 ($1,000 ÷ $1,800 × $200) allocated to License Y (which has been transferred to the customer and is therefore a satisfied performance obligation). The entity recognizes a contract liability for the $89 ($800 ÷ $1,800 × $200) allocated to License X. This is because although the subsequent sale by the entity's customer has occurred, the performance obligation to which the royalty has been allocated has not been satisfied.

## · > Contract Costs

**606-10-55-280**    Examples 36 and 37 illustrate the guidance in paragraphs 340-40-25-1 through 25-4 on incremental costs of obtaining a contract, paragraphs 340-40-25-5 through 25-8 on costs to fulfill a contract, and paragraphs 340-40-35-1 through 35-6 on amortization and impairment of contract costs.

### · · > Example 36—Incremental Costs of Obtaining a Contract

**606-10-55-281**    For an illustration of the incremental costs of obtaining a contract, see Example 1 in Subtopic 340-40 on other assets and deferred costs—costs related to a contract with a customer (paragraphs 340-40-55-2 through 55-4).

### · · > Example 37—Costs That Give Rise to an Asset

**606-10-55-282**    For an illustration of costs that give rise to an asset, see Example 2 in Subtopic 340-40 on other assets and deferred costs—costs related to a contract with a customer (paragraphs 340-40-55-5 through 55-9).

## · > Presentation

**606-10-55-283**    Examples 38-40 illustrate the guidance in paragraphs 606-10-45-1 through 45-5 on the presentation of contract balances.

### · · > Example 38—Contract Liability and Receivable

#### · · · > Case A—Cancellable Contract

**606-10-55-284**    On January 1, 20X9, an entity enters into a cancellable contract to transfer a product to a customer on March 31, 20X9. The contract requires the customer to pay consideration of $1,000 in advance on January 31, 20X9. The customer pays the consideration on March 1, 20X9. The entity transfers the product on March 31, 20X9. The following journal entries illustrate how the entity accounts for the contract:

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. The entity receives cash of $1,000 on March 1, 20X9 (cash is received in advance of performance).

Cash                    $1,000
    Contract liability       $1,000

b. The entity satisfies the performance obligation on March 31, 20X9.

Contract liability      $1,000
    Revenue                 $1,000

### · · · > Case B—Noncancellable Contract

**606-10-55-285**  The same facts as in Case A apply to Case B except that the contract becomes noncancellable on January 31, 20X9. The following journal entries illustrate how the entity accounts for the contract:

a. January 31, 20X9 is the date at which the entity recognizes a receivable because it has an unconditional right to consideration.

Receivable              $1,000
    Contract liability       $1,000

b. The entity receives the cash on March 1, 20X9.

Cash                    $1,000
    Receivable              $1,000

c. The entity satisfies the performance obligation on March 31, 20X9.

Contract liability      $1,000
    Revenue                     $1,000

**606-10-55-286**  If the entity issued the invoice before January 31, 20X9, the entity would not recognize the receivable and the contract liability in the statement of financial position because the entity does not yet have a right to consideration that is unconditional (the contract is cancellable before January 31, 20X9).

### · · > Example 39—Contract Asset Recognized for the Entity's Performance

**606-10-55-287**  On January 1, 20X8, an entity enters into a contract to transfer Products A and B to a customer in exchange for $1,000. The contract requires Product A to be delivered first and states that payment for the delivery of Product A is conditional on the delivery of Product B. In other words, the consideration of $1,000 is due only after the entity has transferred both Products A and B to the customer. Consequently, the entity does not have a right to consideration that is unconditional (a receivable) until both Products A and B are transferred to the customer.

**606-10-55-288**  The entity identifies the promises to transfer Products A and B as performance obligations and allocates $400 to the performance obligation to transfer Product A and $600 to the performance obligation to transfer Product B on the basis of their relative standalone selling prices. The entity recognizes revenue for each respective performance obligation when control of the product transfers to the customer.

**606-10-55-289**  The entity satisfies the performance obligation to transfer Product A.

Contract asset          $400
    Revenue                 $400

**606-10-55-290**  The entity satisfies the performance obligation to transfer Product B and to recognize the unconditional right to consideration.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

| | |
|---|---|
| Receivable | $1,000 |
| Contract asset | $400 |
| Revenue | $600 |

· · > Example 40—Receivable Recognized for the Entity's Performance

**606-10-55-291**   An entity enters into a contract with a customer on January 1, 20X9, to transfer products to the customer for $150 per product. If the customer purchases more than 1 million products in a calendar year, the contract indicates that the price per unit is retrospectively reduced to $125 per product.

**606-10-55-292**   Consideration is due when control of the products transfer to the customer. Therefore, the entity has an unconditional right to consideration (that is, a receivable) for $150 per product until the retrospective price reduction applies (that is, after 1 million products are shipped).

**606-10-55-293**   In determining the transaction price, the entity concludes at contract inception that the customer will meet the 1 million products threshold and therefore estimates that the transaction price is $125 per product. Consequently, upon the first shipment to the customer of 100 products the entity recognizes the following.

| | |
|---|---|
| Receivable | $15,000 [a] |
| Revenue | $ 12,500 [b] |
| Refund liability | $ 2,500 |

(a) $150 per product × 100 products
(b) $125 transaction price per product × 100 products

**606-10-55-294**   The refund liability (see paragraph 606-10-32-10) represents a refund of $25 per product, which is expected to be provided to the customer for the volume-based rebate (that is, the difference between the $150 price stated in the contract that the entity has an unconditional right to receive and the $125 estimated transaction price).

· > Disclosure

**606-10-55-295**   Example 41 illustrates the guidance in paragraphs 606-10-50-5 through 50-6 and 606-10-55-89 through 55-91 on the disaggregation of revenue disclosure. Examples 42 and 43 illustrate the guidance in paragraphs 606-10-50-13 through 50-15 on the disclosure of the transaction price allocated to the remaining performance obligations. In addition, the following guidance is illustrated in Example 42:

a. Paragraph 606-10-32-12 on constraining estimates of variable consideration

b. Paragraph 606-10-55-18 on methods for measuring progress toward complete satisfaction of a performance obligation.

· · > Example 41—Disaggregation of Revenue—Quantitative Disclosure

**606-10-55-296**   An entity reports the following segments: consumer products, transportation, and energy, in accordance with Topic 280 on segment reporting. When the entity prepares its investor presentations, it disaggregates revenue into primary geographical markets, major product lines, and timing of revenue recognition (that is, goods transferred at a point in time or services transferred over time).

**606-10-55-297**   The entity determines that the categories used in the investor presentations can be used to meet the objective of the disaggregation disclosure requirement in paragraph 606-10-50-5, which is to

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

disaggregate revenue from contracts with customers into categories that depict how the nature, amount, timing, and uncertainty of revenue and cash flows are affected by economic factors. The following table illustrates the disaggregation disclosure by primary geographical market, major product line, and timing of revenue recognition, including a reconciliation of how the disaggregated revenue ties in with the consumer products, transportation, and energy segments in accordance with paragraphs 606-10-50-6.

| Segments | Consumer Products | Transportation | Energy | Total |
|---|---|---|---|---|
| Primary Geographical Markets | | | | |
| North America | $ 990 | $ 2,250 | $ 5,250 | $ 8,490 |
| Europe | 300 | 750 | 1,000 | 2,050 |
| Asia | 700 | 260 | - | 960 |
| | $ 1,990 | $ 3,260 | $ 6,250 | $ 11,500 |
| Major Goods/Service Lines | | | | |
| Office supplies | $ 600 | - | - | $ 600 |
| Appliances | 990 | - | - | 990 |
| Clothing | 400 | - | - | 400 |
| Motorcycles | - | 500 | - | 500 |
| Automobiles | - | 2,760 | - | 2,760 |
| Solar panels | - | - | 1,000 | 1,000 |
| Power plant | - | - | 5,250 | 5,250 |
| | $ 1,990 | $ 3,260 | $ 6,250 | $ 11,500 |
| Timing of Revenue Recognition | | | | |
| Goods transferred at a point in time | $ 1,990 | $ 3,260 | $ 1,000 | $ 6,250 |
| Services transferred over time | - | - | 5,250 | 5,250 |
| | $ 1,990 | $ 3,260 | $ 6,250 | $ 11,500 |

· · > Example 42—Disclosure of the Transaction Price Allocated to the Remaining Performance Obligations

**606-10-55-298**  On June 30, 20X7, an entity enters into three contracts (Contracts A, B, and C) with separate customers to provide services. Each contract has a two-year noncancellable term. The entity considers the guidance in paragraphs 606-10-50-13 through 50-15 in determining the information in each contract to be included in the disclosure of the transaction price allocated to the remaining performance obligations at December 31, 20X7.

· · · > Contract A

**606-10-55-299**  Cleaning services are to be provided over the next two years typically at least once per month. For services provided, the customer pays an hourly rate of $25.

**606-10-55-300**  Because the entity bills a fixed amount for each hour of service provided, the entity has a right to invoice the customer in the amount that corresponds directly with the value of the entity's performance completed to date in accordance with paragraph 606-10-55-18. Consequently, the entity could elect to apply the optional exemption in paragraph 606-10-50-14(b). If the entity elects not to disclose the transaction price allocated to remaining performance obligations for Contract A, the entity would disclose that it has applied the optional exemption in paragraph 606-10-50-14(b). The entity also would disclose the nature of the performance obligation, the remaining duration, and a description of the variable consideration that has been excluded from the disclosure of remaining performance obligations in accordance with paragraph 606-10-50-15.

· · · > Contract B

**606-10-55-301**  Cleaning services and lawn maintenance services are to be provided as and when needed with a maximum of four visits per month over the next two years. The customer pays a fixed price of $400

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

per month for both services. The entity measures its progress toward complete satisfaction of the performance obligation using a time-based measure.

**606-10-55-302**    The entity discloses the amount of the transaction price that has not yet been recognized as revenue in a table with quantitative time bands that illustrates when the entity expects to recognize the amount as revenue. The information for Contract B included in the overall disclosure is as follows.

|  | 20X8 | 20X9 | Total |
|---|---|---|---|
| Revenue expected to be recognized on this contract as of December 31, 20X7 | $ 4,800 (a) | $ 2,400 (b) | $ 7,200 |

(a) $4,800 = $400 × 12 months
(b) $2,400 = $400 × 6 months

**· · · > Contract C**

**606-10-55-303**    Cleaning services are to be provided as and when needed over the next two years. The customer pays fixed consideration of $100 per month plus a one-time variable consideration payment ranging from $0 - $1,000 corresponding to a one-time regulatory review and certification of the customer's facility (that is, a performance bonus). The entity estimates that it will be entitled to $750 of the variable consideration. On the basis of the entity's assessment of the factors in paragraph 606-10-32-12, the entity includes its estimate of $750 of variable consideration in the transaction price because it is probable that a significant reversal in the amount of cumulative revenue recognized will not occur. The entity measures its progress toward complete satisfaction of the performance obligation using a time-based measure.

**606-10-55-304**    The entity discloses the amount of the transaction price that has not yet been recognized as revenue in a table with quantitative time bands that illustrates when the entity expects to recognize the amount as revenue. The entity also includes a qualitative discussion about any significant variable consideration that is not included in the disclosure. The information for Contract C included in the overall disclosure is as follows.

|  | 20X8 | 20X9 | Total |
|---|---|---|---|
| Revenue expected to be recognized on this contract as of December 31, 20X7 | $ 1,575 (a) | $ 788 (b) | $ 2,363 |

(a) Transaction price = $3,150 ($100 × 24 months + $750 variable consideration) recognized evenly over 24 months at $1,575 per year
(b) $1,575 ÷ 2 = $788 (that is, for 6 months of the year)

**606-10-55-305**    In addition, in accordance with paragraph 606-10-50-15, the entity discloses qualitatively that part of the performance bonus has been excluded from the disclosure because it was not included in the transaction price. That part of the performance bonus was excluded from the transaction price in accordance with the guidance on constraining estimates of variable consideration.

**606-10-55-305A**    The entity does not meet the criteria to apply the optional exemption in paragraph 606-10-50-14A because the monthly consideration is fixed and the variable consideration does not meet the condition in paragraph 606-10-50-14A(b).

**· · > Example 43—Disclosure of the Transaction Price Allocated to the Remaining Performance Obligations— Qualitative Disclosure**

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-306**    On January 1, 20X2, an entity enters into a contract with a customer to construct a commercial building for fixed consideration of $10 million. The construction of the building is a single performance obligation that the entity satisfies over time. As of December 31, 20X2, the entity has recognized $3.2 million of revenue. The entity estimates that construction will be completed in 20X3 but it is possible that the project will be completed in the first half of 20X4.

**606-10-55-307**    At December 31, 20X2, the entity discloses the amount of the transaction price that has not yet been recognized as revenue in its disclosure of the transaction price allocated to the remaining performance obligations. The entity also discloses an explanation of when the entity expects to recognize that amount as revenue. The explanation can be disclosed either on a quantitative basis using time bands that are most appropriate for the duration of the remaining performance obligation or by providing a qualitative explanation. Because the entity is uncertain about the timing of revenue recognition, the entity discloses this information qualitatively as follows:

> As of December 31, 20X2, the aggregate amount of the transaction price allocated to the remaining performance obligation is $6.8 million, and the entity will recognize this revenue as the building is completed, which is expected to occur over the next 12-18 months.

## · > Warranties

**606-10-55-308**    Example 44 illustrates the guidance in paragraphs 606-10-55-30 through 55-35 on warranties. In addition, Example 44 illustrates the guidance in paragraphs 606-10-25-19 through 25-21 on identifying performance obligations.

