USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER MANCHIN, et al.,

Plaintiffs,

-v-

PACS GROUP, INC., et al.,

Defendants.

24-cv-8636 (LJL)

MEMORANDUM & ORDER

LEWIS J. LIMAN, United States District Judge:

Lead Plaintiff 1199SEIU Health Care Employees Pension Fund and Plaintiff Police and Fire Retirement System of the City of Detroit (collectively "Plaintiffs") move, by letter motion, for clarification of this Court's September 4, 2026 Opinion and Order (the "Order"), Dkt. No. 97, granting in part and denying in part the motion of Defendants to dismiss the Consolidated Class Action Complaint (the "Complaint"), Dkt. No. 63, for failure to state a claim for relief. Dkt. No. 105. Plaintiffs ask the Court to clarify that the Order did not address Count VI of the Complaint, which alleged a violation of Section 10(b) of the Exchange Act on a theory of insider trading. *Id.* The motion is denied.

In the Order's decretal language, the Court stated that Plaintiffs had plausibly stated a claim for violations of the Securities Act but held that "Plaintiffs have failed to state a claim for relief under the Exchange Act, and such claims are dismissed without prejudice." Dkt. No. 97 at 121. There was no ambiguity to that statement. The Exchange Act claims, including Count VI, are dismissed.

Plaintiffs' motion arises from what was admittedly a poorly worded footnote in the Court's Order. The Court stated that it did not need to "reach the parties' arguments concerning

whether Plaintiffs sufficiently pled that the relevant Defendants had material, nonpublic information at the time of the trades" in order to resolve Defendants' motion to dismiss Plaintiffs' claim under Section 20A of the Exchange Act because Plaintiffs had failed to plead a predicate violation of the Exchange Act. *Id.* at 120 n.41. That statement was in error. The Court would have needed to address Plaintiffs' insider-trading claim in order to resolve Defendants' motion to dismiss. As the body of the Court's order makes clear, however, the Court concluded that Defendants were not in possession of material, non-public information at the time that they and PACS sold shares of PACS. It is for that reason, as well as the reasons that Plaintiffs failed to state a claim under a misstatement or scheme theory of liability under the Exchange Act, that the Court concluded that Plaintiffs had failed to plead a predicate violation of the Exchange Act, including the violation alleged in Count VI of the complaint.

Count VI alleged that Defendants Jason Murray and Mark Hancock (the "Controlling Defendants") and PACS violated Section 10(b) and Rule 10b-5(a) and (c) by selling shares of PACS while in possession of material, non-public information. Dkt. No. 63 ¶¶ 704–13. Specifically, Plaintiffs alleged that when PACS, Murray and Hancock sold shares in the IPO and SPO they "possessed adverse, material nonpublic information concerning PACS's true financial condition, including materially overstated accounts receivable, substantial undisclosed refund liabilities, improper Medicare billing practices, internal-control deficiencies, and the Company's dependence on unsustainable Medicare revenues." Dkt. No. 63 ¶ 706; *see also id.* ¶ 663. PACS, Murray, and Hancock each sold shares in PACS's IPO and the SPO; no other share sales were alleged. *See id.* ¶ 731. Section 20A creates an express private right of action for an insider-trading violation of the Exchange Act, 15 U.S.C. § 78t-1, and Section 20(a) establishes the liability of "every person who . . . controls any person liable under" the Exchange Act, *id.*

§ 78t(a). Thus, to have dismissed Counts VII and VIII (violations of Section 20A and Section 20(a) respectively), the Court would have had to also conclude that Plaintiffs did not plead a violation of Section 10(b) and Rule 10b-5 thereunder, including on an insider-trading theory. [1] *See Feiner Fam. Tr. v. VBI Corp.*, 352 F. App'x 461, 464 (2d Cir. 2009) (summary order) (holding that because "derivative control person and insider trading liability under sections 20(a) and 20A(a) of the Exchange Act, 15 U.S.C. §§ 78t(a) and 78t-1(a) . . . require [plaintiff] to establish a primary violation of the Exchange Act, [the] conclusion that [plaintiff] has not stated a claim under section 10(b) precludes relief under these sections"). Had the Court concluded that Plaintiffs pleaded an Exchange Act violation on an insider-trading theory, the Court could not and would not have dismissed Counts VII and VIII.