## · · > Example 44—Warranties

**606-10-55-309**    An entity, a manufacturer, provides its customer with a warranty with the purchase of a product. The warranty provides assurance that the product complies with agreed-upon specifications and will operate as promised for one year from the date of purchase. The contract also provides the customer with the right to receive up to 20 hours of training services on how to operate the product at no additional cost. The training services will help the customer optimize its use of the product in a short time frame. Therefore, although the training services are only for 20 hours and are not essential to the customer's ability to use the product, the entity determines that the training services are material in the context of the contract on the basis of the facts and circumstances of the arrangement.

**606-10-55-310**    The entity assesses the goods and services in the contract to determine whether they are distinct and therefore give rise to separate performance obligations.

**606-10-55-311**    The product and training services are each capable of being distinct in accordance with paragraphs 606-10-25-19(a) and 606-10-25-20 because the customer can benefit from the product on its own without the training services and can benefit from the training services together with the product that already has been transferred by the entity. The entity regularly sells the product separately without training services.

**606-10-55-312**    The entity next assesses whether its promises to transfer the product and to provide the training services are separately identifiable in accordance with paragraphs 606-10-25-19(b) and 606-10-25-21. The entity does not provide a significant service of integrating the training services with the product (see paragraph 606-10-25-21(a)). The training services and product do not significantly modify or customize each other (see paragraph 606-10-25-21(b)). The product and the training services are not highly interdependent or highly interrelated as described in paragraph 606-10-25-21(c). The entity

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

would be able to fulfill its promise to transfer the product independent of its efforts to subsequently provide the training services and would be able to provide training services to any customer that previously acquired its product. Consequently, the entity concludes that its promise to transfer the product and its promise to provide training services are not inputs to a combined item and, therefore, are each separately identifiable.

**606-10-55-313**   The product and training services are each distinct in accordance with paragraph 606-10-25-19 and therefore give rise to two separate performance obligations.

**606-10-55-314**   Finally, the entity assesses the promise to provide a warranty and observes that the warranty provides the customer with the assurance that the product will function as intended for one year. The entity concludes, in accordance with paragraphs 606-10-55-30 through 55-35, that the warranty does not provide the customer with a good or service in addition to that assurance and, therefore, the entity does not account for it as a performance obligation. The entity accounts for the assurance-type warranty in accordance with the requirements on product warranties in Subtopic 460-10.

**606-10-55-315**   As a result, the entity allocates the transaction price to the two performance obligations (the product and the training services) and recognizes revenue when (or as) those performance obligations are satisfied.

## · > Principal Versus Agent Considerations

**606-10-55-316**   Examples 45-48A illustrate the guidance in paragraphs 606-10-55-36 through 55-40 on principal versus agent considerations.

### · · > Example 45—Arranging for the Provision of Goods or Services (Entity Is an Agent)

**606-10-55-317**   An entity operates a website that enables customers to purchase goods from a range of suppliers who deliver the goods directly to the customers. Under the terms of the entity's contracts with suppliers, when a good is purchased via the website, the entity is entitled to a commission that is equal to 10 percent of the sales price. The entity's website facilitates payment between the supplier and the customer at prices that are set by the supplier. The entity requires payment from customers before orders are processed, and all orders are nonrefundable. The entity has no further obligations to the customer after arranging for the products to be provided to the customer.

**606-10-55-318**   To determine whether the entity's performance obligation is to provide the specified goods itself (that is, the entity is a principal) or to arrange for those goods to be provided by the supplier (that is, the entity is an agent), the entity identifies the specified good or service to be provided to the customer and assesses whether it controls that good or service before the good or service is transferred to the customer.

    a. Subparagraph superseded by Accounting Standards Update No. 2016-08.

    b. Subparagraph superseded by Accounting Standards Update No. 2016-08.

    c. Subparagraph superseded by Accounting Standards Update No. 2016-08.

    d. Subparagraph superseded by Accounting Standards Update No. 2016-08.

    e. Subparagraph superseded by Accounting Standards Update No. 2016-08.

**606-10-55-318A**   The website operated by the entity is a marketplace in which suppliers offer their goods and customers purchase the goods that are offered by the suppliers. Accordingly, the entity observes that

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

the specified goods to be provided to customers that use the website are the goods provided by the suppliers, and no other goods or services are promised to customers by the entity.

**606-10-55-318B**    The entity concludes that it does not control the specified goods before they are transferred to customers that order goods using the website. The entity does not at any time have the ability to direct the use of the goods transferred to customers. For example, it cannot direct the goods to parties other than the customer or prevent the supplier from transferring those goods to the customer. The entity does not control the suppliers' inventory of goods used to fulfill the orders placed by customers using the website.

**606-10-55-318C**    As part of reaching that conclusion, the entity considers the following indicators in paragraph 606-10-55-39. The entity concludes that these indicators provide further evidence that it does not control the specified goods before they are transferred to the customers.

> a. The supplier is primarily responsible for fulfilling the promise to provide the goods to the customer. The entity is neither obliged to provide the goods if the supplier fails to transfer the goods to the customer nor responsible for the acceptability of the goods.

> b. The entity does not take inventory risk at any time before or after the goods are transferred to the customer. The entity does not commit to obtain the goods from the supplier before the goods are purchased by the customer and does not accept responsibility for any damaged or returned goods.

> c. The entity does not have discretion in establishing prices for the supplier's goods. The sales price is set by the supplier.

**606-10-55-319**    Consequently, the entity concludes that it is an agent and its performance obligation is to arrange for the provision of goods by the supplier. When the entity satisfies its promise to arrange for the goods to be provided by the supplier to the customer (which, in this example, is when goods are purchased by the customer), the entity recognizes revenue in the amount of the commission to which it is entitled.

· · > Example 46—Promise to Provide Goods or Services (Entity Is a Principal)

**606-10-55-320**    An entity enters into a contract with a customer for equipment with unique specifications. The entity and the customer develop the specifications for the equipment, which the entity communicates to a supplier that the entity contracts with to manufacture the equipment. The entity also arranges to have the supplier deliver the equipment directly to the customer. Upon delivery of the equipment to the customer, the terms of the contract require the entity to pay the supplier the price agreed to by the entity and the supplier for manufacturing the equipment.

**606-10-55-321**    The entity and the customer negotiate the selling price, and the entity invoices the customer for the agreed-upon price with 30-day payment terms. The entity's profit is based on the difference between the sales price negotiated with the customer and the price charged by the supplier.

**606-10-55-322**    The contract between the entity and the customer requires the customer to seek remedies for defects in the equipment from the supplier under the supplier's warranty. However, the entity is responsible for any corrections to the equipment required resulting from errors in specifications.

**606-10-55-323**    To determine whether the entity's performance obligation is to provide the specified goods or services itself (that is, the entity is a principal) or to arrange for those goods or services to be provided by another party (that is, the entity is an agent), the entity identifies the specified good or service to be

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

provided to the customer and assesses whether it controls that good or service before the good or service is transferred to the customer.

    a.  Subparagraph superseded by Accounting Standards Update No. 2016-08.

    b.  Subparagraph superseded by Accounting Standards Update No. 2016-08.

    c.  Subparagraph superseded by Accounting Standards Update No. 2016-08.

    d.  Subparagraph superseded by Accounting Standards Update No. 2016-08.

    e.  Subparagraph superseded by Accounting Standards Update No. 2016-08.

**606-10-55-323A**  The entity concludes that it has promised to provide the customer with specialized equipment designed by the entity. Although the entity has subcontracted the manufacturing of the equipment to the supplier, the entity concludes that the design and manufacturing of the equipment are not distinct because they are not separately identifiable (that is, there is a single performance obligation). The entity is responsible for the overall management of the contract (for example, by ensuring that the manufacturing service conforms to the specifications) and thus provides a significant service of integrating those items into the combined output—the specialized equipment—for which the customer has contracted. In addition, those activities are highly interrelated. If necessary modifications to the specifications are identified as the equipment is manufactured, the entity is responsible for developing and communicating revisions to the supplier and for ensuring that any associated rework required conforms with the revised specifications. Accordingly, the entity identifies the specified good to be provided to the customer as the specialized equipment.

**606-10-55-323B**  The entity concludes that it controls the specialized equipment before that equipment is transferred to the customer (see paragraph 606-10-55-37A(c)). The entity provides the significant integration service necessary to produce the specialized equipment and, therefore, controls the specialized equipment before it is transferred to the customer. The entity directs the use of the supplier's manufacturing service as an input in creating the combined output that is the specialized equipment. In reaching the conclusion that it controls the specialized equipment before that equipment is transferred to the customer, the entity also observes that even though the supplier delivers the specialized equipment to the customer, the supplier has no ability to direct its use (that is, the terms of the contract between the entity and the supplier preclude the supplier from using the specialized equipment for another purpose or directing that equipment to another customer). The entity also obtains the remaining benefits from the specialized equipment by being entitled to the consideration in the contract from the customer.

**606-10-55-324**  Thus, the entity concludes that it is a principal in the transaction. The entity does not consider the indicators in paragraph 606-10-55-39 because the evaluation above is conclusive without consideration of the indicators. The entity recognizes revenue in the gross amount of consideration to which it is entitled from the customer in exchange for the specialized equipment.

· · > Example 46A—Promise to Provide Goods or Services (Entity is a Principal)

**606-10-55-324A**  An entity enters into a contract with a customer to provide office maintenance services. The entity and the customer define and agree on the scope of the services and negotiate the price. The entity is responsible for ensuring that the services are performed in accordance with the terms and conditions in the contract. The entity invoices the customer for the agreed-upon price on a monthly basis with 10-day payment terms.

**606-10-55-324B**  The entity regularly engages third-party service providers to provide office maintenance services to its customers. When the entity obtains a contract from a customer, the entity enters into a contract with

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

one of those service providers, directing the service provider to perform office maintenance services for the customer. The payment terms in the contracts with the service providers generally are aligned with the payment terms in the entity's contracts with customers. However, the entity is obliged to pay the service provider even if the customer fails to pay.

**606-10-55-324C**    To determine whether the entity is a principal or an agent, the entity identifies the specified good or service to be provided to the customer and assesses whether it controls that good or service before the good or service is transferred to the customer.

**606-10-55-324D**    The entity observes that the specified services to be provided to the customer are the office maintenance services for which the customer contracted and that no other goods or services are promised to the customer. While the entity obtains a right to office maintenance services from the service provider after entering into the contract with the customer, that right is not transferred to the customer. That is, the entity retains the ability to direct the use of, and obtain substantially all the remaining benefits from, that right. For example, the entity can decide whether to direct the service provider to provide the office maintenance services for that customer, or for another customer, or at its own facilities. The customer does not have a right to direct the service provider to perform services that the entity has not agreed to provide. Therefore, the right to office maintenance services obtained by the entity from the service provider is not the specified good or service in its contract with the customer.

**606-10-55-324E**    The entity concludes that it controls the specified services before they are provided to the customer. The entity obtains control of a right to office maintenance services after entering into the contract with the customer but before those services are provided to the customer. The terms of the entity's contract with the service provider give the entity the ability to direct the service provider to provide the specified services on the entity's behalf (see paragraph 606-10-55-37A(b)). In addition, the entity concludes that the following indicators in paragraph 606-10-55-39 provide further evidence that the entity controls the office maintenance services before they are provided to the customer:

> a. The entity is primarily responsible for fulfilling the promise to provide office maintenance services. Although the entity has hired a service provider to perform the services promised to the customer, it is the entity itself that is responsible for ensuring that the services are performed and are acceptable to the customer (that is, the entity is responsible for fulfilment of the promise in the contract, regardless of whether the entity performs the services itself or engages a third-party service provider to perform the services).
>
> b. The entity has discretion in setting the price for the services to the customer.

**606-10-55-324F**    The entity observes that it does not commit itself to obtain the services from the service provider before obtaining the contract with the customer. Thus, the entity has mitigated its inventory risk with respect to the office maintenance services. Nonetheless, the entity concludes that it controls the office maintenance services before they are provided to the customer on the basis of the evidence in paragraph 606-10-55-324E.

**606-10-55-324G**    Thus, the entity is a principal in the transaction and recognizes revenue in the amount of consideration to which it is entitled from the customer in exchange for the office maintenance services.

· · > Example 47—Promise to Provide Goods or Services (Entity Is a Principal)

**606-10-55-325**    An entity negotiates with major airlines to purchase tickets at reduced rates compared with the price of tickets sold directly by the airlines to the public. The entity agrees to buy a specific number of

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

tickets and must pay for those tickets regardless of whether it is able to resell them. The reduced rate paid by the entity for each ticket purchased is negotiated and agreed in advance.

**606-10-55-326**  The entity determines the prices at which the airline tickets will be sold to its customers. The entity sells the tickets and collects the consideration from customers when the tickets are purchased.

**606-10-55-327**  The entity also assists the customers in resolving complaints with the service provided by the airlines. However, each airline is responsible for fulfilling obligations associated with the ticket, including remedies to a customer for dissatisfaction with the service.

**606-10-55-328**  To determine whether the entity's performance obligation is to provide the specified goods or services itself (that is, the entity is a principal) or to arrange for those goods or services to be provided by another party (that is, the entity is an agent), the entity identifies the specified good or service to be provided to the customer and assesses whether it controls that good or service before the good or service is transferred to the customer.

> a. Subparagraph superseded by Accounting Standards Update No. 2016-08.
>
> b. Subparagraph superseded by Accounting Standards Update No. 2016-08.
>
> c. Subparagraph superseded by Accounting Standards Update No. 2016-08.
>
> d. Subparagraph superseded by Accounting Standards Update No. 2016-08.

**606-10-55-328A**  The entity concludes that with each ticket that it commits itself to purchase from the airline, it obtains control of a right to fly on a specified flight (in the form of a ticket) that the entity then transfers to one of its customers (see paragraph 606-10-55-37A(a)). Consequently, the entity determines that the specified good or service to be provided to its customer is that right (to a seat on a specific flight) that the entity controls. The entity observes that no other goods or services are promised to the customer.