As is implicit in the Court's order, however, Plaintiffs did not plead an Exchange Act violation based on an insider-trading theory. To plead a violation of Section 10(b) based on insider trading, a complaint must allege that a defendant purchased or sold stock while knowingly in possession of material, non-public information. *In re Archegos 20A Litig.*, 156 F.4th 108, 116 (2d Cir. 2025) ("Insider trading consists of the unlawful trading in securities based on material non-public information and 'is well established as a violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.'" (quoting *SEC v. Obus*, 693 F.3d 276, 284 (2d Cir. 2012)); *SEC v. Brewer*, 2025 WL 1548765, at *13 (S.D.N.Y. May 30, 2025) ("In order to prevail on an insider trading claim, the [plaintiff] must establish that a defendant traded while in knowing possession of material non-public information." (citation modified)). "In every

---

[1] As in other private securities fraud cases, "Plaintiffs assert[ed] three theories of liability to support their Section 10(b) claim." *In re DiDi Glob. Inc. Sec. Litig.*, 2025 WL 1909295, at *12 (S.D.N.Y. July 7, 2025) (discussing theories based on material misstatements or omissions, insider trading, and scheme liability), *report and recommendation adopted*, 2025 WL 2345696 (S.D.N.Y. Aug. 13, 2025).

insider trading case, at the moment of tipping or trading, just as in securities fraud cases across the board, the unlawful actor must know or be reckless in not knowing that the conduct was deceptive." *Obus*, 693 F.3d at 286. "[I]t is not necessary to show that corporate insiders *used* the nonpublic information; it is sufficient to prove that [defendants] traded their corporation's securities 'while knowingly in possession of the material nonpublic information.'" *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 (2d Cir. 2014) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 159 (2d Cir. 2013)); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 256 (S.D.N.Y. 2007) (dismissing Section 20A claims involving an alleged predicate insider-trading violation where "plaintiff . . . failed to allege that [the corporate officer] was privy to any material, nonpublic information concerning the [alleged] scheme . . . or was otherwise aware of the false and misleading nature of the financial statements he signed").

The Court's Order, read in its entirety, contains the Court's conclusion that PACS, Murray, and Hancock did not possess adverse material, non-public information at the time of their stock sales. Plaintiffs' theory of insider trading rests on the claim that, at the time of the IPO and SPO, the three had known or were reckless in not knowing of material adverse information that was not disclosed in the IPO and SPO offering documents, including with respect to PACS's accounting and its billing of Medicare. The same alleged information that formed the basis for Plaintiffs' misstatement and omissions claim also formed the basis for their insider-trading claim. *Compare* Dkt. No. 63 ¶ 685 (alleging that Defendants made false statements regarding "PACS's revenue, profitability, refund liabilities, accounts receivable, billing practices, and compliance with Medicare requirements") *with id.* ¶ 706 (similar allegations regarding insider trading). But the Complaint failed to plausibly allege that Controlling Defendants knew or were reckless in not knowing that the IPO and SPO offering

documents omitted material, non-public information and acted with the requisite scienter to commit securities fraud. Dkt. No. 97 at 88–102. Plaintiffs did not plead any direct evidence that Hancock or Murray knew of material adverse information that was not disclosed at the time of the IPO and SPO. The circumstantial evidence pleaded by Plaintiffs also failed to show that Defendants knew of any adverse information that was not disclosed. First, Murray and Hancock cannot be presumed to "have known of the improper accounting" because of their position in the corporate hierarchy. Dkt. No. 97 at 97–98. The allegation that they gave a "top-down directive to overbill Medicare" was insufficiently alleged based on one confidential witness that spoke about the chain of command within PACS without sufficient detail or having been in a position to claim that knowledge, *id.* at 98, and other allegations concerning "improper directive[s]" and scattershot operational problems did not substantiate knowledge of such issues at the highest levels of PACS, *id.* at 99.[2] Second, the two executive departures did not provide any indicia of knowledge that the company's practices were contrary to PACS's public statements as they did not pertain to the alleged fraud that is at the heart of the supposed material, non-public information. *Id.* at 100. Instead, one executive was retained as a consultant and another was fired for accepting improper gifts, unrelated to the government overbilling that is the root of Plaintiffs' securities fraud theories. *Id.* Third, PACS's decision to investigate before issuing a statement in response to the short-seller report does not constitute an adoptive admission that there were any alleged fraudulent statements or omissions nor, by the same token, any related