**606-10-55-328B**  The entity controls the right to each flight before it transfers that specified right to one of its customers because the entity has the ability to direct the use of that right by deciding whether to use the ticket to fulfill a contract with a customer and, if so, which contract it will fulfill. The entity also has the ability to obtain the remaining benefits from that right by either reselling the ticket and obtaining all of the proceeds from the sale or, alternatively, using the ticket itself.

**606-10-55-328C**  The indicators in paragraph 606-10-55-39(b) through (c) also provide relevant evidence that the entity controls each specified right (ticket) before it is transferred to the customer. The entity has inventory risk with respect to the ticket because the entity committed itself to obtain the ticket from the airline before obtaining a contract with a customer to purchase the ticket. This is because the entity is obliged to pay the airline for that right regardless of whether it is able to obtain a customer to resell the ticket to or whether it can obtain a favorable price for the ticket. The entity also establishes the price that the customer will pay for the specified ticket.

**606-10-55-329**  Thus, the entity concludes that it is a principal in the transactions with customers. The entity recognizes revenue in the gross amount of consideration to which it is entitled in exchange for the tickets transferred to the customers.

·· > Example 48—Arranging for the Provision of Goods or Services (Entity Is an Agent)

**606-10-55-330**  An entity sells vouchers that entitle customers to future meals at specified restaurants, and the sales price of the voucher provides the customer with a significant discount when compared with the normal

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

selling prices of the meals (for example, a customer pays $100 for a voucher that entitles the customer to a meal at a restaurant that would otherwise cost $200). The entity does not purchase or commit itself to purchase vouchers in advance of the sale of a voucher to a customer; instead, it purchases vouchers only as they are requested by the customers. The entity sells the vouchers through its website, and the vouchers are nonrefundable.

**606-10-55-331**    The entity and the restaurants jointly determine the prices at which the vouchers will be sold to customers. Under the terms of its contracts with the restaurants, the entity is entitled to 30 percent of the voucher price when it sells the voucher.

**606-10-55-332**    The entity also assists the customers in resolving complaints about the meals and has a buyer satisfaction program. However, the restaurant is responsible for fulfilling obligations associated with the voucher, including remedies to a customer for dissatisfaction with the service.

**606-10-55-333**    To determine whether the entity is a principal or an agent, the entity identifies the specified good or service to be provided to the customer and assesses whether it controls the specified good or service before that good or service is transferred to the customer.

> a. Subparagraph superseded by Accounting Standards Update No. 2016-08.
>
> b. Subparagraph superseded by Accounting Standards Update No. 2016-08.
>
> c. Subparagraph superseded by Accounting Standards Update No. 2016-08.
>
> d. Subparagraph superseded by Accounting Standards Update No. 2016-08.

**606-10-55-333A**    A customer obtains a voucher for the restaurant that it selects. The entity does not engage the restaurants to provide meals to customers on the entity's behalf as described in the indicator in paragraph 606-10-55-39(a). Therefore, the entity observes that the specified good or service to be provided to the customer is the right to a meal (in the form of a voucher) at a specified restaurant or restaurants, which the customer purchases and then can use itself or transfer to another person. The entity also observes that no other goods or services (other than the vouchers) are promised to the customers.

**606-10-55-333B**    The entity concludes that it does not control the voucher (right to a meal) at any time. In reaching this conclusion, the entity principally considers the following:

> a. The vouchers are created only at the time that they are transferred to the customers and, thus, do not exist before that transfer. Therefore, the entity does not at any time have the ability to direct the use of the vouchers or obtain substantially all of the remaining benefits from the vouchers before they are transferred to customers.
>
> b. The entity neither purchases nor commits itself to purchase vouchers before they are sold to customers. The entity also has no responsibility to accept any returned vouchers. Therefore, the entity does not have inventory risk with respect to the vouchers as described in the indicator in paragraph 606-10-55-39(b).

**606-10-55-334**    Thus, the entity concludes that it is an agent in the arrangement with respect to the vouchers. The entity recognizes revenue in the net amount of consideration to which the entity will be entitled in exchange for arranging for the restaurants to provide vouchers to customers for the restaurants' meals, which is the 30 percent commission it is entitled to upon the sale of each voucher.

· · > Example 48A—Entity Is a Principal and an Agent in the Same Contract

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-334A**   An entity sells services to assist its customers in more effectively targeting potential recruits for open job positions. The entity performs several services itself, such as interviewing candidates and performing background checks. As part of the contract with a customer, the customer agrees to obtain a license to access a third party's database of information on potential recruits. The entity arranges for this license with the third party, but the customer contracts directly with the database provider for the license. The entity collects payment on behalf of the third-party database provider as part of its overall invoicing to the customer. The database provider sets the price charged to the customer for the license and is responsible for providing technical support and credits to which the customer may be entitled for service down-time or other technical issues.

**606-10-55-334B**   To determine whether the entity is a principal or an agent, the entity identifies the specified goods or services to be provided to the customer and assesses whether it controls those goods or services before they are transferred to the customer.

**606-10-55-334C**   For the purpose of this Example, it is assumed that the entity concludes that its recruitment services and the database access license are each distinct on the basis of its assessment of the guidance in paragraphs 606-10-25-19 through 25-22. Accordingly, there are two specified goods or services to be provided to the customer—access to the third-party's database and recruitment services.

**606-10-55-334D**   The entity concludes that it does not control the access to the database before it is provided to the customer. The entity does not at any time have the ability to direct the use of the license because the customer contracts for the license directly with the database provider. The entity does not control access to the provider's database—it cannot, for example, grant access to the database to a party other than the customer or prevent the database provider from providing access to the customer.

**606-10-55-334E**   As part of reaching that conclusion, the entity also considers the indicators in paragraph 606-10-55-39. The entity concludes that these indicators provide further evidence that it does not control access to the database before that access is provided to the customer.

> a. The entity is not responsible for fulfilling the promise to provide the database access service. The customer contracts for the license directly with the third-party database provider, and the database provider is responsible for the acceptability of the database access (for example, by providing technical support or service credits).

> b. The entity does not have inventory risk because it does not purchase or commit to purchase the database access before the customer contracts for database access directly with the database provider.

> c. The entity does not have discretion in setting the price for the database access with the customer because the database provider sets that price.

**606-10-55-334F**   Thus, the entity concludes that it is an agent in relation to the third-party's database service. In contrast, the entity concludes that it is the principal in relation to the recruitment services because the entity performs those services itself and no other party is involved in providing those services to the customer.

## · > Customer Options for Additional Goods or Services

**606-10-55-335**   Examples 49-52 illustrate the guidance in paragraphs 606-10-55-41 through 55-45 on customer options for additional goods or services. Example 50 illustrates the guidance in paragraphs 606-10-25-19 through 25-21 on identifying performance obligations. Example 52 illustrates a customer loyalty program. That Example may not apply to all customer loyalty arrangements because the terms and

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

conditions may differ. In particular, when there are more than two parties to the arrangement, an entity should consider all facts and circumstances to determine the customer in the transaction that gives rise to the award credits.

·· > Example 49—Option That Provides the Customer with a Material Right (Discount Voucher)

**606-10-55-336**  An entity enters into a contract for the sale of Product A for $100. As part of the contract, the entity gives the customer a 40 percent discount voucher for any future purchases up to $100 in the next 30 days. The entity intends to offer a 10 percent discount on all sales during the next 30 days as part of a seasonal promotion. The 10 percent discount cannot be used in addition to the 40 percent discount voucher.

**606-10-55-337**  Because all customers will receive a 10 percent discount on purchases during the next 30 days, the only discount that provides the customer with a material right is the discount that is incremental to that 10 percent (that is, the additional 30 percent discount). The entity accounts for the promise to provide the incremental discount as a performance obligation in the contract for the sale of Product A.

**606-10-55-338**  To estimate the standalone selling price of the discount voucher in accordance with paragraph 606-10-55-44, the entity estimates an 80 percent likelihood that a customer will redeem the voucher and that a customer will, on average, purchase $50 of additional products. Consequently, the entity's estimated standalone selling price of the discount voucher is $12 ($50 average purchase price of additional products × 30 percent incremental discount × 80 percent likelihood of exercising the option). The standalone selling prices of Product A and the discount voucher and the resulting allocation of the $100 transaction price are as follows:

| Performance Obligation | Standalone Selling Price | |
|---|---|---|
| Product A | $ | 100 |
| Discount voucher | | 12 |
| Total | $ | 112 |

| Performance Obligation | Allocated Transaction Price | |
|---|---|---|
| Product A | $ | 89 | ($100 ÷ $112 × $100) |
| Discount voucher | | 11 | ($12 ÷ $112 × $100) |
| Total | $ | 100 |

**606-10-55-339**  The entity allocates $89 to Product A and recognizes revenue for Product A when control transfers. The entity allocates $11 to the discount voucher and recognizes revenue for the voucher when the customer redeems it for goods or services or when it expires.

·· > Example 50—Option That Does Not Provide the Customer with a Material Right (Additional Goods or Services)

**606-10-55-340**  An entity in the telecommunications industry enters into a contract with a customer to provide a handset and monthly network service for two years. The network service includes up to 1,000 call minutes and 1,500 text messages each month for a fixed monthly fee. The contract specifies the price for any additional call minutes or texts that the customer may choose to purchase in any month. The prices for those services are equal to their standalone selling prices.

**606-10-55-341**  The entity determines that the promises to provide the handset and network service are each separate performance obligations. This is because the customer can benefit from the handset and

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

network service either on their own or together with other resources that are readily available to the customer in accordance with the criterion in paragraph 606-10-25-19(a). In addition, the handset and network service are separately identifiable in accordance with the criterion in paragraph 606-10-25-19(b) (on the basis of the factors in paragraph 606-10-25-21).

**606-10-55-342**   The entity determines that the option to purchase the additional call minutes and texts does not provide a material right that the customer would not receive without entering into the contract (see paragraph 606-10-55-43). This is because the prices of the additional call minutes and texts reflect the standalone selling prices for those services. Because the option for additional call minutes and texts does not grant the customer a material right, the entity concludes it is not a performance obligation in the contract. Consequently, the entity does not allocate any of the transaction price to the option for additional call minutes or texts. The entity will recognize revenue for the additional call minutes or texts if and when the entity provides those services.

· · > Example 51—Option That Provides the Customer with a Material Right (Renewal Option)

**606-10-55-343**   An entity enters into 100 separate contracts with customers to provide 1 year of maintenance services for $1,000 per contract. The terms of the contracts specify that at the end of the year, each customer has the option to renew the maintenance contract for a second year by paying an additional $1,000. Customers who renew for a second year also are granted the option to renew for a third year for $1,000. The entity charges significantly higher prices for maintenance services to customers that do not sign up for the maintenance services initially (that is, when the products are new). That is, the entity charges $3,000 in Year 2 and $5,000 in Year 3 for annual maintenance services if a customer does not initially purchase the service or allows the service to lapse.

**606-10-55-344**   The entity concludes that the renewal option provides a material right to the customer that it would not receive without entering into the contract because the price for maintenance services are significantly higher if the customer elects to purchase the services only in Year 2 or 3. Part of each customer's payment of $1,000 in the first year is, in effect, a nonrefundable prepayment of the services to be provided in a subsequent year. Consequently, the entity concludes that the promise to provide the option is a performance obligation.

**606-10-55-345**   The renewal option is for a continuation of maintenance services, and those services are provided in accordance with the terms of the existing contract. Instead of determining the standalone selling prices for the renewal options directly, the entity allocates the transaction price by determining the consideration that it expects to receive in exchange for all the services that it expects to provide in accordance with paragraph 606-10-55-45.

**606-10-55-346**   The entity expects 90 customers to renew at the end of Year 1 (90 percent of contracts sold) and 81 customers to renew at the end of Year 2 (90 percent of the 90 customers that renewed at the end of Year 1 will also renew at the end of Year 2, that is 81 percent of contracts sold).

**606-10-55-347**   At contract inception, the entity determines the expected consideration for each contract is $2,710 [$1,000 + (90 percent × $1,000) + (81 percent × $1,000)]. The entity also determines that recognizing revenue on the basis of costs incurred relative to the total expected costs depicts the transfer of services to the customer. Estimated costs for a three-year contract are as follows:

| | | |
|---|---|---|
| Year 1 | $ | 600 |
| Year 2 | $ | 750 |
| Year 3 | $ | 1,000 |

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-348**  Accordingly, the pattern of revenue recognition expected at contract inception for each contract is as follows:

| Expected Costs Adjusted for Likelihood of Contract Renewal | | | Allocation of Consideration Expected | | |
|---|---|---|---|---|---|
| Year 1 | $ 600 | ($600 × 100%) | $ 780 | [($600 ÷ $2,085) × $2,710] |
| Year 2 | 675 | ($750 × 90%) | 877 | [($675 ÷ $2,085) × $2,710] |
| Year 3 | 810 | ($1,000 × 81%) | 1,053 | [($810 ÷ $2,085) × $2,710] |
| Total | $ 2,085 | | $ 2,710 | |

**606-10-55-349**  Consequently, at contract inception, the entity allocates to the option to renew at the end of Year 1 $22,000 of the consideration received to date [cash of $100,000 - revenue to be recognized in Year 1 of $78,000 ($780 × 100)].

**606-10-55-350**  Assuming there is no change in the entity's expectations and the 90 customers renew as expected, at the end of the first year, the entity has collected cash of $190,000 [(100 × $1,000) + (90 × $1,000)], has recognized revenue of $78,000 ($780 × 100), and has recognized a contract liability of $112,000.

**606-10-55-351**  Consequently, upon renewal at the end of the first year, the entity allocates $24,300 to the option to renew at the end of Year 2 [cumulative cash of $190,000 - cumulative revenue recognized in Year 1 and to be recognized in Year 2 of $165,700 ($78,000 + $877 × 100)].