[2] The Complaint also pointed to civil investigative demands regarding some of PACS's practices as indicative of material, non-public information. Dkt. No. 63 ¶ 663. But as the Court explained, governmental requests for information do not necessarily indicate the existence of undisclosed information. Dkt. No. 97 at 74–75. That is particularly true in this instance, where they largely post-dated the trading activity. Only one demand preceded the securities offerings and focused on information about a single localized facility. *Id.* There are also no allegations that any government request for information "progressed beyond" that stage. *Id.*

undisclosed information. *Id.* at 100–01 ("A company's decision to investigate does not mean that it credits the allegations that are being investigated."). Lastly, SOX certifications, signed by at least one of the Controlling Defendants (Murray) add nothing further to the inquiry, because they are routine and necessary—other facts must be alleged to satisfy scienter. *Id.* at 101–02.[3] Thus, the allegations did not sufficiently plead that "Defendants had access to adverse, material, and nonpublic information . . . which did or should have alerted them to [any alleged] falsity of their public statements." *Cf. In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 508 (S.D.N.Y. 2011) (finding that complaint sufficiently alleged defendants' access to information about, among other things, "inadequate valuation and risk management models" to sustain a Section 20A claim resting on insider trading based on "Defendants' recklessness and their scienter").

Accordingly, the motion for clarification is denied.[4]

---

[3] Additionally, PACS is named as a defendant for Count VI, and all the same reasons apply for why Plaintiffs have failed to allege that PACS, as the issuer, was in knowing possession of material, nonpublic information. As the Court explained, an issuer's corporate scienter typically requires sufficient allegations that an individual whose knowledge may be imputable to the corporation acted with the requisite scienter. Dkt. No. 97 at 88, 96; *see also Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (per curiam). In the Complaint, the Controlling Defendants are alleged to be that link. Dkt. No. 63 ¶ 711 ("The Insider Selling/Controlling Stockholder Defendants acted with scienter in selling PACS securities while in possession of material nonpublic information."). In any event, no other individual defendant is adequately alleged to have had knowledge of the purported scheme (*i.e.*, the material, nonpublic information alleged) that would undermine PACS's disclosures in the IPO and SPO offering documents. *See* Dkt. No. 97 at 96–102 (with respect to PACS, explaining that the allegations concerning corporate culture, key personnel changes, and decision to investigate the claims of a short-seller report all did not indicate knowledge of the purported scheme to defraud government healthcare programs); *see also In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 515–16 (S.D.N.Y. 2009) ("There is no formulaic method or seniority prerequisite for employee scienter to be imputed to the corporation, but scienter by management-level employees is generally sufficient to attribute scienter to corporate defendants.").

[4] Plaintiffs also raise the argument that Defendants did not move to specifically dismiss Count VI. Dkt. No. 105 at 3. Although Defendants did not name the count in their memorandum of law in support of the motion to dismiss, Defendants put Plaintiffs on notice that they were

The Clerk of Court is respectfully directed to close Dkt. No. 105.

SO ORDERED.

Dated: November 13, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

seeking to dismiss all Exchange Act claims. Dkt. No. 83 at 11, 31. Defendants also argued that the elements of a predicate insider-trading violation were not sufficiently pleaded. *Id.* at 46. Plaintiffs had the opportunity to raise —and did raise—arguments concerning the elements of a predicate insider-trading violation. *See* Dkt. No. 89 at 59. Contrary to Plaintiffs' assertion, the dismissal was not *sua sponte*. *See* Dkt. No. 105 at 3. To the extent Plaintiffs claim they "cannot know on what grounds" the Court dismissed the claim, *id.*, that concern is remedied by this Memorandum & Order.