**606-10-55-352**  If the actual number of contract renewals was different than what the entity expected, the entity would update the transaction price and the revenue recognized accordingly.

· · > Example 52—Customer Loyalty Program

**606-10-55-353**  An entity has a customer loyalty program that rewards a customer with 1 customer loyalty point for every $10 of purchases. Each point is redeemable for a $1 discount on any future purchases of the entity's products. During a reporting period, customers purchase products for $100,000 and earn 10,000 points that are redeemable for future purchases. The consideration is fixed, and the standalone selling price of the purchased products is $100,000. The entity expects 9,500 points to be redeemed. The entity estimates a standalone selling price of $0.95 per point (totalling $9,500) on the basis of the likelihood of redemption in accordance with paragraph 606-10-55-44.

**606-10-55-354**  The points provide a material right to customers that they would not receive without entering into a contract. Consequently, the entity concludes that the promise to provide points to the customer is a performance obligation. The entity allocates the transaction price ($100,000) to the product and the points on a relative standalone selling price basis as follows:

| Product | $91,324 [$100,000 × ($100,000 standalone selling price ÷ $109,500)] |
|---|---|
| Points | $8,676 [$100,000 × ($9,500 standalone selling price ÷ $109,500)] |

**606-10-55-355**  At the end of the first reporting period, 4,500 points have been redeemed, and the entity continues to expect 9,500 points to be redeemed in total. The entity recognizes revenue for the loyalty points of $4,110 [(4,500 points ÷ 9,500 points) × $8,676] and recognizes a contract liability of $4,566 ($8,676 - $ 4,110) for the unredeemed points at the end of the first reporting period.

**606-10-55-356**  At the end of the second reporting period, 8,500 points have been redeemed cumulatively. The entity updates its estimate of the points that will be redeemed and now expects that 9,700 points will be redeemed. The entity recognizes revenue for the loyalty points of $3,493 {[(8,500 total points

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

redeemed ÷ 9,700 total points expected to be redeemed) × $8,676 initial allocation] - $4,110 recognized in the first reporting period}. The contract liability balance is $1,073 ($8,676 initial allocation - $7,603 of cumulative revenue recognized).

### · > Nonrefundable Upfront Fees

**606-10-55-357**  Example 53 illustrates the guidance in paragraphs 606-10-55-50 through 55-53 on nonrefundable upfront fees.

#### · · > Example 53—Nonrefundable Upfront Fee

**606-10-55-358**  An entity enters into a contract with a customer for one year of transaction processing services. The entity's contracts have standard terms that are the same for all customers. The contract requires the customer to pay an upfront fee to set up the customer on the entity's systems and processes. The fee is a nominal amount and is nonrefundable. The customer can renew the contract each year without paying an additional fee.

**606-10-55-359**  The entity's setup activities do not transfer a good or service to the customer and, therefore, do not give rise to a performance obligation.

**606-10-55-360**  The entity concludes that the renewal option does not provide a material right to the customer that it would not receive without entering into that contract (see paragraph 606-10-55-42). The upfront fee is, in effect, an advance payment for the future transaction processing services. Consequently, the entity determines the transaction price, which includes the nonrefundable upfront fee, and recognizes revenue for the transaction processing services as those services are provided in accordance with paragraph 606-10-55-51.

### · > Licensing

**606-10-55-361**  Examples 54-61B illustrate the guidance in paragraphs 606-10-25-14 through 25-22 on identifying performance obligations and paragraphs 606-10-55-54 through 55-60 and 606-10-55-62 through 55-65B on licensing. These Examples also illustrate other guidance as follows:

> a. Paragraphs 606-10-25-31 through 25-37 on measuring progress toward complete satisfaction of a performance obligation (Examples 57 and 58)
>
> b. Paragraphs 606-10-32-39 through 32-41 on allocating variable consideration to performance obligations (Example 57)
>
> c. Paragraphs 606-10-55-65 through 55-65B on consideration in the form of sales-based or usage-based royalties on licenses of intellectual property (Examples 57 and 61).

#### · · > Example 54—Right to Use Intellectual Property

**606-10-55-362**  Using the same facts as in Case A in Example 11 (see paragraphs 606-10-55-141 through 55-145), the entity identifies four performance obligations in a contract:

> a. The software license
>
> b. Installation services
>
> c. Software updates
>
> d. Technical support.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-363**   The entity assesses the nature of its promise to transfer the software license. The entity first concludes that the software to which the customer obtains rights as a result of the license is functional intellectual property. This is because the software has significant standalone functionality from which the customer can derive substantial benefit regardless of the entity's ongoing business activities.

**606-10-55-363A**   The entity further concludes that while the functionality of the underlying software is expected to change during the license period as a result of the entity's continued development efforts, the functionality of the software to which the customer has rights (that is, the customer's instance of the software) will change only as a result of the entity's promise to provide when-and-if available software updates. Because the entity's promise to provide software updates represents an additional promised service in the contract, the entity's activities to fulfill that promised service are not considered in evaluating the criteria in paragraph 606-10-55-62. The entity further notes that the customer has the right to install, or not install, software updates when they are provided such that the criterion in 606-10-55-62(b) would not be met even if the entity's activities to develop and provide software updates had met the criterion in paragraph 606-10-55-62(a).

**606-10-55-363B**   Therefore, the entity concludes that it has provided the customer with a right to use its software as it exists at the point in time the license is granted and the entity accounts for the software license performance obligation as a performance obligation satisfied at a point in time. The entity recognizes revenue on the software license performance obligation in accordance with paragraphs 606-10-55-58B through 55-58C.

· · > Example 55—License of Intellectual Property

**606-10-55-364**   An entity enters into a contract with a customer to license (for a period of three years) intellectual property related to the design and production processes for a good. The contract also specifies that the customer will obtain any updates to that intellectual property for new designs or production processes that may be developed by the entity. The updates are integral to the customer's ability to derive benefit from the license during the license period because the intellectual property is used in an industry in which technologies change rapidly.

**606-10-55-365**   The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity determines that the customer can benefit from (a) the license on its own without the updates and (b) the updates together with the initial license. Although the benefit the customer can derive from the license on its own (that is, without the updates) is limited because the updates are integral to the customer's ability to continue to use the intellectual property in an industry in which technologies change rapidly, the license can be used in a way that generates some economic benefits. Therefore, the criterion in paragraph 606-10-25-19(a) is met for the license and the updates.

**606-10-55-365A**   The fact that the benefit the customer can derive from the license on its own (that is, without the updates) is limited (because the updates are integral to the customer's ability to continue to use the license in the rapidly changing technological environment) also is considered in assessing whether the criterion in paragraph 606-10-25-19(b) is met. Because the benefit that the customer could obtain from the license over the three-year term without the updates would be significantly limited, the entity's promises to grant the license and to provide the expected updates are, in effect, inputs that, together fulfill a single promise to deliver a combined item to the customer. That is, the nature of the entity's promise in the contract is to provide ongoing access to the entity's intellectual property

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

related to the design and production processes for a good for the three-year term of the contract. The promises within that combined item (that is, to grant the license and to provide when-and-if available updates) are therefore not separately identifiable in accordance with the criterion in paragraph 606-10-25-19(b).

**606-10-55-366**    The nature of the combined good or service that the entity promised to transfer to the customer is ongoing access to the entity's intellectual property related to the design and production processes for a good for the three-year term of the contract. Based on this conclusion, the entity applies paragraphs 606-10-25-23 through 25-30 to determine whether the single performance obligation is satisfied at a point in time or over time and paragraphs 606-10-25-31 through 25-37 to determine the appropriate method for measuring progress toward complete satisfaction of the performance obligation. The entity concludes that because the customer simultaneously receives and consumes the benefits of the entity's performance as it occurs, the performance obligation is satisfied over time in accordance with paragraph 606-10-25-27(a) and that a time-based input measure of progress is appropriate because the entity expects, on the basis of its relevant history with similar contracts, to expend efforts to develop and transfer updates to the customer on a generally even basis throughout the three-year term.

· · > Example 56—Identifying a Distinct License

**606-10-55-367**    An entity, a pharmaceutical company, licenses to a customer its patent rights to an approved drug compound for 10 years and also promises to manufacture the drug for the customer for 5 years, while the customer develops its own manufacturing capability. The drug is a mature product; therefore, there is no expectation that the entity will undertake activities to change the drug (for example, to alter its chemical composition). There are no other promised goods or services in the contract.

· · · > Case A—License Is Not Distinct

**606-10-55-368**    In this case, no other entity can manufacture this drug while the customer learns the manufacturing process and builds its own manufacturing capability because of the highly specialized nature of the manufacturing process. As a result, the license cannot be purchased separately from the manufacturing service.

**606-10-55-369**    The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity determines that the customer cannot benefit from the license without the manufacturing service; therefore, the criterion in paragraph 606-10-25-19(a) is not met. Consequently, the license and the manufacturing service are not distinct, and the entity accounts for the license and the manufacturing service as a single performance obligation.

**606-10-55-370**    The nature of the combined good or service for which the customer contracted is a sole sourced supply of the drug for the first five years; the customer benefits from the license only as a result of having access to a supply of the drug. After the first five years, the customer retains solely the right to use the entity's functional intellectual property (see Case B, paragraph 606-10-55-373), and no further performance is required of the entity during Years 6-10. The entity applies paragraphs 606-10-25-23 through 25-30 to determine whether the single performance obligation (that is, the bundle of the license and the manufacturing service) is a performance obligation satisfied at a point in time or over time. Regardless of the determination reached in accordance with paragraphs 606-10-25-23 through 25-30, the entity's performance under the contract will be complete at the end of Year 5.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· · · > Case B—License Is Distinct

**606-10-55-371**  In this case, the manufacturing process used to produce the drug is not unique or specialized, and several other entities also can manufacture the drug for the customer.

**606-10-55-372**  The entity assesses the goods and services promised to the customer to determine which goods and services are distinct, and it concludes that the criteria in paragraph 606-10-25-19 are met for each of the license and the manufacturing service. The entity concludes that the criterion in paragraph 606-10-25-19(a) is met because the customer can benefit from the license together with readily available resources other than the entity's manufacturing service (that is, because there are other entities that can provide the manufacturing service) and can benefit from the manufacturing service together with the license transferred to the customer at the start of the contract.

**606-10-55-372A**  The entity also concludes that its promises to grant the license and to provide the manufacturing service are separately identifiable (that is, the criterion in paragraph 606-10-25-19(b) is met). The entity concludes that the license and the manufacturing service are not inputs to a combined item in this contract on the basis of the principle and the factors in paragraph 606-10-25-21. In reaching this conclusion, the entity considers that the customer could separately purchase the license without significantly affecting its ability to benefit from the license. Neither the license nor the manufacturing service is significantly modified or customized by the other, and the entity is not providing a significant service of integrating those items into a combined output. The entity further considers that the license and the manufacturing service are not highly interdependent or highly interrelated because the entity would be able to fulfill its promise to transfer the license independent of fulfilling its promise to subsequently manufacture the drug for the customer. Similarly, the entity would be able to manufacture the drug for the customer even if the customer had previously obtained the license and initially utilized a different manufacturer. Thus, although the manufacturing service necessarily depends on the license in this contract (that is, the entity would not contract for the manufacturing service without the customer having obtained the license), the license and the manufacturing service do not significantly affect each other. Consequently, the entity concludes that its promises to grant the license and to provide the manufacturing service are distinct and that there are two performance obligations:

    a. License of patent rights

    b. Manufacturing service.

**606-10-55-373**  The entity assesses the nature of its promise to grant the license. The entity concludes that the patented drug formula is functional intellectual property (that is, it has significant standalone functionality in the form of its ability to treat a disease or condition). There is no expectation that the entity will undertake activities to change the functionality of the drug formula during the license period. Because the intellectual property has significant standalone functionality, any other activities the entity might undertake (for example, promotional activities like advertising or activities to develop other drug products) would not significantly affect the utility of the licensed intellectual property. Consequently, the nature of the entity's promise in transferring the license is to provide a right to use the entity's functional intellectual property, and it accounts for the license as a performance obligation satisfied at a point in time. The entity recognizes revenue for the license performance obligation in accordance with paragraphs 606-10-55-58B through 55-58C.

**606-10-55-374**  In its assessment of the nature of the license, the entity does not consider the manufacturing service because it is an additional promised service in the contract. The entity applies paragraphs 606-10-25-

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

23 through 25-30 to determine whether the manufacturing service is a performance obligation satisfied at a point in time or over time.

· · > Example 57—Franchise Rights

**606-10-55-375**  An entity enters into a contract with a customer and promises to grant a franchise license that provides the customer with the right to use the entity's trade name and sell the entity's products for 10 years. In addition to the license, the entity also promises to provide the equipment necessary to operate a franchise store. In exchange for granting the license, the entity receives a fixed fee of $1 million, as well as a sales-based royalty of 5 percent of the customer's sales for the term of the license. The fixed consideration for the equipment is $150,000 payable when the equipment is delivered.

· · · > Identifying Performance Obligations

**606-10-55-376**  The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity observes that the entity, as a franchisor, has developed a customary business practice to undertake activities such as analyzing the consumers' changing preferences and implementing product improvements, pricing strategies, marketing campaigns, and operational efficiencies to support the franchise name. However, the entity concludes that these activities do not directly transfer goods or services to the customer.

**606-10-55-377**  The entity determines that it has two promises to transfer goods or services: a promise to grant a license and a promise to transfer equipment. In addition, the entity concludes that the promise to grant the license and the promise to transfer the equipment are each distinct. This is because the customer can benefit from each good or service (that is, the license and the equipment) on its own or together with other resources that are readily available (see paragraph 606-10-25-19(a)). The customer can benefit from the license together with the equipment that is delivered before the opening of the franchise, and the equipment can be used in the franchise or sold for an amount other than scrap value. The entity also determines that the promises to grant the franchise license and to transfer the equipment are separately identifiable in accordance with the criterion in paragraph 606-10-25-19(b). The entity concludes that the license and the equipment are not inputs to a combined item (that is, they are not fulfilling what is, in effect, a single promise to the customer). In reaching this conclusion, the entity considers that it is not providing a significant service of integrating the license and the equipment into a combined item (that is, the licensed intellectual property is not a component of, and does not significantly modify, the equipment). Additionally, the license and the equipment are not highly interdependent or highly interrelated because the entity would be able to fulfill each promise (that is, to license the franchise or to transfer the equipment) independently of the other. Consequently, the entity has two performance obligations:

    a. The franchise license

    b. The equipment.

· · · > Allocating the Transaction Price

**606-10-55-378**  The entity determines that the transaction price includes fixed consideration of $1,150,000 and variable consideration (5 percent of the customer's sales from the franchise store). The standalone selling price of the equipment is $150,000 and the entity regularly licenses franchises in exchange for 5 percent of customer sales and a similar upfront fee.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-379**  The entity applies paragraph 606-10-32-40 to determine whether the variable consideration should be allocated entirely to the performance obligation to transfer the franchise license. The entity concludes that the variable consideration (that is, the sales-based royalty) should be allocated entirely to the franchise license because the variable consideration relates entirely to the entity's promise to grant the franchise license. In addition, the entity observes that allocating $150,000 to the equipment and allocating the sales-based royalty (as well as the additional $1 million in fixed consideration) to the franchise license would be consistent with an allocation based on the entity's relative standalone selling prices in similar contracts. Consequently, the entity concludes that the variable consideration (that is, the sales-based royalty) should be allocated entirely to the performance obligation to grant the franchise license.

· · · > Licensing

**606-10-55-380**  The entity assesses the nature of the entity's promise to grant the franchise license. The entity concludes that the nature of its promise is to provide a right to access the entity's symbolic intellectual property. The trade name and logo have limited standalone functionality; the utility of the products developed by the entity is derived largely from the products' association with the franchise brand. Substantially all of the utility inherent in the trade name, logo, and product rights granted under the license stems from the entity's past and ongoing activities of establishing, building, and maintaining the franchise brand. The utility of the license is its association with the franchise brand and the related demand for its products.

     a. Subparagraph superseded by Accounting Standards Update No. 2016-10.

     b. Subparagraph superseded by Accounting Standards Update No. 2016-10.

     c. Subparagraph superseded by Accounting Standards Update No. 2016-10.

**606-10-55-381**  The entity is granting a license to symbolic intellectual property. Consequently, the license provides the customer with a right to access the entity's intellectual property and the entity's performance obligation to transfer the license is satisfied over time in accordance with paragraph 606-10-55-58A. The entity recognizes the fixed consideration allocable to the license performance obligation in accordance with paragraph 606-10-55-58A and paragraph 606-10-55-58C. This includes applying paragraphs 606-10-25-31 through 25-37 to identify the method that best depicts the entity's performance in satisfying the license (see paragraph 606-10-55-382).

**606-10-55-382**  Because the consideration that is in the form of a sales-based royalty relates specifically to the franchise license (see paragraph 606-10-55-379), the entity applies paragraph 606-10-55-65 in recognizing that consideration as revenue. Consequently, the entity recognizes revenue from the sales-based royalty as and when the sales occur. The entity concludes that recognizing revenue resulting from the sales-based royalty when the customer's subsequent sales occur is consistent with the guidance in paragraph 606-10-55-65(b). That is, the entity concludes that ratable recognition of the fixed $1 million franchise fee plus recognition of the periodic royalty fees as the customer's subsequent sales occur reasonably depict the entity's performance toward complete satisfaction of the franchise license performance obligation to which the sales-based royalty has been allocated.

· · > Example 58—Access to Intellectual Property

**606-10-55-383**  An entity, a creator of comic strips, licenses the use of the images and names of its comic strip characters in three of its comic strips to a customer for a four-year term. There are main characters involved in each of the comic strips. However, newly created characters appear and disappear regularly and the images of the characters evolve over time. The customer, an operator of cruise

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

ships, can use the entity's characters in various ways, such as in shows or parades, within reasonable guidelines.

**606-10-55-384**  In exchange for granting the license, the entity receives a fixed payment of $1 million in each year of the 4-year term.

**606-10-55-385**  The entity concludes that it has made no other promises to the customer other than the promise to grant a license. That is, the additional activities associated with the license do not directly transfer a good or service to the customer. Therefore, the entity concludes that its only performance obligation is to transfer the license.

**606-10-55-386**  The entity assesses the nature of its promise to transfer the license and concludes that the nature of its promise is to grant the customer the right to access the entity's symbolic intellectual property. The entity determines that the licensed intellectual property (that is, the character names and images) is symbolic because it has no standalone functionality (the names and images cannot process a transaction, perform a function or task, or be played or aired separate from significant additional production that would, for example, use the images to create a movie or a show) and the utility of those names and images is derived from the entity's past and ongoing activities such as producing the weekly comic strip that includes the characters.

    a. Subparagraph superseded by Accounting Standards Update No. 2016-10.

    b. Subparagraph superseded by Accounting Standards Update No. 2016-10.

    c. Subparagraph superseded by Accounting Standards Update No. 2016-10.

**606-10-55-387**  Because the nature of the entity's promise in granting the license is to provide the customer with a right to access the entity's intellectual property, in accordance with paragraph 606-10-55-58A, the entity accounts for the promised license as a performance obligation satisfied over time.

**606-10-55-388**  The entity recognizes the fixed consideration allocable to the license performance obligation in accordance with paragraphs 606-10-55-58A and 606-10-55-58C. The entity considers paragraphs 606-10-25-31 through 25-37 in identifying the method that best depicts its performance in the license. Because the contract provides the customer with unlimited use of the licensed characters for a fixed term, the entity determines that a time-based method would be the most appropriate measure of progress toward complete satisfaction of the performance obligation.

· · > Example 59—Right to Use Intellectual Property

· · · > Case A—Initial License

**606-10-55-389**  An entity, a music record label, licenses to a customer a recording of a classical symphony by a noted orchestra. The customer, a consumer products company, has the right to use the recorded symphony in all commercials, including television, radio, and online advertisements for two years in Country A starting on January 1, 20X1. In exchange for providing the license, the entity receives fixed consideration of $10,000 per month. The contract does not include any other goods or services to be provided by the entity. The contract is noncancellable.

**606-10-55-390**  The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity concludes that its only performance obligation is to grant the license. The term of the license (two years), the geographical scope of the license (that is, the customer's right to use the symphony only in Country A), and the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

defined permitted uses for the recording (that is, use in commercials) are all attributes of the promised license in this contract.

**606-10-55-391**    In determining that the promised license provides the customer with a right to use its intellectual property as it exists at the point in time at which the license is granted, the entity considers the following:

> a. The classical symphony recording has significant standalone functionality because the recording can be played in its present, completed form without the entity's further involvement. The customer can derive substantial benefit from that functionality regardless of the entity's further activities or actions. Therefore, the nature of the licensed intellectual property is functional.

> b. The contract does not require, and the customer does not reasonably expect, that the entity will undertake activities to change the licensed recording.

Therefore, the criteria in paragraph 606-10-55-62 are not met.

**606-10-55-392**    In accordance with paragraph 606-10-55-58B, the promised license, which provides the customer with a right to use the entity's intellectual property, is a performance obligation satisfied at a point in time. The entity recognizes revenue from the satisfaction of that performance obligation in accordance with paragraphs 606-10-55-58B through 55-58C. Additionally, because of the length of time between the entity's performance (at the beginning of the period) and the customer's monthly payments over two years (which are noncancellable), the entity considers the guidance in paragraphs 606-10-32-15 through 32-20 to determine whether a significant financing component exists.

· · · > Case B—Renewal of the License

**606-10-55-392A**    At the end of the first year of the license period, on December 31, 20X1, the entity and the customer agree to renew the license to the recorded symphony for two additional years, subject to the same terms and conditions as the original license. The entity will continue to receive fixed consideration of $10,000 per month during the 2-year renewal period.

**606-10-55-392B**    The entity considers the contract combination guidance in paragraph 606-10-25-9 and assesses that the renewal was not entered into at or near the same time as the original license and, therefore, is not combined with the initial contract. The entity evaluates whether the renewal should be treated as a new license or the modification of an existing license. Assume that in this scenario, the renewal is distinct. If the price for the renewal reflects its standalone selling price, the entity will, in accordance with paragraph 606-10-25-12, account for the renewal as a separate contract with the customer. Alternatively, if the price for the renewal does not reflect the standalone selling price of the renewal, the entity will account for the renewal as a modification of the original license contract.

**606-10-55-392C**    In determining when to recognize revenue attributable to the license renewal, the entity considers the guidance in paragraph 606-10-55-58C and determines that the customer cannot use and benefit from the license before the beginning of the two-year renewal period on January 1, 20X3. Therefore, revenue for the renewal cannot be recognized before that date.

**606-10-55-392D**    Consistent with Case A, because the customer's additional monthly payments for the modification to the license will be made over two years from the date the customer obtains control of the second license, the entity considers the guidance in paragraphs 606-10-32-15 through 32-20 to determine whether a significant financing component exists.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

· · > Example 60—Sales-Based Royalty Promised in Exchange for a License of Intellectual Property and Other Goods and Services

**606-10-55-393**  An entity, a movie distribution company, licenses Movie XYZ to a customer. The customer, an operator of cinemas, has the right to show the movie in its cinemas for six weeks. Additionally, the entity has agreed to provide memorabilia from the filming to the customer for display at the customer's cinemas before the beginning of the six-week airing period and to sponsor radio advertisements for Movie XYZ on popular radio stations in the customer's geographical area throughout the six-week airing period. In exchange for providing the license and the additional promotional goods and services, the entity will receive a portion of the operator's ticket sales for Movie XYZ (that is, variable consideration in the form of a sales-based royalty).

**606-10-55-394**  The entity concludes that the license to show Movie XYZ is the predominant item to which the sales-based royalty relates because the entity has a reasonable expectation that the customer would ascribe significantly more value to the license than to the related promotional goods or services. The entity will recognize revenue from the sales-based royalty, the only fees to which the entity is entitled under the contract, wholly in accordance with paragraph 606-10-55-65. If the license, the memorabilia, and the advertising activities were separate performance obligations, the entity would allocate the sales-based royalties to each performance obligation.

· · > Example 61—Access to Intellectual Property

**606-10-55-395**  An entity, a well-known sports team, licenses the use of its name and logo to a customer. The customer, an apparel designer, has the right to use the sports team's name and logo on items including t-shirts, caps, mugs, and towels for one year. In exchange for providing the license, the entity will receive fixed consideration of $2 million and a royalty of 5 percent of the sales price of any items using the team name or logo. The customer expects that the entity will continue to play games and provide a competitive team.

**606-10-55-396**  The entity assesses the goods and services promised to the customer to determine which goods and services are distinct in accordance with paragraph 606-10-25-19. The entity concludes that the only good or service promised to the customer in the contract is the license. The additional activities associated with the license (that is, continuing to play games and provide a competitive team) do not directly transfer a good or service to the customer. Therefore, there is one performance obligation in the contract.

**606-10-55-397**  To determine whether the entity's promise in granting the license provides the customer with a right to access the entity's intellectual property or a right to use the entity's intellectual property, the entity assesses the nature of the intellectual property to which the customer obtains rights. The entity concludes that the intellectual property to which the customer obtains rights is symbolic intellectual property. The utility of the team name and logo to the customer is derived from the entity's past and ongoing activities of playing games and providing a competitive team (that is, those activities effectively give value to the intellectual property). Absent those activities, the team name and logo would have little or no utility to the customer because they have no standalone functionality (that is, no ability to perform or fulfill a task separate from their role as symbols of the entity's past and ongoing activities).

   a. Subparagraph superseded by Accounting Standards Update No. 2016-10.

   b. Subparagraph superseded by Accounting Standards Update No. 2016-10.

   c. Subparagraph superseded by Accounting Standards Update No. 2016-10.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-55-398**  Consequently, the entity's promise in granting the license provides the customer with the right to access the entity's intellectual property throughout the license period and, in accordance with paragraph 606-10-55-58A, the entity accounts for the promised license as a performance obligation satisfied over time.

**606-10-55-399**  The entity recognizes the fixed consideration allocable to the license performance obligation in accordance with paragraphs 606-10-55-58A and 606-10-55-58C. This includes applying paragraphs 606-10-25-31 through 25-37 to identify the method that best depicts the entity's performance in satisfying the license. For the consideration that is in the form of a sales-based royalty, paragraph 606-10-55-65 applies because the sales-based royalty relates solely to the license that is the only performance obligation in the contract. The entity concludes that recognizing revenue from the sales-based royalty when the customer's subsequent sales of items using the team name or logo occur is consistent with the guidance in paragraph 606-10-55-65(b). That is, the entity concludes that ratable recognition of the fixed consideration of $2 million plus recognition of the royalty fees as the customer's subsequent sales occur reasonably depict the entity's progress toward complete satisfaction of the license performance obligation.

· · > Example 61A—Right to Use Intellectual Property

**606-10-55-399A**  An entity, a television production company, licenses all of the existing episodes of a television show (which consists of the first four seasons) to a customer. The show is presently in its fifth season, and the television production company is producing episodes for that fifth season at the time the contract is entered into, as well as promoting the show to attract further viewership. The Season 5 episodes in production are still subject to change before airing.

· · · > Case A—License Is the Only Promise in the Contract

**606-10-55-399B**  The customer obtains the right to broadcast the existing episodes, in sequential order, for a period of two years. The show has been successful through the first four seasons, and the customer is both aware that Season 5 already is in production and aware of the entity's continued promotion of the show. The customer will make fixed monthly payments of an equal amount throughout the two-year license period.

**606-10-55-399C**  The entity assesses the goods and services promised to the customer. The entity's activities to produce Season 5 and its continued promotion of the show do not transfer a promised good or service to the customer. Therefore, the entity concludes that there are no other promised goods or services in the contract other than the license to broadcast the existing episodes in the television series. The contractual requirement to broadcast the episodes in sequential order is an attribute of the license (that is, a restriction on how the customer may use the license); therefore, the only performance obligation in this contract is the single license to the completed Seasons 1-4.

**606-10-55-399D**  To determine whether the promised license provides the customer with a right to use its intellectual property or a right to access its intellectual property, the entity evaluates the intellectual property that is the subject of the license. The existing episodes have substantial standalone functionality at the point in time they are transferred to the customer because the episodes can be aired, in the form transferred, without any further participation by the entity. Therefore, the customer can derive substantial benefit from the completed episodes, which have significant utility to the customer without any further activities of the entity. The entity further observes that the existing episodes are complete and not subject to change. Thus, there is no expectation that the functionality of the intellectual property to which the customer has rights will change (that is, the criteria in paragraph 606-10-55-62

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

Case 1:24-cv-08636-LJL   Document 86-8   Filed 02/17/26   Page 139 of 155

are not met). Therefore, the entity concludes that the license provides the customer with a right to use its functional intellectual property.

**606-10-55-399E**  Consequently, in accordance with paragraph 606-10-55-58B, the license is a performance obligation satisfied at a point in time. In accordance with paragraphs 606-10-55-58B through 55-58C, the entity recognizes revenue for the license on the date that the customer is first permitted to air the licensed content, assuming the content is made available to the customer on or before that date. The date the customer is first permitted to air the licensed content is the beginning of the period during which the customer is able to use and benefit from its right to use the intellectual property. Because of the length of time between the entity's performance (at the beginning of the period) and the customer's annual payments over two years (which are noncancellable), the entity considers the guidance in paragraphs 606-10-32-15 through 32-20 to determine whether a significant financing component exists.

· · · > Case B—Contract Includes Two Promises

**606-10-55-399F**  Consistent with Case A, the contract provides the customer with the right to broadcast the existing episodes, in sequential order, over a period of two years. The contract also grants the customer the right to broadcast the episodes being produced for Season 5 once all of those episodes are completed.

**606-10-55-399G**  The entity assesses the goods and services promised to the customer. The entity concludes that there are two promised goods or services in the contract:

> a. The license to the existing episodes (see paragraph 606-10-55-399C)

> b. The license to the episodes comprising Season 5, when all of those episodes are completed.

**606-10-55-399H**  The entity then evaluates whether the license to the existing content is distinct from the license to the Season 5 episodes when they are completed. The entity concludes that the two licenses are distinct from each other and, therefore, separate performance obligations. This conclusion is based on the following analysis:

> a. Each license is capable of being distinct because the customer can benefit from its right to air the existing completed episodes on their own and can benefit from the right to air the episodes comprising Season 5, when they are all completed, on their own and together with the right to air the existing completed content.

> b. Each of the two promises to transfer a license in the contract also is separately identifiable; they do not, together, constitute a single overall promise to the customer. The existing episodes do not modify or customize the Season 5 episodes in production, and the existing episodes do not, together with the pending Season 5 episodes, result in a combined functionality or changed content. The right to air the existing content and the right to air the Season 5 content, when available, are not highly interdependent or highly interrelated because the entity's ability to fulfill its promise to transfer either license is unaffected by its promise to transfer the other. In addition, whether the customer or another licensee had rights to air the future episodes would not be expected to significantly affect the customer's license to air the existing, completed episodes (for example, viewers' desire to watch existing episodes from Seasons 1-4 on the customer's network generally would not be significantly affected by whether the customer, or another network, had the right to broadcast the episodes that will comprise Season 5).

**606-10-55-399I**  The entity assesses the nature of the two separate performance obligations (that is, the license to the existing, completed episodes of the series and the license to episodes that will comprise Season

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

5 when completed). To determine whether the licenses provide the customer with rights to use the entity's intellectual property or rights to access the entity's intellectual property, the entity considers the following:

a. The licensed intellectual property (that is, the completed episodes in Seasons 1-4 and the episodes in Season 5, when completed) has significant standalone functionality separate from the entity's ongoing business activities, such as in producing additional intellectual property (for example, future seasons) or in promoting the show, and completed episodes can be aired without the entity's further involvement.

b. There is no expectation that the entity will substantively change any of the content once it is made available to the customer for broadcast (that is, the criteria in paragraph 606-10-55-62 are not met).

c. The activities expected to be undertaken by the entity to produce Season 5 and transfer the right to air those episodes constitute an additional promised good (license) in the contract and, therefore, do not affect the nature of the entity's promise in granting the license to Seasons 1-4.

**606-10-55-399J**  Therefore, the entity concludes that both the license to the existing episodes in the series and the license to the episodes that will comprise Season 5 provide the customer with the right to use its functional intellectual property as it exists at the point in time the license is granted. As a result, the entity recognizes the portion of the transaction price allocated to each license at a point in time in accordance with paragraphs 606-10-55-58B through 55-58C. That is, the entity recognizes the revenue attributable to each license on the date that the customer is first permitted to first air the content included in each performance obligation. That date is the beginning of the period during which the customer is able to use and benefit from its right to use the licensed intellectual property.

·· > Example 61B—Distinguishing Multiple Licenses from Attributes of a Single License

**606-10-55-399K**  On December 15, 20X0, an entity enters into a contract with a customer that permits the customer to embed the entity's functional intellectual property in two classes of the customer's consumer products (Class 1 and Class 2) for five years beginning on January 1, 20X1. During the first year of the license period, the customer is permitted to embed the entity's intellectual property only in Class 1. Beginning in Year 2 (that is, beginning on January 1, 20X2), the customer is permitted to embed the entity's intellectual property in Class 2. There is no expectation that the entity will undertake activities to change the functionality of the intellectual property during the license period. There are no other promised goods or services in the contract. The entity provides (or otherwise makes available—for example, makes available for download) a copy of the intellectual property to the customer on December 20, 20X0.

**606-10-55-399L**  In identifying the goods and services promised to the customer in the contract (in accordance with guidance in paragraphs 606-10-25-14 through 25-18), the entity considers whether the contract grants the customer a single promise, for which an attribute of the promised license is that during Year 1 of the contract the customer is restricted from embedding the intellectual property in the Class 2 consumer products), or two promises (that is, a license for a right to embed the entity's intellectual property in Class 1 for a five-year period beginning on January 1, 20X1, and a right to embed the entity's intellectual property in Class 2 for a four-year period beginning on January 1, 20X2).

**606-10-55-399M**  In making this assessment, the entity determines that the provision in the contract stipulating that the right for the customer to embed the entity's intellectual property in Class 2 only commences one year after the right for the customer to embed the entity's intellectual property in Class 1 means that after the customer can begin to use and benefit from its right to embed the entity's intellectual property in Class 1 on January 1, 20X1, the entity must still fulfill a second promise to transfer an

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

additional right to use the licensed intellectual property (that is, the entity must still fulfill its promise to grant the customer the right to embed the entity's intellectual property in Class 2). The entity does not transfer control of the right to embed the entity's intellectual property in Class 2 before the customer can begin to use and benefit from that right on January 1, 20X2.

**606-10-55-399N** The entity then concludes that the first promise (the right to embed the entity's intellectual property in Class 1) and the second promise (the right to embed the entity's intellectual property in Class 2) are distinct from each other. The customer can benefit from each right on its own and independently of the other. Therefore, each right is capable of being distinct in accordance with paragraph 606-10-25-19(a)). In addition, the entity concludes that the promise to transfer each license is separately identifiable (that is, each right meets the criterion in paragraph 606-10-25-19(b)) on the basis of an evaluation of the principle and the factors in paragraph 606-10-25-21. The entity concludes that it is not providing any integration service with respect to the two rights (that is, the two rights are not inputs to a combined output with functionality that is different from the functionality provided by the licenses independently), neither right significantly modifies or customizes the other, and the entity can fulfill its promise to transfer each right to the customer independently of the other (that is, the entity could transfer either right to the customer without transferring the other). In addition, neither the Class 1 license nor the Class 2 license is integral to the customer's ability to use or benefit from the other.

**606-10-55-399O** Because each right is distinct, they constitute separate performance obligations. On the basis of the nature of the licensed intellectual property and the fact that there is no expectation that the entity will undertake activities to change the functionality of the intellectual property during the license period, each promise to transfer one of the two licenses in this contract provides the customer with a right to use the entity's intellectual property and the entity's promise to transfer each license is, therefore, satisfied at a point in time. The entity determines at what point in time to recognize the revenue allocable to each performance obligation in accordance with paragraphs 606-10-55-58B through 55-58C. Because a customer does not control a license until it can begin to use and benefit from the rights conveyed, the entity recognizes revenue allocated to the Class 1 license no earlier than January 1, 20X1, and the revenue on the Class 2 license no earlier than January 1, 20X2.

## · > Repurchase Agreements

**606-10-55-400** Example 62 illustrates the guidance in paragraphs 606-10-55-66 through 55-78 on repurchase agreements.

## · · > Example 62—Repurchase Agreements

**606-10-55-401** An entity enters into a contract with a customer for the sale of a tangible asset on January 1, 20X7, for $1 million.

## · · · > Case A—Call Option: Financing

**606-10-55-402** The contract includes a call option that gives the entity the right to repurchase the asset for $1.1 million on or before December 31, 20X7.

**606-10-55-403** Control of the asset does not transfer to the customer on January 1, 20X7, because the entity has a right to repurchase the asset and therefore the customer is limited in its ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset. Consequently, in accordance with paragraph 606-10-55-68(b), the entity accounts for the transaction as a financing arrangement

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

because the exercise price is more than the original selling price. In accordance with paragraph 606-10-55-70, the entity does not derecognize the asset and instead recognizes the cash received as a financial liability. The entity also recognizes interest expense for the difference between the exercise price ($1.1 million) and the cash received ($1 million), which increases the liability.

**606-10-55-404**    On January 1, 20X7, the option lapses unexercised; therefore, the entity derecognizes the liability and recognizes revenue of $1.1 million.

> ### ⏲ PENDING CONTENT
>
> **Transition Date:** Ⓟ December 16, 2026;  Ⓝ December 16, 2026 | **Transition Guidance:** 105-10-65-10
>
> On December 31, 20X7, the option lapses unexercised; therefore, the entity derecognizes the liability and recognizes revenue of $1.1 million.

### · · · > Case B—Put Option: Lease

**606-10-55-405**    Instead of having a call option, the contract includes a put option that obliges the entity to repurchase the asset at the customer's request for $900,000 on or before December 31, 20X7. The market value is expected to be $750,000 on December 31, 20X7.

**606-10-55-406**    At the inception of the contract, the entity assesses whether the customer has a significant economic incentive to exercise the put option, to determine the accounting for the transfer of the asset (see paragraphs 606-10-55-72 through 55-78). The entity concludes that the customer has a significant economic incentive to exercise the put option because the repurchase price significantly exceeds the expected market value of the asset at the date of repurchase. The entity determines there are no other relevant factors to consider when assessing whether the customer has a significant economic incentive to exercise the put option. Consequently, the entity concludes that control of the asset does not transfer to the customer because the customer is limited in its ability to direct the use of, and obtain substantially all of the remaining benefits from, the asset.

**606-10-55-407**    In accordance with paragraphs 606-10-55-72 through 55-73, the entity accounts for the transaction as a lease in accordance with Topic 842 on leases.

### · > Bill-and-Hold Arrangements

**606-10-55-408**    Example 63 illustrates the guidance in paragraphs 606-10-55-81 through 55-84 on bill-and-hold arrangements.

### · · > Example 63—Bill-and-Hold Arrangement

**606-10-55-409**    An entity enters into a contract with a customer on January 1, 20X8, for the sale of a machine and spare parts. The manufacturing lead time for the machine and spare parts is two years.

**606-10-55-410**    Upon completion of manufacturing, the entity demonstrates that the machine and spare parts meet the agreed-upon specifications in the contract. The promises to transfer the machine and spare parts are distinct and result in two performance obligations that each will be satisfied at a point in time. On December 31, 20X9, the customer pays for the machine and spare parts but only takes physical possession of the machine. Although the customer inspects and accepts the spare parts, the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

customer requests that the spare parts be stored at the entity's warehouse because of its close proximity to the customer's factory. The customer has legal title to the spare parts, and the parts can be identified as belonging to the customer. Furthermore, the entity stores the spare parts in a separate section of its warehouse, and the parts are ready for immediate shipment at the customer's request. The entity expects to hold the spare parts for two to four years, and the entity does not have the ability to use the spare parts or direct them to another customer.

**606-10-55-411**    The entity identifies the promise to provide custodial services as a performance obligation because it is a service provided to the customer and it is distinct from the machine and spare parts. Consequently, the entity accounts for three performance obligations in the contract (the promises to provide the machine, the spare parts, and the custodial services). The transaction price is allocated to the three performance obligations and revenue is recognized when (or as) control transfers to the customer.

**606-10-55-412**    Control of the machine transfers to the customer on December 31, 20X9, when the customer takes physical possession. The entity assesses the indicators in paragraph 606-10-25-30 to determine the point in time at which control of the spare parts transfers to the customer, noting that the entity has received payment, the customer has legal title to the spare parts, and the customer has inspected and accepted the spare parts. In addition, the entity concludes that all of the criteria in paragraph 606-10-55-83 are met, which is necessary for the entity to recognize revenue in a bill-and-hold arrangement. The entity recognizes revenue for the spare parts on December 31, 20X9, when control transfers to the customer.

**606-10-55-413**    The performance obligation to provide custodial services is satisfied over time as the services are provided. The entity considers whether the payment terms include a significant financing component in accordance with paragraphs 606-10-32-15 through 32-20.

# 60 Relationships

> ⓘ **General Note:** The Relationships Section contains links to guidance that may be helpful to, but not required by, a user of the Subtopic. This Section may not be all-inclusive. The relationship items are organized according to the Topic structure in the Codification.

# General

## > Costs Related to a Contract with a Customer

· > Other Assets and Deferred Costs—Costs Related to a Contract with a Customer

**606-10-60-1**    For guidance on the costs related to a contract with a customer that is within the scope of this Topic, see Subtopic 340-40.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

## > Revenue Recognition

### · > Agriculture—Revenue Recognition

**606-10-60-2**    For guidance on recognizing revenue from contracts that are not within scope of this Topic by entities in the agriculture industry, see Subtopic 905-605.

### · > Financial Services—Insurance—Revenue Recognition

**606-10-60-3**    For guidance on recognizing revenue from contracts that are not within scope of this Topic by insurance entities, see Subtopic 944-605.

### · > Health Care Entities—Revenue Recognition

**606-10-60-4**    For guidance on recognizing revenue from contracts that are not within scope of this Topic by health care entities, see Subtopic 954-605.

### · > Not-for-Profit-Entities—Revenue Recognition

**606-10-60-5**    For guidance on recognizing revenue from contracts that are not within scope of this Topic by not-for-profit entities, see Subtopic 958-605.

### · > Regulated Operations—Revenue Recognition

**606-10-60-6**    For guidance on recognizing revenue and disclosure requirements for contracts that are not within scope of this Topic by entities with regulated operations, see Subtopic 980-605.

## > Provision for Losses

### · > Software—Revenue Recognition—Provision for Losses

**606-10-60-7**    For guidance on determining the need for a provision for losses on certain software arrangements, see Subtopic 985-605.

**606-10-60-8**    For guidance on determining the need for a provision for losses on certain reinsurance contracts, See Subtopic 944-605.

### · > Revenue Recognition—Provision for Losses on Construction-Type and Production-Type Contracts

**606-10-60-9**    For guidance on determining the need for a provision for losses for construction-type and production-type contracts, see Subtopic 605-35.

### · > Revenue Recognition—Provision for Losses on Separately Priced Extended Warranty and Product Maintenance Contracts

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**606-10-60-10**  For guidance on recognizing a loss on separately priced extended warranty and product maintenance contracts, see Subtopic 605-20.

**· > Health Care Entities—Commitments**

**606-10-60-11**  For guidance on determining whether a liability should be recognized for a continuing care retirement community for its obligation to provide future services and the use of facilities to current residents, see Sections 954-440-25 and 954-440-35.

**· > Health Care Entities—Contingencies**

**606-10-60-12**  For guidance on determining when to recognize a loss under prepaid health care services contracts, see paragraph 954-450-30-4.

**· > Regulated Operations—Intangibles—Goodwill and Other**

**606-10-60-13**  For guidance on recognizing a loss on long-term power sales contracts, see paragraph 980-350-35-3.

**· > Contractors—Federal Government—Contract Costs**

**606-10-60-14**  For guidance on the presentation of a loss on a termination of a contract for default, see paragraph 912-20-25-4.

## > Interest—Imputation of Interest

**606-10-60-15**  For guidance on imputation of interest on contracts that are not within scope of Topic 606, see Subtopic 835-30.

## > Nonmonetary Transactions

**· > Nonmonetary Transactions—Transactions including Noncash Consideration**

**606-10-60-16**  For guidance on nonmonetary transactions (that is, transactions including noncash consideration) in contracts that are not within scope of this Topic, see Subtopic 845-10.

# 65 Transition and Open Effective Date Information

> ⓘ **General Note:**The Transition Section contains a description of the required transition provisions and a list of the related paragraphs that have been modified. This Section will retain the transition content during the

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

transition period. After the transition period, the transition content will be removed yet will be available in archived versions of the Section.

# General

♟ Related Proposed ASUs

**606-10-65-1**    Paragraph superseded on 12/14/2022 after the end of the transition period stated in Accounting Standards Updates No. 2014-09, *Revenue from Contracts with Customers (Topic 606)*, No. 2016-08, *Revenue from Contracts with Customers (Topic 606): Principal versus Agent Considerations (Reporting Revenue Gross versus Net),* No. 2016-10, *Revenue from Contracts with Customers (Topic 606): Identifying Performance Obligations and Licensing,* No. 2016-12, *Revenue from Contracts with Customers (Topic 606): Narrow-Scope Improvements and Practical Expedients,* No. 2016-20, *Technical Corrections and Improvements to Topic 606, Revenue from Contracts with Customers,* No. 2017-05, *Other Income—Gains and Losses from the Derecognition of Nonfinancial Assets (Subtopic 610-20): Clarifying the Scope of Asset Derecognition Guidance and Accounting for Partial Sales of Nonfinancial Assets*, and No. 2020-05, *Revenue from Contracts with Customers (Topic 606) and Leases (Topic 842): Effective Dates for Certain Entities*.

## > Transition Related to Accounting Standards Update No. 2025-04, *Compensation—Stock Compensation (Topic 718) and Revenue from Contracts with Customers (Topic 606): Clarifications to Share-Based Consideration Payable to a Customer*

**606-10-65-2**    The following represents the transition and effective date information related to Accounting Standards Update No. 2025-04, *Compensation—Stock Compensation (Topic 718) and Revenue from Contracts with Customers (Topic 606): Clarifications to Share-Based Consideration Payable to a Customer:*
**Effective date and early adoption**

a. All entities shall apply the pending content that links to this paragraph for annual reporting periods beginning after December 15, 2026, and interim reporting periods within those annual reporting periods.

b. Early adoption of the pending content that links to this paragraph is permitted in an interim or annual reporting period in which financial statements have not yet been issued (or made available for issuance). If an entity adopts the pending content that links to this paragraph in an interim reporting period, it shall adopt the pending content as of the beginning of the annual reporting period that includes that interim reporting period.

**Transition method**

c. An entity shall apply the pending content that links to this paragraph using one of the following transition methods:

1. On a modified retrospective basis through a cumulative-effect adjustment to the opening balance of retained earnings (or other appropriate components of equity or net assets in the statement of financial position) as of the beginning of the annual reporting period in which the pending content that links to this paragraph is adopted.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

2. On a retrospective basis through a cumulative-effect adjustment to the opening balance of retained earnings (or other appropriate components of equity or net assets in the statement of financial position) as of the beginning of the first period presented in accordance with the guidance on accounting changes in paragraphs 250-10-45-5 and 250-10-45-8. If retrospective transition is applied, an entity shall use the actual outcome, if known, of a performance condition or service condition as of the beginning of the annual reporting period in which the pending content that links to this paragraph is adopted for all prior-period estimates. If the actual outcome is unknown, an entity shall use its estimate of the probability of achieving a service condition or performance condition as of the beginning of the annual reporting period of adoption for all prior-period estimates.

Transition disclosures

d. An entity applying the pending content that links to this paragraph in accordance with (c)(1) shall provide the following transition disclosures in the financial statements of both the interim reporting period (if applicable) and the annual reporting period of the change:

1. The nature of the change in accounting principle, including an explanation of the newly adopted accounting principle

2. The method of applying the change

3. The cumulative effect of the change on retained earnings or other components of equity in the statement of financial position as of the annual reporting period in which the pending content that links to this paragraph is adopted.

e. An entity applying the pending content that links to this paragraph in accordance with (c)(2) shall provide the following transition disclosures in the financial statements of both the interim reporting period (if applicable) and the annual reporting period of the change:

1. The nature of the change in accounting principle, including an explanation of the newly adopted accounting principle

2. The method of applying the change

3. The cumulative effect of the change on retained earnings or other components of equity in the statement of financial position as of the beginning of the earliest period presented

4. The effect of the change on income from continuing operations, net income (or other appropriate captions of changes in the applicable net assets or performance indicator), any other affected financial statement line item, and any affected per-share amounts for any prior periods retrospectively adjusted.

## > Transition Related to Accounting Standards Update No. 2025-07, *Derivatives and Hedging (Topic 815) and Revenue from Contracts with Customers (Topic 606): Derivatives Scope Refinements and Scope Clarification for Share-Based Noncash Consideration from a Customer in a Revenue Contract*

**606-10-65-3**    The following represents the transition and effective date information related to Accounting Standards Update No. 2025-07, *Derivatives and Hedging (Topic 815) and Revenue from Contracts with Customers (Topic 606): Derivatives Scope Refinements and Scope Clarification for Share-Based Noncash Consideration from a Customer in a Revenue Contract*:

Effective date and early adoption

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

a. All entities shall apply the pending content that links to this paragraph for annual reporting periods beginning after December 15, 2026, and interim reporting periods within those annual reporting periods.

b. Early adoption of the pending content that links to this paragraph is permitted in both interim and annual reporting periods for which financial statements have not yet been issued or made available for issuance. If an entity early adopts the pending content that links to this paragraph in an interim reporting period, it shall apply the pending content as of the beginning of the annual reporting period that includes that interim reporting period. If an entity early adopts the pending content that links to this paragraph, it also shall early adopt the pending content that links to paragraph 815-10-65-8 simultaneously.

### Transition method

c. An entity shall apply the pending content that links to this paragraph using one of the following transition methods:

1. Prospectively to new contracts entered into on or after the date of adoption, including modified contracts accounted for as separate contracts in accordance with paragraph 606-10-25-12

2. On a modified retrospective basis through a cumulative-effect adjustment to the opening balance of retained earnings (or other appropriate components of equity or net assets in the statement of financial position) as of the beginning of the annual reporting period of adoption for contracts existing as of the beginning of the annual reporting period of adoption.

### Transition disclosures

d. An entity that applies the transition method in (c)(1) shall disclose the nature of and reason for the change in accounting principle in both the interim reporting period and the annual reporting period in which the entity adopts the pending content that links to this paragraph.

e. An entity that applies the transition method in (c)(2) shall disclose the following in both the interim reporting period and the annual reporting period in which the entity adopts the pending content that links to this paragraph:

1. The nature of and reason for the change in accounting principle

2. The cumulative effect of the change on retained earnings or other components of equity or net assets in the statement of financial position as of the beginning of the annual reporting period of adoption.

# S00 Status

(i) **General Note:**The Status Section identifies changes to this Subtopic resulting from Accounting Standards Updates. The Section provides references to the affected Codification content and links to the related Accounting Standards Updates. Nonsubstantive changes for items such as editorial, link and similar corrections are included separately in Maintenance Updates.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

# General

**606-10-S00-1**    The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| 606-10-S25-1 | Added | Accounting Standards Update No. 2017-14 | 11/22/2017 |
| 606-10-S65-1 | Added | Accounting Standards Update No. 2017-13 | 09/29/2017 |

# S20 Glossary

> ⓘ **General Note:**The Master Glossary contains all terms identified as glossary terms throughout the Codification. Clicking on any term in the Master Glossary will display where the term is used. The Master Glossary may contain identical terms with different definitions, some of which may not be appropriate for a particular Subtopic. For any particular Subtopic, users should only use the glossary terms included in the particular Subtopic Glossary Section (Section 20).

## Not-for-Profit Entity

An entity that possesses the following characteristics, in varying degrees, that distinguish it from a business entity:

a. Contributions of significant amounts of resources from resource providers who do not expect commensurate or proportionate pecuniary return

b. Operating purposes other than to provide goods or services at a profit

c. Absence of ownership interests like those of business entities.

Entities that clearly fall outside this definition include the following:

a. All investor-owned entities

b. Entities that provide dividends, lower costs, or other economic benefits directly and proportionately to their owners, members, or participants, such as mutual insurance entities, credit unions, farm and rural electric cooperatives, and employee benefit plans.

## Public Business Entity

A public business entity is a business entity meeting any one of the criteria below. Neither a not-for-profit entity nor an employee benefit plan is a business entity.

a. It is required by the U.S. Securities and Exchange Commission (SEC) to file or furnish financial statements, or does file or furnish financial statements (including voluntary filers), with the SEC (including other entities whose financial statements or financial information are required to be or are included in a filing).

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

b. It is required by the Securities Exchange Act of 1934 (the Act), as amended, or rules or regulations promulgated under the Act, to file or furnish financial statements with a regulatory agency other than the SEC.

c. It is required to file or furnish financial statements with a foreign or domestic regulatory agency in preparation for the sale of or for purposes of issuing securities that are not subject to contractual restrictions on transfer.

d. It has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market.

e. It has one or more securities that are not subject to contractual restrictions on transfer, and it is required by law, contract, or regulation to prepare U.S. GAAP financial statements (including notes) and make them publicly available on a periodic basis (for example, interim or annual periods). An entity must meet both of these conditions to meet this criterion.

An entity may meet the definition of a public business entity solely because its financial statements or financial information is included in another entity's filing with the SEC. In that case, the entity is only a public business entity for purposes of financial statements that are filed or furnished with the SEC.

## Security

A share, participation, or other interest in property or in an entity of the issuer or an obligation of the issuer that has all of the following characteristics:

a. It is either represented by an instrument issued in bearer or registered form or, if not represented by an instrument, is registered in books maintained to record transfers by or on behalf of the issuer.

b. It is of a type commonly dealt in on securities exchanges or markets or, when represented by an instrument, is commonly recognized in any area in which it is issued or dealt in as a medium for investment.

c. It either is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations.

# S25 Recognition

> ⓘ **General Note:** The Recognition Section provides guidance on the required criteria, timing, and location (within the financial statements) for recording a particular item in the financial statements. Disclosure is not recognition.

## General

**606-10-S25-1**    The following is the text of Interpretive Release No. 33-10403: Updates to Commission Guidance Regarding Accounting for Sales of Vaccines and Bioterror Countermeasures to the Federal Government for Placement into the Pediatric Vaccine Stockpile or the Strategic National Stockpile.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

**AGENCY:** Securities and Exchange Commission.

**ACTION:** Interpretation.

**SUMMARY:** The Securities and Exchange Commission is publishing this interpretive release to update previously issued guidance with respect to accounting for sales of vaccines and bioterror countermeasures to the Federal Government for placement into stockpiles related to the Vaccines for Children Program or the Strategic National Stockpile. This update is being provided to bring existing guidance into conformity with Financial Accounting Standards Board's Accounting Standards Codification Topic 606, *Revenue from Contracts with Customers*. This guidance is applicable upon a registrant's adoption of Accounting Standards Codification Topic 606 and is applicable to all arrangements for which revenue is recognized in accordance with Accounting Standards Codification Topic 606.

**EFFECTIVE DATE:** August 29, 2017.

**FOR FURTHER INFORMATION CONTACT:** Kevin L. Vaughn, Senior Associate Chief Accountant, or Joseph R. Epstein, Professional Accounting Fellow, Office of the Chief Accountant, at (202) 551-5300, U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549-6561. Inquiries about this interpretive release also can be directed to oca@sec.gov.

**SUPPLEMENTARY INFORMATION:**

### I. Introduction

The Securities and Exchange Commission ("Commission") continues to be committed, as stated in previously-issued guidance (the "2005 Release"), [FN1] to addressing any unintended consequences of accounting requirements that could impair the nation's ability to create and maintain sufficient supplies of various vaccines and bioterror countermeasures ("enumerated vaccines"). The Commission issued the 2005 Release to address questions about the timing of revenue recognition for vaccines placed into the Vaccines for Children Program and the Strategic National Stockpile. At the time of the 2005 Release, some expressed concerns that the application of generally accepted accounting principles may require revenue recognition to be delayed beyond the period in which the vaccine is placed in the stockpile, and may have an unintended consequence of causing some vaccine manufacturers to decline to participate in these critical stockpile programs. The Commission published the guidance in the 2005 Release to resolve the accounting questions. With the Financial Accounting Standards Board's ("FASB") issuance of Accounting Standards Codification ("ASC") Topic 606, *Revenues from Contracts with Customers* ("ASC Topic 606"), [FN2] we are providing this updated guidance.

> FN1 *See Commission Guidance Regarding Accounting for Sales of Vaccines and Bioterror Countermeasures to the Federal Government for Placement into the Pediatric Vaccine Stockpile or the Strategic National Stockpile*, Release No. 33-8642 (Dec. 5, 2005).

> FN2 The International Accounting Standards Board (IASB) has also issued IFRS 15, *Revenue from Contracts with Customers* (IFRS 15). The issuance of ASC Topic 606 and IFRS 15 completes the joint effort by the FASB and IASB that was undertaken with the intent of improving financial reporting by creating converged comprehensive revenue recognition guidance for U.S. GAAP and IFRS.

Government vaccine stockpile programs are unique in many respects. For example, the primary objective of purchasing the vaccines is not to take delivery for ultimate use but rather to be able to require immediate delivery on notice. An additional characteristic of vaccine stockpiles is the limited shelf life of the vaccines. For these and other reasons, the Commission continues to limit this guidance to the vaccines enumerated below.

### II. The Application of Generally Accepted Accounting Principles for Revenue Recognition to Vaccine Stockpiles

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

The Commission historically has recognized pronouncements of the FASB as authoritative in the absence of any contrary determination by the Commission. [FN3] In Financial Reporting Release No. 70, [FN4] the Commission stated its determination that the FASB and its parent organization, the Financial Accounting Foundation, satisfied the criteria in Section 19(b) of the Securities Act of 1933 [FN5] and, accordingly, FASB's financial accounting and reporting standards are recognized as "generally accepted" for purposes of the federal securities laws. As a result, registrants are required to comply with those standards in preparing financial statements filed with the Commission, unless the Commission provides otherwise. [FN6]

> FN3 Rule 4-01(a)(1) of Regulation S-X, 17 CFR 210.4-01(a)(1). See Accounting Series Release ("ASR") No. 150 (Dec. 20, 1973) and ASR No. 4 (Apr. 25, 1938).

> FN4 *Policy Statement: Reaffirming the Status of the FASB as a Designated Private-Sector Standard Setter*, Release Nos. 33-8221; 34-47743; IC-26028; FR-70 (Apr. 25, 2003) ("FR-70"); 68 FR 23333 (May 1, 2003).

> FN5 15 U.S.C 77s(b).

> FN6 *See* FR-70; Rule 4-01(a)(1) of Regulation S-X, 17 CFR 210.4-01(a)(1).

Although no specific guidance has been published by the FASB related to revenue recognition for vaccine stockpiles, the FASB has issued comprehensive revenue recognition guidance in ASC Topic 606, which supersedes most previous revenue recognition guidance issued by the FASB.

In response to the new, comprehensive revenue recognition model in ASC Topic 606, simultaneous with publication of this release, the Commission has issued an interpretation stating [FN7] that upon the registrant's adoption of ASC Topic 606, such registrant should no longer rely on the guidance in Securities Exchange Act Release No. 23507 and Accounting and Auditing Enforcement Release No. 108, *In the Matter of Stewart Parness* ("AAER 108"), [FN8] which set forth criteria to be met in order to recognize revenue when delivery has not occurred. The Commission staff had previously reiterated the guidance in AAER 108 in Staff Accounting Bulletin ("SAB") Topic 13, *Revenue Recognition*, which the staff is modifying as a result of the FASB's issuance of ASC Topic 606.

> FN7 *Commission Guidance Regarding Revenue Recognition for Bill-and-Hold Arrangements*, Release No. 33-10402 (Aug. 18, 2017).

> FN8 *See In the Matter of Stewart Parness*, AAER 108 (Aug. 5, 1986).

Under ASC Topic 606, the general criteria for revenue recognition includes identifying the contract(s) with a customer, identifying the performance obligations in the contract, determining the transaction price, allocating the transaction price to the performance obligations in the contract, and recognizing revenue when (or as) the entity satisfies a performance obligation by transferring a promised good or service to a customer. [FN9] A good or service is transferred when (or as) the customer obtains control of that good or service and ASC Topic 606 sets forth indicators of when control has been transferred. [FN10]

> FN9 *See* ASC paragraph 606-10-05-4.

> FN10 *See* ASC paragraphs 606-10-25-23 through 25-30.

ASC Topic 606 also provides specific guidance on contracts under which an entity bills a customer for a product but the entity retains physical possession of the product until it is transferred to the customer at a point in time in the future (i.e., a bill-and-hold arrangement). [FN11] Topic 606 acknowledges that, for some contracts, a customer may obtain control of a product even though that product remains in an entity's physical possession. [FN12] In order to recognize

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

revenue in a bill-and-hold arrangement, Topic 606 requires consideration of the indicators of when control has been transferred and sets forth additional criteria to be met. [FN13]

> FN11 *See* ASC paragraphs 606-10-55-81 through 55-84.

> FN12 *See* ASC paragraph 606-10-55-82.

> FN13 *See* ASC paragraph 606-10-55-83.

### III. Updated Commission Guidance

The Commission believes vaccine manufacturers should recognize revenue and provide the disclosures required under ASC Topic 606 when vaccines are placed into Federal Governmental stockpile programs because control of the enumerated vaccines will have been transferred to the customer and the criteria to recognize revenue in a bill-and-hold arrangement under ASC Topic 606 will have been met.

The following are the enumerated vaccines subject to this release:

- Childhood disease vaccines;

- Influenza vaccines; and

- Other vaccines and countermeasures sold to the Federal Government for placement in the Strategic National Stockpile.

Due to the uniqueness of the vaccine stockpile programs as discussed above, this interpretative guidance is not applicable to transactions other than the sales of enumerated vaccines by vaccine manufacturers.

Prior to a registrant's adoption of ASC Topic 606, the guidance contained in the 2005 Release is still applicable to all arrangements for which revenue is recognized.

### List of Subjects

17 CFR Parts 231, 241, and 271

Securities.

Amendments to the Code of Federal Regulations

For the reasons set out in the preamble, the Commission is amending Title 17, chapter II of the Code of Federal Regulations as set forth below:

### PART 231 - INTERPRETATIVE RELEASES RELATING TO THE SECURITIES ACT OF 1933 AND GENERAL RULES AND REGULATIONS THEREUNDER

Part 231 is amended by adding Release No. 33-10403 and the release date of August 18, 2017 to the list of interpretive releases.

### PART 241 - INTERPRETATIVE RELEASES RELATING TO THE SECURITIES EXCHANGE ACT OF 1934 AND GENERAL RULES AND REGULATIONS THEREUNDER

Part 241 is amended by adding Release No. 34-81429 and the release date of August 18, 2017 to the list of interpretive releases.

### PART 271 - INTERPRETATIVE RELEASES RELATING TO THE INVESTMENT COMPANY ACT OF 1940 AND GENERAL RULES AND REGULATIONS THEREUNDER

Part 271 is amended by adding Release No. IC-32785 and the release date of August 18, 2017 to the list of interpretive releases.

By the Commission.

Dated: August 18, 2017

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

Jill M. Peterson
Assistant Secretary

# S65 Transition and Open Effective Date Information

ⓘ **General Note:**The Transition Section contains a description of the required transition provisions and a list of the related paragraphs that have been modified. This Section will retain the transition content during the transition period. After the transition period, the transition content will be removed yet will be available in archived versions of the Section.

# General

## > SEC Staff Guidance

· > SEC Staff Announcement: Transition Related to Accounting Standards Updates No. 2014-09 and 2016-02

**606-10-S65-1**   The following is the text of SEC Staff Announcement: Transition Related to Accounting Standards Updates No. 2014-09 and 2016-02.

> FASB Accounting Standards Updates No. 2014-09, *Revenue from Contracts with Customers (Topic 606)*, issued in May 2014 and codified in ASC Topic 606, Revenue from Contracts with Customers, and No. 2016-02, *Leases (Topic 842)*, issued in February 2016 and codified in ASC Topic 842, Leases, provide effective dates that differ for (1) public business entities and certain other specified entities and (2) all other entities. The SEC staff has received inquiries from stakeholders regarding the application of the effective dates of ASC Topic 606 and ASC Topic 842 for a public business entity[FN1] that otherwise would not meet the definition of a public business entity except for a requirement to include or the inclusion of its financial statements or financial information in another entity's filing with the SEC.

> The transition provisions in ASC Topic 606 require that a public business entity and certain other specified entities adopt ASC Topic 606 for annual reporting periods beginning after December 15, 2017, including interim reporting periods within that reporting period. [FN2] All other entities are required to adopt ASC Topic 606 for annual reporting periods beginning after December 15, 2018, and interim reporting periods within annual reporting periods beginning after December 15, 2019.

> The transition provisions in ASC Topic 842 require that a public business entity and certain other specified entities adopt ASC Topic 842 for fiscal years beginning after December 15, 2018, and interim periods within those fiscal years. [FN3] All other entities are required to adopt ASC Topic

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

12/20/2025, 5:07 PM
Case 1:24-cv-08636-LJL    Document 86-8    Filed 02/17/26    Page 155 of 155
Combine Sections - 606 Revenue from Contracts with Customers

842 for fiscal years beginning after December 15, 2019, and interim periods within fiscal years beginning after December 15, 2020.

In response to the stakeholder inquiries outlined above, the SEC staff would not object to a public business entity that otherwise would not meet the definition of a public business entity except for a requirement to include or the inclusion of its financial statements or financial information in another entity's filing with the SEC adopting (1) ASC Topic 606 for annual reporting periods beginning after December 15, 2018, and interim reporting periods within annual reporting periods beginning after December 15, 2019, and (2) ASC Topic 842 for fiscal years beginning after December 15, 2019, and interim periods within fiscal years beginning after December 15, 2020.

A public business entity that otherwise would not meet the definition of a public business entity except for a requirement to include or the inclusion of its financial statements or financial information in another entity's filing with the SEC may still elect to adopt ASC Topic 606 and ASC Topic 842 according to the public business entity effective dates outlined above.

This announcement is applicable only to public business entities that otherwise would not meet the definition of a public business entity except for a requirement to include or the inclusion of its financial statements or financial information in another entity's filing with the SEC. This announcement is not applicable to other public business entities.

FN 1 The definition of *Public Business Entity* in the FASB's ASC Master Glossary states, in part, the following:

A public business entity is a business entity meeting any one of the criteria below . . .

a. It is required by the U.S. Securities and Exchange Commission (SEC) to file or furnish financial statements, or does file or furnish financial statements (including voluntary filers), with the SEC (including other entities whose financial statements or financial information are required to be or are included in a filing) . . .

An entity may meet the definition of a public business entity solely because its financial statements or financial information is included in another entity's filing with the SEC. In that case, the entity is only a public business entity for purposes of financial statements that are filed or furnished with the SEC.

FN 2 Early adoption of ASC Topic 606 is permitted for public business entities and certain other specified entities only as of annual reporting periods beginning after December 15, 2016, including interim reporting periods within that reporting period.

FN 3 Early adoption of ASC Topic 842 is permitted for public business entities and certain other specified entities, as well as for all other entities.

Copyright © 2025 by Financial Accounting Foundation. All rights reserved. Certain portions may include material copyrighted by American Institute of Certified Public Accountants. Content copyrighted by Financial Accounting Foundation, or any third parties who have not provided specific permission, may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Financial Accounting Foundation or such applicable third party. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.